**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X

| | | |
|---|---|---|
| AXION POWER INTERNATIONAL, INC., | : | |
| WILLIAM AND TRACY AHEARN, h/w, | : | |
| SALLY FONNER, and | : | **CIVIL ACTION** |
| JAMES SMITH, M.D. | : | **NUMBER** |
| **Plaintiffs** | : | |
| | : | |
| -against- | : | |
| | : | **COMPLAINT** |
| MERCATUS & PARTNERS, LTD., | : | |
| MF GLOBAL, INC., MF GLOBAL, UK, Ltd., | : | **07 CV 11493** |
| CARI MASI a/k/a CARY MASI | : | |
| BNP PARIBAS SECURITIES SERVICES, | : | |
| BANCA MB S.p.A., | : | |
| DWIGHT PARSCALE, | : | |
| STEPHANO CEVALO, | : | **JURY TRIAL** |
| CONTINENTAL STOCK TRANSFER AND TRUST | : | **DEMANDED** |
| COMPANY, | : | |
| PENSON FINANCIAL SERVICES, INC., AND | : | **Judge Robert W. Sweet** |
| BROWN BROTHERS HARRIMAN & CO., | : | **Magistrate Judge** |
| | : | **Andrew J. Peck** |
| | : | |
| **Defendants.** | : | |

------------------------------------------------------------------------X

Plaintiff, Axion Power International, Inc. ("Axion"), William and Tracey Ahearn, h/w, Sally Fonner and James Smith, M.D., by their undersigned attorneys, Fellheimer & Eichen, LLP, for their Complaint against Mercatus & Partners, Ltd. ("Mercatus"); MF Global, Inc.( formerly known as Man Financial, Ltd., hereinafter "MF Global"), MF Global UK, Ltd., (hereinafter "MFGUK"); PENSON Financial Services (hereinafter "PENSON"); Cari Masi a/k/a Cary Masi (hereinafter "Masi"); BNP Paribas Securities Services, succursale de Luxembourg (hereinafter "BNP Paribas"); Banca MP S.p.A. (hereinafter "Banca MP"); Dwight Parscale (hereinafter "Parscale"); Stephano Cevalo (hereinafter "Cevalo"); Continental Stock Transfer and Trust Company (hereinafter "Continental") and Brown Brothers Harriman & Co. (hereinafter "BBH") (collectively the "Defendants"), alleges as follows:

**JURISDICTION AND VENUE**

1.     This Court has federal question jurisdiction over this matter under 28 U.S.C. § 1331 pursuant to this Court's primary jurisdiction under the Securities Exchange Act Of 1934, Section 10(b), 15 U.S.C. §78j(b) and Regulation S of the Securities Act of 1933, 15 U.S.C. §77a *et seq.*

2.     This Court thus has ancillary jurisdiction over the remaining common law claims pursuant to 28 U.S.C. § 1367.

3.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

4.     Axion is a Delaware Corporation with its principal place of business at 3602 Clover Lane New Castle, PA 16105.

5.     William and Tracy Ahearn are individuals, husband and wife, residing at 15 White Road, Ringwood, New Jersey, 07456 (hereinafter the "Ahearns").

6.     Sally Fonner is an individual residing at 1268 Bayshore Boulevard, Dunedin, Florida 34698.

7.     James Smith, M.D. is an individual residing at 7295 East Quaker Road, Orchard Park, NY 14127.

8.     Mercatus is a United Kingdom corporation with its principal place of business in Italy and a place of business in Alpharetta, Georgia. Mercatus has consented in writing to the jurisdiction of the Courts of the State Of New York in this matter.

9.     MF Global is, on information and belief, a corporation doing business in New York City with a place of business at 717 Fifth Avenue, 9th Floor, New York, NY 10022-8101.

10.     MFGUK is on information and belief a UK corporation headquarted at Sugar Quay, Lower Thames Street, London, ED3R 6DU with a place of business at 717 Fifth Avenue, 9th

Floor, New York, NY 10022-8101 and is an affiliate of a Broker registered in the U.S. through which the stock that is the subject matter of this action was obtained by MFGUK.

11.   Penson Financial Services, Inc. is a registered broker dealer, Broker Number 243, with a principal place of business at 1700 Pacific Avenue, Suite 1400, Dallas, TX 75201 and on information and belief does business in New York.

12.   Cari Masi a/k/a Cary Masi is an individual, Chief Executive Officer of Mercatus, with an address at 4100 Nine McFarlane, Drive, Alpharetta, GA, 30004. On information and belief, Cari Masi does business in New York.

13.   BNP Paribas is a wholly owned subsidiary of BNP Paribas, a bank with an office at 787 Seventh Avenue, New York, NY 10019.

14.   Banca MP is a bank with a principal office at Via Olona 2, 201 23 Milano, Italy. On information and belief, Banca MP does business in New York.

15.   Dwight Parscale is a lawyer, agent or employee of Mercatus with an office at 25920 Stone Canyon, San Antonio, TX 78260. On information and belief, Dwight Parscale does business in New York.

16.   Stephen Cevalo is an individual officer of Mercatus residing in Italy. On information and belief, Mr. Cevalo does business in New York.

17.   Continental is a New York trust company with a place of business at 7 Battery Place, New York, NY 10004.

18.   BBH is a general partnership with a place of business at 140 Broadway, New York, NY 10005.

## FACTS

19.   On or about December 9, 2005, the Ahearns and Mercatus entered into two stock purchase and subscription agreements, the SICAV One Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "A" and SICAV Two Securities Purchase Agreement, a copy of which is attached

hereto, incorporated herein as though set out in full and marked as Exhibit "B" (hereinafter collectively referred to as the Ahearn Purchase Agreements).    The Ahearn Purchase Agreements were negotiated, executed and delivered in the United States.

20. Under the Ahearn Purchase Agreements, the Ahearns agreed to sell and Mercatus `agreed to purchase Three Hundred and Eight Thousand Three Hundred (308,300) shares of the common stock of Axion (the "Ahearn Shares") for a purchase price of Three Dollars ($3.00) per share or an aggregate purchase price of Nine Hundred And Twenty Four Thousand Nine Hundred Dollars ($924,900), hereinafter the "Ahearn Purchase Price."

21. The Ahearn Purchase Agreements each provide that [Mercatus] shall have up to thirty (30) days from the date of delivery of the Ahearn Shares to [BBH] by the Ahearns to pay the Ahearn Purchase Price (the "Allowed Time").

22. The Ahearn Purchase Agreements provide that the Ahearn Shares were to remain on deposit at BBH and not to be delivered to Mercatus or any third party unless and until the Ahearn Purchase Price had been paid.

23. The Ahearn Purchase Agreements provide that if the Ahearn Purchase Price was not paid within the Allowed Time, the Ahearns could recall the shares from BBH.

24. On or about December 12, 2005, the Ahearns delivered or caused to be delivered to BBH as custodian under the Ahearn Purchase Agreements, Three Hundred And Eight Thousand Thee Hundred (308,300) shares of Axion Common Stock pursuant to the Ahearn Purchase Agreements.

25. Mercatus did not pay and has not paid the Ahearn Purchase Price.

26. The Ahearns have duly and properly demanded return of the Ahearn Shares from BBH and Mercatus.

27. BBH and/or Mercatus have failed or refused to return the Ahearn Shares.

28. On or about December 9, 2005, Sally Fonner and Mercatus entered into two stock purchase and subscription agreements, the SICAV One Securities Purchase Agreement, a

copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "C" and SICAV Two Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "D" (hereinafter collectively referred to as the Fonner Purchase Agreements).   The Fonner Purchase Agreements were negotiated, executed and delivered in the United States.

29.    Under the Fonner Purchase Agreements, Ms. Fonner agreed to sell and Mercatus `agreed to purchase Sixty Thousand (60,000) shares of the common stock of Axion (the "Fonner Shares") for a purchase price of Three Dollars ($3.00) per share or an aggregate purchase price of One Hundred and Eighty Thousand Nine Hundred Dollars ($180,000), hereinafter the "Fonner Purchase Price."

30.    The Fonner Purchase Agreements each provide that [Mercatus] shall have up to thirty (30) days from the date of delivery of the Fonner Shares to [BBH] by Ms. Fonner to pay the Fonner Purchase Price (the "Allowed Time").

31.    The Fonner  Purchase Agreements provide that the Fonner Shares were to remain on deposit at BBH and not to be delivered unless and until the Fonner Purchase Price had been paid.

32.    The Fonner Purchase Agreements provide that if the Fonner Purchase Price was not paid within the allowed time, Ms. Fonner could recall the shares from BBH.

33.    On or about December 12, 2005, Ms. Fonner delivered or caused to be delivered to BBH as custodian under the Fonner Purchase Agreements, Sixty Thousand  (60,000) shares of Axion Common Stock pursuant to the Fonner Purchase Agreements.

34.    Mercatus did not pay and has not paid the Fonner Purchase Price.

35.    Ms. Fonner has duly and properly demanded return of the Fonner Shares from BBH and Mercatus.

36.    BBH and/or Mercatus have failed or refused to return the Fonner Shares.

37.  On or about December 9, 2005, William Monteith[1] and Mercatus entered into two stock purchase and subscription agreements, the SICAV One Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "E"  and SICAV Two Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "F" (hereinafter collectively referred to as the Monteith Purchase Agreements).  The Monteith Purchase Agreements were negotiated, executed and delivered in the United States.

38.  Under the Monteith Purchase Agreements, Mr. Monteith agreed to sell and Mercatus `agreed to purchase Sixty Five Thousand (65,000) shares of the common stock of Axion (the "Monteith Shares") for a purchase price of Three Dollars ($3.00) per share or an aggregate purchase price of One Hundred and Ninety Five Thousand Dollars ($180,000), hereinafter the "Monteith Purchase Price."

39.  The Monteith Purchase Agreements each provide that [Mercatus] shall have up to thirty (30) days from the date of delivery of the Monteith Shares to [BBH] by Mr. Monteith to pay the Monteith Purchase Price (the "Allowed Time").

40.  The Monteith  Purchase Agreements provide that the Monteith Shares were to remain on deposit at BBH and not to be delivered unless and until the Monteith Purchase Price had been paid.

41.  The Monteith Purchase Agreements provide that if the Monteith Purchase Price was not paid within the allowed time, Mr. Monteith could recall the shares from BBH.

42.  On or about December 12, 2005, Mr. Monteith delivered or caused to be delivered to BBH as custodian under the Monteith Purchase Agreements, Sixty Five Thousand  (65,000) shares of Axion Common Stock pursuant to the Monteith Purchase Agreements.

43.  Mercatus did not pay and has not paid the Monteith Purchase Price.

---

[1]Pursuant to an Assignment and Release Agreement, dated May 22, 2007, William Monteith assigned his interest in the stock to Sally Fonner, after the sale and purchase with Mercatus.

44.   Mr. Monteith has duly and properly demanded return of the Monteith Shares from BBH and Mercatus.

45.   BBH and/or Mercatus have failed or refused to return the Monteith Shares.

46.   On or about December 9, 2005, James Smith, M.D. and Mercatus entered into two stock purchase and subscription agreements, the SICAV One Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "G." and SICAV Two Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "H" (hereinafter collectively referred to as the Smith Purchase Agreements). The Smith Purchase Agreements were negotiated, executed and delivered in the United States.

47.   Under the Smith Purchase Agreements, Dr. Smith agreed to sell and Mercatus `agreed to purchase Sixty Six Thousand Seven Hundred (66,700) shares of the common stock of Axion (the "Smith Shares") for a purchase price of Three Dollars ($3.00) per share or an aggregate purchase price of Two Hundred Thousand one Hundred Dollars ($200,100), hereinafter the "Smith Purchase Price."

48.   The Smith Purchase Agreements each provide that [Mercatus] shall have up to thirty (30) days from the date of delivery of the Smith Shares to [BBH] by Dr. Smith to pay the Smith Purchase Price (the "Allowed Time").

49.   The Smith  Purchase Agreements provide that the Smith Shares were to remain on deposit at BBH and not to be delivered unless and until the Smith Purchase Price had been paid.

50.   The Smith Purchase Agreements provide that if the Smith Purchase Price was not paid within the allowed time, Dr. Smith could recall the shares from BBH.

51.   On or about December 12, 2005, Dr. Smith delivered or caused to be delivered to BBH as custodian under the Smith Purchase Agreements, Sixty Six Thousand Seven Hundred (66,700) shares of Axion Common Stock pursuant to the Smith Purchase Agreements.

52.   Mercatus did not pay and has not paid the Smith Purchase Price.

53. Dr. Smith has duly and properly demanded return of the Smith Shares from BBH and Mercatus.

54. BBH and/or Mercatus have failed or refused to return the Smith Shares.

55. The Axion Stock, the Ahearn Stock, the Fonner Stock, the Monteith Stock and the Smith Stock shall hereinafter be collectively referred to as the "Stock."

56. Plaintiffs delivered the Stock to Continental.

57. Plaintiffs duly instructed Continental to deliver the Stock to BBH

> "as a delivery versus payment transaction where the purchaser may defer payment of the subscription price for up to 30 days. . . . When the certificates are prepared, please immediately forward them via messenger to Brown Brothers Harriman along with an appropriate letter respecting the delayed delivery versus payment requirement.(hereinafter the "Instructions")."

58. On information and belief, Continental did not convey the Instructions to BBH.

59. The history of the stock at BBH is as follows:

   a. On December 13, 2005 Continental delivered to BBH 435,000 shares of the Stock which was credited to the account of a customer of BBH, the identity of whom BBH has refused to disclose (hereinafter "Client 1")

   b. On December 27, 2005 Merrill Lynch delivered to BBH 65,000 shares of the Stock through the DTC system from Monteith's account at Merrill Lynch, which was credited to the account of Client 1.

   c. On January 5, 2006, on the instruction of Client 1, BBH delivered 60,000 shares of the Stock to the account of a customer of BBH, the identity of whom BBH has refused to disclose (hereinafter "Client 2").

   d. On January 17, 2006 on the instruction of Client 1, BBH delivered 400,000 shares of the Stock to the account of BNP Paribas at BBH.

   e. On May 11, 2006 on the instruction of Client 1, BBH delivered 30,000 shares of the Stock to Penson, Broker 234.

e.    On May 12, 2006, on the instruction of Client 2, BBH delivered 60,000 shares of the Stock to Penson, Broker 234.

f.    On June 9, 2006, on the instruction of Client 1, BBH delivered 10,000 shares of the Stock to BNP Paribas.

g.    On August 9, 2006 on the instruction of BNP Paribas, BBH delivered 121,278 shares to Man Securities, Broker 7423.

h.    On August 17, 2006, on the instruction of BNP Paribas, BBH delivered 288,722 shaes to Man Securities, Broker 7423.

60.    On information and belief, Man Securities, Broker 7423 is an affiliate of MF Global and MFGUK.

61.    On July 6, 2006  Mercatus and Man Financial Limited, on information and belief now known as and hereinafter referred to as MFGUK, entered into an agreement under which Mercatus pledged 410,000 shares of the Stock (the "Converted Shares") to MFGUK as security for a loan from MFGUK to Mercatus.

62.    MF Global and MFGUK are registered broker dealers and investment bankers  in various countries including the United States and the United Kingdom.

63.    Under applicable United States and United Kingdom law, MF Global and MFGUK were under a duty to conduct due diligence with respect to the *bona fides* of the ownership claim of Mercatus with respect to the Converted Shares.

64.    MF Global and MFGUK failed to conduct the required due diligence with respect to the *bona fides* of the ownership claim of Mercatus with respect to the Converted Shares prior to accepting the Converted Shares as security for a loan to Mercatus.

65.    Had MF Global and/or MFGUK read any of the publicly available filings by Axion they would have known that Mercatus had not paid for the Stock, did not have good title to the Stock and could not validly pledge the Stock.

66. Prior to taking up the Converted Shares, MF Global and MFGUK contacted Axion by telephone to discuss the matter generally and was told by Fonner and Thomas Granville of Axion that the stock did not belong to Mercatus, had not been paid for and was not available as collateral for a loan to Mercatus.

67. MFGUK accepted the pledge of the Converted Shares as collateral for a loan to Mercatus notwithstanding the lack of required due diligence, likely knowledge that Mercatus had not paid for the Stock that Mercatus did not have good title to the Converted Shares and the actual knowledge that the Converted Shares did not belong to Mercatus and had never been paid for in whole or in part.

68. MF Global and MFGUK are not holders in due course and took up the Converted Shares with both actual knowledge that Mercatus did not own the stock and without having conducted the required due diligence and are therefore precluded from claiming that they or either of them take free of the rights of Axion, which proper due diligence would have shown and of which they were actually aware from conversations with Fonner and Thomas Granville.

69. Penson was and on information and belief is in possession of 90,000 shares of the Stock.

70. Penson does not have good title to the Stock.

71. Penson's has converted 90,000 shares of the Stock.

72. Banca MB is named in all of the Purchase Agreements as the entity in whose name BBH would hold all of the shares of stock under all of the Purchase Agreements.

73. Banca MB never advised any of the Plaintiffs as to why all of the stock under all of the Purchase Agreements came to be transferred to an account at BBH in the name of BNP Paribas and not Banca MB as required by the Purchase Agreements.

74. Banca MB has and had at all times relevant hereto actual knowledge that the stock has never been paid for.

75. On information and belief, Banca MB participated in the wrongful transfer of the Stock.

76.    Defendants defrauded Plaintiffs by converting the Stock.

## COUNT I

### Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. §78j(b)

#### against

#### Mercatus, the Individual Defendants, BBH, BNP Paribas, Penson, Banca MB, MFGUK, and MF Global

77.    Plaintiffs repeat and reallege paragraphs 1 through 76 as though fully set forth at length herein.

78.    Axion Shares are securities and the sale or transfer of same are regulated by the Securities Exchange Act of 1934, 15 U.S.C. §78, *et seq.*

79.    Defendants Mercatus and BBH, as well as Cari Masi, Dwight Parscale, and Stephano Cevalo (hereinafter referred to as the "Individual Defendants"), BNP Paribas, Penson, Banca MB, MFGUK, MF Global, engaged in unlawful and concerted activity to intentionally defraud and deceive Plaintiffs and convert from Plaintiffs One Million Five Hundred Thousand of The Stock in violation of Section 10(b)(5) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b).

80.    Defendants Mercatus, BBH, the Individual Defendants, BNP Paribas, Penson, Banca MB, MFGUK, MF Global all utilized an unlawful device and scheme to defraud and deceive Plaintiffs in connection with the sale of securities by:

    a.    Making numerous untrue and intentionally misleading statements such as promising that the Stock was and would remain in escrow pending the payment of the purchase price and that the Stock would not be distributed or physically transferred to anyone by the Custodian, BBH, unless and until payment had been

effected.  The scheme was designed to effect the fraudulent transfer of the Stock without making the required payment;

b.  Making numerous untrue statements to Plaintiffs in a deliberate scheme to induce Plaintiffs to delay seeking return of the Stock from BBH by knowingly and falsely promising Plaintiffs, on at least twelve separate occasions, that the payment funds were available and/or in transit, when the payment funds were neither available nor in transit when they knew or should have known that the funds were not available; and

c.  Intentionally and knowingly wrongfully and illegally transferring and wrongfully and illegally accepting transfer of the Stock when each of them knew or should have known that required payment on the Stock had not been made (Hereinafter the "Scheme").

81.  Defendants Mercatus, BBH, the Individual Defendants, BNP Paribas, Penson, Banca MB, MFGUK, MF Global engaged in the Scheme with a mental state embracing an intent to deceive, manipulate and defraud and thus acted with the scienter required by Section 10(b)(5).

## COUNT II

### Breach of Contract Against Defendant Mercatus

82.  Plaintiffs repeat and reallege paragraphs 1 through 81 as though fully set forth at length herein.

83.  In or about December 2005, Plaintiffs entered into multiple contracts with Defendant Mercatus for the sale and purchase of The Stock as detailed above.

84.  Plaintiffs met all conditions precedent in the contracts, including the delivery of the Axion Shares through Defendant Continental to Defendant BBH, who was to hold The Stock in escrow until receipt of the payment price by Defendant Mercatus that was to occur no later

than thirty (30) days from the date of delivery of the Axion Shares.

85.    Plaintiffs delivered The Stock to Defendant Continental on the dates of the execution of the multiple contracts.

86.    Despite the clear terms of the contracts, Defendant Mercatus never paid the purchase prices to Plaintiffs for the Axion Shares, despite taking possession of the Axion Shares.

87.    Defendant Mercatus manifestly breached the contracts with Plaintiffs by failing to compensate Plaintiffs.

## COUNT III

### Negligence

### Against Continental

88.    Plaintiffs repeat and reallege paragraphs 1 through 87 as though fully set forth at length herein.

89.    Continental owed to Plaintiffs a duty of due care in performing its duties

90.    Continental breached its duty of care to Plaintiffs by failing to properly instruct  BBH as Continental had been duly instructed by Plaintiffs.

91.    Had Continental not breached its duty of due care to Plaintiffs and not failed to instruct BBH Continental had been instructed by Plaintiffs, the loss to Plaintiffs of the 500,000 shares of the Stock would not have occurred.

92.    Continental breached its duty of due care thereby causing damage to Plaintiffs.

## COUNT IV

### Breach of Implied Covenant of Good Faith and Fair Dealing

### Against Defendants Mercatus and the Individual Defendants

93. Plaintiffs repeat and reallege paragraphs 1 through 92 as though fully set forth at length herein.

94. Implicit in every contract is a covenant of good faith and fair dealing.

95. Mercatus, the Individual Defendants each violated of the implied covenant of good faith and fair dealing by acting in such a manner so as to deprive Plaintiffs of the benefit of the bargain.

## COUNT V

## Fraud

### against

### Defendants Mercatus, the Individual Defendants, BNP Paribas, Penson and Banca MB

96. Plaintiffs repeat and reallege paragraphs 1 through 95 as though fully set forth at length herein.

97. Defendants Mercatus, BBH, the Individual Defendants, BNP Paribas, Penson, Banca MB, fraudulently, knowingly, maliciously and intentionally misrepresented: (a) the true nature of the transaction and (b) the payment of the purchase price.

98. Plaintiffs reasonably relied on the fraudulent conduct.

99. As a result of the fraudulent conduct of Defendant Mercatus and the individual defendants, Plaintiffs have suffered actual and consequential damages.

## COUNT VI

## Misrepresentation

### against

### Mercatus and Individual Defendants

100. Plaintiffs repeat and reallege paragraphs 1 through 99 as though fully set forth at length herein.

101. Defendant Mercatus and the Individual Defendants knowingly, maliciously and intentionally

misrepresented: (a) the true nature of the transaction and (b) the release date of the Purchase Price.

102.   Defendant Mercatus and the Individual Defendants made the materially false statements with the intent that Plaintiffs rely upon same.

103.   Plaintiff did so reasonably rely on the materially false statements made by Defendant Mercatus and the individual defendants to their detriment.


## COUNT VII

### Negligent Misrepresentation

### against

### Mercatus and the Individual Defendants

104.   Plaintiffs repeat and reallege paragraphs 1 through 103 as though fully set forth at length herein.

105.   Defendant Mercatus and the Individual Defendants misrepresented: (a) the true nature of the transaction and (b) the release date of the Purchase Price.

106.   Defendant Mercatus and the Individual Defendants made the materially false statements without regard to the truth or falsity of the statements.

107.   Plaintiffs reasonably relied on the materially false statements made by Defendant Mercatus and the Individual Defendants to their detriment.


## COUNT VIII

### Conversion

### against

### All Defendants Except Continental and BBH

108.    Plaintiffs repeat and reallege paragraphs 1 through 107 as though fully set forth at length herein.

109.    All Defendants except Continental improperly and unlawfully exercised dominion or control over The Stock.

110.    All Defendants except Continental intentionally, willfully and wantonly converted The Stock to their own use and otherwise improperly and unlawfully obtaining and utilizing The Stock.

## COUNT IX

### Civil Conspiracy

#### against

### All Defendants Except Continental and BBH

111.    Plaintiffs repeat and reallege paragraphs 1 through 110 as though fully set forth at length herein.

112.    All Defendants acted in a joint and concerted manner so as to defraud and deceive Plaintiffs and improperly and unlawfully obtain dominion and control over of the Axion Shares.

113.    All Defendants acted in concert and knowingly and willingly engaged in securities fraud.

## COUNT X

### Breach of Fiduciary Duty

#### Against

### Defendant BBH

114.    Plaintiffs repeat and reallege paragraphs 1 through 113 as though fully set forth at length herein.

115.    Defendant BBH, by taking possession of The Stock, owed a fiduciary duty to Plaintiffs to act with reasonable care.

116.    Defendant BBH breached its fiduciary duty owed to Plaintiffs by releasing the Axion Share

to Defendant Mercatus and any and all other defendants in blatant disregard of its obligations and duties owed to Plaintiffs.

## COUNT XI

### Bailment

### Against

### Defendants BBH and Continental

117. Plaintiffs repeat and reallege paragraphs 1 through 116 as though fully set forth at length herein.

118. Upon receipt and acceptance of The Stock, Defendants Continental and/or BBH, became bailees of The Stock.

119. Defendant BBH was a custodian appointed under Purchase Agreements which provided that the Stock was only to be delivered upon payment.

120. BBH violated the terms of the Purchase Agreements by transferring the Stock without first determining the rights and obligations of the parties.

121. Defendants Continental and/or BBH, as bailees of the Stock, in violation of their rights and obligations as bailees, improperly converted and or otherwise improperly transferred the Stock.

## COUNT XII

### Unjust Enrichment/Quantum Meruit

### against

### All Defendants Except Continental and BBH

122. Plaintiffs repeat and reallege paragraphs 1 through 122 as though fully set forth at length herein.

123. All Defendants except Continental and BBH, through their improper conduct, obtained

a benefit in the form of the Stock and/or other value from Plaintiffs.

124.    None of the above Defendants have given value to Plaintiffs for the benefit conferred.

125.    It is unjust for the Defendants to retain the benefit conferred without justly compensating Plaintiffs for same.

## COUNT XIII

### Declaratory Action

#### against

### All Defendants Except Continental and BBH

126.    Plaintiffs repeat and reallege paragraphs1 through 133 as though fully set forth at length herein.

127.    The conduct of all Defendants except Continental and BBH, as more fully detailed above, constitutes a material breach of all express and implied contracts, thereby warranting a declaratory judgment rendering all such express and implied contracts unenforceable.

**WHEREFORE**, Plaintiffs respectfully request that Orders be entered herein:

A.    Ordering all Defendants forthwith to deliver, transfer and assign all of The Stock to Plaintiffs;

B.    Granting Judgment in favor of Plaintiffs and against Continental for damages to Plaintiffs caused by Defendant Continental's negligence in such amount as the trier of fact determines appropriate;

C.    Granting Judgment in favor of Plaintiffs and against BBH for damages to Plaintiffs caused by Defendant BBH's negligence and breach of duties as a bailee in such amount as the trier of fact determines appropriate;

D.    Granting Judgment in favor of Plaintiffs and against Defendants Mercatus, the

Individual Defendants, Penson, BNP Paribas, MF Global, Banca MB, and BBH for damages caused to Plaintiffs by the Defendants' actions set forth above in such amount as the trier of fact determines appropriate;

E.     Granting Judgment in favor of Plaintiffs and against Defendants Mercatus, the Individual Defendants, BNP Paribas, MF Global, Banca MB for punitive damages for the Defendants' intentional and wanton actions set forth above by way of punishment in such amount as the trier of fact deems appropriate; and

F.     Granting such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

Fellheimer & Eichen LLP
Alan S. Fellheimer
Jolie G. Kahn
44 Wall Street
12th Floor
New York, NY 10005
212.461.7142
Facsimile 212.461.2223

**Attorneys for Plaintiffs**

Dated: December 20, 2007

Exhibit "A"

## PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of **December 9, 2005**, between, <u>William and Traci Ahearn</u>, husband and wife (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the record owner of certain shares of the common stock of **Axion Power International, Inc.** that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 154,150 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $462,450, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. <u>This agreement does not contemplate or provide for the immediate payment of the purchase price.</u> The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. <u>The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions.</u> The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 154,150 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $462,450.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1    <u>Representations, Warranties and Agreements of the Seller.</u> The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a)    <u>Validity and Status of the Securities</u>. The Shares have been duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b)    <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c)    <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d)    <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("<u>Artemis</u>") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in <u>Section 2.1</u> hereof.

2.2    <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(a)    <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b)    <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c)    <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d)    <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(e) <u>Ability of Purchaser to Bear Risk of Investment</u>. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1     <u>Fees and Expenses</u>. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2     <u>Entire Agreement</u>. This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3     <u>Notices</u>. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:      William and Traci Ahearn
                       15 White Road
                       Ringwood, New Jersey 07456
                       Tel: (973) 728-2049

With copies to:        Axion Power International Inc.
                       Attn: Thomas Granville, Chief executive officer
                       100 Caster Avenue
                       Woodbridge, Ontario, Canada L4L 5Y9
                       Phone: (905) 264-1991
                       Fax: (905) 264-2385

and                    Petersen & Fefer, attorneys
                       Château de Barberêche
                       Switzerland 1783 Barberêche
                       Phone: +4126 684-0500
                       Fax: +4126 684-0505

If to the Purchaser:   Mercatus & Partners, Limited
                       Via S. Roberto Bellarmino #4
                       00142 Roma, Italy
                       Phone: +3906 540 6470
                       Fax: +3906 542 75224

| With copies to: | Cary Masi |
| --- | --- |
| | 4100 Nine McFarlane Drive |
| | Alpharetta, Georgia 30004 |
| | Phone: (678) 240-9070 |
| | Fax: (678) 240-9069 |
| and | Holland & Knight, LLP |
| | 195 Broadway |
| | New York, NY 10007 |
| | Attn: George Parnell, Esq. |
| | Tel: (212) 513-3417 |
| | Fax: (212) 385-9010 |

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitutea part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | $225,870 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | $236,580 |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahearn |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

            **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**                                           Sellers:
**Mercatus & Partners, Limited**                         **William Ahern**

By: _____              _____
Name: Cari Masi
Title: Authorized Signatory                              **Traci Ahern**

                                          _____

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| Transfer Amount: | $225,870 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A3 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312915 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $236,580 |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahearn |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:
Mercado & Partners, Limited

Name: Dan Masi
Title: Authorized Signatory

Seller:
William Ahearn

Traci Ahearn

Exhibit "B"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ~~ONE~~ *TWO*

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of **December 9, 2005**, between, <u>William and Traci Ahearn</u>, husband and wife (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the record owner of certain shares of the common stock of **Axion Power International, Inc.** that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 154,150 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $462,450, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. <u>This agreement does not contemplate or provide for the immediate payment of the purchase price.</u> The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. <u>The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions.</u> The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 154,150 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $462,450.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1    <u>Representations, Warranties and Agreements of the Seller.</u> The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f)    Validity and Status of the Securities. The Shares have been duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g)    No Conflicts. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h)    Litigation; Proceedings. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i)    Placement Agent. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2    Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants to the Seller as follows:

(j)    Organization; Authority. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k)    Receipt of Prospectus. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l)    Investment Intent. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m)    Experience of Purchaser. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

| | |
|---|---|
| If to the Seller: | William and Traci Ahearn<br>15 White Road<br>Ringwood, New Jersey 07456<br>Tel: (973) 728-2049 |
| With copies to: | Axion Power International Inc.<br>Attn: Thomas Granville, Chief executive officer<br>100 Caster Avenue<br>Woodbridge, Ontario, Canada L4L 5Y9<br>Phone: (905) 264-1991<br>Fax: (905) 264-2385 |
| and | Petersen & Fefer, attorneys<br>Château de Barberêche<br>Switzerland 1783 Barberêche<br>Phone: +4126 684-0500<br>Fax: +4126 684-0505 |
| If to the Purchaser: | Mercatus & Partners, Limited<br>Via S. Roberto Bellarmino #4<br>00142 Roma, Italy<br>Phone: +3906 540 6470<br>Fax: +3906 542 75224 |

With copies to:        Cary Masi
4100 Nine McFarlane Drive
Alpharetta, Georgia 30004
Phone: (678) 240-9070
Fax: (678) 240-9069

and                Holland & Knight, LLP
195 Broadway
New York, NY 10007
Attn: George Parnell, Esq.
Tel: (212) 513-3417
Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | $225,870 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | $236,580 |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahern |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:                                                          Sellers:
**Mercatus & Partners, Limited**                                    **William Ahern**


By: _____
Name: Cari Masi                                                     _____
Title: Authorized Signatory
                                                                    **Traci Ahern**


                                                                    _____

3.12   Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13   Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14   Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below.

| | |
|---|---|
| Transfer Amount: | $225,870 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $236,560 |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahearn |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15   Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date is first indicated above.

Purchaser:
Mercatus & Partners, Limited

_____ Masi
Authorized Signatory

Sellers:
William Ahearn

_____

Traci Ahearn



Exhibit "C"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, Sally Fonner, (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS**, Seller is the beneficial owner of 30,000 shares of the common stock of **Axion Power International, Inc. (OTCBB: AXPW)** that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS**, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS**, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 30,000 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $90,000, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE**, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
### INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 30,000 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $90,000.

## ARTICLE II
### REPRESENTATIONS AND WARRANTIES

2.1    Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a) <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b) <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c) <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d) <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("<u>Artemis</u>") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in <u>Section 2.1</u> hereof.

2.2    <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(a) <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b) <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c) <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d) <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(e)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:    Sally Fonner
1268 Bayshore Boulevard
Dunedin, Florida 34698
Tel: (727) 734-7346
Fax: (727) 734-4617

With copies to:    Axion Power International Inc.
Attn: Thomas Granville, Chief executive officer
100 Caster Avenue
Woodbridge, Ontario, Canada L4L 5Y9
Phone: (905) 264-1991
Fax: (905) 264-2385

and    Petersen & Fefer, attorneys
Château de Barberêche
Switzerland 1783 Barberêche
Phone: +4126 684-0500
Fax: +4126 684-0505

If to the Purchaser:    Mercatus & Partners, Limited
Via S. Roberto Bellarmino #4
00142 Roma, Italy
Phone: +3906 540 6470
Fax: +3906 542 75224

With copies to:            Cary Masi
                           4100 Nine McFarlane Drive
                           Alpharetta, Georgia 30004
                           Phone: (678) 240-9070
                           Fax: (678) 240-9069

and                        Holland & Knight, LLP
                           195 Broadway
                           New York, NY 10007
                           Attn: George Parnell, Esq.
                           Tel: (212) 513-3417
                           Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$69,900** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |

| | |
|---|---|
| **Transfer Amount:** | **$20,100** |
| Beneficiary Bank: | Wachovia Bank |
| | Jacksonville, Florida |
| ABA No: | 063-000-021 |
| Acct. No. | **1010120589403** |
| Beneficiary Account Name: | Sally A. Fonner |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall all the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

        IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**                                              **Sellers:**
**Mercatus & Partners Limited**                            **Sally Fonner**


By: _____                                _____
Name: Cari Masi                                            Sally Fonner
Title: Authorized Signatory

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| Transfer Amount: | $69,900 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002084 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $20,100 |
| Beneficiary Bank: | Wachovia Bank |
| | Jacksonville, Florida |
| ABA No: | 063-000-021 |
| Acct. No. | 1010120589403 |
| Beneficiary Account Name: | Sally A. Fonner |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:                                                    Sellers:
Mercator & Partners Limited                        Sally Fonner

By:
Name: Carl Kruse                                          Sally Fonner
Title: Authorized Signatory

SCIAV One - Page 5

Exhibit "D"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, Sally Fonner, (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the beneficial owner of 30,000 shares of the common stock of **Axion Power International, Inc. (OTCBB: AXPW)** that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 30,000 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $90,000, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1     This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2     Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 30,000 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $90,000.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f)     Validity and Status of the Securities. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g)     No Conflicts. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h)     Litigation; Proceedings. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i)     Placement Agent. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2     Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants to the Seller as follows:

(j)     Organization; Authority. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k)     Receipt of Prospectus. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l)     Investment Intent. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m)     Experience of Purchaser. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:        Sally Fonner
                         1268 Bayshore Boulevard
                         Dunedin, Florida 34698
                         Tel: (727) 734-7346
                         Fax: (727) 734-4617

With copies to:          Axion Power International Inc.
                         Attn: Thomas Granville, Chief executive officer
                         100 Caster Avenue
                         Woodbridge, Ontario, Canada L4L 5Y9
                         Phone: (905) 264-1991
                         Fax: (905) 264-2385

and                      Petersen & Fefer, attorneys
                         Château de Barberêche
                         Switzerland 1783 Barberêche
                         Phone: +4126 684-0500
                         Fax: +4126 684-0505

If to the Purchaser:     Mercatus & Partners, Limited
                         Via S. Roberto Bellarmino #4
                         00142 Roma, Italy
                         Phone: +3906 540 6470
                         Fax: +3906 542 75224

With copies to:        Cary Masi
4100 Nine McFarlane Drive
Alpharetta, Georgia 30004
Phone: (678) 240-9070
Fax: (678) 240-9069

and             Holland & Knight, LLP
195 Broadway
New York, NY 10007
Attn: George Parnell, Esq.
Tel: (212) 513-3417
Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$69,990** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$20,100** |
| Beneficiary Bank: | Wachovia Bank |
| | Jacksonville, Florida |
| ABA No: | 063-000-021 |
| Acct. No. | **1010120589403** |
| Beneficiary Account Name: | Sally A. Fonner |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

        IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**                                      **Sellers:**
**Mercatus & Partners Limited**                     **Sally Fonner**


By: _____                          _____
Name: Cari Masi                                      Sally Fonner
Title: Authorized Signatory

Dec 12 2006 10:55AM    HP LASERJET FAX                727

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

Transfer Amount:                      $69,990
Beneficiary Bank:                     TD Canada Trust
                                      Vaughan, Ontario L4L 9A9 Canada
SWIFT:                                TDOMCATTTOR
Transit No.                           189602004
Acct. No.                             7312015
Beneficiary Account Name:             Axion Power Corporation, U.S. Funds Account

Transfer Amount:                      $20,100
Beneficiary Bank:                     Wachovia Bank
                                      Jacksonville, Florida
ABA No:                               063-000-021
Acct. No.                             1010120589403
Beneficiary Account Name:             Sally A. Fonner

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as first indicated above.

Sellers:
Sally Fonner

Name: Mary Maxi
Title: Authorized Signatory                          Sally Fonner

SCIAV Two - Page 5

Exhibit "E"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of **December 9, 2005**, between, <u>William Monteith</u> (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the beneficial owner of 32,500 shares of the common stock of **Axion Power International, Inc.** that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 32,500 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $97,500, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1     This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. <u>This agreement does not contemplate or provide for the immediate payment of the purchase price.</u> The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. <u>The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions.</u> The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2     Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 32,500 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $97,500.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     <u>Representations, Warranties and Agreements of the Seller</u>. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a)     <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b)     No Conflicts. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c)     Litigation; Proceedings. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d)     Placement Agent. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2     Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants to the Seller as follows:

(a)     Organization; Authority. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b)     Receipt of Prospectus. The Purchaser acknowledges receipt of the prospectus of Axion Power International, Inc. dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c)     Investment Intent. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d)     Experience of Purchaser. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(e)    <u>Ability of Purchaser to Bear Risk of Investment</u>. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

**ARTICLE III**
**MISCELLANEOUS**

3.1    <u>Fees and Expenses</u>. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    <u>Entire Agreement</u> This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    <u>Notices</u>. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

| | |
|---|---|
| If to the Seller: | William Monteith<br>Akara Building. 24 De Castro Street<br>Wickhams Cay 1<br>Road Town, Tortola BVI<br>Tel:<br>Fax: |
| With copies to: | Axion Power International Inc.<br>Attn: Thomas Granville, Chief executive officer<br>100 Caster Avenue<br>Woodbridge, Ontario, Canada L4L 5Y9<br>Phone: (905) 264-1991<br>Fax: (905) 264-2385 |
| and | Petersen & Fefer, attorneys<br>Château de Barberêche<br>Switzerland 1783 Barberêche<br>Phone: +4126 684-0500<br>Fax: +4126 684-0505 |
| If to the Purchaser: | Mercatus & Partners, Limited<br>Via S. Roberto Bellarmino #4<br>00142 Roma, Italy<br>Phone: +3906 540 6470<br>Fax: +3906 542 75224 |
| With copies to: | Cary Masi<br>4100 Nine McFarlane Drive<br>Alpharetta, Georgia 30004<br>Phone: (678) 240-9070<br>Fax: (678) 240-9069 |

SCIAV One - Page 3

and                                       Holland & Knight, LLP
                                          195 Broadway
                                          New York, NY 10007
                                          Attn: George Parnell, Esq.
                                          Tel: (212) 513-3417
                                          Fax: (212) 385-9010

3.4     Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5     Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6     Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7     No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8     Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9     Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$10,725** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |

| | |
|---|---|
| **Transfer Amount:** | **$86,775** |
| Beneficiary Bank: | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William Monteith |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:                                                  Seller:
**Mercatus & Partners Limited**                              **William Monteith**


By: _____
Name: Cari Masi                                             _____
Title: Authorized Agent                                      William Monteith

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| Transfer Amount: | $16,725 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $86,775 |
| Beneficiary Bank: | |
| ABA No: | 0312D1467 |
| Acct. No. | 1010041021600 |
| Beneficiary Account Name: | William Monteith |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:
Merchia & Partners Limited

By:
Name: Carl Matti
Title: Authorized Agent

Seller:
William Monteith

William Monteith

SCIAV One - Page 5

Exhibit "F"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of **December 9, 2005**, between, <u>William Monteith</u> (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS**, Seller is the beneficial owner of 32,500 shares of the common stock of **Axion Power International, Inc.** that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS**, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS**, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 32,500 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $97,500, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE**, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. <u>This agreement does not contemplate or provide for the immediate payment of the purchase price.</u> The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. <u>The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions.</u> The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 32,500 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $97,500.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1    <u>Representations, Warranties and Agreements of the Seller</u>. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f)    <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g)    No Conflicts. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h)    Litigation; Proceedings. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i)    Placement Agent. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2    Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants to the Seller as follows:

(j)    Organization; Authority. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k)    Receipt of Prospectus. The Purchaser acknowledges receipt of the prospectus of Axion Power International, Inc. dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l)    Investment Intent. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m)    Experience of Purchaser. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    <u>Ability of Purchaser to Bear Risk of Investment</u>. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

**ARTICLE III**
**MISCELLANEOUS**

3.1    <u>Fees and Expenses</u>. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    <u>Entire Agreement</u> This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    <u>Notices</u>. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:          Turitella Corporation
                           Akara Building. 24 De Castro Street
                           Wickhams Cay 1
                           Road Town, Tortola BVI
                           Tel:
                           Fax:

With copies to:            Axion Power International Inc.
                           Attn: Thomas Granville, Chief executive officer
                           100 Caster Avenue
                           Woodbridge, Ontario, Canada L4L 5Y9
                           Phone: (905) 264-1991
                           Fax: (905) 264-2385

and                        Petersen & Fefer, attorneys
                           Château de Barberêche
                           Switzerland 1783 Barberêche
                           Phone: +4126 684-0500
                           Fax: +4126 684-0505

If to the Purchaser:       Mercatus & Partners, Limited
                           Via S. Roberto Bellarmino #4
                           00142 Roma, Italy
                           Phone: +3906 540 6470
                           Fax: +3906 542 75224

| With copies to: | Cary Masi |
| | 4100 Nine McFarlane Drive |
| | Alpharetta, Georgia 30004 |
| | Phone: (678) 240-9070 |
| | Fax: (678) 240-9069 |
| and | Holland & Knight, LLP |
| | 195 Broadway |
| | New York, NY 10007 |
| | Attn: George Parnell, Esq. |
| | Tel: (212) 513-3417 |
| | Fax: (212) 385-9010 |

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitutea part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$10,725** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$86,775** |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William Monteith |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**
**Mercatus & Partners Limited**

**Seller:**
**William Monteith**

By: _____
Name: Cari Masi
Title: Authorized Agent

_____
William Monteith

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

Transfer Amount:           $10,725
Beneficiary Bank:          TD Canada Trust
                           Vaughan, Ontario L4L 9A9 Canada
SWIFT:                     TDOMCATTTOR
Transit No.                189002004
Acct. No.                  7312015
Beneficiary Account Name:  Axion Power Corporation, U.S. Funds Account

Transfer Amount:           $86,775
Beneficiary Bank:

ABA No:                    *031201467*
Acct. No                   *101007182160 0*
Beneficiary Account Name:  William Monteith

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:                                          Seller:
Migrants & Refuges Limited                          William Monteith


By:                                                 _____
Name: Custodial                                     William Monteith
Title: Authorized Agent

Exhibit "G"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the beneficial owner of 33,350 shares of the common stock of Axion Power International, Inc. (OTCBB: AXPW) that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 33,350 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $100,050.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1    Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a)    <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b)    <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c)    <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d)    <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("<u>Artemis</u>") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in <u>Section 2.1</u> hereof.

2.2    <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(a)    <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b)    <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c)    <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d)    <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

     (e)   <u>Ability of Purchaser to Bear Risk of Investment</u>. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

    3.1   <u>Fees and Expenses</u>. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

    3.2   <u>Entire Agreement</u> This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

    3.3   <u>Notices</u>. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

| If to the Seller: | James Smith M.D.<br>7295 East Quaker Rd.<br>Orchard Park, New York 14127<br>Tel: (716) 662-8392<br>Fax: (561) 741-1158 |
|---|---|
| With copies to: | Axion Power International Inc.<br>Attn: Thomas Granville, Chief executive officer<br>100 Caster Avenue<br>Woodbridge, Ontario, Canada L4L 5Y9<br>Phone: (905) 264-1991<br>Fax: (905) 264-2385 |
| and | Petersen & Fefer, attorneys<br>Château de Barberêche<br>Switzerland 1783 Barberêche<br>Phone: +4126 684-0500<br>Fax: +4126 684-0505 |
| If to the Purchaser: | Mercatus & Partners, Limited<br>Via S. Roberto Bellarmino #4<br>00142 Roma, Italy<br>Phone: +3906 540 6470<br>Fax: +3906 542 75224 |

With copies to:

Cary Masi
4100 Nine McFarlane Drive
Alpharetta, Georgia 30004
Phone: (678) 240-9070
Fax: (678) 240-9069

and

Holland & Knight, LLP
195 Broadway
New York, NY 10007
Attn: George Parnell, Esq.
Tel: (212) 513-3417
Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$83,375** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$16,675** |
| Beneficiary Bank: | Greater Buffalo Savings Bank |
| ABA No: | 022072692 |
| Acct. No. | 22003370 |
| Beneficiary Account Name: | James Smith, M.D. |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

        **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**                                        **Sellers:**
**Mercatus & Partners Limited**                        **James Smith, M.D.**


By: _____                        _____
Name: Cari Masi                                        James Smith M.D.
Title: Authorized Signatory

140 Broadway, New York, NY 10005-1101, U.S.A.
Account Name: Banca MB-Milano
Account Number: 4444550

I certify that I have agreed to sell the shares of common stock to Mercatus in a negotiated block sale transaction and in connection therewith I have delivered a copy of Axion's prospectus to Mercatus.

Your prompt attention to this matter is appreciated.

Sincerely,
James Smith, M.D.

*James Smith M.D.*

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

PRIVATE STOCK PURCHASE AGREEMENT ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

WHEREAS, Seller is the beneficial owner of 33,350 shares of the common stock of Axion Power International, Inc. (OTCBB: AXPW) that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

WHEREAS, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of Axion Power International, Inc. dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of Axion Power International, Inc. at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

NOW, THEREFORE, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) †negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c)†use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact

Exhibit "H"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the beneficial owner of 33,350 shares of the common stock of **Axion Power International, Inc. (OTCBB: AXPW)** that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 33,350 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $100,050.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1    Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f)  <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g)  <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h)  <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i)  <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("<u>Artemis</u>") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in <u>Section 2.1</u> hereof.

2.2  <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(j)  <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k)  <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l)  <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m)  <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:        James Smith M.D.
                         7295 East Quaker Rd.
                         Orchard Park, New York 14127
                         Tel: (716) 662-8392
                         Fax: (561) 741-1158

With copies to:          Axion Power International Inc.
                         Attn: Thomas Granville, Chief executive officer
                         100 Caster Avenue
                         Woodbridge, Ontario, Canada L4L 5Y9
                         Phone: (905) 264-1991
                         Fax: (905) 264-2385

and                      Petersen & Fefer, attorneys
                         Château de Barberêche
                         Switzerland 1783 Barberêche
                         Phone: +4126 684-0500
                         Fax: +4126 684-0505

If to the Purchaser:     Mercatus & Partners, Limited
                         Via S. Roberto Bellarmino #4
                         00142 Roma, Italy
                         Phone: +3906 540 6470
                         Fax: +3906 542 75224

With copies to:

Cary Masi
4100 Nine McFarlane Drive
Alpharetta, Georgia 30004
Phone: (678) 240-9070
Fax: (678) 240-9069

and

Holland & Knight, LLP
195 Broadway
New York, NY 10007
Attn: George Parnell, Esq.
Tel: (212) 513-3417
Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$83,375** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$16,675** |
| Beneficiary Bank: | Greater Buffalo Savings Bank |
| ABA No: | 022072692 |
| Acct. No. | 22003370 |
| Beneficiary Account Name: | James Smith, M.D. |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:                                                      Sellers:
**Mercatus & Partners Limited**                                 **James Smith, M.D.**


By: _____                                      _____
Name: Cari Masi                                                  James Smith M.D.
Title: Authorized Signatory

Mercatus & Partners Limited

By: _____
Name: Carl Masi
Title: Authorized Signatory

James Smith, M.D.

*James Smith M.D.*

James Smith M.D.

## PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

PRIVATE STOCK PURCHASE AGREEMENT ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

WHEREAS, Seller is the beneficial owner of 33,350 shares of the common stock of Axion Power International, Inc. (OTCBB: AXPW) that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

WHEREAS, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of Axion Power International, Inc. dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of Axion Power International, Inc. at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

NOW, THEREFORE, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) †negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) †use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 33,350 shares of the registered common stock of Axion Power International, Inc. (OTCBB: AXPW) held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $100,050.