UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

|  |  |  |
|---|---|---|
| AXION POWER INTERNATIONAL, INC., WILLIAM AND TRACY AHEARN, h/w, SALLY FONNER, and JAMES SMITH, M.D., | : : : : | Civil Action No. 07-CV-11493 (RWS) |
| Plaintiffs, | : : | |
| v. | : : | |
| MERCATUS & PARTNERS, LTD., MF GLOBAL, INC., MF GLOBAL, UK, Ltd., CARI MASI a/k/a CARY MASI, BNP PARIBAS SECURITIES SERVICES, BANCA MB S.p.A, DWIGHT PARSCALE, STEPHANO CEVALO, CONTINENTAL STOCK TRANSFER AND TRUST COMPANY, PENSON FINANCIAL SERVICES, INC., AND BROWN BROTHERS HARRIMAN & CO., | : : : : : : : : : | |
| Defendants. | : : : : : | |

------------------------------------------------------------x

**MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS OF**

**DEFENDANT BROWN BROTHERS HARRIMAN & CO.**

**Table of Contents**

**Page**

TABLE OF AUTHORITIES ................................................................................... ii
INTRODUCTION .............................................................................................. 2
PRELIMINARY STATEMENT ........................................................................... 2
FACTS ............................................................................................................... 4
STANDARDS FOR A MOTION TO DISMISS .................................................. 6
ARGUMENT ...................................................................................................... 7
   I.    PLAINTIFFS' HAVE FAILED TO STATE A CLAIM FOR A VIOLATION OF
   SECTION 10(b)(5) OF THE SECURITIES EXCHANGE ACT OF 1934. ............. 7
      A.   Plaintiffs Have not Pled a Material Misrepresentation or Omission with Particularity. . 8
      B.   Plaintiffs Have not Pled Scienter with Particularity. .................................... 10
      C.   Plaintiffs Have not Pled Reliance on a Material Misrepresentation with Particularity. 12
      D.   Plaintiffs Have not Adequately Pled Causation. ......................................... 14
   II.   EVEN WERE THIS COURT TO EXERCISE JURISDICTION OVER THEM, THE
   STATE LAW CLAIMS SHOULD BE DISMISSED AS LEGALLY INADEQUATE .......... 16
      A.   Count V (Fraud) Must be Dismissed. ....................................................... 16
      B.   Count VIII (Conversion) Must be Dismissed. ............................................ 18
      C.   Count IX (Civil Conspiracy) Must be Dismissed. ...................................... 20
      D.   Count X (Breach of Fiduciary Duty) Must be Dismissed. ........................... 22
      E.   Count XI (Bailment) Must be Dismissed. ................................................. 23
CONCLUSION ................................................................................................. 24

# TABLE OF AUTHORITIES

## CASES

*ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87 (2d Cir. 2007) ................................... *passim*

*Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243 (S.D.N.Y. 2006) ......................................... 22

*Alnwick v. European Micro Holdings, Inc.*,
   281 F.Supp.2d 629 (E.D.N.Y. 2003) ................................................................................... 17

*Batsidis v. Batsidis*, 778 N.Y.S.2d 913 (2d Dep't 2004) ............................................................. 19

*Baylis v. Mariott Corp.*, 843 F.2d 658 (2d Cir. 1988) ................................................................. 16

*Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955 (2007)............................................................6,11,12

*Boley v. Pineloch Assocs., Ltd.*, 700 F. Supp. 673 (S.D.N.Y. 1988) .......................................... 22

*Bradley v. Roe*, 27 N.E.2d 35 (1940)........................................................................................... 20

*Capital Distributions Serv., Ltd. v. Ducor Exp. Airlines, Inc.*,
   440 F. Supp.2d 195 (E.D.N.Y. 2006) .................................................................................. 19

*Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171 (2d Cir. 2001) ........................................... 14

*Charles Hyman, Inc. v. Olsen Indus., Inc.*,
   642 N.Y.S.2d 306 (App. Div. 1st Dep't 1996)................................................................... 24

*Charney v. Sullivan & Cromwell LLP*, 2007 WL 2822423
   (Sup. Ct. N.Y. County Sept 27, 2007) ................................................................................ 21

*CompuDyne Corp. v. Shane*, 453 F. Supp.2d 807 (S.D.N.Y. 2006) ....................................... 17,18

*De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293 (2d Cir. 2002)....................................... 22

*Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111 (2d Cir. 1982) .................................................. 17

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*,
   343 F.3d 189 (2d Cir. 2003) ................................................................................................ 14

*First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763 (2d Cir. 1994) ................................ 14

*In re Food Mgmt. Group, LLC*, 380 B.R. 677 (Bankr. S.D.N.Y. 2008)........................................ 21

*Goldstein v. Pataki*, 2008 WL 269100 (2d Cir. Feb. 1, 2008) ...................................................... 6

*Iqbal v. Hasty*, 490 F.3d 143 (2d Cir. 2007)........................................................6

*JHW Greentree Capital, L.P. v. Whittier Trust Co.*,
    2005 WL 3008452 (S.D.N.Y. Nov. 10, 2005)....................................17

*JP Morgan Chase Bank v. Winnick.*, 406 F. Supp. 247 (S.D.N.Y. 205) ......................21

*Jaszewski v. V-GPO, Inc.*, 2007 WL 3066972 (W.D.N.Y. Oct. 19, 2007) ............19,20

*Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 250 N.E.2d 214 (N.Y. 1969) .................16

*Kline v. Taukpoint Realty Corp.*, 754 N.Y.S.2d 899 (App. Div. 2d Dep't 2003) ..........17

*Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147 (2d Cir. 2007).........................14

*Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir. 2005) ........................14

*LoPresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997).......................................19

*Novak v. Kasaks*, 216 F.3d 300 (2d Cir. 2000)..........................................8,17

*Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*,
    322 F.3d 147 (2d Cir. 2003) ...............................................................6

*Robinson v. Gov't of Malaysia*, 269 F.3d 133 (2d Cir. 2001).............................6

*Ross v. FSG PrivatAir Inc.*, 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004).................23

*Rosza v. May Davis Group, Inc.*, 152 F. Supp.2d 526 (S.D.N.Y. 2001) .................23

*SEC v. Bancorp, Ltd*, 290 F.3d 80 (2d Cir. 2002) .....................................23

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    128 S. Ct. 761 (2008)..........................................................7, 12, 13, 14

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001) .................................................................16

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007)...................6,10,11

*United States Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ...........................16

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005) .............................................6

*WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66 (App. Div. Dep't 2001) ...................22

*Weathers v. Millbrook Cent. Sch. Dist.*, 486 F. Supp.2d 273 (S.D.N.Y. 2007) .............................16

*World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*,
    2007 WL 4623027 (S.D.N.Y. Dec. 21, 2007) ....................................................................22

**STATUTES**

15 U.S.C. 78j (2000) .........................................................................................................................7

15 U.S.C. § 78u (2000) ................................................................................................................7,8,9

15 U.S.C. § 78u-4(b)(1) (2000) ........................................................................................................8

15 U.S.C. § 78u-4(b)(2) (2000) ......................................................................................................10

15 U.S.C. § 78u-4(b)(4) ..................................................................................................................14

17 C.F.R. 240.10b-5 ..........................................................................................................................7

28 U.S.C. § 1367(c)(3) (2007) ........................................................................................................16

Fed. R. Civ. P. 9(b) .....................................................................................................................7,17

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................2,4,6,9

**OTHER AUTHORITIES**

5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1301.1 ...........10

*Black's Law Dictionary* 640 (7th ed. 1999) ...................................................................................22

## INTRODUCTION

Defendant Brown Brothers Harriman & Co. respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the claims asserted against it in plaintiffs' Complaint, dated December 20, 2007 ("Complaint"), in its entirety.

## PRELIMINARY STATEMENT

This suit concerns a dispute between plaintiffs and Mercatus & Partners, Ltd. ("Mercatus") over certain agreements regarding the sale of the common stock of plaintiff Axion Power International, Inc ("Axion"). The agreements called for each plaintiff (aside from Axion) to deposit a discrete amount of the Axion shares into an account belonging to defendant Banca MB S.p.A. ("Banca MB") at defendant Brown Brothers Harriman & Co. ("BBH"). Mercatus was required by the agreements to pay the full purchase price of the shares within 30 days of their delivery to Banca MB's account. BBH was not a party to any of these agreements and had no knowledge that it had been named as the bank into which the shares would be deposited.

Plaintiffs transferred the shares into Banca MB's account at BBH *via* defendant Continental Stock Transfer and Trust Co. ("Continental"), but did not advise or cause Continental to advise BBH of their underlying agreements with Mercatus. Sometime after the shares were deposited, BBH received and executed instructions from its clients to transfer the shares out of the Banca MB account to various other accounts and locations.

Plaintiffs now complain that Mercatus failed to either pay the purchase price for, or return to them, the Axion shares at issue. While plaintiffs may have a legitimate grievance with Mercatus, this dispute has nothing to do with BBH. BBH had absolutely no knowledge of any of the underlying agreements between the plaintiffs and Mercatus. BBH merely accepted and transferred the shares at the directions of its clients, as any similarly-situated bank would do.

Nevertheless, on these facts, plaintiffs allege that BBH was a part of a scheme to defraud them, alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (Count I),

2

as well as common law fraud (Count V), conversion (count VIII), civil conspiracy (count IX), breach of fiduciary duty (Count X), and breach of a perceived bailment (Count XI). These claims should be dismissed because they fail to set forth a claim upon which relief may be granted.

*First*, plaintiffs have not stated a Section 10(b) claim against BBH. There are no specific factual allegations that BBH made any material misrepresentation to any party at any time concerning the Axion stock at issue. BBH had no knowledge of the underlying agreements between plaintiffs and Mercatus, and it certainly had no knowledge that Mercatus had failed to live up to its side of the bargain and pay the purchase price. Since there were no misstatements or deceptive actions on the part of BBH, there was nothing upon which plaintiffs could have relied that caused them to suffer the loss of the stock without receiving payment.

*Second*, for largely the same reasons as noted above in regard to the Section 10(b) claim, plaintiffs have not stated a common law fraud claim against BBH.

*Third*, plaintiffs have not stated a claim for conversion against BBH. BBH merely acted at the direction of its clients in accepting and transferring the stock at issue and the Complaint fails to allege that BBH failed to return the stock in defiance of an asserted superior right of possession.

*Fourth*, plaintiffs have failed to allege a civil conspiracy involving BBH. Plaintiffs have failed to properly allege an underlying tort, as they are required to do, but even if they arguably have, the Complaint does not adequately plead BBH's involvement in a conspiracy to defraud plaintiffs.

*Fifth*, plaintiffs have not stated a claim for breach of fiduciary duty against BBH. The Complaint fails to allege that there was any relationship at all, let alone a fiduciary one, between any of the plaintiffs and BBH at any time, and BBH's routine acceptance of shares of stock into a customer's account did not give rise to a duty on the part of BBH to act for plaintiffs' benefit.

3

*Sixth*, plaintiffs have not stated a claim for breach of an imagined bailment agreement between themselves and BBH. There is not a scintilla of factual support for plaintiff's claim that a bailment arrangement was ever reached between any of the plaintiffs and BBH. Indeed, BBH was given no instructions concerning these Agreements and had no awareness of or contact with any of the plaintiffs pursuant to its innocent receipt of the Axion stock at issue.

In sum, the Complaint fails to allege enough facts to support even a conceivable (let alone plausible) claim against BBH. Because each of the Complaint's allegations concerning BBH is critically defective, the Complaint must be dismissed as to BBH in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).

## FACTS

On December 9, 2005, plaintiffs William and Tracy Ahearn, Sally Fonner, and James Smith, M.D. (collectively, the "Individual Plaintiffs") each entered into two stock purchase agreements with defendant Mercatus [1] entitled SICAV ONE and SICAV TWO, respectively ("Agreements"). (Compl. ¶¶ 19, 28, 37, 46, Exh. A-H.) Each of the Agreements contemplated the sale of a certain amount of shares of the common stock of plaintiff Axion to Mercatus for $3.00 per share. (*See* Compl. ¶ 20, Exh. A-H.) The purchase price of the shares was not due immediately upon receipt; rather, each of the Agreements required Mercatus to pay up to 30 days from the date of delivery of the shares into a BBH account maintained by Banca MB.[2] (Compl. ¶¶ 21, 30, 39, 48; Exh. A-H.) The agreements contemplated that the shares would be held in that account until such time as the purchase price for the shares was paid. (Compl. ¶¶ 22, 31, 40, 49, 72.) A combined 500,000 Axion shares (valued, according to the price of the Agreements, at $1,500,000) were to be

---

[1] Cari Masi a/k/a Cary Masi, Dwight Parscale, and Stephano Cevalo are alleged to be employees or officers of Mercatus. Hereinafter, Mercatus, Masi, Parscale and Cevalo shall be referred to as the "Mercatus Defendants."
[2] It should be noted that the Agreements attached as Exhibits A-F and H do not designate Banca MB as the party into whose BBH account the shares would be transferred. The only mention of Banca MB in the exhibits is on what appears to be a randomly inserted, clipped page of a faxed sheet at the end of Exhibit G.

sold to Mercatus pursuant to the Agreements. (Compl. ¶¶ 19-51, 79; Exh. A-H.)[3]  Notably, defendants BBH, BNP Paribas Securities Services, and MF Global (collectively, the "Transactional Defendants") were not parties to or signatories of the Agreements. (Compl. Exh. A-H.)

On or about December 12, 2005, the Individual Plaintiffs delivered their respective Axion shares to accounts at BBH *via* Defendant Continental Stock Transfer and Trust Company ("Continental"). Compl. ¶¶ 24, 33, 42, 51, 56-57. Plaintiffs instructed Continental to deliver the stock to BBH along with a letter describing the "delivery versus payment transaction where the purchaser may defer payment of the subscription price for 30 days. . . ." (Compl. ¶ 57.) However, Continental did not communicate that arrangement to BBH nor did it convey any instructions concerning the "delayed delivery versus payment requirement." (Compl. ¶¶ 57-58.)

In a series of transactions between December 13, 2005 and August 17, 2006, BBH, acting on the instruction of various clients, transferred approximately 410,000 Axion shares into accounts at defendant BNP Paribas Securities Services, and then to Man Securities (an affiliate of Defendants MF Global and MFGUK), (Compl. ¶ 59(a)-(d), (f)-(h)), and 90,000 Axion shares to defendant Penson Financial. (Compl. ¶ 59(e).) The shares that BBH transferred to Man Securities were used as collateral for a loan MFGUK extended to Mercatus. (Compl. ¶ 61.) The Complaint does not allege that Brown Brothers had any knowledge of the use of the shares as collateral for the above described loan. Mercatus has not paid the purchase price for any of the Axion shares that are the subject of the Agreements, nor have any of the shares been returned to the Individual Plaintiffs. (Compl. ¶¶ 25-27, 34-36, 43-45, 52-54.)

---

[3] The Ahearn Plaintiffs agreed to sell Mercatus 308,300 shares for an aggregate purchase price of $924,000. (Compl. ¶20.) Plaintiff Fonner agreed to sell Mercatus 60,000 shares for an aggregate purchase price of $180,000. (Compl. ¶29.) Plaintiff Smith agreed to sell Mercatus 66,700 shares for an aggregate purchase price of $200,100. (Compl. ¶47.) Another individual, William Monteith, entered into the same Agreements with Mercatus on the same date, agreeing to sell Mercatus 65,000 shares for an aggregate purchase price of $180,000. Monteith subsequently transferred his interest in the shares that were the subject of his Agreements to Plaintiff Fonner on May 22, 2007. (Compl. ¶¶37 and n.1, 38.) Mr. Monteith is not a party to this suit.

## STANDARDS FOR A MOTION TO DISMISS

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a claim may be dismissed on the pleadings for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint. *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005); *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). In deciding a Rule 12(b)(6) motion to dismiss, a court must accept as true the well-pleaded factual allegations in the complaint. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007); *Official Comm. of Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand, LLP*, 322 F.3d 147, 158 (2d Cir. 2003). A court must also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id.*

In *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1969 (2007), the Supreme Court set forth the pleading standards applicable to a Rule 12(b)(6) motion. In *Twombly*, the Court noted that "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65. *Twombly* held that the factual allegations in a complaint must "be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Id.* at 1965 (internal citiations omitted); *accord Goldstein v. Pataki*, No. 07-2537-CV, 2008 WL 269100, at *4 (2d Cir. Feb. 1, 2008); *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Thus, the Supreme Court concluded that in order to survive a Rule 12(b)(6) motion, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face," and if the complaint has "not nudged [its] claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 1974; *see also Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007).

6

## ARGUMENT

### I.    PLAINTIFFS' HAVE FAILED TO STATE A CLAIM FOR A VIOLATION OF SECTION 10(b)(5) OF THE SECURITIES EXCHANGE ACT OF 1934.

Count I of the Complaint alleges that all of the defendants, with the exception of Continental, violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j (2000) and Rule 10b-5 promulgated thereunder, 17 C.F.R. 240.10b-5.  (Compl. ¶¶ 77-81.)  In particular, the Complaint alleges that the defendants engaged in "unlawful and concerted activity to intentionally defraud and deceive Plaintiffs and convert from Plaintiffs One Million Five Hundred Thousand of [t]he Stock. . . ."  (Compl. ¶ 79.)  Specifically, plaintiffs assert that the defendants made certain untrue and misleading statements designed to perpetrate a scheme to "effect the fraudulent transfer of the Stock without making the required payment" and "to induce Plaintiffs to delay seeking return of the Stock from BBH. . . ."  (Compl. ¶ 80(a),(b).)  Finally, plaintiffs allege that the defendants wrongfully accepted or transferred the Stock where the defendants knew or should have known that the "required payment on the Stock had not been made," constituting what the Complaint terms the "Scheme."  (Compl. ¶ 80(c).)

The elements of a typical section 10(b) private action are as follows: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S. Ct. 761, 768 (2008).  Securities fraud claims, including those alleging misstatements, are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires the circumstances constituting fraud to be stated with particularity. *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Section 10(b) claims are also subject to the additional pleading requirements of the Private Securities Litigation Reform Act

("PSLRA"), 15 U.S.C. § 78u (2000).  Thus, "private securities fraud actions must also meet the

PSLRA's pleading requirements or face dismissal." *ATSI*, 493 F.3d at 99.

### A.   Plaintiffs Have not Pled a Material Misrepresentation or Omission with Particularity.

As a threshold matter, plaintiffs have not adequately alleged a misstatement of

material fact or omission upon which to base their theory of liability.  A securities fraud complaint

based on misstatements, such as the Complaint at hand, must "(1) specify the statements that the

plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements

were made, and (4) explain why the statements were fraudulent." *ATSI Commc'n, Inc. v. Shaar*

*Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000).

The PSLRA additionally provides that in such cases,

> the complaint shall specify each statement alleged to
> have been misleading, [and] the reason or reasons
> why the statement is misleading, and, if an
> allegation regarding the statement or omission is
> made on information and belief, the complaint shall
> state with particularity all facts on which that belief
> is formed."

15 U.S.C. § 78u-4(b)(1) (2000).

The Complaint lists only two specific statements which it collectively attributes to all

of the defendants.  (Compl. ¶80.)  The first is that the defendants promised "that the Stock was and

would remain in escrow pending the payment of the purchase price and that the Stock would not be

distributed or physically transferred to anyone by the Custodian, BBH, unless and until payment had

been effected." (Compl. ¶80(a).)  The second alleges that the defendants promised "Plaintiffs, on at

least twelve separate occasions, that the payment funds were available and/or in transit, when the

payment funds were neither available nor in transit when they knew or should have known that the

funds were not available." (Compl. ¶80(b).)

Both of these generic statements fail to meet the particularity requirement of detailing the time, place, and content of the alleged misrepresentation or omission. *See ATSI*, 493 F.3d at 99. The fuzzy description of the statements in the Complaint fails to "identify the speaker," "state where and when the statements were made," or "explain why the statements were fraudulent" as required by *ATSI*. *Id*. These statements are, therefore, patently insufficient to support a Section 10(b) claim based on material misrepresentations.[4]

Further, a review of all of the allegations in the Complaint reveals that BBH was not in a position to make either of these statements to the plaintiffs. Indeed, the Complaint does not allege that any of the BBH or any of the Transactional Defendants had any knowledge of the underlying agreements between Mercatus and the Individual Plaintiffs, or any interaction with or relationship to the Individual Plaintiffs at all.

Even when reading the Complaint in the light most favorable to the plaintiffs, as the Court must do in analyzing a Rule 12(b)(6) motion, it is clear that the two statements listed in paragraph 80 of the Complaint can only be properly attributed, if to anyone, to Mercatus & Partners, Ltd., Cari Masi a/k/a Cary Masi, Dwight Parscale, and Stephano Cevalo (collectively, the "Mercatus Defendants"). The Mercatus Defendants are the only parties listed in the Complaint with which the Individual Plaintiffs were in privity or would, because of their position in the company, have knowledge of or access to the Agreements. They are the only parties that are alleged to have had any contact with the plaintiffs whatsoever concerning the payment of the purchase price for the shares at issue.

On the other hand, none of the Transactional Defendants are alleged to have been involved in anything having to do with the stock transaction underlying the Complaint. Thus,

---

[4] It should also be noted that, for the reasons set forth in Section I, page 7 of defendant Penson Financial Service's brief in support of its Motion to Dismiss, the Complaint fails to allege that BBH made any material misrepresentation "in connection with" the sale of the Axion stock at issue. Any misrepresentation that could arguably be attributed to BBH could only have been made well after plaintiffs and Mercatus executed the Agreements.

plaintiffs have no reasonable probability of ever making a plausible claim that BBH made any statement at all in regard to their respective Agreements with Mercatus.  Because the Complaint fails to properly allege this fundamental element of the pleading, Count I should be dismissed.

**B.      Plaintiffs Have not Pled Scienter with Particularity.**

The Complaint fails to allege that BBH took any action or made any statement with knowledge that plaintiffs would rely on it to their detriment.  In fact, the Complaint confirms that BBH had no knowledge of the underlying agreements between plaintiffs and Mercatus at all; it states that the instructions that plaintiffs had given to Continental regarding the Agreements were not delivered to BBH.  (Compl. ¶¶ 57-58.)  Of course, without knowledge of the underlying Agreements, BBH could not possibly have made statements concerning the Agreements that were designed to mislead plaintiffs in any way.  Thus, the Complaint does not adequately plead the scienter element of a Section 10(b) claim.

The PSLRA provides, with regard to the scienter element of a Section 10(b) claim, that

> In any private action  .  .  .  in which plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(2) (2000).  In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499 (2007), the United States Supreme Court clarified pleading issues concerning the scienter element of securities fraud claims.  The Court noted that "in determining whether the pleaded facts give rise to a 'strong' inference of scienter, the court must take into account plausible opposing inferences." *Tellabs*, 127 S.Ct. at 2509.  *See also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1301.1 (3d ed. 2007 [update]).  "For an inference of scienter to be strong, 'a reasonable person [must] deem [it] cogent and at least as compelling as any opposing inference one

could draw from the facts alleged.'" *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (quoting *Tellabs*, 2499 S.Ct. at 2510). Thus, *Tellabs* held that relevant inquiry is, "When the allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs*, 127 S.Ct. at 2511.

Here, the Complaint does not state with particularity the factual bases for its conclusory assertion that the Transactional Defendants "intentionally" defrauded and deceived plaintiffs. (Compl. ¶79.) In fact, all that is said directly addressing the scienter requirement in the Complaint is the unsupported assertion in paragraph 81 that the defendants "engaged in the Scheme with a mental state embracing an intent to deceive, manipulate and defraud and thus acted with the scienter required by Section 10(b)(5)." (Compl. ¶81.) This "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007).

Nor can an inference of BBH's intent to defraud plaintiffs be drawn from any of the factual allegations in the Complaint. The Complaint fails to allege any conceivable interest BBH would have in purposefully withholding the stock from plaintiffs or making representations to them about Mercatus's ability to pay the purchase price. There are no allegations that BBH benefited in any way from any purported fraud. There are no allegations, save for the conclusory recitation in paragraph 80(c), that any of BBH's alleged actions were illegal. On these facts, the suggestion that a reasonable person could infer that BBH was complicit in Mercatus's failure to pay for the stock as required by the Agreements and wrongfully withhold it from plaintiffs is beyond ludicrous.

The "plausible opposing inference," *Tellabs*, 127 S.Ct. at 2509, to consider here is that BBH had no knowledge that any wrong was being done to plaintiffs at any time concerning the stock at issue. The Complaint does not state that Mercatus had an account at BBH, nor does it describe any interaction between Mercatus and BBH at all. Perhaps most importantly, plaintiffs themselves allege that the delivery instructions that it gave to Continental to deliver to BBH regarding "delivery versus payment" were not conveyed to BBH. (Compl. ¶¶ 57-58.) Thus, a fair reading of the Complaint yields the inescapable conclusion that BBH was totally unaware of the Agreements between Mercatus and the Individual Plaintiffs. BBH, therefore, could not have acted with the intent to defraud plaintiffs with respect to those Agreements in any way. Here, "When the

allegations are accepted as true and taken collectively, would a reasonable person deem the inference of scienter at least as strong as any opposing inference?" *Tellabs*, 127 S.Ct. at 2511. Clearly not. The Complaint does not adequately allege the scienter element of the Securities Exchange Act violation.

### C.   Plaintiffs Have not Pled Reliance on a Material Misrepresentation with Particularity.

As discussed above in Section I.A., plaintiffs have failed to adequately allege a material misstatement or omission upon which they could have detrimentally relied. In Paragraph 80(c) of the Complaint, however, plaintiffs articulate a "scheme liability" theory, alleging that the named defendants "[i]ntentionally and knowingly wrongfully [sic] and illegally transfer[ed] and wrongfully and illegally accept[ed] transfer of the Stock when each of them knew or should have known that required payment on the Stock had not been made (Hereinafter the 'Scheme')." This paragraph suggests that BBH's act of receiving and transferring the stock at the behest of its clients somehow made it complicit in the actions or statements of Mercatus, the party who was required to make the payment under the Agreements. That is simply not the case.

In any event, the Supreme Court recently rejected a "scheme liability" theory in Section 10(b) claims in *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 128 S.Ct. 761, 769 (Jan. 15, 2008). In *Stoneridge*, the plaintiff-petitioners were a group of investors who brought a securities fraud class action against a corporation that had provided cable television services, as well as the corporation's vendors and customers alleging, *inter alia*, that the corporation had entered into "sham" transactions with the vendors and customers that improperly inflated the corporation's reported operating revenues and cash flow. *Stoneridge*, 128 S.Ct at 766-768. In *Stoneridge*, because the defendant-respondents (the vendors and customers who had entered into transactions with the corporation at issue) did not make any material misstatements to the plaintiffs themselves, the lower court had determined that "[a]t most, . . . [defendants] had aided and abetted [the corporation's] misstatement of financial results. . . ." *Id.* At 767. The *Stoneridge* Court recognized that "The § 10(b) implied private right of action does not extend to aiders and abettors." *Id.* at 769.

In *Stoneridge*, however, plaintiffs invoked a theory of scheme liability, arguing that defendants were liable to plaintiffs because the corporation's financial statements released to the public were a "natural and expected consequence of respondents' deceptive acts." *Id.* at 770.   The *Stoneridge* Court rejected plaintiff's scheme liability theory because it failed to allege the reliance element of securities fraud violation.  *Id.* at 774.  The Court began by noting that "[r]eliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action." *Id.* at 769.  The Court reasoned that the plaintiffs could not have possibly relied on the defendants' deceptive acts because "[i]t was [the corporation], not [defendants], that misled its auditor and filed fraudulent financial statements; nothing [defendants] did made it necessary or inevitable for [the corporation] to record the transactions as it did." *Id.* at 770.  Under those circumstances, "the investors cannot be said to have relied upon any of [defendants'] deceptive acts in the decision to purchase or sell securities; and as the requisite reliance cannot be shown, [defendants] have no liability to petitioner under the implied right of action." *Id.* at 774.

Here, one could infer from the allegations in the Complaint – at most – that BBH unintentionally facilitated the Mercatus Defendants' fraudulent statements and activity by providing a means for Mercatus to wrongfully transfer the stock in violation of the Agreements.  In this respect BBH and the other Transactional Defendants would be in a position somewhat analogous to the defendants in *Stoneridge*.  Of course, the deceptive acts of the defendants in that case were far more egregious than those attributed to BBH because they were arguably intentional.  Indeed, in *Stoneridge*, the Court accepted the proposition that the defendants knew that the transactions in which they were entering with the corporation at issue would be used for that corporation to misrepresent its earnings to the investing public. *Stoneridge*, 128 S.Ct. at 767, 770.  *Stoneridge* held, however, that even on those facts the plaintiffs could not maintain a cause of action against the facilitators under Section 10(b). *Id.* at 770.

Here, according to the Complaint, it was Mercatus who failed to pay the purchase price for the shares at issue and BBH was ignorant of any wrongdoing.  Nothing that BBH did in routinely accepting and transferring the stock at issue "made it necessary or inevitable" for Mercatus to fail to pay for or return the stock.  Similar to the respondents in *Stoneridge*, BBH's involvement

was "too remote" from the primary deceptive acts "to satisfy the requirement of reliance,"
*Stoneridge*, 128 S.Ct. at 770. Thus, the Count I should be dismissed.

**D.    Plaintiffs Have not Adequately Pled Causation.**

Finally, plaintiffs have failed to properly plead the causation element of a Section
10(b) claim. The PSLRA states, in regard to this element, that "in any private action arising under
this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant
alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15
U.S.C. § 78u-4(b)(4). This provision has been interpreted by the Second Circuit as a requirement
that plaintiffs allege both "transaction" and "loss" causation. *Lentell v. Merrill Lynch & Co., Inc.*,
396 F.3d 161, 172 (2d Cir. 2005). Transaction causation is "akin to reliance" and requires an
allegation that "but for" the claimed fraudulent statement or omission, the plaintiff would not have
entered into the detrimental transaction. *Id.* Loss causation, on the other hand, is the "causal link
between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Id.*
*quoting Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir.
2003). Loss causation "has to do with the relationship between the plaintiff's investment loss and the
information misstated or concealed by the defendant." *Id. citing Emergent Capital*, 343 F.3d at 198-
199 and *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186-190 (2d Cir. 2001). Noting that
loss causation is "intended 'to fix a legal limit on a person's responsibility, even for wrongful acts,'"
*Lentell* held that a misstatement is the proximate cause of a loss if "the risk that caused the loss was
within the zone of risk concealed by the misrepresentations. . . alleged by a disappointed investor."
*Id.* at 173 *accord Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 157 (2d Cir. 2007).
Importantly, *Lentell* held that loss causation is not properly alleged where "a plaintiff's claim . . .
has not adequately ple[]d facts which, if proven, would show that its loss was caused by the alleged
misstatements as opposed to intervening events." *Id.* at 174 *quoting First Nationwide Bank v. Gelt
Funding Corp.*, 27 F.3d 763, 772 (2d Cir. 1994).

Here, the Complaint fails to allege either transaction causation or loss causation as to
BBH. With regard to transaction causation, as noted in Section I.C *supra*, the Complaint does not set
forth sufficient facts to support the proposition that plaintiffs relied in any way on a material

misstatement or omission on the part of BBH or any of the other Transactional Defendants. It certainly cannot be said that under any reading of the complaint, that "but for" such a misstatement or omission, plaintiffs "would not have entered into the transaction." *Id.*    The transactions at issue here that ultimately led to the alleged loss of the stock or the purchase price thereof are the Agreements between Mercatus and the Individual Plaintiffs. (*See* Compl. ¶79) (alleging that the defendants converted "One Million Five Hundred Thousand of the Stock").[5]  The loss would not have happened "but for" Mercatus's failure to pay the purchase price as it was required to do under the terms of the purchase agreements or, alternatively, to return the stock to plaintiffs. Furthermore, plaintiffs certainly would not have entered into this transaction with Mercatus had Mercatus informed them that it would never pay for the stock as per the terms of the Agreements.

While BBH's routine receipt, storage, and transfer of the Axion stock at issue could arguably be viewed as a link in the causal chain of how the plaintiffs lost possession of the stock without payment, it cannot be said that any of those actions, in and of themselves, were the cause of that loss. Indeed, at most, the Complaint alleges that the Mercatus Defendants entered into a contract for the sale of Axion stock causing the plaintiffs to deliver the stock to third-parties pursuant to the agreement, and then failed to pay the purchase price for that stock at the time specified in the Agreements. Thus, if any party can be properly said to have made a misstatement or taken an action that caused the plaintiffs' loss, it is the Mercatus Defendants. BBH, like all of the Transactional Defendants, is a neutral third party that simply acted, as it is required to do, at the instructions of its clients. BBH was not the "but for" cause of plaintiff's alleged economic loss.

Neither does the Complaint adequately allege loss causation in regard to any of BBH or any of the Transactional Defendants. It cannot be said that Mercatus's failure to pay the purchase price of the Axion stock pursuant to the Agreements was a foreseeable consequence of statements or actions actually attributed to any of the Transactional Defendants. Indeed, none of the Transactional Defendants were parties to the Agreements, and the Complaint fails to allege that any of the Transactional Defendants had any knowledge of Mercatus's failure to pay. As for BBH, it certainly

---

[5] Presumably, this refers to $1,500,000 representing the 500,000 Axion shares Plaintiffs alleged they transferred, multiplied by the $3.00-per-share price listed in the Agreements.

was not foreseeable that accepting and transferring stock at the direction of its clients would cause some unknown plaintiffs to suffer a loss due to a breach of unknown Agreements.

In sum, Count I of the Complaint should be dismissed because it fails to adequately allege the elements of a Section 10(b) action sounding in securities fraud.

## II.   EVEN WERE THIS COURT TO EXERCISE JURISDICTION OVER THEM, THE STATE LAW CLAIMS SHOULD BE DISMISSED AS LEGALLY INADEQUATE.

This Court should dismiss the remaining common law claims on jurisdictional grounds. A district court may decline to exercise supplemental jurisdiction over state law claims where it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3) (2007). Dismissal of remaining state claims is particularly appropriate where the federal claims are dismissed at an early stage of the litigation. *Weathers v. Millbrook Cent. Sch. Dist.*, 486 F.Supp.2d 273, 276 (S.D.N.Y. 2007) (citing *Baylis v. Mariott Corp.*, 843 F.2d 658, 664-665 (2d Cir. 1988) and *United States Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Here, the sole basis for jurisdiction alleged in the complaint is federal question. (Compl. ¶ 2.) Because Count I (representing the only federal law claim in the Complaint) ought to be dismissed for the reasons set forth in Section I, *supra*, so, too, should the remaining state law claims.

In any event, even were this Court to consider them, the Complaint fails to adequately plead any of the remaining state law counts.

### A.   Count V (Fraud) Must be Dismissed

The common-law fraud count should be dismissed for much the same reasons as discussed above regarding Count I. As noted by the Second Circuit in *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 104-105 (2d Cir. 2001), a common law fraud claim under New York state law requires the recitation of five essential elements: i) a representation of fact, ii) which is either untrue and known to be untrue or recklessly made, iii) which is offered to deceive the other party and iv) induce them to act upon it; v) causing injury. *Id. quoting Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 250 N.E.2d 214, 218 (N.Y. 1969). Put another way, "[i]n order to plead common law fraud. . . 'plaintiffs must show a material false representation or omission of an

existing fact, which defendants made with knowledge of its falsity and intent to defraud, and which plaintiffs relied upon to their detriment." *CompuDyne Corp. v. Shane*, 453 F.Supp.2d 807, 831 (S.D.N.Y. 2006) (quoting *Kline v. Taukpoint Realty Corp.*, 754 N.Y.S.2d 899 (App. Div. 2d Dep't 2003). The common law requirements "are essentially identical to those pleading a violation of Rule 10b-5." *Id.* at 832. (citing *JHW Greentree Capital, L.P. v. Whittier Trust Co.*, No. 05 Civ 2985, 2005 WL 3008452, at *9-10 (S.D.N.Y. Nov. 10, 2005).

As noted in Section I, *supra*, to meet the strict pleading requirements of Rule Federal Rule of Civil Procedure 9(b), a plaintiff must state in its pleading the time, place, and content of the alleged false representation or omission. *ATSI Commc'n, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (citing *Novak v. Kasaks*, 216 F.3d 300, 306 (2d Cir. 2000). Thus, "conclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." *Alnwick v. European Micro Holdings, Inc.*, 281 F.Supp.2d 629, 639 (E.D.N.Y. 2003) *quoting Decker v. Massey-Ferguson, Ltd.*, 681 F.2d 111, 114 (2d Cir. 1982).

At the outset, it is unclear whether plaintiffs even meant to allege common law fraud against BBH. The caption of Count V of the Complaint states "Fraud against Defendants Mercatus, the Individual Defendants, BNP Paribas, Penson and Banca MB." BBH is notably absent from that allegation. However, in paragraph 97 of the Complaint, plaintiffs allege that "Defendants Mercatus, *BBH*, the Individual Defendants, BNP Paribas, Penson, Banca MB" engaged in the fraudulent conduct underlying the allegation. *Id.* (emphasis supplied). That mention seems to suggest that plaintiffs are including BBH in their common-law fraud allegation. Then, in paragraph 99, where plaintiffs are alleging injury sustained as a result of the alleged fraud, the Complaint merely states that "[a]s a result of the fraudulent conduct of Defendant Mercatus and the individual defendants, Plaintiffs have suffered actual and consequential damages." BBH is notably omitted from that statement. Thus, it is unclear as a threshold matter whether plaintiffs even intended to name BBH in its common law fraud allegations.

In any event, the Complaint fails to adequately allege a common law fraud claim for largely the same reasons as those set forth in regard to the Section 10(b) claim in Section I, *supra*. The arguments made as to each of the elements of fraud, as they are "essentially identical" to Section

17

10(b) elements, *Compudyne*, 453 F.Supp.2d at 832, are hereby incorporated as they relate to their corresponding state law elements and do not bear repetition here.[6] The Complaint simply includes BBH in a list of its co-defendants who allegedly misrepresented the "true nature of the transaction" and "the payment of the purchase price." (Compl. ¶ 97.) One can only speculate as to what is meant by "the transaction" in that paragraph, but it seems fair to assume that it refers to the respective Agreements, and the "payment of the purchase price" as required therein. Those recitations fail to meet the pleading standards for fraud claims.

The allegations in support of the common-law fraud count contain none of the factual detail required by *ATSI*. Specifically, the complaint does not detail the specific contents of those statements, nor does it identify individual speakers; rather, it attributes the statements to all of the named defendants. This generic recital of a group misrepresentation is insufficient to put BBH on notice as to what statement or omission plaintiffs are alleging it made. Moreover, the Complaint does not state when or where BBH made a particular statement or omission, as Rule 9(b) requires. For the same reasons discussed in Section I.B in regard to the scienter element of the Section 10(b) claim, the Complaint fails to allege that BBH had any knowledge of or intent to defraud plaintiffs in any way.

Finally, plaintiffs have not alleged facts that would demonstrate that BBH's actions caused them any injury. Indeed, the complaint merely states that "[a]s a result of the fraudulent conduct of Defendant Mercatus and the individual defendants, [p]laintiffs have suffered actual and consequential damages." (Compl. ¶ 99.) In any event, for the reasons discussed above in Sections I.C and D, plaintiffs have not adequately plead that BBH's actions, misstatements, or omissions caused them to suffer any loss. Simply put, plaintiffs fail to adequate plead a single element of common law fraud and Count V of the Complaint must be dismissed as to BBH.

**B.    Count VIII (Conversion) Must be Dismissed.**

The caption to Count VIII of the Complaint specifically excludes Continental and BBH as parties against whom they are alleging conversion. However, in paragraphs 109 and 110, the

---

[6] Those arguments are also expressly incorporated and reasserted as to all of the remaining state law claims asserted by Plaintiffs discussed in Section II.B-E below.

Complaint states that "All Defendants except Continental improperly and unlawfully exercised dominion or control over the Stock," and "willfully and wantonly converted [t]he Stock to their own use and otherwise improperly and unlawfully obtaining [sic] and utilizing [sic] [t]he Stock." These paragraphs create some confusion making it impossible to decipher whether plaintiffs intended to include BBH in the list of parties against whom they are alleging a conversion claim. In any event, if plaintiffs intended to name BBH, the claim is meritless.

Under New York law, "conversion occurs when a defendant exercises unauthorized dominion and control over personal property in interference with a plaintiff's legal title or superior right of possession (citation omittted)." *LoPresti v. Terwilliger*, 126 F.3d 34, 41 (2d Cir. 1997). A plaintiff is required to show "legal ownership or an immediate superior right of possession to a specifically identifiable thing and must show that the defendant exercised unauthorized dominion over the thing in question to the exclusion of the plaintiff's rights." *Capital Distributions Serv., Ltd. v. Ducor Exp. Airlines, Inc.*, 440 F.Supp.2d 195, 207-208 (E.D.N.Y. 2006) (citing *Batsidis v. Batsidis*, 778 N.Y.S.2d 913 (2d Dep't 2004). If the "possession of the property is initially lawful, conversion occurs when there is a refusal to return the property after a demand." *Id.* at 208.

The case of *Jaszewski v. V-GPO, Inc.*, No. 05-CV-6310, 2007 WL 3066972, at *5 (W.D.N.Y. Oct. 19, 2007), is a particularly instructive example of why a conversion claim is inapplicable here. In *Jaszewski*, the plaintiff had delivered some shares of stock to a defendant-law firm to hold pursuant to an escrow agreement plaintiffs had reached with another defendant. *Id.* at *1-2. After a dispute concerning the length of time the shares were to be held in escrow, plaintiffs sued the law firm alleging that it had converted the shares it was holding in escrow. *Id.* The district court held that no cause of action for conversion would lie where the defendants had no ability to "dispose of, trade, or sell [the stock at issue], but instead merely accepted delivery of plaintiff's stock certificates on behalf of their client." The court went on to further explain that "the refusal of the defendants to return the stock certificates does not constitute conversion absent proof offered by the plaintiff to the defendants that he was legally entitled to the certificates." *Id.* at *5 The court reasoned that '[w]here a person is rightfully in possession of the property, continued custody of the property and refusal to deliver on demand of the owner until the owner proves his right, constitutes

no conversion.  The owner is wronged by the custodian only where there is 'a defiance of the owner's right, a determination to exercise dominion and control over the property and to exclude the owner from the exercise of his rights.'"  *Id.* (quoting *Bradley v. Roe*, 27 N.E.2d 35 (1940)).

There are no allegations in the present matter that BBH ever exercised the level of "dominion and control" over the Axion stock at issue necessary to support a claim of conversion. Here, as in *Jaszewski*, BBH received whatever Axion shares it received at the behest of its clients, and there are no allegations that BBH had an independent ability to buy, sell, or transfer the shares at issue.  Indeed, all that is alleged in regard to BBH is that BBH, along with all of the other defendants aside from Continental, improperly obtained and utilized the stock, and then converted it to its own use.  These conclusory assertions are insufficient to support a claim of conversion.  To be sure, in various paragraphs of the Complaint, plaintiffs allege that BBH has "failed or refused to return" the Stock at issue.  (Compl. ¶¶ 27, 36, 45, 54.)  However, there are no specific allegations concerning requests to return the shares or that plaintiffs provided BBH with any proof that they had a superior legal entitlement to the stock at issue.  *Jaszewski*, 2007 WL 3066972, at *5.  Without allegations of such proof, there can be no allegations that BBH acted in defiance of plaintiffs' legal entitlement to the stock.  Indeed, BBH's role was that of a custodial bank that engaged in routine transactions at the direction of its clients.  It was ignorant of the plaintiffs' interest in any of the stock at issue, and cannot be said to have converted any of the stock.  Count XIII must be dismissed as to BBH.

###    C.    Count IX (Civil Conspiracy) Must be Dismissed.

Paragraphs 111-113 set forth plaintiffs' theory of liability for common-law Civil Conspiracy.  Although plaintiffs expressly state that this count applies to "All Defendants Except Continental and BBH," the ensuing text of the Complaint states that "*All defendants* acted in a joint and concerted manner so as to defraud and deceive Plaintiffs and improperly and unlawfully obtain [sic] dominion and control over of [sic] the Axion [s]hares."  (Compl. ¶ 112)(emphasis supplied). Thus, it is unclear whether plaintiffs intended to include BBH in the allegations concerning this count.  If they did, they failed to state a claim for civil conspiracy as to BBH.

There is no substantive tort of conspiracy in New York. *In re Food Mgmt. Group, LLC*, 380 B.R. 677, 703-704 (Bankr. S.D.N.Y. 2008) (citing *Charney v. Sullivan & Cromwell LLP*, No. 100625/2007, 2007 WL 2822423, at *3 (Sup. Ct. N.Y. County Sept 27, 2007). However, if an underlying tort has been adequately alleged, then "the elements of civil conspiracy are (i) facts constituting a common agreement or understanding, (ii) a common design or purpose to injure the plaintiff, (iii) the tortious or criminal act or acts committed in furtherance of the common agreement and purpose, (iv) the intent and knowledge of the defendants regarding the acts, and (v) damage or injury to the plaintiff as a result of the acts of the defendants." *Id.* (citing *JP Morgan Chase Bank v. Winnick*, 406 F.Supp.2d 247, 252 (S.D.N.Y. 2005)). *See also Charney, supra*, at *3 (noting that although there is no action for civil conspiracy, plaintiff "may plead conspiracy in order to connect the actions of the individual defendants with an actionable underlying tort and establish that those acts flow from a common scheme or plan.").

The law of civil conspiracy mentioned above clearly demonstrates that the Complaint fails to allege one here. First of all, plaintiffs arguably rely on securities fraud as the underlying tort. (*See* Compl. ¶ 113.) (alleging that defendants "knowingly and willfully engaged in securities fraud"). As noted above in section I, the Complaint fails to set forth sufficient facts upon which to base their claim of a securities fraud violation. Additionally, as discussed in Section II.A, plaintiffs fail to adequately allege common-law fraud against BBH. In any event, even if one were to accept the proposition that one of those two underlying torts had been adequately pled, the Complaint fails to adequately plead the basic elements of conspiracy. Specifically, the Complaint fails to allege any facts tending to show the existence of "a common agreement or understanding" to defraud plaintiffs between BBH and Mercatus. Indeed, the Complaint fails to allege that BBH even had knowledge that Mercatus had any interest in the stock it received from Continental at all. There is similarly no allegation of a "common design or purpose to injure the plaintiff." Again, the Complaint fails to allege what steps BBH could possibly have taken to injure plaintiffs of which it was not aware. Nor are there any sufficient allegations that BBH acted with any knowledge of any wrongful acts taken by others toward plaintiffs or that BBH's acts, misstatements or omissions caused plaintiff's alleged injuries. Simply put, plaintiffs have failed to allege a civil conspiracy involving BBH.

**D.      Count X (Breach of Fiduciary Duty) Must be Dismissed.**

Paragraphs 114-116 of the Complaint set forth plaintiffs' basis for a breach of a fiduciary duty claim against BBH. The Complaint merely states, without factual support, that BBH owed plaintiffs a fiduciary duty "by taking possession of The Stock." (Compl. ¶115.) These allegations are patently insufficient to support a claim that BBH owed plaintiffs a fiduciary duty.

Plaintiffs admit that BBH was not on notice of any underlying contract or agreement concerning the underlying agreements they had made with Mercatus. Indeed, paragraphs 56 and 57 state that "Plaintiffs delivered the Stock to Continental" and "instructed Continental to deliver the Stock to BBH." (Compl. ¶¶56-57.) Paragraph 58 goes on to state that Continental did not convey the instructions it had given to them to pass along to BBH regarding the nature of the underlying transaction. There are no allegations that BBH had a business relationship, contract, conversation, or communication of any kind with any of the plaintiffs regarding the stock transactions at issue. Thus, any discussion of whether a non-existent relationship was fiduciary in nature is purely academic.

In any event, in actions based on a fiduciary duty, plaintiffs must first adequately allege the existence of a fiduciary relationship. *Boley v. Pineloch Assocs., Ltd.*, 700 F.Supp. 673, 681 (S.D.N.Y. 1988). *See also De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1308 (2d Cir. 2002). A fiduciary relationship may exist where one party reposes confidence in another and reasonably relies on the other's superior expertise or knowledge. *WIT Holding Corp. v. Klein*, 724 N.Y.S.2d 66, 68 (App. Div. Dep't 2001). The paradigmatic fiduciary is a trustee, who has a duty to act for another's benefit. *Black's Law Dictionary* 640 (7th ed. 1999). The existence of a fiduciary relationship typically depends on "the facts of a particular relationship, [and] therefore a claim alleging the existence of a fiduciary duty usually is not subject to dismissal under Rule 12(b)(6)." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, No. 04-CV-8223, 2007 WL 4623027, at *13 (S.D.N.Y. Dec. 21, 2007) (quoting *Abercrombie v. Andrew Coll.*, 438 F. Supp. 2d 243, 274 (S.D.N.Y. 2006)). However, a court reviewing such a motion is not "required to credit mere legal conclusions that are dressed up as factual allegations that a defendant was in a fiduciary relationship

with a plaintiff." *Id.* (citing *Ross v. FSG PrivatAir Inc.*, No. 03-CV-7292, 2004 WL 1837366, at *5 (S.D.N.Y. Aug. 17, 2004)).

Here, BBH acted only as an intermediary, acting at the direction of its own clients. Plaintiffs allege no facts to support the proposition that BBH even knew that any of the Plaintiffs had any interest in the Stock at issue. Even so, acting as a custodian and transferor at the direction of other third parties cannot give rise to a fiduciary duty to Plaintiffs. Count X should be dismissed as to BBH.

### E.    Count XI (Bailment) Must be Dismissed.

Finally, plaintiffs allege that BBH violated its obligation as a "bailee" of the stock at issue, when it transferred it without first determining the rights and obligations of the parties. (Compl. ¶¶ 117-121.) Nowhere in the Complaint do the plaintiffs allege that any bailment agreement had been executed between any of the plaintiffs and BBH. In fact, plaintiffs have not alleged that any contractual privity existed between any of the plaintiffs and BBH at all. The Complaint merely states that the "Individual Plaintiffs" each executed an agreement with Mercatus under which the Stock at issue would be transferred to Banca MB's account at BBH. Plaintiffs do not allege any involvement of BBH other than being mentioned in the Agreements at issue. Nowhere do the plaintiffs allege that they put BBH on notice of their interest in any of the Stock transferred into BBH's accounts. Nor do they allege that BBH acknowledged that interest in any way. The Complaint does not allege that BBH knew that the Individual Plaintiffs existed at the time that the Stock was placed in Banca MB's account.

Under the law of bailments, in a bailment relationship, "a bailee acquires only a possessory interest in the property pledged, while the bailor retains legal and equitable title." *SEC v. Bancorp, Ltd*, 290 F.3d 80, 90 (2d Cir. 2002). A bailment is a "contractual arrangement, the terms of which may be either express or implied." *Rosza v. May Davis Group, Inc.*, 152 F.Supp.2d 526, 533 (S.D.N.Y. 2001). It is well-established that if there is no written contract of bailment, "the party asserting a bailment must establish, in light of all the circumstances, that the parties agreed to a

contract with definite terms." *Id.* (citing *Charles Hyman, Inc. v. Olsen Indus., Inc.*, 642 N.Y.S.2d 306, 309-310 (App. Div. 1st Dep't 1996)).

Here, plaintiffs do not allege that they entered into a written contract of bailment with BBH. Rather, plaintiffs allege that a bailment existed because BBH was unilaterally appointed a "custodian appointed under the Purchase Agreements which provided that the Stock was only to be delivered upon payment." (Compl. ¶119.) However, a review of the exhibits attached to the Complaint reveals that BBH was not a party to the underlying agreements between Mercatus and the Individual Plaintiffs. Thus, despite the fact that the parties to the Agreements gratuitously designated BBH as the custodian in the contracts, BBH did not agree to be the custodian for shares of stock pursuant to any of the agreements or otherwise acknowledge the existence of the Agreement in any way. Plaintiffs do not allege that BBH had any interaction, communication, or contact whatsoever with the plaintiffs that would have given rise to an implied contract of bailment. There being no bailment (whether expressed or implied) between BBH and plaintiffs, Count XI should be dismissed.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed, with prejudice.

Dated:    New York, New York
          March 10, 2008

SHEARMAN & STERLING LLP

BY: _____
          Steven F. Molo
          Zachary H. Johnson
          599 Lexington Avenue
          New York, NY 10022-6069
          Telephone: (212) 848-4000
          Facsimile: (212) 848-7179

          Attorneys for Defendants
          Brown Brothers Harriman & Co.

24