UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x
                                                          :
AXION POWER INTERNATIONAL, INC., WILLIAM    :
AND TRACEY AHEARN, h/w, SALLY FONNER and    :
JAMES SMITH, M.D.,                                        :
                                                          :
                        Plaintiffs,                       :    07 CV 11493 (RWS) (AJP)
                                                          :
            - against -                                   :
                                                          :
MERCATUS & PARTNERS, LTD., MF GLOBAL, INC,  :
MF GLOBAL, UK, LTD., CARI MASI, a/k/a CARY    :
MASI, BNP PARIBAS SECURITIES SERVICES,        :
BANCA MB S.P.A., DWIGHT PARSCALE, STEPHANO :
CEVALO, CONTINENTAL STOCK TRANSFER AND      :
TRUST COMPANY, PENSON FINANCIAL SERVICES,   :
INC., and BROWN BROTHERS HARRIMAN & CO.      :
                                                          :
                        Defendants.                       :
                                                          :
-------------------------------------------------------------------------x

## MEMORANDUM OF LAW OF MF GLOBAL, INC AND MF GLOBAL, UK, LTD. IN SUPPORT OF MOTION TO DISMISS COMPLAINT

Katten Muchin Rosenman LLP
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

*Attorneys for Defendants MF Global, Inc
and MF Global, UK, Ltd.*

84281272

TABLE OF CONTENTS

Table of Authorities ........................................................................................... ii

PRELIMINARY STATEMENT ....................................................................... 1

STATEMENT OF FACTS ................................................................................ 3

I.      The December 9, 2005 Stock Purchase Agreements ............................... 3

II.     The Individual Plaintiffs Cause Continental to Transfer the Axion
        Stock Pursuant to the Stock Purchase Agreements ................................. 4

III.    Mercatus Pledges the Axion Stock as Collateral for the MFGUK Loan ................. 4

IV.     The Threadbare Allegations Against the MFG Defendants .................... 5

ARGUMENT ..................................................................................................... 6

A.      The Applicable Standards for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss ......... 6

B.      The Section 10(b) Claim Should be Dismissed ...................................... 6

C.      The State Common Law Claims Should be Dismissed
        Under Article 8 of the Uniform Commercial Code ............................... 12

        1.      MFGUK is a "Protected Purchaser" Under U.C.C. § 8-303 ..................... 12

                (a)     The 2007 Telephone Call ................................................. 14

                (b)     The 2005 Annual Report .................................................. 16

        2.      MFGUK is a "Security Entitlement" Holder Under U.C.C.
                § 8-501(b)(1) ............................................................................ 20

D.      The State Common Law Claims Should be Dismissed Because
        Plaintiffs Cannot Plead the *Prima Facie* Elements of the Claims ......... 21

        1.      The Conversion Claim Should be Dismissed ........................... 21

        2.      The Unjust Enrichment Claim Should be Dismissed ............... 23

        3.      The Civil Conspiracy Claim Should be Dismissed .................. 24

        4.      The "Declaratory Action" Claim Should be Dismissed ........... 25

CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

FEDERAL CASES

*ATSI Communications, Inc. v. Shaar Fund, Ltd.,*
 493 F.3d 87 (2d Cir. 2007)....................................................................................8, 10

*Bell Atlantic Corp. v. Twombly,*
 127 S.Ct. 1955 (2007)....................................................................................................6

*BHC Interim Funding, L.P. v. Finantra Capital, Inc.,*
 283 F. Supp. 2d 968 (S.D.N.Y. 2003)...........................................................................9

*Calcutti v. SBU, Inc.,*
 223 F. Supp. 2d 517 (S.D.N.Y. 2002).........................................................................22

*Chill v. Gen. Elec. Co.,*
 101 F.3d 263 (2d Cir. 1996)..........................................................................................7

*Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.,*
 343 F.3d 189 (2d Cir. 2003)........................................................................................11

*G-I Holdings, Inc. v. Baron & Budd,*
 No. 01 Civ. 0216(RWS), 2003 WL 193502 (S.D.N.Y. Jan. 29, 2003) ...................15

*Goldman v. McMahon, Brafman, Morgan & Co.,*
 706 F.Supp. 256 (S.D.N.Y. 1989) ...............................................................................9

*Hi Pockets, Inc. v. The Music Conservatory of Westchester, Inc.,*
 192 F. Supp. 2d 143 (S.D.N.Y. 2002)........................................................................24

*In re Legel, Braswell Gov't Sec. Corp.,*
 648 F.2d 321 (5th Cir. 1981) .............................................................. 13, 17, 19-20

*Intellective, Inc. v. Mass. Mut. Life Ins. Co.,*
 190 F. Supp. 2d 600 (S.D.N.Y. 2002).......................................................................15

*King v. Fox,*
 No. 97 Civ. 4134 (RWS), 2004 WL 68397 (S.D.N.Y. Jan 14, 2004) ............... 22-23

*Lentell v. Merrill Lynch & Co., Inc.,*
 396 F.3d 161 (2d Cir. 2005)........................................................................................11

*Lewis v. Rosenfeld,*
 138 F. Supp. 2d 466 (S.D.N.Y. 2001)........................................................................24

*Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.,*
 485 F. Supp. 2d 387 (S.D.N.Y. 2007)........................................................................12

*Polar Int'l Brokerage Corp. v. Reeve*,
   196 F.R.D. 13 (S.D.N.Y. 2000), *on reconsideration in part,* 120 F. Supp. 2d 267
   (S.D.N.Y. 2000), *appeal dismissed in part on other grounds,* 258 F.3d 86 (2d Cir.
   2001). ........................................................................................................................ 8-9

*Press v. Chem. Inv. Services. Corp.*,
   166 F.3d 529 (2d Cir. 1999)..................................................................................................9

*Satterfield v. Haymond*,
   No. CIV.C-84-0646W, 1985 WL 17576 (D. Utah Oct. 13, 1985), *aff'd sub nom.*
   *Satterfield v. Shatkin Inv. Corp.,* 846 F.2d 636 (10th Cir. 1988)..........................................14, 17

*Seanto Exp. v. United Arab Agencies*,
   137 F. Supp. 2d 445 (S.D.N.Y. 2001)............................................................................... 22-23

*SEC v. Lehman Bros. Inc.*,
   157 F.3d 2 (1st Cir. 1998)....................................................................................................13

*Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*,
   128 S.Ct. 761 (2008)................................................................................................. 2, 7-8, 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   127 S.Ct. 2499 (2007)......................................................................................................6, 10

## STATE CASES

*Alexander & Alexander of New York, Inc. v. Fritzen*,
   68 N.Y.2d 968, 510 N.Y.S.2d 546 (1986) ...............................................................................24

*Brackett v. Griswold*,
   112 N.Y. 454 (1889) ...........................................................................................................24

*Center v. Hampton Affiliates, Inc.*,
   66 N.Y.2d 782, 497 N.Y.S.2d 898 (1985) ........................................................................14, 16

*Chemical Bank of Rochester v. Haskell*,
   51 N.Y.2d 85, 432 N.Y.S.2d 478 (1980) .......................................................................... 16-17

*Citibank, N.A. v. Walker*,
   12 A.D.3d 480, 787 N.Y.S.2d 48 (2d Dep't 2004) ..................................................................23

*Decker v. Yorkton Sec., Inc.*,
   106 Cal. App. 4th 1315, 131 Cal. Rptr. 2d 645 (Cal. Ct. App. 2003) ......................................16

*Paramount Film Distrib. Corp. v. State of New York*,
   30 N.Y.2d 415, 334 N.Y.S.2d 388 (1972), *cert. denied* 414 U.S. 829 (1973) ........................23

*PKO Television, Ltd. v. Time Life Films, Inc.,*
  169 A.D.2d 582, 564 N.Y.S.2d 434 (1st Dep't 1991) .............................................................22

*Ultramar Energy Ltd. v. Chase Manhattan Bank,*
  191 A.D.2d 86, 599 N.Y.S.2d 816 (1st Dep't 1993) .............................................................23

## FEDERAL STATUTES

17 C.F.R. 240.10b-5 ...........................................................................................................................7

15 U.S.C. 78j .......................................................................................................................... Passim

15 U.S.C. § 78u-4(b)(4) ..................................................................................................................11

15 U.S.C. §  78u-4(b)(1) ...................................................................................................................7

## STATE STATUTES

N.Y.U.C.C. § 1-201(44)(a) .............................................................................................................13

N.Y.U.C.C. § 8-102(a)(14) .............................................................................................................20

N.Y.U.C.C. § 8-105(a) ...................................................................................................................16

N.Y.U.C.C. § 8-105(a)(2) ...............................................................................................................16

N.Y.U.C.C. § 8-106 ........................................................................................................................13

N.Y.U.C.C. § 8-303 .................................................................................................................. Passim

N.Y.U.C.C. § 8-501 .....................................................................................................2, 12, 20, 22

N.Y.U.C.C. § 8-502 ................................................................................................................... 20-21

## OTHER AUTHORITIES

Fed. R. Civ. P. 9(b) ..................................................................................................................... 7-8

Fed. R. Civ. P. 12(b)(6) ...............................................................................................................1, 6

Defendants MF Global, UK, Ltd. ("MFGUK"), formerly known as Man Financial Limited, and MF Global, Inc ("MFG"), respectfully submit this memorandum of law in support of their motion to dismiss the Complaint filed against them pursuant to Fed. R. Civ. P. 12(b)(6).

## PRELIMINARY STATEMENT

MFGUK issued a loan to Defendant Mercatus & Partners, Ltd. ("Mercatus") pursuant to an agreement dated July 6, 2006. The loan was secured by shares of common stock of Plaintiff Axion Power International, Inc. ("Axion") and Mercatus represented in the loan agreement that it was a *bona fide* owner of the shares pledged as collateral for the loan. When Mercatus subsequently defaulted on the loan, MFGUK took possession of the shares as any other lender under similar circumstances would do.

Despite these undisputed facts, Plaintiffs have filed this securities fraud action against MFGUK and MFG (collectively, the "MFG Defendants"), alleging that Mercatus obtained the shares pledged as collateral for the July 6, 2006 loan under false pretenses seven months earlier, when it misrepresented to Plaintiffs William and Tracey Ahearn, Sally Fonner and James Smith, M.D. (collectively, the "Individual Plaintiffs") that it would pay for the shares pursuant to a series of stock purchase agreements dated December 9, 2005. According to the Complaint, Mercatus defrauded the Individual Plaintiffs by causing them to deliver the shares in December 2005 without paying the purchase price owed under the agreements.

While Plaintiffs may have a legitimate grievance against Mercatus in connection with the underlying stock purchase transactions, they have absolutely no basis for asserting any claims against the MFG Defendants. Unlike Mercatus, the MFG Defendants were not parties to nor signatories of the underlying stock purchase agreements and have never been in privity with Plaintiffs. Further, neither of the MFG Defendants is alleged to have made a single misstatement

or omission to Plaintiffs in connection with the December 2005 sale of the Axion shares to Mercatus, or to have had any other involvement in that transaction.

Nevertheless, based solely upon MFGUK's issuance of the July 6, 2006 loan to Mercatus, Plaintiffs disingenuously seek to lump the MFG Defendants together with Mercatus and allege that they can be held liable for participating in a "scheme" to commit fraud in violation of Section 10(b) of the Securities Exchange Act of 1934, as well as under state common law theories of conversion, conspiracy, unjust enrichment and declaratory judgment. These claims all should be dismissed.

First, the Complaint fails to plead the essential elements of a Section 10(b) claim against the MFG Defendants. Indeed, to the extent that the Complaint contains any well-pleaded facts, they demonstrate that the MFG Defendants <u>cannot</u> be held liable under Section 10(b) because <u>it was Mercatus</u> who breached the obligation to pay for the Axion shares at issue in December 2005 and the MFG Defendants had no involvement in or knowledge of that transaction. Contrary to Plaintiffs' assertion, MFGUK's issuance of an unrelated loan to Mercatus seven months after the allegedly fraudulent stock purchase transaction cannot give rise to a Section 10(b) claim against the MFG Defendants as a matter of law. Moreover, aside from their failure to plead the essential elements of a Section 10(b) claim, Plaintiffs' "scheme liability" theory is barred by the Supreme Court's recent decision in *Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 128 S.Ct. 761 (2008).

Second, all of the state common law claims asserted in the Complaint against the MFG Defendants are legally deficient and must be dismissed on the ground that MFGUK is a "protected purchaser" and a "security entitlement" holder with respect to the Axion shares under the Uniform Commercial Code. *See* N.Y.U.C.C. §§ 8-303, 8-501(b)(1) (2007). MFGUK's

status as a protected purchaser and security entitlement holder under the U.C.C. is a complete

defense to all of the state common law claims asserted in connection with this matter.

Third, the state common law claims of conversion, conspiracy, unjust enrichment and

declaratory judgment should be dismissed for the further reason that the Complaint fails to allege

the *prima facie* elements of such claims as a matter of law.

## STATEMENT OF FACTS

**I.      The December 9, 2005 Stock Purchase Agreements**

On December 9, 2005, the Individual Plaintiffs and an additional Axion shareholder

named William Monteith ("Monteith") each entered into two stock purchase agreements with

Mercatus entitled SICAV ONE and SICAV TWO (the "Stock Purchase Agreements"). Parrott

Decl.,[1] Exh. 1, Compl. ¶¶ 19, 28, 37, 46, Exhs. A-H. Pursuant to the Stock Purchase

Agreements, Mercatus agreed to purchase from the Individual Plaintiffs and Monteith a total of

500,000 shares of common stock of Axion for $1,500,000.[2] *Id.*

Under the Stock Purchase Agreements, Mercatus was required to pay the purchase price

of the Axion shares within thirty days after delivery of the shares to an account held at

Defendant Brown Brothers Harriman & Co. ("BBH"). Compl. ¶¶ 21, 30, 39, 48, Exhs. A-H ¶

3.14. It was the intention of Mercatus and the Individual Plaintiffs that Mercatus would raise the

funds required to pay for the shares by obtaining a loan from a third-party bank. Compl., Exhs.

A-H, ¶ 1.1. To obtain the loan, the Axion shares were required to be deposited into a "European

bank SICAV fund" and the "SICAV fund interests" were in turn to be used as collateral for the

loan. *Id.* BBH was designated to act as the custodial bank for the transaction and the Axion

---

[1] "Parrott Decl." refers to the Declaration of Matthew D. Parrott, dated March 14, 2008.

[2] Monteith subsequently assigned his rights under the Stock Purchase Agreements to Plaintiff Sally Fonner pursuant to an Assignment and Release Agreement dated May 22, 2007. Compl., page 6, note 1.

shares were to be held in an account at BBH in the name of Defendant Banca MB S.p.A. ("Banca MB") until such time as the purchase price for the shares was paid by Mercatus using the proceeds of the contemplated loan. *Id.* Significantly, neither of the MFG Defendants was a party to or signatory of the Stock Purchase Agreements. Compl., Exhs. A-H.

## II.    The Individual Plaintiffs Cause Continental to Transfer the Axion Stock Pursuant to the Stock Purchase Agreements

On or about December 12, 2005, the Individual Plaintiffs requested that their stock transfer agent, Defendant Continental Stock Transfer and Trust Company ("Continental"), deliver the Axion shares to BBH along with a letter describing the "delivery versus payment transaction where the purchaser may defer payment of the subscription price for up to 30 days" after delivery of the shares to BBH.    Compl. ¶¶ 24, 33, 42, 51, 57.  On December 13, 2005, Continental delivered 435,000 shares of the Axion stock to the BBH account pursuant to the Individual Plaintiffs' request. *Id.* ¶ 59a.  Thereafter, on December 27, 2005, the remaining 65,000 shares were delivered to the BBH account via electronic transfer through the Depository Trust Company ("DTC") system. *Id.* ¶ 59b.  However, Continental allegedly did not forward any letter or otherwise communicate to BBH that the Axion stock was to be held for "delayed delivery versus payment" of the purchase price. *Id.* ¶¶ 58, 90.  Thus, the Axion shares were delivered to the BBH account in December 2005 without any restrictions on further delivery even though Mercatus had not yet paid for the shares. *Id.*

## III.    Mercatus Pledges the Axion Stock as Collateral for the MFGUK Loan

On August 9 and 17, 2006, BBH delivered 410,000 shares of the Axion stock to Man Securities, Broker 7423 ("Man Securities"), an affiliate of MFGUK. *Id.* ¶¶ 59g-h.  The shares were transferred to Man Securities for use as collateral for a loan that MFGUK extended to Mercatus pursuant to a loan agreement dated July 6, 2006 between MFGUK and Mercatus (the

"MFGUK Loan"). Compl. ¶ 61. MFGUK routinely issues such loans in the ordinary course of its business as a futures commission merchant.

Notably, the Complaint alleges that Mercatus represented to the MFG Defendants that it was a *bona fide* owner of the Axion share collateral in its communications regarding the MFGUK Loan. *Id.* ¶¶ 63-64. However, Mercatus allegedly made that representation even though it purportedly had never paid the purchase price owed for the shares under the Stock Purchase Agreements. *Id.* ¶¶ 25, 34, 43, 52. Although not alleged in the Complaint, Mercatus subsequently defaulted on the loan and MFGUK took possession of the Axion share collateral.

## IV.    The Threadbare Allegations Against the MFG Defendants

The Complaint alleges that the MFG Defendants acted improperly when MFGUK issued the MFGUK Loan in July 2006, seven months after the underlying stock purchase transaction, because they knew or should have known at that time that Mercatus was not authorized to pledge the Axion shares as collateral for the loan. Compl. ¶¶ 61-68. To support this allegation, the Complaint vaguely alleges that: (1) employees of the MFG Defendants "contacted Axion by telephone" on an unspecified date and were informed that "the stock ... was not available as collateral" (Compl. ¶ 66); and (2) the MFG Defendants "would have known" that Mercatus "could not validly pledge" the shares as collateral if they had conducted a due diligence review of unspecified "publicly available filings" of Axion prior to issuing the loan (*id.* ¶¶ 63-65). However, as more fully shown below, the MFG Defendants' conduct seven months after the underlying stock transaction cannot form the basis for a securities fraud claim against the MFG Defendants as a matter of law, regardless of whether they were on notice that Mercatus "could not validly pledge" the shares. Moreover, even if the allegations regarding the telephone call and Axion's "publicly available filings" were relevant, they cannot save Plaintiffs' claims from

dismissal because: (1) the telephone call occurred long after the MFGUK Loan was issued; (2) the MFG Defendants were <u>not</u> obligated to review Axion's "publicly available filings" as a matter of law; and (3) even if the MFG Defendants could be charged with notice of Axion's filings, the filings do not suggest that Mercatus was barred from pledging the shares as collateral for a loan. Accordingly, the Complaint should be dismissed.

### ARGUMENT

**A.    The Applicable Standards for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court is empowered to dismiss a cause of action "for failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A court deciding a motion to dismiss filed pursuant to Rule 12(b)(6) must accept as true the factual allegations contained in the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S.Ct. 2499, 2509 (2007). The court is also required to consider "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Id.* at 2509. In order to survive dismissal pursuant to Rule 12(b)(6), the complaint must contain more than a "formulaic recitation" of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). At a minimum, the complaint must allege facts in support of each cause of action that rise above the "speculative level" and "state a claim to relief that is plausible on its face." *Id.* at 1965, 1974. If the factual allegations in the complaint have "not nudged [the] claims across the line from conceivable to plausible, the complaint must be dismissed." *Id.* at 1974.

**B.    The Section 10(b) Claim Should be Dismissed**

Count I of the Complaint alleges that the MFG Defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j (2000), and Rule 10b-5 promulgated thereunder,

17 C.F.R. 240.10b-5, by engaging in "unlawful and concerted activity to intentionally defraud and deceive Plaintiffs" in furtherance of a "scheme" to "effect the fraudulent transfer of the Stock without making the required payment...." Compl. ¶ 80. As noted above, the MFG Defendants allegedly participated in this "scheme" by accepting the Axion shares as collateral for the MFGUK Loan when they "knew or should have known" that the "required payment on the Stock had not been made...." *Id.* ¶ 80c.

A plaintiff asserting a cause of action under Section 10(b) must plead and prove: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 128 S.Ct. 761, 768 (2008); *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 266 (2d Cir. 1996). In addition, claims asserted under Section 10(b) are subject to heightened pleading requirements under Fed. R. Civ. P. 9(b), which require that the complaint state "the circumstances constituting fraud ... with particularity." Fed. R. Civ. P. 9(b); *see also Chill*, 101 F.3d at 267. This requirement is further heightened by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4(b) ("PSLRA"), which mandates that the complaint "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" in order to plead a *prima facie* claim under Section 10(b). 15 U.S.C. § 78u-4(b)(1). Notably, the Supreme Court recently held in *Stoneridge Inv. Partners, LLC v. Scientific Atlanta, Inc.*, 128 S.Ct. 761 (2008) that a plaintiff cannot circumvent the foregoing pleading requirements by asserting a generalized "scheme liability" theory against multiple defendants. Rather, the complaint must be dismissed unless it alleges with particularity "each of the elements or preconditions for liability" under Section 10(b) against each defendant.

*See Stoneridge*, 128 S.Ct. at 769 (affirming dismissal of "scheme liability" claim under § 10(b) and holding that "[t]he § 10(b) implied right of action does not extend to aiders and abettors. "The conduct of a secondary actor must satisfy each of the elements or preconditions for liability" under § 10(b)) (emphasis added).

Here, Plaintiffs' Section 10(b) "scheme liability" claim must be dismissed because the Complaint fails to allege with sufficient particularity any of the foregoing elements of a Section 10(b) claim against the MFG Defendants. First, the Complaint does not allege that the MFG Defendants made any specific "misrepresentation or omission" to Plaintiffs and therefore fails to satisfy the heightened pleading standards of Rule 9(b) and the PSLRA. *See Stoneridge*, 128 S.Ct. at 768; *ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007) (holding that a securities fraud claim based on misstatements must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent"). Plaintiffs do not and cannot allege this threshold element of a Section 10(b) claim against the MFG Defendants because the underlying sale transactions between Plaintiffs and Mercatus occurred in December 2005, whereas MFGUK is not alleged to have surfaced and issued the MFGUK Loan until July 2006, a full seven months later. Because the Complaint fails to allege that the MFG Defendants made any specific misrepresentation or omission to Plaintiffs at the time of the underlying sale transactions, or why the misrepresentation or omission was fraudulent when made, the Section 10(b) claim must be dismissed. *See Stoneridge*, 128 S.Ct. at 768; *cf. Polar Int'l Brokerage Corp. v. Reeve*, 196 F.R.D. 13, 16 (S.D.N.Y. 2000) (holding that "the theories of misrepresentation and omission asserted by plaintiffs" were deficient in that they "failed to explain how or why" the

allegedly improper statements were fraudulent), *on reconsideration in part,* 120 F. Supp. 2d 267 (S.D.N.Y. 2000), *appeal dismissed in part on other grounds,* 258 F.3d 86 (2d Cir. 2001).

Second, the Complaint is defective because it alleges no facts to establish the "in connection with" element of a Section 10(b) claim. It is well established that the "in connection with" requirement cannot be satisfied unless the plaintiff can plead and prove that the defendant engaged in fraudulent conduct prior to or contemporaneous with the purchase or sale of securities at issue. *See Goldman v. McMahon, Brafman, Morgan & Co.,* 706 F.Supp. 256, 259, n. 3 (S.D.N.Y. 1989) ("It is well established that to meet the 'in connection with' requirement of [Section 10(b)], the 'fraud practiced must have been prior to or contemporaneous with" the purchase or sale of securities'") (quotations in original).

Here, the Complaint alleges no facts to establish that the MFG Defendants committed any fraudulent acts prior to or contemporaneous with the underlying sale transaction between Plaintiffs and Mercatus. Plaintiffs cannot allege such facts because the only allegation tying the MFG Defendants to this matter is that MFGUK issued a loan to Mercatus seven months after the Individual Plaintiffs executed the Stock Purchase Agreements and transferred their shares to the account at BBH. *See id.* Accordingly, since the MFG Defendants' involvement in this matter post-dates the underlying sale transactions at issue, Plaintiffs cannot satisfy the "in connection with" requirement as a matter of law and the Section 10(b) claim must be dismissed. *See also Press v. Chem. Inv. Services. Corp.,* 166 F.3d 529, 537 (2d Cir. 1999) (the "in connection with" prong of a securities fraud claim requires a plaintiff to show that "the act complained of somehow induced the purchaser to purchase the security at issue"); *BHC Interim Funding, L.P. v. Finantra Capital, Inc.,* 283 F. Supp. 2d 968, 978 (S.D.N.Y. 2003) (misrepresentations made after a closing date "were not made 'in connection with' the purchase or sale of any security").

Third, the Section 10(b) claim also fails because the Complaint does not allege facts to establish a "strong" inference of scienter as required under Section 10(b). *ATSI*, 493 F.3d at 99. A plaintiff seeking to establish a strong inference of scienter must plead and prove facts showing that the defendant had a motive to commit fraud, or constituting strong circumstantial evidence of conscious misbehavior or recklessness. *Id.* However, an inference of scienter will only be considered strong if the facts alleged in the complaint are such that "a reasonable person" would believe that the inference is "cogent" and "at least as compelling as any opposing inference one could draw from" such facts. *Tellabs,* 127 S.Ct. at 2510 (emphasis added).

Here, the Complaint fails to allege facts establishing a "strong" inference of scienter because it merely alleges that MFGUK engaged in a legitimate arms-length transaction with Mercatus when it issued the MFGUK Loan in July 2006. Moreover, the assertion that the MFG Defendants acted with scienter in connection with the loan is not credible because Mercatus represented to the MFG Defendants that it was a *bona fide* owner of the Axion shares at the time the shares were pledged as collateral for the loan and no facts are alleged to show that the MFG Defendants had any reason to doubt the truth of that representation. Compl. ¶¶ 63-64. On these facts, Plaintiffs' suggestion that a reasonable person would infer that the MFG Defendants intended to defraud Plaintiffs or were otherwise complicit in Mercatus' failure to pay for the stock seven months before the MFGUK Loan was issued is absurd. Rather, the only reasonable inference to be drawn from these facts is that MFGUK accepted the Axion shares as collateral and issued the loan to Mercatus in the ordinary course of business, as any other lender under similar circumstances would do. *Tellabs*, 127 S.Ct at 2510.

Fourth, Plaintiffs cannot establish the reliance element of a Section 10(b) claim against the MFG Defendants. Once again, the Complaint makes clear that it was Mercatus who

breached the obligation to pay for the Axion shares at issue pursuant to the December 2005 Stock Purchase Agreements and it was that alleged failure to pay which caused injury to Plaintiffs in this matter. Because the shares were sold a full seven months before MFGUK accepted the stock as collateral from Mercatus in July 2006, the involvement of the MFG Defendants in this matter was "too remote" from the primary deceptive acts "to satisfy the requirement of reliance" under Section 10(b) as a matter of law. *See Stoneridge*, 128 S.Ct. at 770 (affirming decision dismissing Section 10(b) "scheme liability" claim because "respondents' deceptive acts ... are too remote to satisfy the requirement of reliance").

Fifth, the Section 10(b) claim is defective because the Complaint alleges no facts to establish the "causation" element of a Section 10(b) claim as a matter of law. The PSLRA provides that "in any private action arising under this chapter, the plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). In order to satisfy this requirement, the Complaint must allege both "transaction" and "loss" causation. *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005). Transaction causation requires an allegation that "but for" the defendant's alleged misconduct, the plaintiff would not have entered into the detrimental transaction. *Id.* Loss causation requires that the plaintiff allege the existence of a "causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *Id.* quoting *Emergent Capital Inv. Mgmt., LLC v. Stonepath Group, Inc.*, 343 F.3d 189, 197 (2d Cir. 2003). Here, Plaintiffs have not and cannot allege the existence of either "loss" causation or "transaction" causation because, to the extent that Plaintiffs suffered any harm in this matter, it was caused when Mercatus breached its purported contractual obligation to pay for

the shares pursuant to the December 9, 2005 Stock Purchase Agreements and not by any action or inaction on the part of the MFG Defendants in connection with the July 2006 MFGUK Loan.

In sum, the Section 10(b) claim contained in Count I of the Complaint should be dismissed as against the MFG Defendants.

## C.    The State Common Law Claims Should be Dismissed Under Article 8 of the Uniform Commercial Code

Aside from Plaintiffs' failure to plead a *prima facie* claim against the MFG Defendants under Section 10(b), the state common law claims for conversion, unjust enrichment, civil conspiracy and declaratory judgment are legally deficient and must be dismissed because MFGUK qualifies as: (1) a "protected purchaser" under § 8-303 of the U.C.C.; and (2) a "security entitlement" holder under § 8-501(b)(1) of the U.C.C.  N.Y.U.C.C. §§ 8-303, 8-501(b)(1).  MFGUK's status as a protected purchaser and security entitlement holder is a complete defense to the state common law claims asserted in the Complaint.

### 1.    MFGUK is a "Protected Purchaser" Under U.C.C. § 8-303

Under § 8-303, a lender that receives a certificated or uncertificated security as collateral for a loan is deemed a "protected purchaser" with respect to the collateral if it: "(1) gives value; (2) does not have notice of any adverse claim to the security; and (3) obtains control of the certificated or uncertificated security" as a result of the transaction.  *See* N.Y.U.C.C. § 8-303.[3] A protected purchaser "acquires its interest in the security free of any adverse claim" by a third party regardless of whether the third party has a viable claim against the transferor of the

---

[3]  The Complaint alleges that some or all of the Axion share collateral was transferred by electronic book entry within the DTC system.  Compl. ¶¶ 59a-b.  DTC is a trust company organized under the Banking Laws of New York and the transfer at issue involves MFGUK's DTC account. *See Olde Monmouth Stock Transfer Co., Inc. v. Depository Trust & Clearing Corp.*, 485 F. Supp. 2d 387, 389 n. 2 (S.D.N.Y. 2007).  Accordingly, we have analyzed the enforceability of the transfer and MFGUK's interest in the securities under New York law.

security. N.Y.U.C.C. § 8-303(b). Here, as shown below, the facts alleged in the Complaint establish that MFGUK qualifies as a "protected purchaser" under U.C.C. § 8-303.

First, the term "value" as used in § 8-303 expressly includes acquiring rights "in return for a binding commitment to extend credit or for the extension of immediately available credit whether or not drawn upon." See N.Y.U.C.C. § 1-201(44)(a). Here, the Complaint alleges that MFGUK gave "value" as required under § 8-303 when MFGUK extended the MFGUK Loan to Mercatus in July 2006 and received Mercatus' pledge of the Axion shares as collateral for the loan. See In re Legel, Braswell Gov't Sec. Corp., 648 F.2d 321, 326-27 (5th Cir. 1981) (holding that lender gave "value" under U.C.C. when it extended loans and borrower pledged two securities as collateral for loans); SEC v. Lehman Bros. Inc., 157 F.3d 2, 5 (1st Cir. 1998) (applying New York U.C.C. and recognizing that broker with security interest in margin account is purchaser for value).

Second, the Complaint alleges that BBH delivered the Axion shares to MFGUK's affiliate, Man Securities, in August 2006. Compl. ¶ 59g-h. The Complaint further alleges that MFGUK converted the shares to its own use after they were delivered to Man Securities. Id. ¶ 110. MFGUK's alleged receipt and conversion of the Axion shares establishes that MFGUK had "control" over the shares as required under § 8-303. See N.Y.U.C.C. § 8-106, Official Cmt. 1 ("Obtaining control means that the purchaser has taken whatever steps are necessary, given the manner in which the securities are held, to place itself in a position where it can have the securities sold, without further action by the owner").

Third, the facts alleged in the Complaint firmly establish that MFGUK "[did] not have notice of any adverse claim" to the Axion shares at the time the shares were pledged as collateral for the MFGUK Loan and therefore qualifies as a "protected purchaser" under § 8-303. See

N.Y.U.C.C. § 8-303. Indeed, as noted above, the Complaint explicitly alleges that Mercatus represented that it was a *bona fide* owner of the Axion share collateral in its communications with the MFG Defendants regarding the loan. Compl. ¶¶ 63-64.

In an ill-considered attempt to defeat MFGUK's status as a "protected purchaser," Plaintiffs allege that the MFG Defendants were on notice of an adverse claim to the Axion shares at the time the MFGUK Loan was issued because: (1) they "contacted Axion by telephone" on an unspecified date and were informed that "the stock ... was not available as collateral for a loan to Mercatus" (Compl. ¶¶ 66); and (2) they had a duty to conduct a "due diligence" review of Axion's "publicly available filings" before issuing the loan and such filings would have revealed that Mercatus "could not validly pledge" the shares as collateral for the loan (*id.* ¶¶ 62-65). As shown below, those arguments are absolutely baseless and the Complaint should be dismissed.

### (a)    The 2007 Telephone Call

To defeat MFGUK's status as a "protected purchaser" of the Axion shares under Section 8-303, the Complaint must allege facts establishing that the MFG Defendants were on notice of an adverse claim to the shares <u>at the time the shares were pledged</u>. *See Center v. Hampton Affiliates, Inc.*, 66 N.Y.2d 782, 785, 497 N.Y.S.2d 898, 900 (1985) (granting summary judgment for defendants where notice of adverse claim occurred after delivery of securities); *Satterfield v. Haymond*, No. CIV.C-84-0646W, 1985 WL 17576, at * 7 (D. Utah Oct. 31, 1985), *aff'd sub nom. Satterfield v. Shatkin Inv. Corp.,* 846 F.2d 636 (10th Cir. 1988) (rejecting claim that secured creditor had notice of adverse claim where letter indicating actual ownership of stock arrived after delivery of securities). However, Axion previously filed a complaint arising from the same set of operative facts forming the basis of the Complaint here in New York State Court, dated August 29, 2007 (the "State Court Complaint"). Parrott Decl., Exh. 3. The allegations in the

Complaint here and in the State Court Complaint make clear that the alleged telephone call did not occur until mid-2007 -- approximately one year <u>after</u> Mercatus obtained the MFGUK Loan and pledged the Axion stock as collateral -- and the telephone call is thus irrelevant.[4]

<u>First</u>, as more fully discussed in Section C(1)(a) below, the Complaint alleges that MFGUK and MFG did not conduct <u>any</u> "due diligence with respect to the *bona fides* of the ownership claim of Mercatus" before issuing the MFGUK Loan in 2006. Compl. ¶¶ 64-65. Having affirmatively asserted that the MFG Defendants did not conduct any due diligence before the issuance of the loan in 2006, Plaintiffs cannot simultaneously assert that the MFG Defendants placed a telephone call to Axion in 2006 for the purpose of discussing the *bona fides* of Mercatus' ownership of the shares before accepting them as collateral for the loan. Thus, Plaintiffs' own allegations regarding the MFG Defendants' purported failure to conduct due diligence make clear that the call must have occurred long <u>after</u> the MFGUK Loan was issued and that neither of them had notice of any dispute regarding Mercatus' ownership of the shares.

<u>Second</u>, although the Complaint fails to specify the date upon which the alleged telephone call occurred, the State Court Complaint filed by Axion specifically states that it was not until July 16, <u>2007</u> that "demand was made on Defendant MF Global [by Axion] to immediately return the shares." Parrott Decl., Exh. 3, State Court Compl. ¶ 17. The only reasonable inference one can draw from the timing of the July 16, 2007 demand is that it occurred simultaneous with or shortly after the alleged telephone call. Indeed, Plaintiffs would not have waited until 2007 to make their demand if the alleged telephone call had occurred in 2006 before the MFGUK Loan was issued. When these facts are considered together with the

---

[4] The Court is permitted to take judicial notice of allegations contained in the State Court Complaint for the purposes of deciding a motion to dismiss. *See G-I Holdings, Inc. v. Baron & Budd*, No. 01 Civ. 0216(RWS), 2003 WL 193502, at * 7 (S.D.N.Y. Jan. 29, 2003); *Intellective, Inc. v. Mass. Mut. Life Ins. Co.*, 190 F. Supp. 2d 600, 608, n. 1 (S.D.N.Y. 2002).

allegation that the MFG Defendants did not conduct any due diligence regarding the Axion shares in 2006, it is clear that the telephone call must have occurred in 2007, long *after* the shares were pledged. Accordingly, the telephone call alleged in the Complaint cannot establish that the MFG Defendants were on notice of an adverse claim at the time the MFGUK Loan was issued and is irrelevant as a matter of law. *See Center*, 66 N.Y.2d at 785, 497 N.Y.S.2d at 900.

### (b)    The 2005 Annual Report

In addition to its misguided allegations regarding the 2007 telephone call, the Complaint disingenuously suggests that the MFG Defendants "knew or should have known" in 2006 that Mercatus was not legally entitled to pledge the Axion shares as collateral for the MFGUK Loan because they had a purported "duty to conduct due diligence" concerning the "*bona fides* of the ownership claim of Mercatus" with respect to the Axion shares before accepting them as collateral. Compl. ¶¶ 64-65, 80. According to the Complaint, the MFG Defendants "would have known" that Mercatus "could not validly pledge the stock" as collateral if they had "read any of the publicly available filings by Axion" at that time. *Id.* That argument is flatly contradicted by the applicable standards governing securities transfers under the U.C.C. and by the language of Axion's public filings.

First, a "willful blindness" standard is applied under U.C.C. Article 8 to determine whether a party had notice of an adverse claim to a security. *See* N.Y.U.C.C. § 8-105(a). The "willful blindness" standard can only be met if the Complaint alleges that a party (a) had notice of facts indicating a "significant probability" of an adverse claim, and (b) "deliberately avoided" information that would have established the claim prior to accepting the transferred securities. *See* N.Y.U.C.C. § 8-105(a)(2), Official Cmt. 4; *Chemical Bank of Rochester v. Haskell*, 51 N.Y.2d 85, 93, 432 N.Y.S.2d 478, 481 (1980); *Decker v. Yorkton Sec., Inc.*, 106 Cal. App. 4th

1315, 1324, 131 Cal. Rptr. 2d 645, 651 (Cal. Ct. App. 2003) (issue under first prong of "willful blindness" test is "whether the broker was <u>subjectively</u> 'aware of' a significant probability of an adverse claim) (emphasis added). Thus, contrary to Plaintiffs' assertion, the U.C.C. does <u>not</u> impose any duty to investigate the *bona fides* of a transferor's claim that it owns securities pledged as collateral for a loan and instead requires a showing that the party had actual notice of or was willfully blind to facts indicating a "significant probability" of an adverse claim in order to defeat a party's status as a "protected purchaser." *See In re Legel*, 648 F.2d at 327-28 (U.C.C. does not impose duty of inquiry); *Chemical Bank*, 51 N.Y.2d at 93, 432 N.Y.S.2d at 481 ("There was no obligation on Chemical, as a purchaser of negotiable paper, to investigate the financial position of its transferor, or the progress of the underlying construction project [under the U.C.C.]"); *Satterfield*, 1985 WL 17576, at * 8 ("a purchaser does not have a duty to inquire into the rightfulness of the transfer even if he has notice that the security is held for a third party").

Here, the Complaint does not allege <u>any</u> facts to establish that the MFG Defendants had notice of facts indicating a "significant probability" of an adverse claim to the Axion share collateral in July 2006 and cannot satisfy the "willful blindness" standard. To the contrary, the Complaint alleges that Mercatus held itself out as a beneficial owner of the Axion shares and that the shares were delivered to MFGUK in fully negotiable form without any restrictions on MFGUK's ability to subsequently resell them. Thus, the Complaint fails to allege any facts to defeat MFGUK's status as a protected purchaser and must be dismissed.

Moreover, even if the MFG Defendants could be charged with knowledge of Axion's "publicly available filings" despite the clear applicability of the "willful blindness" standard, the filings do not contain any statements suggesting that Mercatus was prohibited from pledging shares of Axion stock as collateral for a loan from MFGUK in July 2006. The Complaint's

reference to "publicly available filings" appears to refer to the following description of a

transaction involving the acquisition of Axion stock by an unidentified "foreign partnership"

contained in Axion's 2005 Form 10-KSB Annual Report (the "2005 Annual Report"), filed on

April 17, 2006:

> The Company has entered into an agreement to sell 1 million shares of common
> stock to a foreign partnership at a price of $2.50 per share as part of a group of
> comparable transactions where the purchaser will contribute a portfolio of small
> public company securities to a pair of offshore funds in exchange for fund units,
> and then use the fund units as security for bank financing that will be used to pay
> for the underlying securities.
>
> Concurrently ... five holders [of Axion stock] agreed to resell a total of 500,000
> shares to the purchaser at a price of $3.00 per share ...
>
> The Company has not yet received the $2.96 million in anticipated net proceeds
> associated with the sale of 1 million shares to the foreign partnership... The
> purchase price was due in January 2006 and the agreements are presently in
> default. Management has been advised that the obligations will be paid before
> May 15, 2006, but can provide no guarantees that the purchaser will perform.

Parrott Decl., Exh. 2 at 49.

Contrary to Plaintiffs' assertion, these statements from Axion's 2005 Annual Report do

not suggest that Mercatus was prohibited from pledging the Axion stock as collateral for the

MFGUK Loan and would not support Plaintiffs' claim that the MFG Defendants acted

"wrongfully and illegally" in accepting the shares even if the MFG Defendants could be charged

with knowledge of the statements.

First, the 2005 Annual Report does not identify Mercatus by name and no one reading it

would have any reason to know that Mercatus was the referenced "foreign partnership." *Id.*

Thus, even if the MFG Defendants had seen the 2005 Annual Report, they would not have been

on notice of any prohibition on Mercatus' ability to pledge shares of Axion stock as collateral for

the MFGUK Loan in July 2006.

Second, the 2005 Annual Report states that Axion was anticipating that the Axion stock would be used by the foreign partnership "as security for bank financing" to fund the foreign partnership's acquisition of the stock. *Id.* at 49. Because this statement expressly confirms that the unidentified "foreign partnership" was empowered to pledge the Axion shares as security for a loan -- which is precisely what occurred -- it would not have suggested the existence of any prohibition on Mercatus' ability to pledge the shares as collateral even if the MFG Defendants had been able to discern that Mercatus was the referenced partnership.

Third, although the 2005 Annual Report states that "[t]he Company has not yet received the $2.96 million in anticipated net proceeds" in connection with the stock purchase transaction, it goes on to state that "[w]e have been advised that those obligations will be paid" by the foreign partnership "before May 15, 2006...." *Id.* at 49 (emphasis added). Far from suggesting that the foreign partnership was prohibited from transferring the shares, these statements confirm that Plaintiffs were seeking to move forward with the transaction at the time the 2005 Annual Report was filed. Such statements simply do not suggest that the foreign partnership -- much less Mercatus -- was barred from pledging the Axion stock as collateral for a loan in July 2006.

Fourth, while the 2005 Annual Report states that Axion itself had not received payment for the stock, it made no such statement regarding the Individual Plaintiffs. *Id.* at 49. Thus, even if the MFG Defendants had known that the "foreign partnership" was Mercatus, the 2005 Annual Report would not have created the impression that Mercatus had failed to pay the Individual Plaintiffs for their stock, which was therefore freely transferable.

The decision in *In re Legel, Braswell Gov't Securities Corp.*, 648 F.2d 321 (5th Cir. 1981) is on point. There, Westchester County Savings and Loan ("Westchester") was the owner of two Government National Mortgage Association ("GNMA") certificates. Westchester

pledged the certificates to Braswell Government Securities Corp. ("Braswell") as security for a loan. Braswell in turn repledged the certificates as collateral under a separate agreement between Braswell and its clearing agent, Irving Trust Company ("Irving"). Thereafter, Braswell became bankrupt and Westchester filed an adversary proceeding against Irving alleging that Irving was on notice of an adverse claim to the certificates when they were pledged by Braswell because the certificates explicitly identified Westchester as the registered owner. The court rejected Westchester's argument and held that Irving did not have notice of an adverse claim under the U.C.C. because "the certificates were delivered in fully negotiable form" and "mere registration of the certificates in Westchester's name did not impose upon Irving Trust a duty of inquiry" under the U.C.C. *Id.* at 327-28 (emphasis added).

Here, as in *In re Legel*, the Axion share collateral was "delivered in fully negotiable form" and MFGUK was not under any duty to inquire into Mercatus' claim that it was lawfully entitled to pledge the Axion shares as collateral for the MFGUK Loan. *Id.* Accordingly, Plaintiffs' due diligence argument should be rejected and the state common law claims should be dismissed under § 8-303 of the U.C.C.

### 2. MFGUK is a "Security Entitlement" Holder Under U.C.C. § 8-501(b)(1)

Section 8-501(b)(1) of the U.C.C. provides that "a person acquires a security entitlement if a securities intermediary ... indicates by book entry that a financial asset has been credited to the person's securities account." N.Y.U.C.C. § 8-501(b)(1). A "securities intermediary" is defined as "a clearing corporation" or "a person, including a bank or broker, that in the ordinary course of its business maintains securities accounts for others and is acting in that capacity." N.Y.U.C.C. § 8-102(a)(14). Under § 8-502 of the U.C.C., a person who receives a security entitlement for value and without notice of an adverse claim has a complete defense to any claim

to the asset. *See* N.Y.U.C.C. § 8-502 ("An action based on an adverse claim to a financial asset, whether framed in conversion, replevin, constructive trust, equitable lien, or other theory, may not be asserted against a person who acquires a security entitlement under Section 8-501 for value and without notice of the adverse claim").

Here, in addition to MFGUK's status as a "protected purchaser" of the Axion shares under § 8-303, the claims asserted against the MFG Defendants should be dismissed because MFGUK qualifies as a "security entitlement" holder under § 8-502. First, as more fully explained above, MFGUK gave "value" for the Axion shares when it extended the MFGUK Loan to Mercatus in July 2006. Second, neither of the MFG Defendants had notice of an adverse claim to the shares at that time. Third, the Axion shares were credited by book entry to MFGUK's account when they were delivered by BBH to Man Securities on August 9 and 17, 2006 as collateral for the loan. Accordingly, MFGUK qualifies as a security entitlement holder under § 8-502 and the claims asserted against the MFG Defendants should be dismissed. *See* N.Y.U.C.C. § 8-502.

**D.    The State Common Law Claims Should be Dismissed Because Plaintiffs Cannot Plead the *Prima Facie* Elements of the Claims**

In addition to being barred by MFGUK's status as a "protected purchaser" and "security entitlement" holder under the U.C.C., the state law claims asserted against the MFG Defendants for conversion, unjust enrichment, civil conspiracy and declaratory judgment should be dismissed on the ground that the Complaint fails to allege the *prima facie* elements of such claims as a matter of law.

**1.    The Conversion Claim Should be Dismissed**

The Complaint first attempts to assert a state law claim for conversion against the MFG Defendants. To state a claim for conversion, the Complaint must allege that "(1) the party

charged has acted without authorization, and (2) exercised dominion or a right of ownership over property belonging to another (3) the rightful owner makes a demand for the property, and (4) the demand for the return is refused." *Seanto Exp. v. United Arab Agencies*, 137 F. Supp. 2d 445, 451 (S.D.N.Y. 2001). In addition, the Complaint "must allege acts that are unlawful or wrongful, rather than mere violations of contractual rights, to state a claim for conversion." *Calcutti v. SBU, Inc.*, 223 F. Supp. 2d 517, 523 (S.D.N.Y. 2002).

Here, the Complaint fails to state a *prima facie* claim for conversion against the MFG Defendants because it does not and cannot allege facts to support a finding that MFGUK "acted without authorization" when it took possession of the Axion share collateral or that MFGUK's conduct was "unlawful or wrongful." *Calcutti*, 223 F. Supp. 2d at 523. To the contrary, as noted above, the Complaint alleges that Mercatus claimed in its communications with the MFG Defendants that it was a *bona fide* owner of the Axion shares when it pledged the shares as collateral for the MFGUK Loan. Compl. ¶¶ 63-64. It is absurd for Plaintiffs to suggest that MFGUK's acceptance of the Axion shares as collateral after receiving such a representation was unauthorized or otherwise improper. *See PKO Television, Ltd. v. Time Life Films, Inc.*, 169 A.D.2d 582, 583, 564 N.Y.S.2d 434, 435 (1st Dep't 1991) (granting motion to dismiss conversion claim where complaint "failed to plead wrongful or criminal behavior, as distinguished from acts that are a mere violation of contractual rights, sufficient to support the conversion cause of action").

Moreover, the Complaint does not allege the existence of the third and fourth elements of a conversion claim, *i.e.*, that Plaintiffs demanded that the MFG Defendants turn over the Axion shares to them and that such a demand for return was refused. *See Seanto*, 137 F. Supp. 2d at 451; *King v. Fox*, No. 97 Civ. 4134 (RWS), 2004 WL 68397, at * 7 (S.D.N.Y. Jan 14, 2004)

(rejecting conversion claim where plaintiff failed to establish that it demanded the return of the allegedly converted funds or that the demand was refused). Accordingly, the Complaint does not allege the *prima facie* elements of a conversion claim and the claim should be dismissed.

### 2.    The Unjust Enrichment Claim Should be Dismissed

The Complaint next asserts a claim for unjust enrichment, alleging that the MFG Defendants "through their improper conduct, obtained a benefit in the form of Stock and/or other value from Plaintiffs" but failed "to give[] value for the benefit conferred." Compl. ¶¶ 123-124.

To state a *prima facie* claim for unjust enrichment, the plaintiff must allege that: "(1) [defendant] was enriched, (2) at [plaintiff's] expense, and (3) that 'it is against equity and good conscience to permit [the defendant] to retain what is sought to be recovered.'" *Citibank, N.A. v. Walker*, 12 A.D.3d 480, 481, 787 N.Y.S.2d 48, 49 (2d Dep't 2004), quoting *Paramount Film Distrib. Corp. v. State of New York*, 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393 (1972), *cert. denied* 414 U.S. 829 (1973). Here, the Complaint does not allege the existence of any of the *prima facie* elements of an unjust enrichment claim. Indeed, the sole basis for Plaintiffs' unjust enrichment claim is that MFGUK accepted shares of Axion stock as collateral for a valid loan that it issued to Mercatus. However, creditors are not "unjustly enriched" when they receive collateral in return for the issuance of a valid loan, especially where it is undisputed that the borrower represented that it was a *bona fide* owner of the collateral, as Mercatus did here. *See Ultramar Energy Ltd. v. Chase Manhattan Bank*, 191 A.D.2d 86, 88, 599 N.Y.S.2d 816, 818 (1st Dep't 1993) (court dismissed unsecured creditor's claim that secured creditor was unjustly enriched by accepting payments from debtor in satisfaction of antecedent debt).

### 3.     The Civil Conspiracy Claim Should be Dismissed

The Complaint also purports to assert a claim against the MFG Defendants for "civil conspiracy." However, there is no independent tort of conspiracy under New York law and "[a]llegations of conspiracy are permitted only to connect the actions of separate defendants with an otherwise actionable tort." *Alexander & Alexander of New York, Inc. v. Fritzen*, 68 N.Y.2d 968, 969, 510 N.Y.S.2d 546, 547 (1986) (granting motion to dismiss civil conspiracy claim because "a mere conspiracy to commit a [tort] is never of itself a cause of action") *quoting Brackett v. Griswold*, 112 N.Y. 454, 467 (1889); *Hi Pockets, Inc. v. The Music Conservatory of Westchester, Inc.*, 192 F. Supp. 2d 143, 157 (S.D.N.Y. 2002) ("there is no independent tort of conspiracy under New York law"). Thus, a plaintiff seeking to establish the existence of a conspiracy "must allege an independent actionable tort and four additional elements: (1) a corrupt agreement between two or more parties; (2) an overt act in furtherance of the agreement; (3) a party's intentional participation in the furtherance of a plan or purpose; and (4) resulting damage or injury." *Lewis v. Rosenfeld*, 138 F. Supp. 2d 466, 479 (S.D.N.Y. 2001).

Here, the civil conspiracy claim should be dismissed because the Complaint does not allege the existence of an independent actionable tort. Moreover, the Complaint does not allege that the MFG Defendants were parties to any agreement to defraud Plaintiffs or that they participated in any acts in furtherance of any such agreement. Instead, the Complaint merely alleges that MFGUK issued the MFGUK Loan to Mercatus in July 2006, some seven months after Mercatus had already entered into the Stock Purchase Agreements with the Individual Plaintiffs. *See Lewis*, 138 F. Supp. 2d at 479 (granting motion to dismiss civil conspiracy claim because plaintiff failed to allege facts demonstrating that defendants "conspired together to

tortiously divert plaintiffs money to themselves"). Such allegations are insufficient as a matter of law and the civil conspiracy claim should therefore be dismissed.

### 4.    The "Declaratory Action" Claim Should be Dismissed

The final claim asserted in the Complaint against the MFG Defendants seeks a "declaratory judgment rendering all ... express and implied contracts unenforceable." Compl. ¶ 127. However, regardless of the merits of Plaintiffs' other claims, the declaratory judgment claim must be dismissed because the Complaint does not allege that any contract ever existed between Plaintiffs and the MFG Defendants. *Id.* In the absence of any contract between Plaintiffs and the MFG Defendants that could be declared "unenforceable," there is simply no basis for the Court to issue a declaratory judgment against the MFG Defendants and the claim should be dismissed.

### CONCLUSION

For the foregoing reasons, all claims against the MFG Defendants should be dismissed in their entirety and with prejudice.

Dated:  March 17, 2008

KATTEN MUCHIN ROSENMAN LLP

By: _____
Matthew D. Parrott (MDP-4623)
575 Madison Avenue
New York, New York 10022
Telephone:  (212) 940-8800

*Attorneys for Defendant MF Global, Inc
and MF Global, UK, Ltd.*