## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

| | | |
|---|---|---|
| AXION POWER INTERNATIONAL, INC., | : | |
| WILLIAM AND TRACY AHEARN, h/w, | : | |
| SALLY FONNER, and | : | **CIVIL ACTION** |
| JAMES SMITH, M.D. | : | **NUMBER** |
| **Plaintiffs** | : | |
| | : | |
| -against- | : | |
| | : | **COMPLAINT** |
| MERCATUS & PARTNERS, LTD., | : | |
| CARI MASI a/k/a CARY MASI | : | 07 CV 11493 |
| BANCA MB S.p.A., | : | |
| DWIGHT PARSCALE, | : | |
| STEPHANO CEVOLO, | : | **JURY TRIAL** |
| | : | **DEMANDED** |
| **Defendants.** | : | |

-----------------------------------------------------------------------X

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND THE COMPLAINT

Plaintiffs Axion Power International, Inc., William and Tracy Ahearn, h/w, Sally Fonner, and James Smith, M.D. (hereinafter collectively referred to as "Plaintiffs") by and through their undersigned attorneys Fellheimer & Eichen, LLP, hereby move this Honorable Court, pursuant to F.R.C.P. 15(a), for leave to Amend their Complaint (a copy of the proposed Amended Complaint is attached hereto as Exhibit "A").

1. Plaintiffs filed a Complaint in this matter on or about December 20, 2007.

2. On or about March 3, 2008, Plaintiff filed a Stipulation of Dismissal as to Defendant Continental Stock Transfer and Trust Company. (A copy of the Stipulation of Dismissal for Continental Stock Transfer and Trust Company is attached hereto as Exhibit "B").

3. On or about March 14, 2008, Plaintiffs filed a Stipulation of Dismissal as to Defendant BNP Paribas Securities Services. (A copy of the Stipulation of

Dismissal for BNP Paribas Securities Services is attached hereto as Exhibit "C").

4.  On or about March 24, 2008, Plaintiffs filed a Stipulation of Dismissal as to Defendants MF Global, Inc. and MF Global, UK, Ltd.  (A copy of the Stipulation of Dismissal for MF Global, Inc. and MF Global, UK, Ltd. is attached hereto as Exhibit "D").

5.  On or about March 24, 2008, Plaintiffs filed a Stipulation of Dismissal as to Defendant Penson Financial Securities.  (A copy of the Stipulation of Dismissal for Penson Financial Securities is attached hereto as Exhibit "E").

6.  On or about May 2, 2008, Plaintiffs filed a Notice Of Dismissal pursuant to FRCP 41(a)(1)(A)(i) as to Defendant Brown Brothers Harriman & Company. (A copy of the Notice of Dismissal is attached hereto as Exhibit "F").

7.  Defendant Dwight Parscale has filed a Motion To Dismiss under FRCP 12(b)(6) for failure to state a cause of action under which relief can be granted relating to the claim in Count I of the original complaint, which is a claim under the Federal Securities Laws and that jurisdiction based on the Federal Securities Laws is improper under the facts stated in the original complaint.

8.  Plaintiffs have not yet responded to Defendant Parscale's Motion To Dismiss.

9.  In the proposed Amended Complaint, as set forth more fully below,  Count I has been removed and jurisdiction is based solely on diversity of citizenship under 28 U.S.C. §1332.  The issues raised in Defendant Parscale's Motion To Dismiss will thus be completely mooted if leave is granted to Plaintiffs file the proposed Amended Complaint.

10.    In late March, 2008, Defendants Mercatus, Masi and Cevolo requested a temporary stay in the case so that they could make arrangements to return to Plaintiffs the stock which is the principal subject matter of this case, in return for which Plaintiffs would, upon receipt of the stock, withdraw their Complaint against all parties.

11.    Defendants Mercatus, Masi and Cevolo requested until May 1, 2008 to return the Axion Stock to Plaintiffs.

12.    By letter dated April 30, 2008 Defendant Cevolo to Defendant Masi forwarded to Plaintiffs counsel by Defendant Masi, the parties were informed that Defendants Mercatus, Masi and Cevolo were proposing a longer schedule for the return of the stock:

   a.   100,000 shares on or before May 16th;

   b.   200,000 shares on or before June 15th;

   c.   200,000 shares on or before July 15th.  (Hereinafter the "Cevolo Letter", a copy of the Cevolo Letter is attached hereto as Exhibit "G").

13.    Plaintiffs sent all parties copies of the Cevolo letter upon receipt on April 30, 2008.

14.    On May 1, 2008, counsel for all remaining parties and Defendant Masi, who is not yet represented by counsel other than Defendant Cevolo who chose not to participate, participated in a conference call during which  the requested delay was discussed.  The parties decided not to grant a further delay and to proceed with the litigation on the understanding that when and if Defendants Mercatus, Cevolo and Masi delivered the stock the parties would decide at that time

what action would be taken, though plaintiffs indicated a willingness to comply with the request for a dismissal if and when all of the stock is delivered.

15.     Plaintiffs now seek to Amend their Complaint to:

    a.  amend the basis for jurisdiction in this court to reflect diversity jurisdiction pursuant to 28 U.S.C.A. § 1332;

    b.  remove Count I (Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b)), Count III (Negligence), Count VIII (Conversion), and Count XI (Bailment);

16.     Amend the remaining Counts against Defendant Mercatus & Partners, LTD., Cari Masi a/k/a Cary Masi, Dwight Parscale, Stephano Cevolo, and Banca MB, S.p.A.

17.     No party has filed an answer to the Complaint.

18.     The parties have not begun formal discovery in this matter and have yet to exchange initial disclosures as required by Fed. R. Civ. P. 26(a).

19.     As this matter is in its earliest stages and the parties have yet to exchange initial disclosures pursuant to F.R.C.P. 26(a), no prejudice would result to any party from granting leave to amend the Complaint.


Respectfully Submitted,
Fellheimer & Eichen LLP


/s/Alan S. Fellheimer
AF-1401
Fellheimer & Eichen LLP
Alan S. Fellheimer

44 Wall Street
12th Floor
New York, NY 10005
212.461.7142
Facsimile  212.461.2223

***Attorneys for Plaintiffs***

Dated: May 6, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------------------X
AXION POWER INTERNATIONAL, INC.,          :
WILLIAM AND TRACY AHEARN, h/w,            :
SALLY FONNER, and                        :        CIVIL ACTION
JAMES SMITH, M.D.                         :        NUMBER
                    Plaintiffs           :
                                         :
      -against-                          :
                                         :        COMPLAINT
MERCATUS & PARTNERS, LTD.,                :
CARI MASI a/k/a CARY MASI                 :        07 CV 11493
BANCA MB S.p.A.,                          :
DWIGHT PARSCALE,                          :
STEPHANO CEVOLO,                          :        JURY TRIAL
                                         :        DEMANDED
                    Defendants.          :
------------------------------------------------------------------------X
```

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'**
**MOTION TO AMEND THEIR COMPLAINT**

**I.    INTRODUCTION**

Plaintiffs Axion Power International, Inc., William and Tracy Ahearn, h/w, Sally Fonner, and James Smith, M.D. (hereinafter collectively referred to as "Plaintiffs") seek leave of this Honorable Court to Amend their Complaint to:

(1) amend the basis for jurisdiction in this court to reflect diversity jurisdiction pursuant to 28 U.S.C.A. § 1332 as to the remaining defendants in the case[1];

---

[1] Former Defendants Brown Brothers Harriman & Company, Penson Financial Services, Inc., Continental Stock Transfer & Trust Company, BNP Paribas Securities Services, MF Global, Inc. and MF Global, UK, Ltd. have been dismissed from the case.

(2) remove Count I (Securities Exchange Act of 1934, Section 10(b), 15 U.S.C. § 78j(b)), Count III (Negligence), Count VIII (Conversion), Count X (Fiduciary Duty), and Count XI (Bailment); and

(3) amend the remaining Counts against Defendants Mercatus & Partners, LTD. (hereinafter referred to as "Mercatus"), Cari Masi a/k/a Cary Masi (hereinafter referred to as "Masi"), Dwight Parscale (hereinafter referred to as "Parscale"), Stephano Cevolo (hereinafter referred to as "Cevolo") (Masi, Parscale and Cevolo hereinafter collectively referred to as the "Individual Defendants"), and Banca MB, S.p.A. (hereinafter referred to as "Banca MB").

## II.    FACTUAL BACKGROUND

This matter arises out of the fraudulent and improper sale and transfer of Plaintiffs' shares of stock (the "Axion Stock"). Plaintiffs entered into an agreement for the sale of the Axion Stock with Mercatus, in which the Plaintiff intended and expected to transfer the Axion Stock to Mercatus for placement in a European bank SICAV mutual fund. The Mercatus Defendants falsely represented that the US companies participating in the proposed transaction with Mercatus would have no payment risk because their shares would be placed into a safekeeping account in the United States by Banca MB at, Brown Brothers Harriman Company (hereinafter the "Custodial Account"), both of which were to hold the Axion Stock until the purchase price was paid to Plaintiffs.[2] The purchase price for the stock was never paid. Despite assurances, at the time that Plaintiffs demanded the return of the Axion Stock from the Custodial Account because

---

[2] The specific details of the transaction are set forth in the Amended Complaint, attached to Plaintiffs' Motion for Leave to File an Amended Complaint as Exhibit A.

the purchase price had never been paid, Plaintiffs learned that the Axion Stock had improperly been wrongfully transferred from the Custodial Account to various entities and then from those entities to others, with the stock ultimately transferred to  Penson Financial Securities and MF Global, Inc.  Mercatus, the Individual Defendants and Banca MB all knew or should have known that the Axion Stock should not have been transferred for any reason from the Custodial Account unless and  until the purchase price had been paid to Plaintiffs, which it never was.

Plaintiff filed a Complaint in this matter on or about December 20, 2007.  After much research and investigation and motions to dismiss filed by MF Global, Inc., Penson Financial Securities, Parscale and Brown Brothers Harriman, Plaintiff elected to dismiss Continental Stock Transfer and Trust Company, MF Global Inc., Penson Financial Securities, BNP Paribas Securities Services and Brown Brothers Harriman from the case pursuant to FRCP 41(A)(1).

Thereafter, the Mercatus, Masi and Cevolo (the "Mercatus Defendants") requested until May 1, 2008 to return the Axion Stock to Plaintiffs in return for a dismissal of the case against all parties.  All remaining parties agreed to comply with the request and a conference will all counsel was held on May 1, 2008, at which time the Mercatus Defendants advised Plaintiffs that they were not yet able to return the Axion Stock.  The Mercatus Defendants requested additional time, but the parties elected not to wait any longer.  The Mercatus Defendants' failure to return the Axion Stock at the contemplated date has left Plaintiffs no other recourse but to file the herein motion for leave to file and amended complaint and amend their complaint against the remaining Defendants.

3

### III.    THE APPLICABLE STANDARD UNDER RULE 15

Fed.R.Civ.P. 15(a) provides that after a responsive pleading has been filed, " . . . [A] party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Amendments to a complaint are appropriate when faced with a motion to dismiss under F.R.C.P. 12(b)(6). *Harnett v. Barr*, 2008 WL 618922 (N.D.N.Y., March 7, 2008); *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d. Cir. 2001).

Courts have shown a "strong liberality . . . in allowing amendments under Rule 15(a)." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In *Foman v. Davis*, the Supreme Court held as follows:

> Rule 15(a) declares that leave to amend shall be freely given when justice so requires; this mandate is to be heeded. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.

Id. at 182 (citation and internal quotation marks omitted).

The Court has broad discretion regarding whether to grant leave to amend. *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1971). However, in exercising its discretion, the District Court must permit amendments freely. *Wedgeworth v. Fiberboard Corp., Inc.*, 706 F.2d 541 (5th Cir. 1983).

In considering whether to permit an amendment, the court should apply such factors timeliness, undue delay, bad, faith, futility and prejudice to the adverse party. *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008). Undue prejudice is "the touchstone for denial of leave to amend." *Cornell & Co., Inc. v. Occupational Safety & Health Review Comm'n*, 573 F.23 820, 823 (3d Cir. 1978); *see also O'Hara v. Weeks*

4

*Marine, Inc.*, 294 F.3d 55, 77 (2d Cir. 2002). "Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.,* 654 F.2d 843, 856 (2d Cir.1981) (citations omitted); *see Foman v. Davis*, 371 U.S. 178, 182 (1962).

## IV.    DEFENDANTS WILL SUFFER NO PREJUDICE AS A RESULT OF THIS AMENDMENT

Should the Court permit Plaintiffs to Amend the Complaint, Defendants will suffer no prejudice. The remaining Defendants: Parscale, the Mercatus Defendants and Banca MB, will not suffer prejudice because this litigation is in its earliest stages. While one of the remaining Defendants, Parscale, has filed a Motion To Dismiss based on the Securities Fraud count contained in the original Complaint, that count has been removed from the Amended Complaint so that the issues raised in the Motion To Dismiss need not be adjudicated. Further, no defendant has filed an answer and absolutely no discovery has been exchanged, including initial disclosures in accordance with F.R.C.P. 26(a). Permitting Plaintiffs to amend their complaint will not prejudice any party.

**WHEREFORE,** Plaintiffs respectfully request that Plaintiffs' Motion For Leave To Amend The Complaint herein be granted.

Respectfully Submitted,
Fellheimer & Eichen LLP


/s/Alan S. Fellheimer_____
AF-1401
Fellheimer & Eichen LLP
Alan S. Fellheimer
Jolie G. Kahn
44 Wall Street
12th Floor
New York, NY 10005
212.461.7142
Facsimile  212.461.2223

*Attorneys for Plaintiffs*

Dated: May 6, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------------X

| | | |
|---|---|---|
| AXION POWER INTERNATIONAL, INC., | : | |
| WILLIAM AND TRACY AHEARN, h/w, | : | |
| SALLY FONNER, and | : | CIVIL ACTION |
| JAMES SMITH, M.D. | : | NUMBER |
|       **Plaintiffs** | : | |
| | : | |
| -against- | : | |
| | : | **COMPLAINT** |
| MERCATUS & PARTNERS, LTD., | : | |
| CARI MASI a/k/a CARY MASI | : | **07 CV 11493** |
| BANCA MB S.p.A., | : | |
| DWIGHT PARSCALE, | : | |
| STEPHANO CEVALO, | : | **JURY TRIAL** |
| | : | **DEMANDED** |
|       **Defendants.** | : | |

-----------------------------------------------------------------------X

<u>ORDER</u>

**AND NOW,** this _____ day of _____, 2008,

upon consideration of Plaintiffs' Motion for Leave to File an Amended Complaint, and

any reply thereto, it is hereby ORDRED that Plaintiffs may amend the Complaint in the

above-captioned matter, in the form attached to the Motion.

BY THE COURT:

_____

                              D.J.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

| | | |
|---|---|---|
| AXION POWER INTERNATIONAL, INC., | : | |
| WILLIAM AND TRACY AHEARN, h/w, | : | |
| SALLY FONNER, and | : | **CIVIL ACTION** |
| JAMES SMITH, M.D. | : | **NUMBER** |
| Plaintiffs | : | |
| | : | |
| -against- | : | |
| | : | **COMPLAINT** |
| MERCATUS & PARTNERS, LTD., | : | |
| CARI MASI a/k/a CARY MASI | : | 07 CV 11493 |
| BANCA MB S.p.A., | : | |
| DWIGHT PARSCALE, | : | |
| STEPHANO CEVALO, | : | **JURY TRIAL** |
| | : | **DEMANDED** |
| Defendants. | : | |

---------------------------------------------------------------------X

**CERTIFICATE OF SERVICE**

I, Alan S. Fellheimer, Esquire, of the Firm Fellheimer & Eichen, LLP, counsel to

all Plaintiffs, hereby certify that on May 6, 2008, I caused a copy of Plaintiffs' Motion To

Amend their Complaint  to be filed electronically and is available for viewing and

downloading from the ECF system.  Same was also electronically served on the counsel

for the Defendants on May 6, 2008.

William P. Frank, Esquire
Donald Lewis, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
wfrank@skadden.com and Donald.Lewis@skadden.com
*Counsel for Defendant Banca MB S.p.A.*

James A. Prestiano, Esquire
THE LAW OFFICES OF JAMES A. PRESTIANO, P.C.
631 Commack Road, Suite 2A
Commack, New York, 11725
james@prestianolaw.com
*Counsel for Defendant Dwight Parscale*

1

Mr.  Cari Masi
Amedeo67@aol.com

Dr . Stephano Cevolo
info@mercatuspartners.com

Mercatus & Partners, Limited
info@mercatuspartners.com

Dated: May 6, 2008                          /s/ Alan S. Fellheimer
                                            Alan S. Fellheimer (AF-1401)
                                            Counsel For Plaintiffs

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Axion Power International, Inc., William and Tracy Ahearn, h/w

Sally Fonner, and James Smith, M.D.

*(In the space above enter the full name(s) of the plaintiff(s)/petitioner(s).)*

07  Civ. 11493  (RS) (AJP)

- against -

**NOTICE OF MOTION**

Mercatus & Partners, Ltd., Cari Masi, a/k/a Cary Masi,

Stephano Cevolo, Banca MB S.p.A., and Dwight Parscale

*(In the space above enter the full name(s) of the defendant(s)/respondent(s).)*

**PLEASE TAKE NOTICE** that upon the annexed affirmation of Alan S. Fellheimer,

*(name)*

affirmed on May 6, 2008, and upon the exhibits attached thereto *(delete if no*

*(date)*

*exhibits)*, the accompanying Memorandum of Law in support of this motion *(delete if there is no*

*Memorandum of Law)*, and the pleadings herein, plaintiff/defendant will move this Court, before

*(circle one)*

Robert W. Sweet, United States District/Magistrate Judge, for an order

*(Judge's name)*                                   *(circle one)*

pursuant to Rule 15(a) of the Federal Rules of Civil Procedure granting *(state what you want the*

*Judge to order)*: Leave to file an amended complaint as in the attached proposed amended complaint.

**I declare under penalty of perjury that the foregoing is true and correct.**

Dated: Philadelphia, PA

*(city)*          *(state)*

May 6, 2008

*(month)  (day)  (year)*

Signature _____

Address Alan Fellheimer  *Digitally signed by Alan Fellheimer DN: cn=Alan Fellheimer, o, ou, email=akim@fellheimer.net, c=US Date: 2008.05.06 17:16:13 -04'00'*

44 Wall Street, 12th Floor, New York, NY 10005

Telephone Number (212) 461-7142

Fax Number *(if you have one)* (212) 461-2223

*Rev. 05/2007*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

| | | |
|---|---|---|
| AXION POWER INTERNATIONAL, INC | : | |
| WILLIAM AND TRACY AHEARN, h/w, | : | |
| SALLY FONNER, and | : | CIVIL ACTION |
| JAMES SMITH, M.D. | : | NUMBER |
| **Plaintiffs** | : | |
| | : | |
| -against- | : | |
| | : | **AMENDED COMPLAINT** |
| MERCATUS & PARTNERS, LTD., | : | |
| CARI MASI a/k/a CARY MASI | : | |
| STEPHEN CEVOLO, | : | 07:CV 11493 |
| BANCA MB S.p.A.,  AND | : | |
| DWIGHT PARSCALE, | : | JURY TRIAL |
| | : | DEMANDED |
| | : | |
| | : | Judge Robert W. Sweet |
| | : | Magistrate Judge |
| **Defendants.** | : | Andrew J. Peck |

-----------------------------------------------------------------------X

## AMENDED COMPLAINT

Plaintiffs, Axion Power International, Inc., William and Tracey Ahearn, h/w, Sally Fonner and James Smith, M.D., by their undersigned attorneys, Fellheimer & Eichen, LLP, for their Complaint against Mercatus & Partners, Ltd. (hereinafter "Mercatus"); Cari Masi a/k/a Cary Masi (hereinafter "Masi"); Banca MB S.p.A. (hereinafter "Banca MB"); Dwight Parscale (hereinafter "Parscale"); and Stephen Cevolo (hereinafter "Cevolo") (collectively the "Defendants"), allege as follows:

## JURISDICTION AND VENUE

1.    This Court has jurisdiction over the common law claims against Mercatus and  Banca MB pursuant to 28 U.S.C. §1332 as Plaintiffs are citizens of the United States and Defendants Banca MB, Mercatus and Cevolo are subjects of a foreign nation and the amount in controversy exceeds seventy-five ($75,000) thousand dollars.

2.    This Court has jurisdiction over the common law claims against Parscale and Masi pursuant to 28 U.S.C. §1332 because Plaintiffs are citizens of the states of Pennsylvania, New Jersey New York and Florida and Defendants Parscale and Masi  are citizens of the States of Texas and Georgia and the amount in controversy exceeds seventy-five thousand dollars ($75,000).

3.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## THE PARTIES

4.    Axion is a Delaware Corporation with its principal place of business at 3602 Clover Lane New Castle, Pennsylvania 16105.

5.    William and Tracy Ahearn are individuals, husband and wife, residing at 15 White Road, Ringwood, New Jersey, 07456 (hereinafter the "Ahearns").

6.    Sally Fonner is an individual residing at 1268 Bayshore Boulevard, Dunedin, Florida 34698 (hereinafter "Fonner")

7.      James Smith, M.D. is an individual residing at 7295 East Quaker Road, Orchard Park,

New York 14127 (hereinafter "Smith").

8.      The Ahearns, Fonner, and Smith shall sometimes be referred to collectively as the "Axion

Shareholders".

9.      Mercatus & Partners LTD, (hereinafter "Mercatus") is a United Kingdom corporation with

its principal place of business in Italy and a place of business in Alpharetta, Georgia.

Mercatus has consented in writing to the jurisdiction of the Courts of the State of New

York in this matter in Exhibits A through H attached to this Complaint and incorporated

herein.

10.     Cari Masi a/k/a Cary Masi (hereinafter "Masi") is an individual, Chief Executive Officer

of Mercatus, with an address at 4100 Nine McFarlane, Drive, Alpharetta, GA, 30004.  On

information and belief, Masi does business in New York.

11.     Stephen Cevolo (hereinafter "Cevolo") is an individual officer of Mercatus residing in

Italy.  On information and belief, Cevolo does business in New York.

12.     Banca MB S.p.A. (hereinafter "Banca MB") is a bank with a principal office at Via Olona

2, 201 23 Milano, Italy.  On information and belief, Banca MB does business in New

York.

13.     Dwight Parscale (hereinafter "Parscale") is an individual and a lawyer with an office at

25920 Stone Canyon, San Antonio, Texas 78260.  On information and belief, Parscale

does business in New York.

## **FACTS**

### **The Mercatus Transaction Proposed to Plaintiffs**

14.     In the fall of 2005, Plaintiffs learned through their attorney, John Peterson, Esquire,  that

Mercatus, an investment bank headquartered in the United Kingdom,  had a representative

in the United States for the purpose of purchasing a combination of  free trading shares

and restricted shares under SEC Rule 144 from multiple small  United States public

companies for placement in a European bank SICAV mutual fund (sometimes referred to

herein in its entirety as the "Mercatus Transaction").

15.     Mercatus' representative, Bret Pojunis, (hereinafter "Pojunis") falsely represented to

Axion's attorney that the United States companies participating in the Mercatus

Transaction would have no payment risk because their shares would be placed into a

safekeeping, custodial account  in the United States maintained by Banca MB at Brown

Brothers Harriman & Co. (hereinafter referred to as "Brown Brothers" and/or "BBH&C"),

a custodial bank, and the shares so deposited would not  leave the safekeeping custodial

account until the purchase price had been paid in full.

16.     In addition, Axion was falsely told by Pojunis, Mercatus' representative, that if the

purchase price of the Axion shares was not timely paid, the shareholders who had

deposited their Axion shares into the custodial safekeeping account could contact BBH&C

directly and demand the return of their shares and that BBH&C would comply with such

demands.

17.   Axion was told by Pojunis that of the shares being sold to Mercatus under the program, one third of the number of shares were required to be unrestricted share from Axion.

18.   Axion deposited One Million (1,000,000) restricted shares and, together with its shareholders, deposited Five Hundred Thousand (500,000) unrestricted shares into the Banca MB account No. 4444550 at BBH&C as described in greater detail below.

19.   Some of the unrestricted shares of Axion were obtained by the Axion Shareholders exercising certain Axion Warrants which they held.  Axion agreed that the Axion Shareholders could defer payment of the exercise price of the shares obtained by the exercise of the Axion Warrants until the Axion Shareholders received the purchase price for the shares.

20.   Axion's counsel, John Petersen, received two forms of stock purchase agreements from Mercatus, one form for the stock purchase agreement for Axion and its restricted shares, and a second form for the stock purchase agreement for the purchase of unrestricted shares from the private individuals.

21.   In the stock purchase agreements received from Mercatus for both restricted and unrestricted shares, the following persons and entities were identified as having the following rolls and responsibilities in the Mercatus Transaction:

    a.   BBH&C  is identified as the custodial bank for the shares of stock in the Mercatus transaction;

    b.   Defendant Banca  MB, a customer of BBH&C, is identified as having an account agreement for Banca MB's account No 4444550 which is described as a safekeeping account at BBH&C into which companies and individuals

participating in the Mercatus Transaction will deposit their stock for safekeeping pending payment of the purchase price (hereinafter the "Banca MB Custodial Account"); and

c.       Defendant Parscale is identified as Attorney-In-Fact over the Banca MB Custodial Account with responsibility for payment of the purchase price for shares being made prior to the transfer of stock out of the Banca MB Custodial Account.

22.      Upon receiving the form stock purchase agreements, Plaintiff's counsel, John Petersen, confirmed that if Plaintiffs were to participate in the Mercatus Transaction, the shares of Axion stock offered for sale by Plaintiffs could not leave the Banca MB Custodial Account until payment was made. John Petersen's confirmation was made in direct telephone conversations in December of 2005 between John Petersen and the following persons: (i) Masi, Chief Executive Officer of Mercatus; (ii) George Parnell, Esquire an attorney at Holland + Knight representing Mercatus; and (iii) Parscale, the designated Attorney-In-Fact for the Banca MB Custodial Account, the account into which Plaintiffs' shares of Axion stock would be placed,.

23.      <u>The Ahearn - Mercatus Transaction:</u>

a.       On or about December 9, 2005, the Ahearns and Mercatus entered into two stock purchase and subscription agreements, the SICAV One Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "A" and SICAV Two Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "B" (hereinafter collectively referred to as the

Ahearn Purchase Agreements -  All of the stock purchase agreements with all parties shall be hereinafter collectively referred to as the "Stock Purchase Agreements") The Ahearn Purchase Agreements were negotiated, executed and delivered in the United States.

b.     Under the Ahearn Purchase Agreements, the Ahearns agreed to sell and Mercatus agreed to purchase Three Hundred and Eight Thousand Three Hundred (308,300) shares of the common stock of Axion (the "Ahearn Shares") for a purchase price of Three Dollars ($3.00) per share or an aggregate purchase price of Nine Hundred And Twenty Four Thousand Nine Hundred Dollars ($924,900), hereinafter the "Ahearn Purchase Price."

c.     The Ahearn Purchase Agreements each provide that Mercatus shall have up to thirty (30) days from the date of delivery of the Ahearn Shares to Banca MB Custodial Account  to pay the Ahearn Purchase Price (the "Allowed Time").

d.     The Ahearn Purchase Agreements provide that the Ahearn Shares were to remain on deposit in the Banca MB Custodial Account and could not be delivered to Mercatus or any third party  unless and until the Ahearn Purchase Price had been paid.

e.     The Ahearn Purchase Agreements provide that if the Ahearn Purchase Price was not paid within the Allowed Time, the Ahearns could recall the shares from the Banca MB Custodial Account.

f.     The Ahearns relied on the safekeeping provisions set out in the Ahearn Purchase Agreements and on the personal assurances received by their attorney John

Petersen in his conversations with Parscale, George Parnell, Esquire and Masi that their Axion Stock could not leave the Banca MB Custodial Account until payment was made, in deciding to enter into the Ahearn Purchase Agreements.

g.    The Axion shares belonging to the Ahearns were wrongfully transferred from the Banca MB Custodial Account, over which Parscale was Attorney-in-Fact, without the payment of the Ahearn Purchase Price and in violation of the terms of the Ahearn Purchase Agreements.

24.    <u>The Fonner - Mercatus Transaction</u>

a.    On or about December 9, 2005, Fonner and Mercatus entered into two stock purchase and subscription agreements, the SICAV One Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "C" and SICAV Two Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "D" (hereinafter collectively referred to as the "Fonner Purchase Agreements"). The Fonner Purchase Agreements were negotiated, executed and delivered in the United States.

b.    Under the Fonner Purchase Agreements, Ms. Fonner agreed to sell and Mercatus agreed to purchase Sixty Thousand (60,000) shares of the common stock of Axion (the "Fonner Shares") for a purchase price of Three Dollars ($3.00) per share or an aggregate purchase price of One Hundred and Eighty Thousand Nine Hundred Dollars ($180,000), hereinafter the "Fonner Purchase Price."

c.      The Fonner Purchase Agreements each provide that Mercatus shall have up to thirty (30) days from the date of delivery of the Fonner Shares to the Banca MB Custodial Account by Fonner to pay the Fonner Purchase Price (the "Allowed Time").

d.      The Fonner Purchase Agreements provide that if the Fonner Purchase Price was not paid within the Allowed Time, Fonner could recall the Fonner Shares from the Banca MB Custodial Account.

e.      On or about December 12, 2005, Fonner delivered or caused to be delivered to the Banca MB Custodial Account, Sixty Thousand (60,000) shares of Axion Common Stock pursuant to the Fonner Purchase Agreements.

f.      The Fonner Purchase Agreements provide that the Fonner Shares were to remain on deposit in the Banca MB Custodial Account  and could not  be delivered to Mercatus or any third party  unless and until the Fonner Purchase Price had been paid.

g.      The Fonner Purchase Agreement provides that if the Fonner Purchase Price was not paid within the Allowed Time, Fonner could recall the shares from the Banca MB Custodial Account..

h.      Fonner relied on the safekeeping provisions set out in the Fonner Purchase Agreements and on the assurances receive by her attorney John Petersen in his conversations with Parscale, George Parnell, Esquire and Masi that her Axion Stock could not leave the Banca MB Custodial Account until payment was made, in deciding to enter into the Fonner Purchase Agreements.

i.    The Axion shares belonging to Fonner were improperly transferred from the Banca
MB Custodial Account over which Parscale was Attorney-In-Fact without the
payment of the Fonner purchase price in violation of the terms of the Fonner
Purchase Agreements.

25.    <u>The William Monteith - Mercatus Transaction</u>

a.    On or about December 9, 2005, William Monteith[1] and Mercatus entered into two
stock purchase and subscription agreements, the SICAV One Securities Purchase
Agreement, a copy of which is attached hereto, incorporated herein as though set
out in full and marked as Exhibit "E"  and SICAV Two Securities Purchase
Agreement, a copy of which is attached hereto, incorporated herein as though set
out in full and marked as Exhibit "F" (hereinafter collectively referred to as the
Monteith Purchase Agreements).  The Monteith Purchase Agreements were
negotiated, executed and delivered in the United States.

b.    Under the Monteith Purchase Agreements, Mr. Monteith agreed to sell and
Mercatus agreed to purchase Sixty Five Thousand (65,000) shares of the common
stock of Axion (the "Monteith Shares") for a purchase price of Three Dollars
($3.00) per share or an aggregate purchase price of One Hundred and Ninety Five
Thousand Dollars ($195,000), hereinafter the "Monteith Purchase Price."

c.    The Monteith Purchase Agreements each provide that Mercatus shall have up to
thirty (30) days from the date of delivery of the Monteith Shares to the Banca MB

---

[1]Pursuant to an Assignment and Release Agreement, dated May 22, 2007, William
Monteith assigned his interest in his Axion stock and in Exhibits E and F to Plaintiff Fonner.

Custodial Account by Mr. Monteith to pay the Monteith Purchase Price (the "Allowed Time").

d.    The Monteith Purchase Agreements provide that the Monteith Shares were to remain on deposit in the Banca MB Custodial Account and  not to be delivered unless and until the Monteith Purchase Price had been paid.

e.    On or about December 12, 2005, Mr. Monteith delivered or caused to be delivered to the Banca MB Custodial Account, under the Monteith  Purchase Agreements, Sixty-five Thousand  (65,000) shares of Axion Common Stock pursuant to the Monteith Purchase Agreements.

f.    The Monteith Purchase Agreements provide that the Monteith Shares were to remain on deposit in the Banca MB Custodial Account and could not be delivered to Mercatus or any third party unless and until the Monteith Purchase Price had been paid.

g.    The Monteith Purchase Agreement provides that if the Monteith Purchase Price was not paid within the Allowed Time, Monteith could recall the shares from the Banca MB Custodial Account.

h.    Mr. Monteith relied on the safekeeping provisions set out in Monteith Purchase Agreements and on the assurances receive by his attorney John Petersen in his conversations with Parscale, George Parnell, Esquire and Masi that his Axion Stock could not leave the Banca MB Custodial Account until payment was made, in deciding to enter into the Monteith Purchase Agreements.

i.    The Axion shares belonging to Mr. Monteith were wrongfully transferred from the Banca MB Custodial Account (over which Dwight Parscale was Attorney-In-Fact) without the payment of the Monteith Purchase Price in violation of the terms of the Monteith Purchase Agreements.

26.    <u>The Smith-Mercatus Transaction</u>

a.    On or about December 9, 2005, Smith. and Mercatus entered into two stock purchase and subscription agreements, the SICAV One Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "G" and SICAV Two Securities Purchase Agreement, a copy of which is attached hereto, incorporated herein as though set out in full and marked as Exhibit "H" (hereinafter collectively referred to as the "Smith Purchase Agreements"). The Smith Purchase Agreements were negotiated, executed and delivered in the United States.

b.    Under the Smith Purchase Agreements, Smith agreed to sell and Mercatus agreed to purchase Sixty Six Thousand Seven Hundred (66,700) shares of the common stock of Axion (the "Smith Shares") for a purchase price of Three Dollars ($3.00) per share or an aggregate purchase price of Two Hundred Thousand one Hundred Dollars ($200,100), hereinafter the "Smith Purchase Price."

c.    The Smith Purchase Agreements each provide that Mercatus shall have up to thirty (30) days from the date of delivery of the Smith Shares to the Banca MB Custodial Account by Dr. Smith to pay the Smith Purchase Price (the "Allowed Time").

d.    On or about December 12, 2005, Smith delivered or caused to be delivered to the Banca MB Custodial Account, Sixty-Six Thousand Seven  Hundred (66,700) shares of Axion Common Stock pursuant to the instructions in the Smith Purchase Agreements.

e.    The Smith Purchase Agreements provide that the Smith Shares were to remain on deposit in the Banca MB Custodial Account and could not to be delivered to Mercatus or any third party  unless and until the Smith Purchase Price had been paid.

f.    The Smith Purchase Agreement provides that if the Smith Purchase Price was not paid within the Allowed Time, Smith could recall the shares from the Banca MB Custodial Account.

g.    Smith relied on the safekeeping provisions set out in Smith Purchase Agreements and on the assurances receive by his attorney John Petersen in his attorney's conversations with Parscale, George Parnell, Esquire and Masi that his Axion Stock could not leave Banca MB Custodial Account until payment was made, in deciding to enter into the Smith Purchase Agreements.

h.    The Smith Purchase Agreements provide that if the Smith Purchase Price was not paid within the Allowed Time, Smith could recall the shares from the Banca MB Custodial Account.

i.    On or about December 12, 2005, Smith delivered or caused to be delivered to the Banca MB Custodial Account, Sixty Six Thousand Seven Hundred  (66,700)

shares of Axion Common Stock pursuant to the terms and instructions of the Smith Purchase Agreements.

j.    The Axion shares belonging to Smith were improperly transferred from the Banca MB Custodial Account  (over which Dwight Parscale was Attorney-In-Fact) without the payment of the Smith Purchase Price in violation of the provisions of the Smith Purchase Agreements.

27.    Delivery of Plaintiffs' Stock to BBH&C

a.    On December 13, 2005, Continental Stock Transfer & Trust Company transmitted 435,000 Axion shares belonging to Plaintiffs Ahearn, Smith and Fonner to the Physical Receive Section of BBH&C for deposit into the Banca MB Custodial Account. A copy of the transmittal letter is attached as Exhibit "I".

b.    The delivery of the Ahearn, Smith, and Fonner shares to the Banca MB Custodial Account was in accordance with the instruction in Schedule A of each of the Private Stock Purchase Agreements.

c.    The delivery of the 65,000 Monteith shares to the Banca MB Custodial Account was made by Merrill Lynch with the same instructions as the delivery of the Ahearn, Smith and Fonner stock and the Monteith share were also deposited into the Banca MB Custodial Account.

28.    Misrepresentations by Defendants regarding Payment

a.    During the period from January 2006 until June of 2006  Mercatus, Masi, Cevolo and Parscale send numerous false and fraudulent letters and e-mails to Plaintiffs advising Plaintiffs that funding for the purchase of the Axion stock was imminent

with the intention of delaying Plaintiffs from demanding the return of the Axion

Stock from the Banca MB Custodial Account.   Examples of these false and

fraudulent letters and e-mails are:

i.       On January 13, 3006, at the expiration of the Allowed Time for payment

         for the Axion Stock, Cevolo sent a letter to Plaintiffs falsely advising them

         that payment for the portion of their shares from SICAV ONE would be

         made in 7 days and payment for the balance of their shares from SICAV

         TWO would be made 7 days after payment the payment for SICAV ONE.

         (A copy of Cevolo's letter [misdated as January 13, 2005] is attached

         hereto and incorporated herein as Exhibit "J".);

ii.      On January 26, 2006 Parscale, together with George Parnell, Esquire an

         attorney at Holland +Knight sent further false assurances to Plaintiffs that

         payment for the Axion Shares would take place between February 15th and

         February 20th of 2006. (A copy of this letter is attached hereto and

         incorporated herein as Exhibit "K");

iii.     On February 17, 2006 Parscale together with George Parnell, Esquire an

         attorney at Holland +Knight sent further false assurances to Plaintiffs that

         payment for the Axion Shares from SICAV ONE would take place before

         the end of February, 2006 and that the payments from SICAV TWO would

         take place during the first two weeks in March. (A copy of this letter is

         attached hereto and incorporated herein as Exhibit "L");

iv.   On March 9, 2006 Masi send a letter to Plaintiffs falsely advising Plaintiffs that payment for their Axion Shares would be made through Banca MB and Parscale on the 15, 17, 20, 21, 24, and 29 of March, 2006. (A copy of this letter is attached hereto and incorporated herein as Exhibit "M");

v.    On March 15, 2006, Masi again falsely told Plaintiffs, "The money is now being sent by each and every banking institution participating in our transaction in the order I noted in my last memo" and further advised Plaintiffs that the distribution of the money to Plaintiffs would be done by Parscale, the attorney in fact for the Banca MB Custodial Account.   (A copy of this letter is attached hereto and incorporated herein as Exhibit "N");

vi.   At the end of March, Masi (who also uses the name Amedeo) send another false communication to Plaintiffs advising them that he was authorized by Cevolo to tell Plaintiffs that Mercatus would receive its first payments in the next few days and that payments to Plaintiffs would take place a couple of days after that.  (A copy of this letter is attached hereto and incorporated herein as Exhibit "O"); and

vii.  During the month of March, 2006 Parscale was also in constant contact by telephone and e-mail with John Peterson, Plaintiff's counsel and Parscale sent Peterson a series of e-mails containing false representations that the purchase price for the Axion Shares would be made imminently. (Copies of the e-mails of March 20, 23, and 30 and April 7, 10 & 11 between Parscale

and John Peterson are attached hereto and incorporated herein as Exhibit
"P").

b.      During the months of April, May, and June Plaintiffs continued to receive
numerous false and fraudulent e-mails from Masi, and Parscale containing false
promises of imminent payment to Plaintiffs for the Axion Shares .

29.    <u>Demand for the Return of the Axion Shares</u>

a.      On June 27, 2006, John Petersen, counsel for Plaintiffs, sent a letter to BBH&C,
Defendants Parscale, Masi, and Mercatus, and George Parnell, Esquire of the firm
of Holland + Knight demanding, on behalf of Plaintiffs, the return of the Axion
shares that the Plaintiffs had deposited in the Banca MB Custodial Account.

b.      Plaintiffs' demand for return of the Axion shares was in accordance with the terms
of the Ahearn, Fonner, Monteith, and Smith Stock Purchase Agreements.

30.    Plaintiffs' Axion Shares were never returned and Plaintiffs subsequently learned that:

a.      On January 5, 2006, prior to the date of Plaintiff's demand for return of their
shares, Sixty Thousand (60,000) Shares of Plaintiff's Axion Stock had been
wrongfully transferred from the Banca MB Custodial Account without notice to
Plaintiffs.

b.      On January 17, 2006, prior to the date of Plaintiff's demand for return of their
shares, Four Hundred Thousand Shares (400,000) of Plaintiff's Axion Stock were
wrongfully transferred from the Banca MB Custodial Account to the account of
BNP Paribas Securities at BBH&C without notice to Plaintiffs;

c.     On May 11, 2006  prior to the date of Plaintiffs' demand for return of their shares, Thirty Thousand shares (30,000) of Plaintiffs' Axion stock were wrongfully transferred from the Banca MB Custodial Account  to Penson Financial Securities without notice to Plaintiffs;

d.     On May 12, 2006, Prior to the date of Plaintiff' demand for return of their shares, Sixty Thousand shares (60,000) of Plaintiffs' Axion stock were wrongfully transferred from the Banca MB Custodial Account to the account of Penson Financial Services without notice to Plaintiffs;

e.     On June 10, 2006,  prior to the date of Plaintiffs' demand for the return of their Axion Stock, Ten Thousand shares (10,000) of Plaintiffs' Axion Stock were wrongfully transferred to BNP Paribus Securities Services without notice to Plaintiffs.

f.     On August 9, 2006, after the date of Plaintiffs' demand for return of their Axion Stock, 121,278 share of Axion Stock were wrongfully transferred to MF Global, Inc., without notice to Plaintiffs; and

g.     On August 17, 2006, after the date of Plaintiffs' demand for return of their shares, 288,722 shares of Axion stock were wrongfully transferred to MF Global Inc without notice to Plaintiffs.

31.     Banca MB is named in Private Stock Purchase Agreements SICAV One and Private Stock Purchase Agreements SICAV Two set forth as Exhibits A through H of this Complaint as the "only asset manager of Mercatus and the shares are deposited into a safekeeping account for Banca MB in BBH."   Exhibits A through H each state in Schedule A that:

"*The shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under the appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase price is complete.* "

32.     Banca MB knew or should have known that it was being held out to others by its customer Mercatus as maintaining a safekeeping custody account for the purpose of receiving stock from customers of Mercatus. .

33.     Banca MB, as a United States broker-dealer, knew of the structure of the Mercatus Transaction and the program pursuant to which Plaintiffs were depositing Axion shares into Banca MB Custodial Account.

34.     Parscale, Cevolo and Masi knew that Plaintiffs' were relying on representations from Defendants that Plaintiffs' Axion stock could not be transferred from the Banca MB Custodial Account without payment of the purchase price being made to Plaintiffs.

35.     Banca MB knew or should have known that third parties would rely on the reputation of Banca MB as a custodian in making their decision to place their stock in the Banca MB Custodial Account.

36.     Banca MB has never advised any of the Plaintiffs as to why all of their Axion stock deposited in the Banca MB Custodial Account in connection with its Stock Purchase Agreements with Mercatus, came to be wrongfully transferred from the Banca MB Custodial Account prior to payment of the stock purchase price as required by the Stock Purchase Agreements.

37.     At all times relevant hereto, all Defendants had actual knowledge that the purchase price for Plaintiffs' Axion stock has never been paid.

38.     Parscale is an attorney at law and has participated in the Mercatus Transaction as Attorney in Fact for Mercatus' only asset manager, Banca MB, and was charged with control over Banca MB Custodial Account into which Plaintiffs deposited their Axion shares pending payment.

39.     As shown in Exhibits K, L, and P to this Complaint and which have been attached hereto and incorporated herein as though set forth at length, Parscale corresponded with Plaintiffs through letters and e-mails and assured Plaintiffs that the purchase price for their Axion shares would be paid imminently.

40.     As shown in Exhibits M  and N to this Complaint which are letters from Mercatus and Masi, Plaintiffs were being continually assured that Parscale, as Attorney in Fact over the Banca MB Custodial Account, would be responsible to Plaintiffs for the payment of the purchase price for the Axion stock.

41.     Parscale knew of the terms of the Stock Purchase Agreements that named him as Attorney in Fact for the Banca MB Custodial Account and knew that the Stock Purchase Agreements provided that Plaintiffs' shares of Axion Stock in the Banca MB Custodial Account were not permitted to be transferred from that account prior to payment to Plaintiffs of the stock purchase price.

42.     Parscale and was fully and personally involved in the false representations being made to Plaintiffs by Mercatus, Masi and Cevolo that payment of the purchase price of their shares

was imminent.  Examples of Parscale's false representations to Plaintiffs are contained in Exhibits K , L, and P.

43.    At all times relevant hereto, Mercatus Parscale, Masi and Cevolo made continuous representations to Plaintiffs and Plaintiffs' attorney, John Petersen, that as Attorney in Fact for the Banca MB Custodial Account, Parscale was in control of that account and that securities placed in said Banca MB Custodial Account could not  be transferred from that account without the authorization of Parscale, which authorization would not be given unless payment of the Stock Purchase Price had been made.

## COUNT I

### Breach of Contract Against Defendant  Mercatus

44.    Plaintiffs repeat and reallege paragraphs 1 through 43 as though fully set forth at length herein.

45.     In or about December 2005, Plaintiffs entered into multiple contracts with Defendant Mercatus for the sale and purchase of the Axion shares as detailed above.

46.    Plaintiffs met all conditions precedent in the Stock Purchase Agreements , including the delivery of the Axion Shares through Continental Stock Transfer Company to the Banca MB Custodial Account.

47.    Plaintiffs delivered their Axion shares to Continental Stock Transfer Company on the dates of the execution of the multiple contracts.

48.    Despite the clear terms of the Stock Purchase Agreements, Exhibits A through H to this

Complaint, Defendant Mercatus caused the Axion shares to be improperly transferred from the Banca MB Custodial Account without payment of the purchase price.

49.   Mercatus failed to return the Axion shares to Plaintiffs when demanded to do so.

50.   Defendant Mercatus manifestly breached its contracts with Plaintiffs set forth in Exhibits A through H attached hereto by failing to either return the Axion shares to Plaintiffs or pay the purchase price.

**WHEREFORE**, Plaintiffs respectfully request that Orders be entered herein:

A. Requiring Mercatus to pay the Axion shares purchase price set forth in Exhibits A through H attached hereto:

i.  the Ahearn Purchase Price of $924,000.00,

ii. the Fonner Purchase Price of $180,000.00,

iii. the Monteith Purchase Price of $195,000.00,

iv. the Smith Purchase Price of $200,100.00; and

v. interest from the date payment for the Axion Shares was due.

B.  Such other relief as this court deems just and proper.


## COUNT II

**Breach of Contract to which Plaintiffs were Third Party Beneficiaries**

**Against Defendant  Banca MB**


51.    Plaintiffs repeat and reallege paragraphs 1 through 50 as though fully set forth at length herein.

52.     Based on statements in the Stock Purchase Agreements attached to this Complaint as Exhibits A through H, and on normal commercial practice in the banking industry, there exists an account agreement between BBH&C and Banca MB for Banca MB Custodial Account in the name of Mercatus which account agreement required that shares placed in the Banca MB Custodial Account  could not be removed from the account until payment for the share was made to Plaintiffs (the "Banca MB Account Agreement")

53.     Plaintiffs were third party beneficiaries of the Banca MB Account Agreement.

54.     Banca MB, as a United States broker-dealer, had sufficient knowledge of the operation of its customer, Mercatus, to know the structure of the Mercatus Transaction and the program pursuant to which Plaintiffs were depositing Axion shares into the  Banca MB Custodial Account.

55.     Banca MB knew or should have known of its responsibilities and obligations to Plaintiffs as manifest by its inclusion in the Stock Purchase Agreements and the Banca MB Account Agreement.

56.     Based upon Banca MB's knowledge of their responsibilities and obligations to Plaintiffs, they knew or should have known that Banca MB Account Agreement was intended for Plaintiffs' benefit in either all or part of its contemplated performance and that the performance promised to Plaintiffs had not been made prior to the wrongful transfer of the Axion Shares from the Banca MB Custodial Account .

57.     Plaintiffs have been injured by the failure of Banca MB to perform in accordance with the Banca MB Account Agreement to which Plaintiffs were third party beneficiaries.

**WHEREFORE**, Plaintiffs respectfully request that Orders be entered herein:

   A. Requiring Banca MB to pay Plaintiffs the Axion share purchase price as set forth in

Exhibits A through H attached hereto as:

      i.  The Ahearn Purchase Price of $924,000.00,

      ii. the Fonner Purchase Price of $180,000.00,

      iii. the Monteith Purchase Price of $195,000.00,

      iv. the Smith Purchase Price of $200,100.00; and

      v. Interest from the date payment for the Axion Shares was due.

   B. Such other relief as this court deems just and proper.


### COUNT III

### Fraud in the Inducement against all Defendants


58.    Plaintiffs repeat and reallege paragraphs 1 through 57 as though fully set forth at length herein.

59.    The actions of Defendants Mercatus, Banca MB, Masi, Cevolo and Parscale as set forth herein were knowing false, fraudulent and made with the intention that Plaintiffs rely thereon in depositing their Axion shares in the Banca MB Custodial Account.

60.    Banca MB, as a United States broker-dealer, knew of the Mercatus Transaction through which share of stock from many United States corporations were being deposited into the Banca MB Custodial Account.

61.    Banca MB knew or should have know that the representations regarding the limitations on transfer of stock out of the Banca MB Custodial Account being made by Mercatus to Plaintiffs and other customers were false.

62.    Plaintiffs reasonably relied on the deliberately false representations of Defendants Mercatus, Masi, Cevolo and Parscale and in the knowing acquiescence of Banca MB to those fraudulent statements in depositing their shares of stock in Banca MB Custodial Account and in not demanding return of their Axion shares until June 27, 2006.

63.    Plaintiffs have been injured as a result of the knowingly false representations of Defendants Mercatus, Masi, Cevolo and Parscale as their Axion shares have been removed from the Banca MB Custodial Account  without payment.

**WHEREFORE**, Plaintiffs respectfully request that Orders be entered herein:

A.. Granting Judgment in favor of Plaintiffs and against Defendants Mercatus, Banca MB, Masi, Cevolo and Parscale  for damages caused to Plaintiffs by the Defendants' actions set forth above  in such amount as the trier of fact determines appropriate;

B. Granting Judgment in favor of Plaintiffs and against Defendants Mercatus, Masi, Cevolo, and Parscale the for punitive damages for the Defendants' intentional and wanton actions set forth above by way of punishment in such amount as the trier of fact deems appropriate;

**C.** Granting such other and further relief as this Honorable Court deems just and proper.

### COUNT IV

### Breach of the Implied Covenant of Good Faith and Fair Dealing

**Against Mercatus**

64.     Plaintiffs repeat and reallege paragraphs 1 through 63 as though fully set forth at length herein.

65.      Implicit in every contract is a covenant of good faith and fair dealing.

66.      Defendants each violated the implied covenant of good faith and fair dealing by acting in such a manner so as to deprive Plaintiffs of the benefit of its bargain in its contracts with Mercatus.

**WHEREFORE**, Plaintiffs respectfully request that Orders be entered herein:

A. Granting Judgment in favor of Plaintiffs and against Defendant Mercatus for damages caused to Plaintiffs by the Defendant's actions set forth above  in such amount as the trier of fact determines appropriate;

**B.** Granting such other and further relief as this Honorable Court deems just and proper.


**COUNT V**

**Misrepresentation**

**Against Defendant Masi Cevolo, Parscale  and  Mercatus,**


67.     Plaintiffs repeat and reallege paragraphs 1 through 66 as though fully set forth at length herein.

68.     Defendants Mercatus, Parscale, Masi and Cevolo each knowingly, maliciously and intentionally misrepresented: (a) the true nature of the transaction and (b) the release date

of the Purchase Price.

69.    Defendants Mercatus, Parscale, Masi and Cevolo each made materially false statements

with the intent that Plaintiffs rely upon same.

70.    Plaintiff did so reasonably rely on the materially false statements made by Defendants

Mercatus, Parscale, Masi and Cevolo to their detriment.

**WHEREFORE**, Plaintiffs respectfully request that Orders be entered herein:

A.        Granting Judgment in favor of Plaintiffs and against Defendants Mercatus,  Masi,

Cevolo and Parscale  for damages caused to Plaintiffs by the Defendants' actions

set forth above  in such amount as the trier of fact determines appropriate;

B.        Granting Judgment in favor of Plaintiffs and against Defendants Mercatus, the for

punitive damages for the Defendants' intentional and wanton actions set forth above

by way of punishment in such amount as the trier of fact deems appropriate; and

C.        Granting such other and further relief as this Honorable Court deems just and

proper.

## COUNT VI

### Breach of Fiduciary Duty

### Against Defendant Parscale

72.    Plaintiffs repeat and reallege paragraphs 1 through 71 as though fully set forth at length

herein.

73.     Defendants named Parscale as the Attorney-in Fact for the Banca MB Custodial Account in the Stock Purchase Agreements.

74.     Based on the Stock Purchase Agreements and the personal conversations between Parscale and Plaintiffs' attorney, John Peterson, Esquire, and in reliance on Parscale's integrity and fidelity as an attorney at law, Plaintiffs entrusted control over its Axion Shares to Parscale as Attorney in Fact over the Banca MB Custodial Account.

75.     Parscale had a fiduciary duty to Plaintiffs to perform his duties as Attorney in Fact over the Banca MB Custodial Account in accordance with the Stock Purchase Agreements and to notify Plaintiffs if representations to Plaintiffs in the Stock Purchase Agreements regarding the limitations on the transfers of securities out of the Banca MB Custodial Account were breached.

76.     Parscale knew that all the shares of Axion stock had been wrongfully transferred from the Banca MB Custodial Account without payment of the purchase price in violation of the terms of the Stock Purchase Agreements and in violation of his duty as Attorney in Fact and neither objected nor notified Plaintiffs.

77.     After the wrongful transfer of Plaintiffs shares of Axion stock from the Banca MB Custodial Account, Parscale made false and fraudulent representations to Plaintiffs that payment of the purchaser price for their shares was imminent and did not advise Plaintiffs that their shares of Axion Stock had already been wrongfully transferred.

79.     The acts of Parscale as herein set forth constitute a breach of his fiduciary duties to Plaintiffs.

**WHEREFORE**, Plaintiffs respectfully request that Orders be entered herein:

A. Granting Judgment in favor of Plaintiffs and against Defendant Parscale  for damages

caused to Plaintiffs by the Defendant's actions set forth above  in such amount as the trier

of fact determines appropriate;

B. Granting such other and further relief as this Honorable Court deems just and proper.

Respectfully submitted,

/s/ Alan S. Fellheimer
Fellheimer & Eichen LLP
Alan S. Fellheimer - AF1401
Jolie G. Kahn
44 Wall Street
12th Floor
New York, NY 10005
212.461.7142
Facsimile  212.461.2223

***Attorneys for Plaintiffs***

Dated: May 6, 2008

Exhibit "A"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, William and Traci Ahearn, husband and wife (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS**, Seller is the record owner of certain shares of the common stock of **Axion Power International, Inc.** that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS**, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS**, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 154,150 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $462,450, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE**, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1     This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2     Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 154,150 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $462,450.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a) <u>Validity and Status of the Securities</u>. The Shares have been duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b) <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c) <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d) <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in <u>Section 2.1</u> hereof.

2.2 <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(a) <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b) <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c) <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d) <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(e)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

# ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement. This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:        William and Traci Ahearn
                         15 White Road
                         Ringwood, New Jersey 07456
                         Tel: (973) 728-2049

With copies to:          Axion Power International Inc.
                         Attn: Thomas Granville, Chief executive officer
                         100 Caster Avenue
                         Woodbridge, Ontario, Canada L4L 5Y9
                         Phone: (905) 264-1991
                         Fax: (905) 264-2385

and                      Petersen & Fefer, attorneys
                         Château de Barberêche
                         Switzerland 1783 Barberêche
                         Phone: +4126 684-0500
                         Fax: +4126 684-0505

If to the Purchaser:     Mercatus & Partners, Limited
                         Via S. Roberto Bellarmino #4
                         00142 Roma, Italy
                         Phone: +3906 540 6470
                         Fax: +3906 542 75224

With copies to:  Cary Masi
        4100 Nine McFarlane Drive
        Alpharetta, Georgia 30004
        Phone: (678) 240-9070
        Fax: (678) 240-9069

and       Holland & Knight, LLP
        195 Broadway
        New York, NY 10007
        Attn: George Parnell, Esq.
        Tel: (212) 513-3417
        Fax: (212) 385-9010

3.4 Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5 Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6 Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7 No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8 Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9 Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10 Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11 Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | $225,870 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | $236,580 |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahearn |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**
**Mercatus & Partners, Limited**

**Sellers:**
**William Ahern**

By: _____
Name: Cari Masi
Title: Authorized Signatory

_____

**Traci Ahern**

_____

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| Transfer Amount: | $225,970 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A3 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $236,580 |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahearn |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:
Montsein & Partners, Limited

Name: Gary Maus
Title: Authorized Signatory

Sellers:
William Ahearn

Traci Ahearn



**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for <u>delayed delivery versus payment</u>. The certificates shall be registered as follows:

| | |
|---|---|
| **Shareholder name**<br>**and address**<br>**for stock certificate** | **Mercatus & Partners, Limited**<br>**Via S. Roberto Bellarmino #4**<br>**00142 Roma, Italy** |

**Corporate information (for transfer agent):**

| | |
|---|---|
| Company Number: | 04500047 |
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**Step Five**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**Step Six**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "B"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ~~ONE~~ *TWO*

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of **December 9, 2005**, between, William and Traci Ahearn, husband and wife (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS**, Seller is the record owner of certain shares of the common stock of **Axion Power International, Inc.** that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS**, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS**, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 154,150 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $462,450, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE**, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1     This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. <u>This agreement does not contemplate or provide for the immediate payment of the purchase price.</u> The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. <u>The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions.</u> The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2     Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 154,150 shares of the registered common stock of **Axion Power International, Inc.** (OTCBB: AXPW) held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $462,450.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     <u>Representations, Warranties and Agreements of the Seller</u>. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f) <u>Validity and Status of the Securities</u>. The Shares have been duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g) <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h) <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i) <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in <u>Section 2.1</u> hereof.

2.2 <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(j) <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k) <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l) <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m) <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    *Ability of Purchaser to Bear Risk of Investment.* The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    *Fees and Expenses.* Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    *Entire Agreement* This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    *Notices.* Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:          William and Traci Ahearn
                           15 White Road
                           Ringwood, New Jersey 07456
                           Tel: (973) 728-2049

With copies to:            Axion Power International Inc.
                           Attn: Thomas Granville, Chief executive officer
                           100 Caster Avenue
                           Woodbridge, Ontario, Canada L4L 5Y9
                           Phone: (905) 264-1991
                           Fax: (905) 264-2385

and                        Petersen & Fefer, attorneys
                           Château de Barberêche
                           Switzerland 1783 Barberêche
                           Phone: +4126 684-0500
                           Fax: +4126 684-0505

If to the Purchaser:       Mercatus & Partners, Limited
                           Via S. Roberto Bellarmino #4
                           00142 Roma, Italy
                           Phone: +3906 540 6470
                           Fax: +3906 542 75224

With copies to:

Cary Masi
4100 Nine McFarlane Drive
Alpharetta, Georgia 30004
Phone: (678) 240-9070
Fax: (678) 240-9069

and

Holland & Knight, LLP
195 Broadway
New York, NY 10007
Attn: George Parnell, Esq.
Tel: (212) 513-3417
Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitutea part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$225,870** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$236,580** |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahearn |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

   **IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**                                      **Sellers:**
**Mercatus & Partners, Limited**                    **William Ahern**


By: _____                       _____
Name: Cari Masi
Title: Authorized Signatory

                                                    **Traci Ahern**


                                                    _____

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below.

| | |
|---|---|
| Transfer Amount: | $225,870 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $236,560 |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William and Traci Ahearn |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser                                         Sellers
Marketing & Partners, Limited                     William Ahearn



By: Roy Masi
Its: Authorized Signatory                          Traci Ahearn

SCIAV Two - Page 5

**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for <u>delayed delivery versus payment</u>. The certificates shall be registered as follows:

**Shareholder name**          **Mercatus & Partners, Limited**
**and address**              **Via S. Roberto Bellarmino #4**
**for stock certificate**    **00142 Roma, Italy**

**Corporate information (for transfer agent):**

| | |
|---|---|
| Company Number: | 04500047 |
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**Step Five**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**Step Six**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "C"

## PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

PRIVATE STOCK PURCHASE AGREEMENT ("Agreement") is made and entered into as of December 9, 2005, between, <u>Sally Fonner</u>, (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

WHEREAS, Seller is the beneficial owner of 30,000 shares of the common stock of **Axion Power International, Inc. (OTCBB: AXPW)** that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

WHEREAS, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 30,000 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $90,000, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

NOW, THEREFORE, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. <u>This agreement does not contemplate or provide for the immediate payment of the purchase price.</u> The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. <u>The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions.</u> The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 30,000 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $90,000.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1    <u>Representations, Warranties and Agreements of the Seller</u>. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a)     _Validity and Status of the Securities_. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b)     _No Conflicts_. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c)     _Litigation; Proceedings_. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d)     _Placement Agent_. The Seller accepts and agrees that Artemis Capital Group, LLC ("_Artemis_") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in _Section 2.1_ hereof.

2.2     _Representations and Warranties of the Purchaser_. The Purchaser hereby represents and warrants to the Seller as follows:

(a)     _Organization; Authority_. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b)     _Receipt of Prospectus_. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c)     _Investment Intent_. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d)     _Experience of Purchaser_. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(e)  <u>Ability of Purchaser to Bear Risk of Investment</u>. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1  <u>Fees and Expenses</u>. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2  <u>Entire Agreement</u> This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3  <u>Notices</u>. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:     Sally Fonner
                      1268 Bayshore Boulevard
                      Dunedin, Florida 34698
                      Tel: (727) 734-7346
                      Fax: (727) 734-4617

With copies to:       Axion Power International Inc.
                      Attn: Thomas Granville, Chief executive officer
                      100 Caster Avenue
                      Woodbridge, Ontario, Canada L4L 5Y9
                      Phone: (905) 264-1991
                      Fax: (905) 264-2385

and                   Petersen & Fefer, attorneys
                      Château de Barberêche
                      Switzerland 1783 Barberêche
                      Phone: +4126 684-0500
                      Fax: +4126 684-0505

If to the Purchaser:  Mercatus & Partners, Limited
                      Via S. Roberto Bellarmino #4
                      00142 Roma, Italy
                      Phone: +3906 540 6470
                      Fax: +3906 542 75224

|                    |                              |
|--------------------|------------------------------|
| With copies to:    | Cary Masi                    |
|                    | 4100 Nine McFarlane Drive    |
|                    | Alpharetta, Georgia 30004    |
|                    | Phone: (678) 240-9070        |
|                    | Fax: (678) 240-9069          |
|                    |                              |
| and                | Holland & Knight, LLP        |
|                    | 195 Broadway                 |
|                    | New York, NY 10007           |
|                    | Attn: George Parnell, Esq.   |
|                    | Tel: (212) 513-3417          |
|                    | Fax: (212) 385-9010          |

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$69,900** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$20,100** |
| Beneficiary Bank: | Wachovia Bank |
| | Jacksonville, Florida |
| ABA No: | 063-000-021 |
| Acct. No. | **1010120589403** |
| Beneficiary Account Name: | Sally A. Fonner |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

    **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**
**Mercatus & Partners Limited**

**Sellers:**
**Sally Fonner**


By: _____

Name: Cari Masi
Title: Authorized Signatory

_____
Sally Fonner

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| Transfer Amount: | $69,996 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002084 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $20,100 |
| Beneficiary Bank: | Wachovia Bank |
| | Jacksonville, Florida |
| ABA No: | 063-000-021 |
| Acct. No. | 1010120589403 |
| Beneficiary Account Name: | Sally A. Fonner |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:
Mercatus & Partners Limited

By:
Name: Guy Mace
Title: Authorized Signatory

Sellers:
Sally Fonner

Sally Fonner

**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for <u>delayed delivery versus payment</u>. The certificates shall be registered as follows:

| | |
|---|---|
| **Shareholder name**<br>**and address**<br>**for stock certificate** | **Mercatus & Partners, Limited**<br>**Via S. Roberto Bellarmino #4**<br>**00142 Roma, Italy** |

**Corporate information (for transfer agent):**

| | |
|---|---|
| Company Number: | 04500047 |
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**<u>Step Five</u>**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**<u>Step Six</u>**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "D"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

PRIVATE STOCK PURCHASE AGREEMENT ("Agreement") is made and entered into as of December 9, 2005, between, Sally Fonner. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

WHEREAS, Seller is the beneficial owner of 30,000 shares of the common stock of **Axion Power International, Inc. (OTCBB: AXPW)** that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

WHEREAS, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 30,000 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $90,000, which represents a discount of approximately **22.5%** from the 30-day weighted average trading price of the referenced shares.

NOW, THEREFORE, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1     This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2     Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 30,000 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $90,000.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f)    <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g)    <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h)    <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i)    <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2    <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(j)    <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k)    <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l)    <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m)    <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:    Sally Fonner
1268 Bayshore Boulevard
Dunedin, Florida 34698
Tel: (727) 734-7346
Fax: (727) 734-4617

With copies to:    Axion Power International Inc.
Attn: Thomas Granville, Chief executive officer
100 Caster Avenue
Woodbridge, Ontario, Canada L4L 5Y9
Phone: (905) 264-1991
Fax: (905) 264-2385

and    Petersen & Fefer, attorneys
Château de Barberêche
Switzerland 1783 Barberêche
Phone: +4126 684-0500
Fax: +4126 684-0505

If to the Purchaser:    Mercatus & Partners, Limited
Via S. Roberto Bellarmino #4
00142 Roma, Italy
Phone: +3906 540 6470
Fax: +3906 542 75224

With copies to:        Cary Masi
                      4100 Nine McFarlane Drive
                      Alpharetta, Georgia 30004
                      Phone: (678) 240-9070
                      Fax: (678) 240-9069

and                  Holland & Knight, LLP
                      195 Broadway
                      New York, NY 10007
                      Attn: George Parnell, Esq.
                      Tel: (212) 513-3417
                      Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

**Transfer Amount:**          **$69,990**
Beneficiary Bank:             TD Canada Trust
                              Vaughan, Ontario L4L 9A9 Canada
SWIFT:                        TDOMCATTTOR
Transit No.                   189002004
Acct. No.                     7312015
Beneficiary Account Name:     Axion Power Corporation, U.S. Funds Account

**Transfer Amount:**          **$20,100**
Beneficiary Bank:             Wachovia Bank
                              Jacksonville, Florida
ABA No:                       063-000-021
Acct. No.                     **1010120589403**
Beneficiary Account Name:     Sally A. Fonner

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

        **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**                                      **Sellers:**
**Mercatus & Partners Limited**                     **Sally Fonner**


By: _____
Name: Cari Masi                                     _____
Title: Authorized Signatory                         Sally Fonner

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| Transfer Amount: | $69,996 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189602004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $20,100 |
| Beneficiary Bank: | Wachovia Bank |
| | Jacksonville, Florida |
| ABA No: | 063-000-021 |
| Acct. No. | 1010120589403 |
| Beneficiary Account Name: | Sally A. Fonner |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Sellers:
Sally Fonner

_Sally_ (signature)
Sally Fonner

SCIAV Two - Page 5

**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for delayed delivery versus payment. The certificates shall be registered as follows:

| | |
|---|---|
| Shareholder name and address for stock certificate | **Mercatus & Partners, Limited**<br>**Via S. Roberto Bellarmino #4**<br>**00142 Roma, Italy** |

**Corporate information (for transfer agent):**

| | |
|---|---|
| Company Number: | 04500047 |
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**Step Five**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**Step Six**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "E"

## PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

PRIVATE STOCK PURCHASE AGREEMENT ("Agreement") is made and entered into as of December 9, 2005, between, William Monteith (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

WHEREAS, Seller is the beneficial owner of 32,500 shares of the common stock of Axion Power International, Inc. that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

WHEREAS, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of Axion Power International, Inc. dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 32,500 shares of Axion Power International, Inc. at a price of $3.00 per share, for an aggregate purchase price of $97,500, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

NOW, THEREFORE, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

### ARTICLE I
### INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 32,500 shares of the registered common stock of Axion Power International, Inc. (OTCBB: AXPW) held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $97,500.

### ARTICLE II
### REPRESENTATIONS AND WARRANTIES

2.1    Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a)    Validity and Status of the Securities. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b)     No Conflicts. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c)     Litigation; Proceedings. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d)     Placement Agent. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2     Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants to the Seller as follows:

(a)     Organization; Authority. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b)     Receipt of Prospectus. The Purchaser acknowledges receipt of the prospectus of Axion Power International, Inc. dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c)     Investment Intent. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d)     Experience of Purchaser. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(e)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

|  |  |
|---|---|
| If to the Seller: | William Monteith<br>Akara Building. 24 De Castro Street<br>Wickhams Cay 1<br>Road Town, Tortola BVI<br>Tel:<br>Fax: |
| With copies to: | Axion Power International Inc.<br>Attn: Thomas Granville, Chief executive officer<br>100 Caster Avenue<br>Woodbridge, Ontario, Canada L4L 5Y9<br>Phone: (905) 264-1991<br>Fax: (905) 264-2385 |
| and | Petersen & Fefer, attorneys<br>Château de Barberêche<br>Switzerland 1783 Barberêche<br>Phone: +4126 684-0500<br>Fax: +4126 684-0505 |
| If to the Purchaser: | Mercatus & Partners, Limited<br>Via S. Roberto Bellarmino #4<br>00142 Roma, Italy<br>Phone: +3906 540 6470<br>Fax: +3906 542 75224 |
| With copies to: | Cary Masi<br>4100 Nine McFarlane Drive<br>Alpharetta, Georgia 30004<br>Phone: (678) 240-9070<br>Fax: (678) 240-9069 |

and      Holland & Knight, LLP
195 Broadway
New York, NY 10007
Attn: George Parnell, Esq.
Tel: (212) 513-3417
Fax: (212) 385-9010

3.4  Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5  Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6  Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7  No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8  Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9  Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10  Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11  Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12  Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13 <u>Delivery of Securities</u>. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14 <u>Payment for Securities</u>. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$10,725** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |

| | |
|---|---|
| **Transfer Amount:** | **$86,775** |
| Beneficiary Bank: | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William Monteith |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15 <u>Related Agreement</u>. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

   **IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**
**Mercatus & Partners Limited**

**Seller:**
**William Monteith**

By: _____
Name: Cari Masi
Title: Authorized Agent

_____
William Monteith

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

Transfer Amount:                    $18,725
Beneficiary Bank:                   TD Canada Trust
                                    Vaughan, Ontario L4L 9A9 Canada
SWIFT:                              TDOMCATTTOR
Transit No.                         189002004
Acct. No.                           7312015
Beneficiary Account Name:           Axion Power Corporation, U.S. Funds Account

Transfer Amount:                    $86,775
Beneficiary Bank:

ABA No:                             031201467
Acct. No.                           101004/021600
Beneficiary Account Name:           William Monteith

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the day first indicated above.

Purchaser:
Mercenix & Partners Limited

Seller:
William Monteith

By:
Name: Carlo Citti
Title: Authorized Agent

William Monteith

**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for <u>delayed delivery versus payment</u>. The certificates shall be registered as follows:

| | |
|---|---|
| **Shareholder name**<br>**and address**<br>**for stock certificate** | **Mercatus & Partners, Limited**<br>**Via S. Roberto Bellarmino #4**<br>**00142 Roma, Italy** |

**Corporate information (for transfer agent):**

| | |
|---|---|
| Company Number: | 04500047 |
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**Step Five**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**Step Six**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "F"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, William Monteith (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the beneficial owner of 32,500 shares of the common stock of **Axion Power International, Inc.** that have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 32,500 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $97,500, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1     This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2     Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 32,500 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $97,500.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     <u>Representations, Warranties and Agreements of the Seller</u>. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f)     <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g)    No Conflicts. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h)    Litigation; Proceedings. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i)    Placement Agent. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2    Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants to the Seller as follows:

(j)    Organization; Authority. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k)    Receipt of Prospectus. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l)    Investment Intent. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m)    Experience of Purchaser. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

| | |
|---|---|
| If to the Seller: | Turitella Corporation<br>Akara Building. 24 De Castro Street<br>Wickhams Cay 1<br>Road Town, Tortola BVI<br>Tel:<br>Fax: |
| With copies to: | Axion Power International Inc.<br>Attn: Thomas Granville, Chief executive officer<br>100 Caster Avenue<br>Woodbridge, Ontario, Canada L4L 5Y9<br>Phone: (905) 264-1991<br>Fax: (905) 264-2385 |
| and | Petersen & Fefer, attorneys<br>Château de Barberêche<br>Switzerland 1783 Barberêche<br>Phone: +4126 684-0500<br>Fax: +4126 684-0505 |
| If to the Purchaser: | Mercatus & Partners, Limited<br>Via S. Roberto Bellarmino #4<br>00142 Roma, Italy<br>Phone: +3906 540 6470<br>Fax: +3906 542 75224 |

With copies to:

Cary Masi
4100 Nine McFarlane Drive
Alpharetta, Georgia 30004
Phone: (678) 240-9070
Fax: (678) 240-9069

and

Holland & Knight, LLP
195 Broadway
New York, NY 10007
Attn: George Parnell, Esq.
Tel: (212) 513-3417
Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$10,725** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$86,775** |
| Beneficiary Bank: | |
| | |
| ABA No: | |
| Acct. No. | |
| Beneficiary Account Name: | William Monteith |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

    **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**
**Mercatus & Partners Limited**

**Seller:**
**William Monteith**

By: _____
Name: Cari Masi
Title: Authorized Agent

_____
William Monteith

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| Transfer Amount: | $10,725 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| Transfer Amount: | $86,775 |
| Beneficiary Bank: | |
| | |
| ABA No: | 031201467 |
| Acct. No | 101004102160 0 |
| Beneficiary Account Name: | William Monteith |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

Purchaser:
Margants & Electric Limited

By: _____
Name: Carstham
Title: Authorized Agent

Seller:
William Monteith

_____
William Monteith

**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for <u>delayed delivery versus payment</u>. The certificates shall be registered as follows:

| | |
|---|---|
| **Shareholder name and address for stock certificate** | **Mercatus & Partners, Limited**<br>**Via S. Roberto Bellarmino #4**<br>**00142 Roma, Italy** |

**Corporate information (for transfer agent):**

| | |
|---|---|
| Company Number: | 04500047 |
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**Step Five**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**Step Six**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "G"

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS,** Seller is the beneficial owner of 33,350 shares of the common stock of **Axion Power International, Inc. (OTCBB: AXPW)** that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS,** the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of **Axion Power International, Inc.** dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS,** subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of **Axion Power International, Inc.** at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE,** subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1     This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2     Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 33,350 shares of the registered common stock of **Axion Power International, Inc. (OTCBB: AXPW)** held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $100,050.

## ARTICLE II
## REPRESENTATIONS AND WARRANTIES

2.1     Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(a)    <u>Validity and Status of the Securities</u>. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(b)    <u>No Conflicts</u>. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(c)    <u>Litigation; Proceedings</u>. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(d)    <u>Placement Agent</u>. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in <u>Section 2.1</u> hereof.

2.2    <u>Representations and Warranties of the Purchaser</u>. The Purchaser hereby represents and warrants to the Seller as follows:

(a)    <u>Organization; Authority</u>. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(b)    <u>Receipt of Prospectus</u>. The Purchaser acknowledges receipt of the prospectus of **Axion Power International, Inc.** dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(c)    <u>Investment Intent</u>. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(d)    <u>Experience of Purchaser</u>. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(e)    Ability of Purchaser to Bear Risk of Investment. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    Fees and Expenses. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    Entire Agreement This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    Notices. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

|   |   |
|---|---|
| If to the Seller: | James Smith M.D.<br>7295 East Quaker Rd.<br>Orchard Park, New York 14127<br>Tel: (716) 662-8392<br>Fax: (561) 741-1158 |
| With copies to: | Axion Power International Inc.<br>Attn: Thomas Granville, Chief executive officer<br>100 Caster Avenue<br>Woodbridge, Ontario, Canada L4L 5Y9<br>Phone: (905) 264-1991<br>Fax: (905) 264-2385 |
| and | Peterson & Fefer, attorneys<br>Château de Barberêche<br>Switzerland 1783 Barberêche<br>Phone: +4126 684-0500<br>Fax: +4126 684-0505 |
| If to the Purchaser: | Mercatus & Partners, Limited<br>Via S. Roberto Bellarmino #4<br>00142 Roma, Italy<br>Phone: +3906 540 6470<br>Fax: +3906 542 75224 |

With copies to:       Cary Masi
                      4100 Nine McFarlane Drive
                      Alpharetta, Georgia 30004
                      Phone: (678) 240-9070
                      Fax: (678) 240-9069

and                   Holland & Knight, LLP
                      195 Broadway
                      New York, NY 10007
                      Attn: George Parnell, Esq.
                      Tel: (212) 513-3417
                      Fax: (212) 385-9010

3.4    Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5    Headings. The headings herein are for convenience only, do not constitutea part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6    Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7    No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9    Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | $83,375 |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | $16,675 |
| Beneficiary Bank: | Greater Buffalo Savings Bank |
| ABA No: | 022072692 |
| Acct. No. | 22003370 |
| Beneficiary Account Name: | James Smith, M.D. |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

        **IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**
**Mercatus & Partners Limited**

By: _____
Name: Cari Masi
Title: Authorized Signatory

**Sellers:**
**James Smith, M.D.**

_____
James Smith M.D.

140 Broadway, New York, NY 10005-1101, U.S.A.
Account Name: Banca MB-Milano
Account Number: 4444550

I certify that I have agreed to sell the shares of common stock to Mercatus in a negotiated block sale transaction and in connection therewith I have delivered a copy of Axion's prospectus to Mercatus.

Your prompt attention to this matter is appreciated.

Sincerely,
James Smith, M.D.

*James Smith M.D.*

# PRIVATE STOCK PURCHASE AGREEMENT SICAV ONE

**PRIVATE STOCK PURCHASE AGREEMENT** ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

**WHEREAS**, Seller is the beneficial owner of 33,350 shares of the common stock of Axion Power International, Inc. (OTCBB: AXPW) that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

**WHEREAS**, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of Axion Power International, Inc. dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

**WHEREAS**, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of Axion Power International, Inc. at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

**NOW, THEREFORE**, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

## ARTICLE I
## INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact

**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for <u>delayed delivery versus payment</u>. The certificates shall be registered as follows:

| **Shareholder name and address for stock certificate** | **Mercatus & Partners, Limited Via S. Roberto Bellarmino #4 00142 Roma, Italy** |
|---|---|

**Corporate information (for transfer agent):**

| Company Number: | 04500047 |
|---|---|
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**Step Five**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**Step Six**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "H"

## PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

PRIVATE STOCK PURCHASE AGREEMENT ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

WHEREAS, Seller is the beneficial owner of 33,350 shares of the common stock of Axion Power International, Inc. (OTCBB: AXPW) that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

WHEREAS, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of Axion Power International, Inc. dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of Axion Power International, Inc. at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

NOW, THEREFORE, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

### ARTICLE I
### INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 33,350 shares of the registered common stock of Axion Power International, Inc. (OTCBB: AXPW) held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $100,050.

### ARTICLE II
### REPRESENTATIONS AND WARRANTIES

2.1    Representations, Warranties and Agreements of the Seller. The Seller hereby makes the following representations and warranties to the Purchaser, all of which shall survive the Closing:

(f)     Validity and Status of the Securities. Upon exercise of the common stock purchase warrants held by the Seller, the shares will be duly and validly issued and are valid in every respect for sale pursuant to this Agreement and are limited only as disclosed on the face of the certificates.

(g)     No Conflicts. The execution, delivery and performance of this Agreement and the other Transaction Documents by the Seller will not (i) be subject to obtaining any consents except, conflict with, or constitute a default (or an event which with notice or lapse of time or both would become a default) under, or give to others any rights of termination, amendment, acceleration or cancellation of, any agreement, indenture or instrument to which the Seller is a party, or (ii) result in a violation of any law, rule, regulation, order, judgment, litigation, injunction, decree or other restriction of any court or governmental authority to which the Seller is subject (including, but not limited to, those of other countries and the federal and state securities laws and regulations), or by which any property or asset of the Seller is bound or affected.

(h)     Litigation; Proceedings. There is no action, suit, notice of violation, proceeding or investigation pending or, to the best knowledge of the Seller, threatened against or affecting the Seller before or by any court, governmental or administrative agency or regulatory authority (federal, state, county, local or foreign) which (i) relates to or challenges the legality, validity or enforceability of any of the Agreement, the Underlying Shares, (ii) could, individually or in the aggregate, have a Material Adverse Effect or (iii) could, individually or in the aggregate, materially impair the ability of the Seller to perform fully on a timely basis its obligations under the Transaction Documents.

(i)     Placement Agent. The Seller accepts and agrees that Artemis Capital Group, LLC ("Artemis") is acting for the Purchaser and does not regard any person other than the Purchaser as its customer in relation to this Agreement, and that it has not made any recommendation to the Seller, in relation to this Agreement and is not advising the Seller, with regard to the suitability or merits of the transaction and in particular Artemis has no duties or responsibilities to the Seller for the best execution of the transaction contemplated by this Agreement.

The Purchaser acknowledges and agrees that the Seller makes no representation or warranty with respect to the transactions contemplated hereby other than those specifically set forth in Section 2.1 hereof.

2.2     Representations and Warranties of the Purchaser. The Purchaser hereby represents and warrants to the Seller as follows:

(j)     Organization; Authority. The Purchaser is a corporation, duly organized, validly existing and in good standing under the laws of the jurisdiction of its formation with the requisite power and authority to enter into and to consummate the transactions contemplated hereby and by the other Transaction Documents and otherwise to carry out its obligations hereunder and thereunder. The acquisition of the Shares to be purchased by the Purchaser hereunder has been duly authorized by all necessary action on the part of the Purchaser. This Agreement has been duly executed and delivered by the Purchaser and constitutes the valid and legally binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as such enforceability may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws relating to, or affecting generally the enforcement of, creditors rights and remedies or by other general principles of equity.

(k)     Receipt of Prospectus. The Purchaser acknowledges receipt of the prospectus of Axion Power International, Inc. dated August 18, 2005 which includes the shares that are the subject matter of this Agreement and specifically identifies the Seller as a selling stockholder.

(l)     Investment Intent. The Purchaser is acquiring the Shares to be purchased by it hereunder, for its own account for investment purposes only and not with a view to or for distributing or reselling such Shares, or any part thereof or interest therein, without prejudice, however, to such Purchaser's right, subject to the provisions of this Agreement, at all times to sell or otherwise dispose of all or any part of such Shares in compliance with applicable federal and state securities laws.

(m)     Experience of Purchaser. The Purchaser, either alone or together with its representatives, has such knowledge, sophistication and experience in business and financial matters so as to be capable of

evaluating the merits and risks of an investment in the Shares to be acquired by it hereunder, and has so evaluated the merits and risks of such investment.

(n)    *Ability of Purchaser to Bear Risk of Investment*. The Purchaser is able to bear the economic risk of an investment in the Securities to be acquired by it hereunder and, at the present time, is able to afford a complete loss of such investment.

## ARTICLE III
## MISCELLANEOUS

3.1    *Fees and Expenses*. Except as set forth in this Agreement, each party shall pay the fees and expenses of its advisers, counsel, accountants and other experts, if any, and all other expenses incurred by such party incident to the negotiation, preparation, execution, delivery and performance of this Agreement. The Purchaser shall pay the Placement Agent.

3.2    *Entire Agreement* This Agreement, together with all of the Exhibits and Schedules annexed hereto, and any other Transaction Document contains the entire understanding of the parties with respect to the subject matter hereof and supersede all prior agreements and understandings, oral or written, with respect to such matters. This Agreement shall be deemed to have been drafted and negotiated by both parties hereto and no presumptions as to interpretation, construction or enforceability shall be made by or against either party in such regard.

3.3    *Notices*. Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given upon facsimile transmission (with written transmission confirmation report) at the number designated below (if delivered on a Business Day during normal business hours where such notice is to be received), or the first Business Day following such delivery (if delivered other than on a Business Day during normal business hours where such notice is to be received) whichever shall first occur. The addresses for such communications shall be:

If to the Seller:       James Smith M.D.
                        7295 East Quaker Rd.
                        Orchard Park, New York 14127
                        Tel: (716) 662-8392
                        Fax: (561) 741-1158

With copies to:         Axion Power International Inc.
                        Attn: Thomas Granville, Chief executive officer
                        100 Caster Avenue
                        Woodbridge, Ontario, Canada L4L 5Y9
                        Phone: (905) 264-1991
                        Fax: (905) 264-2385

and                     Petersen & Fefer, attorneys
                        Château de Barberêche
                        Switzerland 1783 Barberêche
                        Phone: +4126 684-0500
                        Fax: +4126 684-0505

If to the Purchaser:    Mercatus & Partners, Limited
                        Via S. Roberto Bellarmino #4
                        00142 Roma, Italy
                        Phone: +3906 540 6470
                        Fax: +3906 542 75224

With copies to:          Cary Masi
                         4100 Nine McFarlane Drive
                         Alpharetta, Georgia 30004
                         Phone: (678) 240-9070
                         Fax: (678) 240-9069

and                      Holland & Knight, LLP
                         195 Broadway
                         New York, NY 10007
                         Attn: George Parnell, Esq.
                         Tel: (212) 513-3417
                         Fax: (212) 385-9010

3.4     Amendments; Waivers. No provision of this Agreement may be waived or amended except in a written instrument signed, in the case of an amendment, by both the Seller and the Purchaser, or, in the case of a waiver, by the party against whom enforcement of any such waiver is sought. No waiver of any default with respect to any provision, condition or requirement of this Agreement shall be deemed to be a continuing waiver in the future or a waiver of any other provision, condition or requirement hereof, nor shall any delay or omission of either party to exercise any right hereunder in any manner impair the exercise of any such right accruing to it thereafter.

3.5     Headings. The headings herein are for convenience only, do not constitute a part of this Agreement and shall not be deemed to limit or affect any of the provisions hereof.

3.6     Successors and Assigns. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. The assignment by a party of this Agreement or any rights hereunder shall not affect the obligations of such party under this Agreement.

3.7     No Third Party Beneficiaries. This Agreement is intended for the benefit of the parties hereto and their respective permitted successors and assigns and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

3.8     Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action by the Purchaser to enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.

3.9     Survival. The representations and warranties of the Seller and the Purchaser contained in this agreement shall survive the Closing.

3.10    Counterpart Signatures. This Agreement may be executed in two or more counterparts, all of which when taken together shall be considered one and the same agreement and shall become effective when counterparts have been signed by each party and delivered to the other party, it being understood that both parties need not sign the same counterpart. In the event that any signature is delivered by facsimile transmission, such signature shall create a valid and binding obligation of the party executing (or on whose behalf such signature is executed) the same with the same force and effect as if such facsimile signature page were an original thereof.

3.11    Severability. In case any one or more of the provisions of this Agreement shall be invalid or unenforceable in any respect, the validity and enforceability of the remaining terms and provisions of this Agreement shall not in any way be affected or impaired thereby and the parties will attempt to agree upon a valid and enforceable provision which shall be a reasonable substitute therefore, and upon so agreeing, shall incorporate such substitute provision in this Agreement.

3.12    Limitation of Remedies. With respect to claims by the Seller or any person acting by or through the Seller, or by the Purchaser or any person acting through the Purchaser, for remedies at law or at equity relating to or arising out of a breach of this Agreement, liability, if any, shall, in no event, include loss of profits or incidental, indirect, exemplary, punitive, special or consequential damages of any kind.

3.13    Delivery of Securities. The Seller agrees to deliver certificates for the securities to be purchased, within five days, directly to the receiving bank in accordance with the procedures set forth in Schedule A to this agreement.

3.14    Payment for Securities. The Purchaser shall, within thirty (30) days of the delivery of the securities to Brown Brothers Harriman & Co., the custodial bank for this transaction, pay the purchaser for the securities by wire transfer directed to the banks and accounts specified below:

| | |
|---|---|
| **Transfer Amount:** | **$83,375** |
| Beneficiary Bank: | TD Canada Trust |
| | Vaughan, Ontario L4L 9A9 Canada |
| SWIFT: | TDOMCATTTOR |
| Transit No. | 189002004 |
| Acct. No. | 7312015 |
| Beneficiary Account Name: | Axion Power Corporation, U.S. Funds Account |
| | |
| **Transfer Amount:** | **$16,675** |
| Beneficiary Bank: | Greater Buffalo Savings Bank |
| ABA No: | 022072692 |
| Acct. No. | 22003370 |
| Beneficiary Account Name: | James Smith, M.D. |

If the Purchase Price is not paid within thirty (30) days of the delivery of the securities to the custodial bank, the Seller shall have the right to recall the shares from the custodial bank, and the custodial bank shall return such securities to the Seller within ten (10) business days from the date of the demand. See Appendix A for details of timeline from deposit to payment.

3.15    Related Agreement. Axion Power International, Inc. and the Purchaser have entered into a related Securities Purchase Agreement of even date. In the event the Purchaser fails to close on the Axion contract, the Seller shall have five business days to terminate this agreement without penalty and demand that the custodial bank promptly return the securities to him.

**IN WITNESS WHEREOF**, the parties hereto have caused this Agreement to be duly executed as of the date first indicated above.

**Purchaser:**
**Mercatus & Partners Limited**

**Sellers:**
**James Smith, M.D.**

By: _____
Name: Cari Masi
Title: Authorized Signatory

_____
James Smith M.D.

Mercatus & Partners Limited

James Smith, M.D.

By: _____
Name: Carl Masi
Title: Authorized Signatory

*James Smith M.D.*
James Smith M.D.

## PRIVATE STOCK PURCHASE AGREEMENT SICAV TWO

PRIVATE STOCK PURCHASE AGREEMENT ("Agreement") is made and entered into as of December 9, 2005, between, James Smith, M.D. (the "Seller"), and Mercatus & Partners Limited (the "Purchaser").

WHEREAS, Seller is the beneficial owner of 33,350 shares of the common stock of Axion Power International, Inc. (OTCBB: AXPW) that are issuable upon the exercise of a like number of common stock purchase warrants and have been included in and registered by an effective Form SB-2 registration statement under the Securities Act of 1933 (SEC File No. 333-124317); and

WHEREAS, the Seller has previously delivered to Purchaser a complete copy of that certain prospectus of Axion Power International, Inc. dated August 18, 2005 (the "Prospectus") which includes the shares referenced in the preceding recital and specifically identifies the Seller as a selling stockholder; and

WHEREAS, subject to the terms and conditions set forth in this Agreement, the Seller desires to sell and the Purchaser desires to acquire from the Seller 33,350 shares of Axion Power International, Inc. at a price of $3.00 per share, for an aggregate purchase price of $100,050, which represents a discount of approximately 22.5% from the 30-day weighted average trading price of the referenced shares.

NOW, THEREFORE, subject to the terms and conditions set forth in this Agreement, for good, valuable and binding consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, now agree as follows:

### ARTICLE I
### INTRODUCTION AND AGREEMENT TO PURCHASE

1.1    This stock purchase agreement has been negotiated and entered into in furtherance of the Purchaser's plan to (a) buy equity securities issued by a substantial number of small public companies, (b) negotiate the transfer of the entire portfolio of purchased securities to a European bank SICAV fund in exchange for fund interests, and (c) use the SICAV fund interests as collateral for a bank loan that will be used to pay the purchase price of the portfolio of securities. All securities will be deposited with Brown Brothers Harriman & Co., the custodial bank for this transaction, for delayed delivery versus payment. The Seller understands that the shares must be deposited with the custodial bank for asset valuation purposes, but the transaction will not be completed unless the Purchaser receives sufficient loan proceeds to pay the purchase price for all securities included in the stock portfolio that the Purchaser intends to contribute to the SICAV. This agreement does not contemplate or provide for the immediate payment of the purchase price. The anticipated time-line and sequence of transaction events is described in Schedule A to this agreement. The Seller recognizes the time-lines are only estimates. The purchase price specified herein has not been placed in escrow and the closing of this agreement is contingent on the successful completion of negotiations for the contemplated SICAV and loan transactions. The Seller shall have the right to contact the custodial bank administrator for verification of the status, location and control of the securities at each step in the process. The Purchaser shall have up to thirty (30) days from the date of delivery of the securities to the custodial bank to pay the Purchase Price.

1.2    Subject to the limitations and qualifications set forth in Section 1.1, the Purchaser agrees to purchase 33,350 shares of the registered common stock of Axion Power International, Inc. (OTCBB: AXPW) held by the Seller and described in the Prospectus at a price of $3.00 per share, for an aggregate purchase price of $100,050.

**SCHEDULE A**
**DELIVERY AND DESCRIPTION OF CONTRACT, SHARE INTAKE,**
**DEPOSIT, VALUATION, SAFEKEEPING AND MOVEMENT OF SHARES**

**Step One:** Within two business days, manually signed originals of the executed contracts shall be forwarded to the Purchaser at following address via Federal Express or international courier:

> Mercatus & Partners, LP
> 4100 Nine McFarlane Drive
> Alpharetta, Georgia 30004
> Phone: (404) 735-9757
> Office: (770) 475-2266
> Attn: Cary Masi

**Step Two:** Within five business days, certificates for the securities, without restrictive legends shall be forwarded to Brown Brothers Harriman & Co. ("BBH"), the custodial bank for this transaction, for <u>delayed delivery versus payment</u>. The certificates shall be registered as follows:

| | |
|---|---|
| **Shareholder name and address for stock certificate** | **Mercatus & Partners, Limited**<br>**Via S. Roberto Bellarmino #4**<br>**00142 Roma, Italy** |

**Corporate information (for transfer agent):**

| | |
|---|---|
| Company Number: | 04500047 |
| Incorporated on: | 31/07/2002 |
| Company Name: | MERCATUS & Partners limited |
| Registered Office: | 54 Dukes Wood Drive |
| | Gerrards Cross |
| | Buckinghamshire SL9 7LR |
| Company Type: | Private Limited Company |
| Country of Origin: | United Kingdom |

The transmittal letter and stock certificate shall be sent to BBH at the following address:

**Mailing / Delivery Addresses for Physical Securities:**

> Brown Brothers Harriman & Co.
> Attention: Physical Receives Section - Trade Processing Department
> 140 Broadway, New York, NY 10005-1101, U.S.A.
> Account Name: Banca MB-Milano
> Account Number: 4444550

**Step Three:** Banca MB is only the asset manager of Mercatus, and the shares are deposited into a safekeeping account for Banca MB in BBH. The shares are deposited into the account where they are verified and deposited for viewing and verification by the SICAV bank. NOTE: the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period. The restricted, free trading or other validly issued shares under appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase is complete. Dwight Parscale, is the Attorney-In-Fact over the BBH account of Banca MB for this account. Any and all questions regarding the status of shares during this process may be conducted to your Placement Agent.

**Step Four:** Is starting during Step Three, and includes the transfer of the stock to the SICAV through the stock verification process, so that the SICAV bank receives confirmation of the Shares and portfolio, if any, for valuation, and due diligence. This period of time is expected to be four (4) to five (5) days after which the value is assigned and a corresponding amount of SICAV shares are issued to Mercatus & Partners, Limited, electronically, for their

use and ownership. NOTE: this process will not start until the called for amount of shares and assets are received as a package for the whole SICAV portfolio from Mercatus's Banca MB account in BBH.

**Step Five**: Mercatus will then simultaneously transfer the SICAV shares into the lending or purchasing banks and the lending banks will issue the purchase price or credit line to Mercatus. This period is expected to take four (4) to five (5) days.

**Step Six**: Mercatus transmits payment through Banca MB/BBH to the Companies through the Placement Agent's counsel, Holland & Knight 195 Broadway, New York, NY 10007.

Exhibit "I"

# CONTINENTAL STOCK TRANSFER & TRUST COMPANY

### 17 BATTERY PLACE, NEW YORK, NEW YORK 10004-1123

*Tel: (212) 509-4000*
*Fax: (212) 509-5150*

December 13, 2005

Brown Brothers Harriman & Co.
140 Broadway
New York NY 10005
Attn: Physical Receive Section
    Trade Processing Department
    Account Name: Banca MB-Milano
    Account Number: 4444550

RE: Axion Power International, Inc.

Gentlemen:

In accordance with instructions we have received from the above corporation, we are enclosing the following certificates in the name of Mercatus & Partners Limited:

| CTF. NO(s) | SHARES |
|------------|--------|
| API 1250/51 | 87,500 ea |
| API 1252/53 | 33,350 ea |
| API 1254/55 | 30,000 ea |
| API 1256/57 | 500,000 ea |
| API 1259/60 | 66,650 ea |

You will note that certificates API 1256 and API 1257 bear a restrictive legend.

Kindly acknowledge receipt of the above by signing and returning the enclosed copy of this letter.

Very truly yours,

William F. Seegraber
Vice President

WFS:km
Enc.
BY HAND
Cc:  John L. Petersen, Esq.
    Petersen & Fefer

VIA FAX (212) 401-4750

Exhibit "J"



Luxembourg
January 13, 2005

Update Directed
To the Sicav One and Two Companies

I would like to congratulate you on your selection by Mercatus & Partners, for inclusion in the very first SICAV portfolio by Cofibol Placeuro as an investment into the United States equities market on a primarily restricted securities basis. While many of the companies that were involved were involved much longer, we realize that your degree of expectation has been piqued by the impending listing of the fund and clearance of your brethren companies past due diligence, for the listing of the fund onto the Luxemburg Exchange. The timing for this action will be before the end of the month of January.
By the middle of next week, there will be the issuance of a letter to Mercatus and Banca MB by Cofibol which will set forth the final timeline of the listing and confirmation that the assets have been evaluated and posted. As such we would like to take this opportunity to advise you of the current closing and status of the funding from Europe.

Let me first advise you that the closing of the two SICAV funds (one and two) has been completed for inventory, verification and valuation by Deloitte & Touche, the auditing firm, and the SICAV fund. The inventory and intake of the stocks which fill our first two transactions had to be cleared through a thorough vetting process which inevitably delayed the transaction.

Please note that for the first time in the history of the financial markets, Regulation 144 stocks will be used as contribution in kind for a Sicav Fund. This newly developed opportunity and the fact that The Luxembourg Stock Exchange requires our Sicav Fund to be in full compliance with the European Union Laws has to be strictly regulated.
This will not prevent both the Sicav and the Authorities that supervise the Market, to act expeditiously and get the listing of the Sicav into the Luxembourg Stock Exchange in less that 2 calendar weeks. We hope you appreciate the quick response of the European Institutions that are guaranteeing compliance to the Laws and a timely response to our transaction.



MERCATUS

We would therefore expect that we would have the first monies for SICAV ONE (first of the funding) within 7 days from listing on the exchange and the second payment of SICAV TWO (the second half) within the same time period from the first.
The authorities involved are stringently complying with the appropriate Patriot Act and other matters of funding security involving overseas transactions.

As you can imagine the amount of funding involved is substantial, and such a transfer must be handled by our overseas investment funds in an appropriate legal manner.

We appreciate your patience, understanding and confidence. We are anticipating a very long and profitable relationship.

Sincerely,

Dott. Cevolo Stefano
CFO
Mercatus & Partners, Limited

Exhibit "K"

# Holland+Knight

Tel  212 513 3200
Fax  212 385 9010

Holland & Knight LLP
195 Broadway
New York, NY 10007-3189
www.hklaw.com

**Memorandum**

Date:  January 26, 2006

To:  MERCATUS & PARTNERS,
LP/SICAV FINDERS

From:  George F.A. Parnell, Esq.
Dwight Parscale, Esq.

Re:  SICAV Status Update

George F.A. Parnell, Esq.
212 513 3417
george.parnell@hklaw.com

The following information has been communicated by Michel Parizel, Managing Director of COFIBOL (Placeuro) in a separate letter. The information was provided to the undersigned, Dwight Parscale, Esquire of Parscale, Wynn, Templar, LLC and George Parnell, of Holland & Knight, LP, for release to the participating issuers and sellers on behalf of COFIBOL.

We are hereby authorized to advise you that the Board of Directors of SICAV Placeuro has approved the fund transaction that will result in the purchase of your securities. Additionally, we were advised that the various SICAV funds will be listed on the Luxemburg Stock Exchange on the 10th of February 2006. COFIBOL has further stated that the process of securing and forwarding the payments (wiring) to the appropriate sellers will be completed for SICAV One and SICAV Three between the 15th and 20th of February 2006.

The funding of SICAV Two will take place within 7 to 10 days following the funding of the SICAV One and SICAV Three companies. Thus, the total funding process will be completed for all the companies in the SICAV One, Two and Three transactions by the end of February. Those participating in SICAV One and SICAV Two will receive their payments in accordance with the payment schedule above.  We understand this is a delay from the date originally targeted for funding and apologize for any inconvenience occasioned by the delay.

We believe everyone can appreciate the monumental effort that this entailed.  The payment delays have been the caused by an unexpected request on behalf of the SICAV funds to increase the size and value of the portfolio being funded and further by certain participating sellers failing to follow the contractual due diligence and stock delivery procedures properly with BBH in a timely fashion. The size and number of companies in the initial portfolio required by the SICAV's has resulted in each participating company effectively becoming part of a large group of participating public companies seeking PIPE funding.  The result has been that each issuer has become dependant on each other issuer to complete the initial transaction. It is our understanding that all of requirements have now been satisfied and the funding is shall take place in accordance with the schedule above as related to us by COFIBOL.  You will be contacted in the event we

January 26, 2006
Page 2

receive any additional information.  Thank you for your patience and understanding and thank you for your participation in this ground breaking endeavor.

Sincerely,

Dwight Parscale, Esquire
Parscale, Wynn & Templar, LLC

George Parnell, Esquire
Holland & Knight, LP

# 3544282_v1

Exhibit "L"

# Holland+Knight

Tel   212 513 3200
Fax  212 385 9010

Holland & Knight LLP
195 Broadway. 24th Floor
New York. NY 10007-3189
www.hklaw.com

## MEMORANDUM

February 17, 2006

From:  George F.A. Parnell, Esq.
           Dwight J. Parscale, Esq.

Re: SICAV Status

---

The following information has been provided to us for dissemination to the participants in the SICAV funding transaction. The SICAV payout process is continuing.  The release of funds for payment for your stocks has been delayed by a few days due to a third party error in the interpretation of the instructions relating to the required contents of the portfolio.   The instructions have been clarified so that the clerical processes of Bloomberg which must register and confirm the individual securities as part of the fund's assets ("Load") prior to funding will be completed as required by the SICAV process on Friday, February 17, 2006. Originally Mercatus & Partners, Limited was advised and thus advised us accordingly that this process would take two business days, instead it has taken a full week. This has in effect delayed the payout timeline.

Once Bloomberg completes their loading process SICAV needs approximately two business days to record the transaction and issue the shares of the SICAV funds to complete their part of the procedure. Once that takes place the SICAV authorizes the Banks to secure and pay for the portfolio assets and the funds will be wired.

We want everyone to be apprised that all the parties have been working long and hard to get this completed as soon as is possible. We have been assured that the payouts for the SICAV One and Three will begin prior to the end of February and be finished during the first week of March. The payments for the Second SICAV will begin the first week of March and finish by the second week of March.  Please note, that as the funds are being wired from overseas, due to the Patriot Act, the U.S. recipient banks may delay the release of the funds for a short period of time.  We do not expect this, but we wish you to be aware of any known contingencies so you may plan accordingly.

Please understand that it will take this time to distribute the funds to this many companies and have the proper accounting controls to complete it smoothly. As you were advised before all the requirements have been met it is just a matter of completing the mechanics of the transaction to finalize it. Thank you for your patience.

Best Regards

George Parnell, Esquire                    Dwight Parscale, Esquire
Holland & Knight, LP                       Parscale, Wynn & Templar, LLC

Exhibit "M"



**MERCATVS**
**& PARTNERS LIMITED**
• • • • • •

MEMO TO MERCATUS & PARTNERS SICAV CLIENTS                    09 March 2006

This memo is being presented based on our funding institutions advise on the impending arrival of funds for those clients that are involved in the Sicav I, II and III portfolios. As we all know this has been a very long and arduous trail for all of us.

We have now finished all of the diligence required by all of the financial institutions, diligence investigators, and the various and numerous government authorities in which the various transactions are located. We have conducted our business in a most transparent and professional manner. We have had and have solved many problems created by our portfolio participants. Most of them were innocent and may have seemed harmless but all of them contributed to the extra time needed to fund this first time transaction.

I wish to personally thank all of you for having remained with us in this ground breaking and unique funding opportunity. We have consistently passed all of our information through the two attorney groups represented by Mr. Parnell and Mr. Parscale. They have given their time and expertise on many an occasion to each and everyone of us. This was a sincere testimony to their faith in this undertaking.

We are now ready to offer the funding schedule for the next two weeks. Our portfolio will be receiving the funds committed to by the various banking institutions. Eleven participating financial institutions will be distributing these funds. The monies will emanate from the lending institutions to the various MERCATUS banks in Europe to Banca MB and then on to Mr. Parscale for distribution to the appropriate parties. We may experience one or two day holds at the various banks, which represents normal banking activity. However, I am proud to say that the MONEY IS NOW ON THE MOVE.

Our wire dates will be (funds transfer to Mr. Parscale from Banca MB) the 15, 17, 20, 21, 24, and 29 of March'06. This will represent the entire Sicav I, III payment. We will receive the Sicav II payment schedule during the first several days of next week.

We have worked tirelessly to create a safe and fair representation of the portfolio and still meet the needs of the financial institutions. Other than the extra time taken to accomplish this task, everyone is very happy with the results and has given us the green light to do several more Sicav transactions.

We remain at your service.

Cary Masi
Manager Information Services.

MERCATUS & PARTNERS LIMITED
info@mercatus.it

155 Maidin Dr. Suite B          via G. Roberto Betramino 4          30 James's Street
Alpharetta, Georgia 30004       00142 Rome, Italy                   London SW1A 1HE
Ph. +678 240 9870   Fx. +678 240 9876    Ph. +39 06540 5479  Fx. +39 06540 75224    United Kingdom

Exhibit "N"



15 March 2006

MEMO TO ALL CLIENTS OF SICAV PORTFOLIO

Pursuant to our memo last week about the funding to begin on the fifteenth of March '06. We are very pleased to announce that the authorities in Luxembourg have given the formal release required that allows the banking institutions involved in the Sicav financial transaction to release the payments to MERCATUS.

The money is now being sent by each and every banking institution participating in our transaction in the order I noted in my last memo.

We now await the monies arrival. I once again thank everyone who has stepped up to the plate and trusted us in this very first restricted stock transaction.

As soon as Dwight Parscale has the wire and money in hand he will be in touch with each an every one of you for the final check on wiring instructions.

Once the money is in escrow within the USA, the process will begin of moving the funds to your account.

We remain at your service.


Regards,



Cary Masi
Manager


MERCATUS & PARTNERS LIMITED
info@mercatus.it

135 Maulden Dr. Suite B
Alpharetta, Georgia 30004
PH +678.240.9070  FX +678.240.9069

Via S. Roberto Bellarmino 4
00142 Roma, Italy
PH. +39 065406470  FX +39 0654275224

40 Jennes s Street
London SW1A 1HB
United Kingdom

Exhibit "O"



Hello:

I have just received permission from the fund director of Mercatus & Partners Limited Dott: Cevolo that I could announce to you that the wire instructions have been given and that the Roma office should receive our first payments on Monday /Tuesday of next week. That would put our wires in the USA by Thursday /Friday. One day delivery to the various clients. It has been long road. Thank you for your patience and professionalism

Regards,

***Amedeo***

Note: We will begin our second funding within one week of the arrival of the first funds. The funding will continus through out the month of April. We are now planning our NYC meetings for the second week of April.

**Mercatus & Partners Limited**

United States:  155 Mauldin Dr.Suite B  *  Alpharetta, GA  *  30004  *  Phone: 678-240-9070  *  FAX: 678-240-9069
Italy:   Via San Roberto Bellarmino, 4  *  00142  *  Roma  *  Telephone: +39 06 5406470  *  Fax:  +39 06 54275224

Exhibit "P"

## John Rockey

| | |
|---|---|
| **From:** | Alan Fellheimer |
| **Sent:** | Tuesday, October 23, 2007 1:51 PM |
| **To:** | Judith Fellheimer; John Rockey |
| **Subject:** | FW: Questions without answers |

Alan S. Fellheimer
Fellheimer & Eichen
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
215.253.6631  Fax 215.359.1981
alan@fellheimer.net
www.fellheimer.net

------ Forwarded Message
**From:** Dwight Parscale <dwight@parscale.com>
**Date:** Mon, 20 Mar 2006 15:24:16 -0600
**To:** John Petersen <jlp@ipo-law.com>
**Subject:** Re: Questions without answers

Hi John-

There is not much to tell you that is any different from the last update. I have been advised that the money is moving from the various banks and will be coming to my account at any time now. I and George Parnell expect to be speaking to the Bank authorities in Europe tomorrow. George is not available today. The conversation is intended to include many subjects including the timetable for the movement of the funds to settle SICAV 1,2 &3. We will try to pinpoint the amounts and timing of the tranches that are coming. I wish there was more I could say but this is it. One final thing the official VISA number that some of the Banks needed was done last Wed.. The only thing that I know of to be done at this point is the movement of money. Please keep in mind there are at least 11 banks involved. Best Wishes.

Dwight

On Mar 20, 2006, at 3:05 PM, John Petersen wrote:

> Dwight,
>
> I'm getting questions from all sides now, the company, its auditors and the individual sellers. Unfortunately, I don't have any current information for anyone and find the silence on your end more than a bit disquieting.
>
> Please let me know exactly what is happening and what I can tell the people who are looking to me for answers.
>
> It does not look good to outsiders when communications between you and I fall apart.
>
> I need some help here.
>
> John L. Petersen, partner
> Fefer Petersen & Cie
> Attorneys at Law

Château de Barberêche <http://www.swisscastles.ch/Fribourg/barbereche.html>
Switzerland 1783 Barberêche

4126-684-0500 Telephone
4126-684-0505 Facsimile
4179-308-5181 Cellular

US Voicemail and Fax

(281) 596-4545 Houston
(212) 401-4750 New York

NOTICE: This communication (including attachments) is covered by the Electronic Communication
Privacy Act, U.S.C. Sections 2510-2521, is confidential, may contain privileged information and may be
the subject of certain Confidentiality or Nondisclosure Agreements. If you are not the intended recipient
or believe that you have received this communication in error, please e-mail, fax or telephone the sender
immediately and delete this e-mail communication. Please do not print, copy, retransmit or otherwise
duplicate, disseminate or otherwise use this information.

------ End of Forwarded Message

**John Rockey**

| | |
|---|---|
| **From:** | Alan Fellheimer |
| **Sent:** | Tuesday, October 23, 2007 1:53 PM |
| **To:** | Judith Fellheimer; John Rockey |
| **Subject:** | FW: Mercatus Transaction |

Alan S. Fellheimer
Fellheimer & Eichen
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
215.253.6631  Fax 215.359.1981
alan@fellheimer.net
www.fellheimer.net

------ Forwarded Message
**From:** Dwight Parscale <dwight@parscale.com>
**Date:** Thu, 23 Mar 2006 08:42:27 -0600
**To:** John Petersen <jlp@ipo-law.com>
**Subject:** Re: Mercatus Transaction

Hi-
Please give me a call. I expect to be on another conference call in about 20 minutes. The final peice of the puzzle is done. Before the banks would release the funds to be sent they wanted the physical SICAV shares in their hands. That is being done now. The banks have the funds allocated and committed. They just need to be released to be sent to my account. I and George will be speaking to the bank representatives (from the lead banks) today. The conversation was delayed due to various parties travel. The slippage was not avoidable. I understand that everyone including the Mercatus Group is anxious and frustrated but they have overcome all the hurdles and we now only await the transfer of the funds. Best Wishes.

Dwight

On Mar 23, 2006, at 1:44 AM, John Petersen wrote:

> Dwight,
>
> In Cari Masi's memorandum of 9 March 2006 he represented:
>
> **Our wire dates will be (funds transfer to Mr. Parscale from Banca MB) the 15, 17, 20, 21, 24 and 29 of March '06. This will represent the entire Sicav I, III payment. We will receive the Sicav II payment schedule during the first several days of next week.**
>
> In Cari Masi's memorandum of 15 March 2006 he represented:
>
> **The money is now being sent by each and every banking institution participating in our transaction in the order I noted in my last memo.**
>
> **We now await the monies arrival. I once again thank everyone who has stepped up to the plate and trusted us in this very first restricted stock transaction.**
>
> In my note to you at the end of last week, I told you that I interpreted the March 15th memo as indicating a couple days of slippage in getting the funds transferred to Banca MB. In your response on March 20th, you told me:

**There is not much to tell you that is any different from the last update. I have been advised that the money is moving from the various banks and will be coming to my account at any time now. I and George Parnell expect to be speaking to the Bank authorities in Europe tomorrow. George is not available today. The conversation is intended to include many subjects including the timetable for the movement of the funds to settle SICAV 1,2 &3. We will try to pinpoint the amounts and timing of the tranches that are coming. I wish there was more I could say but this is it. One final thing the official VISA number that some of the Banks needed was done last Wed. The only thing that I know of to be done at this point is the movement of money. Please keep in mind there are at least 11 banks involved.**

I've been living and doing business in Europe for the last 8 years and know exactly how long it takes to move substantial amounts of money from point A to point B. Even allowing for slippage, Banca MB and/or you should have received clear confirmation of the first funding by now.

I have been requesting information for several days now without response and I find the silence worrisome.

We have a couple of possibilities here:

1. The money has not been released by the funding banks, which would indicate a problem;

2. The money has been received by Banca MB but has not been released, which would also indicate a problem;

3. The money has been released by Banca MB and you have received the first transfer in your trust account, which would indicate that everything is fine and we've just suffered from unanticipated yet predictable delays.

I have a telephone conference with Axion's auditors scheduled for 10:00 a.m. EST today. I've put it off for as long as possible without jeopardizing the timeliness of Axions Form 10-KSB.

I must have clear answers for their questions.

If I have information I can share with the auditors, we can probably get to a resolution that will keep everyone happy. I would rather not focus on what could happen if the only answer I have for the auditors is "I don't know and I haven't been able to get a response from the buyer's lawyer."

John L. Petersen, partner
Fefer Petersen & Cie
Attorneys at Law
Château de Barberêche <http://www.swisscastles.ch/Fribourg/barbereche.html>
Switzerland 1783 Barberêche

4126-684-0500 Telephone
4126-684-0505 Facsimile
4179-308-5181 Cellular

US Voicemail and Fax

(281) 596-4545 Houston
(212) 401-4750 New York

NOTICE: This communication (including attachments) is covered by the Electronic Communication Privacy Act, U.S.C. Sections 2510-2521, is confidential, may contain privileged information and may be the subject of certain Confidentiality or Nondisclosure Agreements. If you are not the intended recipient or believe that you have received this communication in error, please e-mail, fax or telephone the sender immediately and delete this e-mail communication. Please do not print, copy, retransmit or otherwise duplicate, disseminate or otherwise use this information.

------ End of Forwarded Message

**John Rockey**

| | |
|---|---|
| **From:** | Alan Fellheimer |
| **Sent:** | Tuesday, October 23, 2007 1:54 PM |
| **To:** | Judith Fellheimer; John Rockey |
| **Subject:** | FW: Update |

```
Alan S. Fellheimer
Fellheimer & Eichen
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
215.253.6631  Fax 215.359.1981
alan@fellheimer.net
www.fellheimer.net


------ Forwarded Message
From: Dwight Parscale <dwight@parscale.com>
Date: Thu, 30 Mar 2006 18:42:42 -0600
To: Dwight Parscale <dwight@parscale.com>
Subject: Fwd: Update

>
> To Everyone-
>
>  I have tried diligently to answer all your phone calls but it is
> literally impossible. I received a short time ago a correspondence
> from Dott. Rafael Piacente the Fund Administrator.  It spells out the
> times and amounts of funds that will be wired to me. The schedule
> calls for the first tranche of funds to be sent on April 7th, 2006.
> This will be followed by the next tranches on the 11th, 17th, and 17th
> of April. I will be receiving additions to this schedule on or before
> the 11th of April, 2006. I know this is not what we all had hoped for
> timing wise but it is attested to by the Fund Administrator.  As we
> all know you can expect that it will take 3-4 days to get to my
> account. I we are lucky it may take less time. I will be prepared to
> send wires to the appropriate parties as soon as it clears into my
> account. They do not expect any changes to this schedule. I know that
> everyone has been waiting quite a while but it is down to the  final
> days. I know of no reason for these dates not to be complied with.
> Thank you for your patience and I will continue to try and communicate
> with you as I can. I know you may not believe it but today is a great
> day as will be the future. Best Wishes.
>
>      Dwight Parscale
>


------ End of Forwarded Message
```

1

**John Rockey**

| | |
|---|---|
| **From:** | Alan Fellheimer |
| **Sent:** | Tuesday, October 23, 2007 1:57 PM |
| **To:** | Judith Fellheimer; John Rockey |
| **Subject:** | FW: Memo |

```
Alan S. Fellheimer
Fellheimer & Eichen
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
215.253.6631   Fax 215.359.1981
alan@fellheimer.net
www.fellheimer.net


------ Forwarded Message
From: Dwight Parscale <dwight@parscale.com>
Date: Fri, 7 Apr 2006 16:29:33 -0500
To: Dwight Parscale <dwight@parscale.com>
Subject: Memo

Hi Everyone-

 As most of you know I will be leaving for Europe this weekend for about 4-6 weeks to
coordinate the efforts between the European and US entities. I want you to be advised that
Dwight Parscale will be taking charge of the Mercatus operations in the United States
going forward. Dwight will be working out of San Antonio. He will be joined by his son
Brad who will assist him in the daily demands of the business. Brad is a graduate of
Trinity University with his degree in International Business, and Finance. Dwight will be
organizing the Mercatus operations to fit the demands and requirements of our business
model. Please direct any and all of your inquiries or needs to Dwight. We will keep you
advised as to any future developments.
Best Wishes.


   Cary Masi



------ End of Forwarded Message
```

1

**John Rockey**

| | |
|---|---|
| **From:** | Alan Fellheimer |
| **Sent:** | Tuesday, October 23, 2007 1:58 PM |
| **To:** | Judith Fellheimer; John Rockey |
| **Subject:** | FW: |

```
Alan S. Fellheimer
Fellheimer & Eichen
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
215.253.6631  Fax 215.359.1981
alan@fellheimer.net
www.fellheimer.net


------ Forwarded Message
From: Dwight Parscale <dwight@parscale.com>
Date: Mon, 10 Apr 2006 15:02:15 -0500
To: Dwight Parscale <dwight@parscale.com>

Hi-

 I know I have spoken to some of you and not others but I have been on the phone almost
nonstop since this morning. I have had several phone calls with Cary and Stefano. I have
been advised that I "will have written wire document proof" tomorrow (Tuesday) morning.
Cary arrived late in the day and will be making sure that I get the correct information.
I assume that everyone read my previous correspondence that Cary will be in Europe for
several weeks making sure that all the entities and parties are coordinating properly
before he returns. He has advised me that all is well and I will have the above
information tomorrow morning as promised. As soon as I get the information I will
communicate with you by email. Remember, all communications must come thru me. Please
understand that Cary's cell does not function in Italy. Best Wishes.


    Dwight



------ End of Forwarded Message
```

1

**John Rockey**

**From:**        Alan Fellheimer
**Sent:**        Tuesday, October 23, 2007 2:00 PM
**To:**          Judith Fellheimer; John Rockey
**Subject:**     FW: Update


Alan S. Fellheimer
Fellheimer & Eichen
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
215.253.6631   Fax 215.359.1981
alan@fellheimer.net
www.fellheimer.net


------ Forwarded Message
From: Dwight Parscale <dwight@parscale.com>
Date: Tue, 11 Apr 2006 15:11:54 -0500
To: Dwight Parscale <dwight@parscale.com>
Subject: Update

Hello to Everyone-

  This is a Monumental day for Mercatus. I have received the documentation and confirmation
that the first wires have been ordered and sent. I will be receiving more such information
going forward as to the amounts that will be coming from each additional wiring Bank that
will be sent. This does NOT mean that the monies are in my account yet. I will advise
everyone when that happens and what our intentions are for payment therefrom. Spending all
my time on the phone does not leave me with a lot of time to get this organized and
numbers figured out.  Mercatus appreciates everyones patience and I intend to enjoy the
moment before I rev up again. You can tell your clients that the proof is in the pudding.
We will now just be accumulating the funds. Again, Thanks & Best Wishes.


   Dwight



------ End of Forwarded Message

1

**John Rockey**

| | |
|---|---|
| **From:** | Alan Fellheimer |
| **Sent:** | Tuesday, October 23, 2007 2:19 PM |
| **To:** | Judith Fellheimer; John Rockey |
| **Subject:** | FW: Update 6-30 |


```
Alan S. Fellheimer
Fellheimer & Eichen
1800 John F. Kennedy Blvd.
Suite 1400
Philadelphia, PA 19103
215.253.6631  Fax 215.359.1981
alan@fellheimer.net
www.fellheimer.net


------ Forwarded Message
From: Dwight Parscale <dwight@parscale.com>
Date: Fri, 30 Jun 2006 15:42:25 -0500
To: Dwight Parscale <dwight@parscale.com>
Subject: Update 6-30

Greetings-


 I am happy to let you know that Mercatus has presented to five different financial
institutions a bulk of the portfolio of SICAV shares. I am advised that the procedure is,
that following the presentation there is a three day waiting period and a one day
registration. After this occurs the money is released and it will take a total of no more
than three to four days to arrive and be posted to my disbursement account. The first two
institutions have been presented and the the three day time starts on Monday. The others
will follow on Monday and Tuesday. Each and every recipient will then be contacted by my
office to verify and validate all current information and status including wire
instructions. Mercatus wants to sincerely thank you for your confidence and after all
these months of AGONY, Mercatus is confident that the end is here and we will be able to
get started with the business everyone has been waiting for.  I will be out of town for
the Holiday returning Wed.
morning the 5th of July. I want to wish everyone a great 4th. Best Regards.


   Dwight



------ End of Forwarded Message
```

1