UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AXION POWER INTERNATIONAL, INC.,    :
WILLIAM AND TRACY AHEARN, h/w,                    Civil Action No. 07 CV 11493 (RWS)
SALLY FONNER, and JAMES SMITH, M.D., :

                Plaintiffs,    :

      - against -    :

MERCATUS & PARTNERS, LTD., CARI    :
MASI a/k/a CARY MASI, STEPHEN
CEVOLO, BANCA MB S.p.A., and DWIGHT :
PARSCALE,
                Defendants.    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF DEFENDANT BANCA MB S.p.A.**
**IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York  10036
(212) 735-3000
*Attorneys for Defendant Banca MB S.p.A.*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ......................................................................................................5

I.    The Stock Purchase Agreements Between Mercatus and Plaintiffs ...................................5

    A.    Banca MB Is Not a Signatory to the Stock Purchase Agreements .........................5

    B.    Banca MB Made No Pre-Execution (or Any Other) Representation in Connection with the Mercatus Transaction ..............................................................5

    C.    The Terms of the Stock Purchase Agreements Reflect Mercatus' Alleged Representations ........................................................................................................7

II.   The Axion Stock Is Transferred into the Banca MB Custodial Account at BBH Without Any Instructions Concerning Payment or Further Delivery of the Stock..............7

III.  Alleged Misrepresentations to Plaintiffs Concerning Payment for the Axion Stock ..........8

IV.   Plaintiffs Demand Return of the Axion Stock ...................................................................8

ARGUMENT ......................................................................................................................8

I.    Standard for a Motion to Dismiss .....................................................................................8

    A.    The Applicable Standards for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss..........8

II.   The Plain Language of the Custodial Agreement Warrants Dismissal of Plaintiffs' Third-Party Beneficiary Claim ..........................................................................................9

III.  Plaintiffs' Fraudulent Inducement against Banca MB Fails to Satisfy Rule 9(b) ..............10

CONCLUSION..................................................................................................................18

# TABLE OF AUTHORITIES

## CASES

767 Third Avenue LLC v. Greble & Finger, LLP, 8 A.D.3d 75, 778 N.Y.S.2d 157 (1st Dep't 2004)................................................................................17

Abercrombie v. Andrew College, 438 F. Supp. 2d 243 (S.D.N.Y. 2006) ........................12

Acito v. IMCERA Group, Inc., 47 F.3d 47 (2d Cir. 1995)................................................13

Ackerman v. Local Union 363, 423 F. Supp. 2d 125 (S.D.N.Y. 2006)..............................2

Allen v. New World Coffee, Inc., No. 00 Civ. 2610, 2001 WL 293683 (S.D.N.Y. Mar. 27, 2001)..........................................................................15

Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955 (2007)....................................................9

Bibeault v. Advanced Health Corp., No. 97 Civ. 6026, 2002 WL 24305 (S.D.N.Y. Jan. 8, 2002)..........................................................................4, 14

Bombardier Capital Inc. v. Naske Air GmbH, No. 02 CV 10176, 2003 WL 22137989 (S.D.N.Y. Sept. 17, 2003)..........................................................................12

Caniglia v. Chicago Tribune-New York News Syndicate Inc., 204 A.D.2d 233, 612 N.Y.S.2d 146 (1st Dep't 1994)..........................................................................17

Coppola v. Applied Electric Corp., 288 A.D.2d 41, 732 N.Y.S.2d 402 (1st Dep't 2001) ..........................................................................17

EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508 (S.D.N.Y. 2005) ..........................................................................11, 16

In re Gulf Oil/Cities Service Tender Offer Litigation, 725 F. Supp. 712 (S.D.N.Y. 1989) ..........................................................................10

Halperin v. Lieberman, 271 A.D. 878, 66 N.Y.S.2d 78 (2d Dep't 1946) ........................12

Hampshire Equity Partners II, L.P. v. Teradyne, Inc., No. 04 Civ. 3318, 2005 WL 736217 (S.D.N.Y. Mar. 30, 2005), aff'd, F. App'x 317 (2d Cir. 2005)........................14

Hoffenberg v. Hoffman & Pollok, 248 F. Supp. 2d 303 (S.D.N.Y. 2003) ........................11

Hyman v. New York Stock Exchange, Inc., 46 A.D.3d 335, 848 N.Y.S.2d 51 (1st Dep't 2007)..........................................................................16

ii

India.com, Inc. v. Dalal, 412 F.3d 315 (2d Cir. 2005).....................................................3, 9

Jurupa Valley Spectrum, LLC v. National Indemnity Co., No. 06 Civ. 4023, 2007
    WL 1862162 (S.D.N.Y. June 29, 2007) ........................................................9

M'Baye v. World Boxing Association, No. 05 Civ. 9581, 2006 WL 2090081
    (S.D.N.Y. July 28, 2006) .............................................................................16

Matsumura v. Benihana National Corp., 542 F. Supp. 2d 245 (S.D.N.Y. 2008) ..............16

Morse/Diesel, Inc. v. Trinity Industrial, Inc., 859 F.2d 242 (2d Cir. 1988) .......................9

Nepco Forged Products, Inc. v. Consolidated Edison Co. of New York, Inc., 99
    A.D.2d 508, 470 N.Y.S.2d 680 (2d Dep't 1984)...........................................................9

In re Parmalat Securities Litigation, 501 F. Supp. 2d 560 (S.D.N.Y. 2007) ....................13

Pilarczyk v. Morrison Knudsen Corp., 965 F. Supp. 311 (N.D.N.Y. 1997), aff'd,
    162 F.3d 1148 (2d Cir. 1998).....................................................................................14

Sharp International Corp. v. State Street Bank & Trust Co., 281 B.R. 506 (Bankr.
    E.D.N.Y. 2002), aff'd, 302 B.R. 760 (E.D.N.Y. 2003) and 403 F.3d 43 (2d Cir.
    2005) ...........................................................................................................13

Sobek v. Quattrochi, No. 03 Civ. 10219, 2006 WL 1540489 (S.D.N.Y. June 6,
    2006) ...........................................................................................................12

Sun Micro Medical Technologies Corp. v. Passport Health Communications, Inc.,
    No. 06 Civ. 2083, 2006 WL 3500702 (S.D.N.Y. Dec. 4, 2006)....................................13

Synovus Bank of Tampa Bay v. Valley National Bank, 487 F. Supp. 2d 360
    (S.D.N.Y. 2007).............................................................................................9

Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S. Ct. 2499 (2007) ............................8, 9

## STATUTES

Fed. R. Civ. P. 9(b) ............................................................................................11

Fed. R. Civ. P. 12(b)(6)........................................................................................8

## INTRODUCTION

Defendant Banca MB S.p.A. ("Banca MB") respectfully submits this memorandum of law in support of its motion, pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss with prejudice the claims asserted against it in the Amended Complaint.

## PRELIMINARY STATEMENT

This action concerns a dispute between Plaintiffs and Defendant Mercatus & Partners, Ltd. ("Mercatus") regarding certain stock purchase agreements governing the sale by Plaintiffs to Mercatus of Axion Power International, Inc. ("Axion") common stock, pursuant to which Mercatus agreed to purchase 500,000 Axion shares for $1,500,000 (the "Axion Stock"). The stock purchase agreements provided that Mercatus was not required to pay immediately for the Axion Stock; rather, payment was to be made within thirty days after Plaintiffs delivered the shares into a custodial account of an Italian bank, Defendant Banca MB, maintained at Brown Brothers & Harriman Co. ("BBH") in New York pursuant to a custodial agreement dated September 7, 2005 (the "Custodial Agreement"). Plaintiffs allege that Mercatus fraudulently caused them to deliver the shares to Mercatus because Mercatus had no intention of paying the purchase price owed under the stock purchase agreements. Plaintiffs further allege that Mercatus breached the stock purchase agreements by causing the Axion Stock to be improperly transferred out of the custodial account at BBH prior to payment of the purchase price for, or return of, the Axion Stock.

Whether or not Plaintiffs have an actionable claim against Mercatus or other defendants, they have absolutely no basis for asserting any claims against Banca MB. Unlike Mercatus, Banca MB was not a party to, nor signatory of, the stock purchase agreements. Furthermore, while the Amended Complaint contains allegations of multiple purported misrepresentations

made by Mercatus prior to the execution of the stock purchase agreements, Banca MB is not alleged to have made even a single representation (false or otherwise) to Plaintiffs in connection with the Mercatus transaction. Banca MB was simply identified as the holder of a custodial account maintained at BBH in which the shares would be kept for its customer Mercatus (the "Custodial Account") pursuant to a schedule attached to the underlying stock purchase agreements.

Notwithstanding its role as a mere provider of custodial services to its client Mercatus, as well as the glaring absence of any substantive allegations against Banca MB, Plaintiffs have asserted two (2) claims that Banca MB somehow: (i) breached a contract (the Custodial Agreement) to which Plaintiffs claim to be third-party beneficiaries (Count II); and (ii) fraudulently induced Plaintiffs to deposit their Axion shares into the Custodial Account (pursuant to the stock purchase agreements to which Banca MB was not a party) (Count III). Neither of Plaintiffs' claims against Banca MB contains any merit, and both should be dismissed.

With respect to the contractual claim, Plaintiffs refer to the Custodial Agreement between Banca MB and BBH and claim that they were third-party beneficiaries under the agreement. (Amend. Compl. ¶¶ 52, 53, 55, 56, 57.) A simple review of this agreement, however, reveals that such a claim cannot be maintained.[1] Specifically, Section 12.3 of the Custodial Agreement expressly disavows third-party beneficiaries and reads, in part: "[N]o client of [Banca MB] or other third party shall have any rights under this Agreement." (Decl. of Donald D. Lewis, Ex. A.)

---

[1]  Although not attached to the Amended Complaint, the Custodial Agreement between Banca MB and BBH (referred to in the Amended Complaint as the "Banca MB Account Agreement") may be properly considered on this motion because it is incorporated by reference therein. (Amend. Compl. ¶¶ 52, 53, 55, 56, 57.) See Ackerman v. Local Union 363, 423 F. Supp. 2d 125, 127 (S.D.N.Y. 2006) ("classic examples of documents that may be considered on a motion to dismiss even though the plaintiff does not physically attach them to the complaint are the contracts that underlie the claims").

Under New York law, it is well established that such a clause alone warrants dismissal of a third-party beneficiary claim.  See India.com, Inc. v. Dalal, 412 F.3d 315, 321 (2d Cir. 2005) ("'[w]here a provision exists in an agreement expressly negating an intent to permit enforcement by third parties, . . . that provision is decisive'") (quoting Nepco Forged Prods., Inc. v. Consol. Edison Co. of N.Y., Inc., 99 A.D.2d 508, 508, 470 N.Y.S.2d 680, 681 (2d Dep't 1984)).

Plaintiffs' fraudulent inducement claim against Banca MB fares no better.  First, Plaintiffs fail to allege that Banca MB made a single representation to Plaintiffs (false or otherwise), much less any specific one which Plaintiffs relied on, or were injured by, in entering into the stock purchase agreements and depositing their Axion shares into the Custodial Account.  Second, the Amended Complaint fails to even suggest that Banca MB acted with requisite scienter – intent or knowledge of wrongdoing – to sustain such a claim.  Instead, the Amended Complaint contains repeated conclusory allegations of what Banca MB purportedly "knew" or "should have known" (Amend. Compl. ¶¶ 32, 33, 35, 54, 55, 56, 59, 60, 61), but fails to allege a single fact from which it may be reasonably inferred that Banca MB had knowledge of the purported fraud. Furthermore, Plaintiffs do not allege that Banca MB, a provider of custodial services for its client Mercatus, had any motive to somehow defraud Plaintiffs.  Third, Plaintiffs' fraudulent inducement claim against Banca MB is merely an impermissible duplication of its breach of contract claim against Mercatus:  both claims are based on Mercatus' alleged failure to pay the purchase price for, or to return, the Axion Stock in purported breach of the stock purchase agreements.

The only allegation prior to the execution of the stock purchase agreements and deposit of Plaintiffs' shares into the Custodial Account which even (arguably) involves Banca MB relates

3

to Defendant Dwight Parscale (Amend. Compl. ¶ 22)[2] – and nowhere in the Amended Complaint do Plaintiffs attempt to impute any statement or action of Parscale directly to Banca MB, nor is there any allegation of knowledge by Banca MB of actions or statements by Mr. Parscale.[3]

Plaintiffs seem to allege that their counsel (who negotiated stock purchase agreements with Mercatus) (Amend. Compl. ¶¶ 14, 15, 20, 22) purportedly had a single telephone conversation with Parscale confirming that the Axion Stock could not leave the Custodial Account until the purchase price was paid. (Amend. Compl. ¶ 22.) Notwithstanding their counsel's purported participation, Plaintiffs fail to plead the requisite specifics concerning the call to satisfy the requirements of Rule 9(b). Instead, Plaintiffs (i) group this purported conversation with allegedly similar phone calls that their counsel allegedly had with Mercatus' CEO and with Mercatus' counsel and (ii) fail to provide any specifics as to what was purportedly said, if anything, by Parscale during the call. (Id.) Furthermore, Plaintiffs fail to allege any facts from which it may be reasonably inferred that Parscale knew his presence on the call constituted a false representation at the time, which independently renders this claim insufficient pursuant to Rule (9)(b). Finally, Plaintiffs fail to allege that Banca MB knew about this purported

---

[2]    While the Amended Complaint contains several allegations of representations purportedly made by Parscale and Mercatus representatives subsequent to the execution of the stock purchase agreements and deposit of the Axion Stock into the Custodial Account (Amend. Compl. ¶¶ 28(a)(ii), 28(a)(iii), 28(a)(vii), 29(b), 39; Exs. K, L, P to Amend. Compl.), such after-the-fact statements cannot support a claim that Plaintiffs were induced to execute the stock purchase agreements or deposit their Axion shares. See Bibeault v. Advanced Health Corp., No. 97 Civ. 6026, 2002 WL 24305, at *6-7 (S.D.N.Y. Jan. 8, 2002) (dismissing fraudulent inducement claim where plaintiff could not show reasonable reliance, as subsequent statements could not have induced plaintiff's purchase).

[3]    Parscale is described in the "Parties" section of the Amended Complaint as "an individual and a lawyer" with an office in Texas. (Amend. Compl. ¶ 13.) Plaintiffs allege that Parscale was identified in an attachment to the stock purchase agreements, to which Banca MB was not a party, as "Attorney-in-Fact over the Banca MB Custodial Account" (Amend. Compl. ¶ 21, Exs. A-H (Schedule A)), and that he participated in the transaction as "Attorney in Fact for Mercatus' only asset manager, Banca MB, and was charged with control over the Banca MB Custodial Account." (Amend. Compl. ¶ 38.) Plaintiffs' original complaint (filed Dec. 21, 2007) alleged that Parscale is "a lawyer, agent or

*(cont'd)*

4

conversation in which Parscale said nothing or was holding himself out to Plaintiffs to be an "Attorney-in-Fact" for Banca MB. (Amend. Compl. ¶ 21(c).)

For these reasons, and the reasons discussed more fully below, Plaintiffs' claims against Banca MB should be dismissed with prejudice.

## STATEMENT OF FACTS

### I.    The Stock Purchase Agreements Between Mercatus and Plaintiffs

### A.    Banca MB Is Not a Signatory to the Stock Purchase Agreements

On December 9, 2005, the Individual Plaintiffs[4] each entered into two stock purchase agreements with Mercatus entitled SICAV One and SICAV Two (the "Stock Purchase Agreements"). (Amend. Compl. ¶¶ 20, 23-26; Exs. A-H of Amend. Compl.) Plaintiffs allege that Mercatus' purpose for purchasing the Axion Stock was to place it into a European bank SICAV mutual fund. (Amend. Compl. ¶ 14.) Pursuant to the Stock Purchase Agreements, Mercatus agreed to purchase a total of 500,000 unrestricted shares of Axion common stock at a price of $3.00 per share. (Id. ¶¶ 23-26.) This transaction is referred to in the Amended Complaint, and herein, as the "Mercatus Transaction." Banca MB is not a party, nor signatory, to any of the Stock Purchase Agreements.

### B.    Banca MB Made No Pre-Execution (or Any Other) Representation in Connection with the Mercatus Transaction

Plaintiffs allege that certain representations – none of which is alleged to have been made by Banca MB – were made prior to their execution of the Stock Purchase Agreements. (Amend.

---

*(cont'd from previous page)*
employee of <u>Mercatus</u>." (Orig. Compl. ¶ 15 (emphasis added).)

[4]    Plaintiffs William and Tracy Ahearn, Sally Fonner, and James Smith, M.D., are referred to herein as the "Individual Plaintiffs," and together with Axion, the "Plaintiffs." William Monteith is also alleged to have entered into two stock purchase agreements with Mercatus, and he subsequently assigned his rights under the agreements to Plaintiff Sally Fonner. (Amend. Compl. ¶ 25, n.1.)

Compl. ¶¶ 15-17.)  Instead, each of these representations is alleged to have been made by the

Mercatus Defendants.[5]  (Id.)  For example, Plaintiffs allege that in connection with the Mercatus

Transaction:

- Mercatus represented that Plaintiffs would bear no payment risk, as their shares would be deposited into a "safekeeping, custodial account in the United States maintained by Banca MB at BBH" where the Axion Stock would remain until the purchase price was paid.  (Amend. Compl. ¶ 15.)[6]

- Mercatus represented that if the purchase price was not timely paid (within thirty days of deposit), Plaintiffs could "contact BBH directly and demand the return of their shares" and BBH would comply with such demands.  (Id. ¶ 16.)

- Mercatus represented that one third of the shares deposited was required to be unrestricted.  (Id. ¶ 17.)

Plaintiffs additionally allege that upon receiving the form Stock Purchase Agreements,

their lawyer in the transaction, during telephone conversations with (i) Mercatus' CEO, (ii)

Mercatus' counsel, and (iii) Defendant Dwight Parscale, purportedly confirmed that the Axion

Stock would remain in the Custodial Account until the purchase price was paid.  (Amend. Compl.

¶ 22.)  These alleged confirmations, just as the representations made prior to Plaintiffs' receipt of

the form Stock Purchase Agreements, are not alleged to have been made by Banca MB.

---

[5]  The "Mercatus Defendants" refers to Defendants Mercatus, Cari Masi, and Stephen Cevolo.  Masi is alleged to be Mercatus' Chief Executive Officer (Amend. Compl. ¶ 10); Cevolo is alleged to be an officer of Mercatus (Id. ¶ 11).

[6]  Around two months prior to the execution of the Stock Purchase Agreements, on or around September 7, 2005, Banca MB and BBH entered into an agreement (the Custodial Agreement) whereby the New York-based BBH would act as custodian for certain of Banca MB's customers, such as Mercatus.  (Exhibit A to the Lewis Decl.)  (Amend. Compl. ¶¶ 52-57.)  Plaintiffs' third-party beneficiary claim (Amend. Compl. ¶¶ 52-57) is directly contradicted by the plain language of Section 12.3 of the Custodial Agreement, which expressly disavows any third-party beneficiaries thereunder.  (Id.)

C.    **The Terms of the Stock Purchase Agreements**
      **Reflect Mercatus' Alleged Representations**

The terms of the executed agreements are consistent with the alleged representations

made by Mercatus (and its representatives) in advance of the Mercatus Transaction. In sum, the

Stock Purchase Agreements set forth that: (i) Mercatus had thirty days after deposit to pay the

purchase price for the Axion Stock; (ii) the Axion Stock had to remain on deposit until the

purchase price was paid; and (iii) if the purchase price was not paid within thirty days, the Axion

Stock could be recalled by Plaintiffs. (Amend. Compl. ¶¶ 23-26.) In addition, Banca MB is

identified in Schedule A attached to the Stock Purchase Agreements as holding a custodial

account at BBH (for its customer Mercatus) in which the Axion Stock would be deposited until

payment of the purchase price. (Id.) As noted, there is no allegation that Banca MB was a

signatory to the Stock Purchase Agreements, nor that it knew of any representations that the

Axion Stock would be held in the Custodial Account pursuant to the Stock Purchase Agreements.

Furthermore, the Amended Complaint contains no allegation that Banca MB knew of any

representations or "confirmations" made with respect to the Custodial Account, or of anyone

purportedly acting on behalf of Banca MB.

II.    **The Axion Stock Is Transferred into the Banca MB Custodial Account at BBH**
       **Without Any Instructions Concerning Payment or Further Delivery of the Stock**

Shortly after the Stock Purchase Agreements were entered into, on or around December

13, 2005, pursuant to instructions received from Continental Stock Transfer & Trust Company

("Continental"), the shares purchased by the Individual Plaintiffs were allegedly transferred into

the Banca MB Custodial Account maintained at BBH. (Compl. ¶ 27(a).) Significantly, the

correspondence from Continental to BBH in connection with the deposit does not contain any

indication that the shares were not to be transferred until the purchase price was paid. (Ex. I of

Amend. Compl.) Furthermore, there is no allegation that Banca MB was notified of the transfer or of this correspondence from Continental.

## III.    Alleged Misrepresentations to Plaintiffs Concerning Payment for the Axion Stock

Plaintiffs further allege that, beginning around one month after the deposit of the Axion Stock into the Custodial Account in January 2006, and continuing through June 2006, the Mercatus Defendants and Defendant Parscale sent numerous false communications advising Plaintiffs that funding was imminent so as to purportedly delay Plaintiffs from demanding return of the stock. (Amend. Compl. ¶ 28.) Significantly, just as with the pre-execution representations, none of these post-execution representations are alleged to have been made by Banca MB.

## IV.    Plaintiffs Demand Return of the Axion Stock

Around six months after the execution of the Stock Purchase Agreements, on or around June 27, 2006, Plaintiffs sent a letter to BBH, as well as to all of the Defendants except Banca MB, demanding the return of the Axion Stock. (Amend. Compl. ¶ 29.) Plaintiffs allege that the stock was not returned, and that they subsequently learned that the shares had been transferred into accounts other than the Custodial Account through a series of transactions from January 2006 though August 2006. (Id. ¶ 30.) Around a year and a half later, on December 21, 2007, Plaintiffs filed their original complaint.

## ARGUMENT

## I.    Standard for a Motion to Dismiss

## A.    The Applicable Standards for a Fed. R. Civ. P. 12(b)(6) Motion to Dismiss

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court is empowered to dismiss a cause of action for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). While a court deciding a motion to dismiss filed pursuant to Rule 12(b)(6) must accept as true the factual allegations contained in the complaint, Tellabs, Inc. v. Makor Issues &

Rights, Ltd., 127 S. Ct. 2499, 2509 (2007), the complaint must contain more than a "formulaic

recitation" of the elements of a cause of action. Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955,

1964-65 (2007) (citation omitted). The court is also required to consider "documents incorporated

into the complaint by reference, and matters of which a court may take judicial notice." Tellabs,

127 S. Ct. at 2509. The complaint must allege facts in support of each cause of action that rise

above the "speculative level" and "state a claim to relief that is plausible on its face." Bell Atl., 127

S. Ct. at 1965, 1974.

## II.    The Plain Language of the Custodial Agreement Warrants Dismissal of Plaintiffs' Third-Party Beneficiary Claim

Plaintiffs allege that there is "an account agreement between BBH and Banca MB for [the]

Banca MB Custodial Account" to which "Plaintiffs were third-party beneficiaries." (Amend.

Compl. ¶¶ 52, 53; see also Amend. Compl. ¶¶ 54-57.) Under New York law, however, Plaintiffs

cannot be found to be third-party beneficiaries to the Custodial Agreement, because such a third-

party beneficiary claim is precluded by the plain language of the agreement. See India.com, 412

F.3d at 321 (under New York law, "'[w]here a provision exists in an agreement expressly

negating an intent to permit enforcement by third parties, . . . that provision is decisive'" (quoting

Nepco Forged Prods., Inc. v. Consol. Edison Co. of N.Y., Inc., 99 A.D.2d 508, 508, 470

N.Y.S.2d 680, 681 (2d Dep't 1984))); Morse/Diesel, Inc. v. Trinity Indus., Inc., 859 F.2d 242,

249 (2d Cir. 1988) ("[u]nder New York law, where a provision in a contract expressly negates

enforcement by third parties, that provision is controlling"); Jurupa Valley Spectrum, LLC v.

Nat'l Indem. Co., No. 06 Civ. 4023, 2007 WL 1862162, at *5 (S.D.N.Y. June 29, 2007) (same).[7]

---

[7]    Such reasoning is consistent with the requirement under New York law that a party attempting to establish third-party beneficiary status establish that (i) the contract was intended for his or her benefit, and (ii) the benefit to him or her is sufficiently immediate, rather than incidental. See, e.g., Synovus Bank of Tampa Bay v. Valley Nat'l Bank, 487 F. Supp. 2d 360, 368 (S.D.N.Y. 2007) ("New York law
*(cont'd)*

Illustratively, Section 12.3 of the Custodial Agreement reads, in part:

> Each party agrees that only the parties to this agreement and/or their successors in interest shall have a right to enforce the terms of this Agreement. Accordingly, <u>no client of [Banca MB] or other third party shall have any rights under this Agreement</u> and such rights are explicitly disclaimed by the parties.

(Exh. A to Lewis Declaration) (emphasis added). There can be no dispute that this clause not only fails to demonstrate the intent of the parties to benefit Plaintiffs, but expressly precludes Plaintiffs from asserting any third-party rights under the Custodial Agreement.

It is also worthwhile to note that the above-referenced clause precludes claims under the Custodial Agreement by even a "client" of the bank. Here, none of the Plaintiffs are clients of Banca MB, but rather simply parties who entered into a transaction with one of the bank's clients, Mercatus. It would be completely illogical if each and every entity (similarly situated to Plaintiffs) that did business with one of the customers for which Banca MB provides custodial services could somehow claim to be a third-party beneficiary and bring a lawsuit under the Custodial Agreement.

Accordingly, Plaintiffs' third-party beneficiary claim is precluded by the plain language of the Custodial Agreement, and must be dismissed.

### III.    Plaintiffs' Fraudulent Inducement against Banca MB Fails to Satisfy Rule 9(b)

Plaintiffs' only other claim against Banca MB, which alleges that the bank somehow fraudulently induced Plaintiffs to enter into the Stock Purchase Agreements, is also deficient and must be dismissed. (Amend. Compl. ¶¶ 59-63.) Plaintiffs not only (i) fail to allege the essential

---

*(cont'd from previous page)*
requires that the parties' intent to benefit a third-party be shown on the face of the contract."); <u>In re Gulf Oil/Cities Serv. Tender Offer Litig.</u>, 725 F. Supp. 712, 733 (S.D.N.Y. 1989). In the face of an express disavowal of third-party beneficiaries, such as the provision in the Custodial Agreement here, it is clear that Plaintiffs were not "intended" to be "immediate" (or any other) beneficiaries.

elements of a fraudulent inducement claim,[8] but also (ii) fall woefully short of the well-

established pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure, which

applies to a fraudulent inducement claim in New York and requires "the pleading of

particularized 'facts that give rise to a strong inference' that defendant[ ] acted with fraudulent

intent." EED Holdings v. Palmer Johnson Acquisition Corp., 228 F.R.D. 508, 512 (S.D.N.Y.

2005) (Sweet, J.) (quoting Lesavoy v. Lane, 304 F. Supp. 2d 520, 530 (S.D.N.Y. 2004));

Hoffenberg v. Hoffman & Pollok, 248 F. Supp. 2d 303, 310-11 (S.D.N.Y. 2003) (Sweet, J.) (a

fraudulent inducement claim necessarily involves allegations of fraud and must meet Rule 9(b)'s

heightened pleading requirements).[9]  As this Court has noted, the Second Circuit "has read Rule

9(b) to require that a complaint [alleging fraud] '(1) specify the statements that the plaintiff

contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were

made, and (4) explain why the statements were fraudulent.'" EED Holdings, 228 F.R.D. at 511

(quoting Rombach v. Chang, 355 F.3d 164, 170 (2d Cir. 2004)).

     Apparently ignoring these well-settled principles, Plaintiffs have asserted a fraudulent

inducement claim against Banca MB, notwithstanding the glaring fact that Plaintiffs have not

alleged that Banca MB made a single representation to them, false or otherwise, much less any

representation on which they relied or by which they were injured (required elements of a

---

[8]    Under New York law, the elements of a fraudulent inducement claim are: "'(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by defendant, (5) that the representation was made for the purpose of inducing the other party to rely on it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.'" Hoffenberg v. Hoffman & Pollok, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003) (Sweet, J.) (citation omitted).

[9]    Rule 9(b) provides as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

fraudulent inducement claim).[10]  The closest Plaintiffs come to alleging any misrepresentation by

Banca MB is the general allegation that "Parscale, Cevolo and Masi knew that Plaintiffs were

relying on representations from Defendants that Plaintiffs' stock could not be transferred."

(Amend. Compl. ¶ 34.)  This allegation (similar to the rest of the Amended Complaint) fails to

allege any specific representation made by Banca MB and thus falls well short of the "who, what,

when, where, and why" specificity requirements of Rule 9(b).  Abercrombie v. Andrew College,

438 F. Supp. 2d 243, 272-73 (S.D.N.Y. 2006) (dismissing fraud claim pursuant to Rule 9(b)

where "it is never stated who made the misrepresentations, when or where they were made, or

the contents of the statement [on] which" plaintiff allegedly relied); Bombardier Capital Inc. v.

Naske Air GmbH, No. 02 CV 10176, 2003 WL 22137989, at *3-4 (S.D.N.Y. Sept. 17, 2003)

(dismissing fraudulent inducement claim for failure to identify the allegedly fraudulent

statements made by defendants, the speaker or speakers of the allegedly fraudulent statements, or

when and where the statements were made); Sobek v. Quattrochi, No. 03 Civ. 10219, 2006 WL

1540489, at *1 (S.D.N.Y. June 6, 2006) (Sweet, J.) ("In the absence of any identified fraudulent

statement by [defendant] on which [plaintiff] relied, the fraudulent inducement claim is

dismissed.").[11]

---

[10]   Plaintiffs fail to allege (even generally) that they suffered any injury as a result of any allegedly false representations by Banca MB.  Instead, the Amended Complaint alleges: "Plaintiffs have been injured as a result of the knowingly false representations of Defendants Mercatus, Masi, Cevolo and Parscale as their Axion shares have been removed from the Banca MB Custodial Account." (Amend. Compl. ¶ 63.)  Failure to plead this essential injury element of a fraudulent inducement claim warrants dismissal.

[11]   Plaintiffs do not claim "reliance" on any statement made by Banca MB, but instead merely claim that Banca MB "knowingly acquiesced" to the purportedly false representations of the other Defendants. (Amend. Compl. ¶ 62.)  This is insufficient.  Halperin v. Lieberman, 271 A.D. 878, 878, 66 N.Y.S.2d 78, 79 (2d Dep't 1946) (allegations that defendant "'aided, abetted, assisted, connived with and acquiesced in'" fraud are insufficient to state a cause of action) (citation omitted); Bombardier Capital Inc. v. Naske Air GmbH, No. 02 CV 10176, 2003 WL 22137989, at *3 (S.D.N.Y. Sept. 17, 2003) (dismissing fraudulent inducement claim based on purported omission because in the absence of "a
*(cont'd)*

Additionally, Plaintiffs do not – because they cannot – even attempt to plead any scienter with respect to Banca MB.[12]   First, although the Amended Complaint contains repeated conclusory allegations of what Banca MB purportedly "knew" or "should have known" (Amend. Compl. ¶¶ 32, 33, 35, 54, 55, 56, 59, 60, 61), it fails to allege a single fact from which it may be reasonably inferred that Banca MB had knowledge of the purported fraud.[13]   See Sun Micro Med. Techs. Corp. v. Passport Health Commc'ns, Inc., No. 06 Civ. 2083, 2006 WL 3500702, at *11 (S.D.N.Y. Dec. 4, 2006) (dismissing fraudulent inducement claim where plaintiffs failed to plead any facts to support an "inference of fraudulent intent").   Second, Plaintiffs similarly fail to allege that Banca MB, a provider of custodial services, had any motive to participate in a fraud, which also warrants dismissal of their fraudulent inducement claim.  See, e.g., Sharp Int'l Corp. v. State St. Bank & Trust Co., 281 B.R. 506, 516 (Bankr. E.D.N.Y. 2002) (dismissing fraud claim against defendant bank involving diversion of funds from plaintiff, noting "[c]ourts have

---

*(cont'd from previous page)*

fiduciary or other relationship signifying a heightened level of trust" there is no duty to speak).  Here, there is no allegation that Banca MB had any fiduciary relationship or one with a heightened level of trust with Plaintiffs.

[12]   Though a speaker's state of mind may be averred generally, a plaintiff's supporting factual allegations must give rise to a "'strong inference'" of scienter.  See In re Parmalat Sec. Litig., 501 F. Supp. 2d 560, 573 (S.D.N.Y. 2007).  To establish the requisite inference of knowledge, plaintiffs must plead facts that (1) demonstrate the defendant's "'motive and opportunity to commit'" or assist in the fraud, or (2) "'constitute strong circumstantial evidence'" of the defendant's "'conscious misbehavior or recklessness.'"  See Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir. 1995) (citation omitted).

[13]   For example, Plaintiffs allege that:  (i) "Banca MB, as a United States broker-dealer, had sufficient knowledge of the operation of its customer, Mercatus, to know the structure of the Mercatus Transaction" (Amend. Compl. ¶¶ 33, 54); (ii) "Banca MB knew or should have known that it was being held out by to others by its customer Mercatus as maintaining a safekeeping account for the purpose of receiving stock from customers of Mercatus" (Id. ¶ 32); and (iii) "Banca MB knew or should have known that third parties would rely on the reputation of that Banca MB as a custodian in making their decision to place their stock in the Banca MB Custodial Account" (Id. ¶ 35).  None of these allegations remotely suggests that Banca MB had any knowledge of the purported fraud, nor does the wholly conclusory allegation that "[t]he actions of Defendants Mercatus, Banca MB, Masi, Cevolo and Parscale as set forth herein were knowing[ly] false, fraudulent and made with the intention that Plaintiffs rely thereon in depositing the Axion shares in the Banca MB Custodial

*(cont'd)*

13

consistently found that allegations of ordinary economic motives are insufficient to plead a

strong financial motive to aid the fraud, and are not a substitute for pleading actual knowledge of

the primary wrongdoing"), aff'd, 302 B.R. 760 (E.D.N.Y. 2003) and 403 F.3d 43 (2d Cir. 2005);

see also Hampshire Equity Partners II, L.P. v. Teradyne, Inc., No. 04 Civ. 3318, 2005 WL

736217, at *3 (S.D.N.Y. Mar. 30, 2005) (plaintiff failed to adequately plead scienter through

motive and opportunity where alleged rationale did not make economic sense), aff'd, F. App'x

317 (2d Cir. 2005).

As noted, nowhere in the Amended Complaint do Plaintiffs directly attempt to impute the

actions of Defendant Parscale to Banca MB.  However, even assuming that they could, their

fraudulent inducement claim against Banca MB would still fail.  As an initial matter, every false

representation supposedly made by Parscale (except one) is alleged to have been made after

Plaintiffs turned over the Axion Stock to Continental for deposit into the Custodial Account.

(Amend. Compl. ¶¶ 28(a)(ii), 28(a)(iii), 28(a)(vii), 29(b), 39; Exs. K, L, P to Amend. Compl.)

Any notion that such after-the-fact statements somehow induced Plaintiffs to enter into the Stock

Purchase Agreements and deposit their Axion shares into the Custodial Account would defy both

logic and the law, as the essential element of reliance cannot be met.  See Bibeault v. Advanced

Health Corp., No. 97 Civ. 6026, 2002 WL 24305, at *6-7 (S.D.N.Y. Jan. 8, 2002) (dismissing

fraudulent inducement claim where plaintiff could not show reasonable reliance, as subsequent

statements could not have induced plaintiff's purchase); Pilarczyk v. Morrison Knudsen Corp.,

965 F. Supp. 311, 319-20 (N.D.N.Y. 1997), aff'd, 162 F.3d 1148 (2d Cir. 1998) (alleged

misrepresentations and omissions made by defendants after parties entered purchase agreement

---

(cont'd from previous page)
    Account."  (Amend. Compl. ¶ 59.)

14

were not actionable).  Accordingly, Plaintiffs may not state a fraudulent inducement claim based

on statements that Parscale made after the Stock Purchase Agreements were executed.[14]

The only representation prior to the execution of the Stock Purchase Agreements and the

deposit of Plaintiffs' Axion shares into the Custodial Account concerning Parscale (described as

an "Attorney-in-Fact" for Banca MB) is that Plaintiffs' counsel allegedly had a single telephone

conversation with Parscale allegedly confirming that the Axion Stock could not leave the

Custodial Account until payment was made.  (Amend. Compl. ¶ 22.)  In addition to the fact that

Plaintiffs do not attempt to impute this alleged representation directly to Banca MB, this

statement is not actionable, as Plaintiffs have failed to provide the requisite specifics concerning

this purported telephone conversation with Parscale.  (Id.)  Instead, the Amended Complaint (i)

groups this purported conversation with allegedly similar phone calls that Plaintiffs' counsel

allegedly had with Mercatus' CEO and with Mercatus' counsel and (ii) fails to provide any

specifics as to what was purportedly said by Mr. Parscale during the call.  Rather, it generally

alleges that Plaintiffs' counsel confirmed Mercatus' earlier representations that the Axion shares

could not leave the Custodial Account until payment was made.  (Id.)  Such a generalized

allegation is insufficient to meet the pleading requirements of Rule 9(b).  See Allen v. New

World Coffee, Inc., No. 00 Civ. 2610, 2001 WL 293683, at *4 (S.D.N.Y. Mar. 27, 2001) (claims

of unspecified false statements allegedly made "[d]uring November or December of 1997" did

not allege fraud with the particularity required by Rule 9(b)) (alteration in original); EED

---

[14]    Plaintiffs attempt to rescue their deficient fraudulent inducement claim by alleging that they were
fraudulently induced to not only deposit their Axion shares, but also not to demand the return of their
stock from the Custodial Account until June 27, 2006 (as was their contractual right under the Stock
Purchase Agreements, as early as January 2006).  (Amend. Compl. ¶ 62.)  Plaintiffs allege that they
were so induced based on the representations of the Mercatus Defendants and Defendant Parscale, not
Banca MB.  (Id. ¶ 28.)  Notably, Parscale's first such representation (made together with Mercatus'
counsel) is not alleged to have been made until January 26, 2006.  (Id. 28(a)(ii).)  By that time, almost
*(cont'd)*

Holdings, 228 F.R.D. at 514 (allegation describing purportedly fraudulent remarks "in

substance," rather than providing exact words, failed to meet the particularity requirements of

Rule 9(b)); see also Hyman v. N.Y. Stock Exch., Inc., 46 A.D.3d 335, 337, 848 N.Y.S.2d 51, 53

(1st Dep't 2007) (dismissing claim pursuant to C.P.L.R. 3016(b) for lack of specificity "[s]ince

two of the plaintiffs allege that they were privy by telephone to [allegedly fraudulent] statements,

[and] they should have been able to recite with more specificity . . . actual words or actions that

are alleged to have been misleading").

Furthermore, Plaintiffs' allegation of this purported phone call also fails to sufficiently

plead the scienter required by Rule 9(b) – that Parscale's representation was false at the time it

was made.  EED Holdings, 228 F.R.D. at 514 (dismissing fraudulent inducement claim where

plaintiff "alleged nothing that supports any inference that [defendant's] intentions at that time

were inconsistent with what he then said"); Matsumura v. Benihana Nat'l Corp., 542 F. Supp. 2d

245, 252  (S.D.N.Y. 2008) (dismissing fraud claim where "plaintiffs have utterly failed to meet

the burden of pleading specific facts to support their assertion that the statements were false or

misleading when made"); M'Baye v. World Boxing Ass'n, No. 05 Civ. 9581, 2006 WL 2090081,

at *4 (S.D.N.Y. July 28, 2006) (dismissing fraud claim because the amended complaint did "not

adequately allege that [defendant] made any representations that were fraudulent when made").

**IV.    Plaintiffs' Fraudulent Inducement Claim Impermissibly
Duplicates Their Breach of Contract Claim**

Finally, even though there was no contractual relation between Banca MB and Plaintiffs,

the fraudulent inducement claim alleged against Banca MB should be dismissed for the

independent reason that it duplicates Plaintiffs' breach of contract claim against Mercatus.

_____
*(cont'd from previous page)*
    all of the Axion Stock had already been transferred out of the Custodial Account.  (Id. ¶¶ 30(a), 30(b).)

Plaintiffs make a coy attempt to differentiate their fraud and contract claims by alleging that they were fraudulently induced to "deposit their shares of stock in the Banca MB Custodial Account" and to "not demand[] return of their Axion shares" (Amend. Compl. ¶¶ 59, 60, 62), rather than alleging that they were fraudulently induced to "enter into the Stock Purchase Agreements." Indeed, both Plaintiffs' fraud claims and Plaintiffs' contractual claims are based on Mercatus' alleged failure to pay the purchase price for, or to return, the Axion Stock in purported breach of the agreements. As such, Plaintiffs' fraudulent inducement claim is deficient for the independent reason that is duplicative of their breach of contract claim against Defendant Mercatus. See 767 Third Ave. LLC v. Greble & Finger, LLP, 8 A.D.3d 75, 76, 778 N.Y.S.2d 157, 158 (1st Dep't 2004) (dismissing fraud claim because "[i]t is well settled that a cause of action for fraud does not arise where the only fraud alleged merely relates to a party's alleged intent to breach a contractual obligation").[15]

---

[15] See also Coppola v. Applied Elec. Corp., 288 A.D.2d 41, 42, 732 N.Y.S.2d 402, 403 (1st Dep't 2001) (affirming dismissal of fraud claim based on the mere allegation that defendant "harbored the undisclosed intention from the outset to never comply" with the parties' agreement as duplicative of his breach of contract claim); Caniglia v. Chicago Tribune-N.Y. News Syndicate Inc., 204 A.D.2d 233, 234, 612 N.Y.S.2d 146, 147 (1st Dep't 1994) ("It is well settled that a cause of action for fraud does not arise, where, as here, the only fraud alleged merely relates to a contracting party's alleged intent to breach a contractual obligation.").

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
       July 31, 2008

                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP


                    By:   /s/ William P. Frank
                          William P. Frank
                          (William.Frank@skadden.com)
                          Donald D. Lewis
                          (Donald.Lewis@skadden.com)
                          Four Times Square
                          New York, New York  10036
                          (212) 735-3000
                          *Attorneys for Defendant Banca MB S.p.A.*

18