IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X
AXION POWER INTERNATIONAL, INC., :
WILLIAM AND TRACY AHEARN, h/w, :
SALLY FONNER, and : CIVIL ACTION
JAMES SMITH, M.D. : NUMBER
        **Plaintiffs** :
         :
    **-against-** :
         :
         : **COMPLAINT**
MERCATUS & PARTNERS, LTD., :
CARI MASI a/k/a CARY MASI : 07 CV 11493
BANCA MB S.p.A., :
DWIGHT PARSCALE, :
STEPHANO CEVOLO, : JURY TRIAL
         : DEMANDED
        **Defendants.** :
------------------------------------------------------------------------X

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT BANCA MP
S.p.A.'s MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs Axion Power International, Inc., William and Tracy Ahearn, h/w, Sally Fonner, and James Smith, M.D. (hereinafter collectively referred to as "Plaintiffs") hereby oppose Defendant Banca MB S.p.A.'s (hereinafter referred to as "Banca MB") Motion to Dismiss Plaintiffs' Complaint and assert as follows:

### I.  FACTUAL BACKGROUND

This case involves a series of transactions in which Mercatus & Partners, Ltd. (hereinafter referred to as "Mercatus"), agreed to purchase shares of Axion Power International, Inc. from plaintiffs. The somewhat complex transactions had several steps all outlined in a series of Sales Agreements which were executed by Mercatus and each of the individual Plaintiffs (hereinafter the "Sales Transactions").

1

The Sales Transactions are not unique to these Plaintiffs, but rather were used by Mercatus in numerous similar transactions involving other companies and their shareholders. Plaintiffs have averred and believe that they can prove that Banca MB knowingly allowed its name and reputation to be used and circulated by Mercatus in the documentation evidencing and promoting the Sales Transactions in an effort to give plaintiffs and others[1] the comfort necessary to go forward with the Sales Transactions.

The Sales Transactions involved:

1. The delivery by plaintiffs of stock in Axion Power International, Inc. to the Custodial Account of Banca MB at Brown Brothers Harriman & Company a New York bank.

2. The clear undertaking by Banca MB in the documentation which Banca MB knowingly allowed to be circulated, that Banca MB would hold the stock so deposited pending payment by Mercatus of the purchase price.

3. Once the purchase price had been paid, the stock would be transferred to SICAV Placeuro for inclusion in a stock mutual fund in which Mercatus was investing.

4. No stock was to be transferred out of the Banca MB Custodial Account unless and until the stock had been fully paid for.

5. In the event that Plaintiffs were not paid the Purchase Price for the Axion Stock, the Stock Purchase Agreements provided the Plaintiffs an option to recall the Axion Stock from Banca MB's Custodial Account.

Plaintiffs relied on these undertakings and took comfort in the size and reputation of Banca MB as their custodian.

---

[1] See Footnote 4.

In direct and total contradiction of its undertakings in the documentation which it allowed to be published and circulated, shortly after receiving the stock, without payment therefore having been made, Banca MB converted and transferred the stock.

Banca MB seeks a dismissal from this case because it did not sign the agreements. However, Banca MB knowingly allowed its name and reputation to be highlighted in the Stock Purchase Agreements to give plaintiffs the necessary comfort to enter into the transactions.

Banca MB clearly knew that the Axion Stock should not have been transferred for any reason from the Custodial Account unless and until the purchase price had been paid to Plaintiffs, which it never was. Banca MB's duties were specifically detailed in Schedule A of the SICAV Agreements: "<u>the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period</u>."

Banca MB's Motion to Dismiss mistakenly places the emphasis on the Banca MB-Brown Brothers Harriman & Company Custodial Agreement. In the Amended Complaint, Plaintiffs do not rely on the Custodial Agreement between Banca MB and BBH, despite what Banca MB would like the Court to believe for purposes of this Motion. The Stock Purchase Agreement only makes indication to "the agreement with BBH and Banca MB." Plaintiffs were not privy to the agreement and the agreement was not made available to Plaintiffs despite their repeated pre-litigation requests for the agreement. In fact, Plaintiffs never saw the agreement until July 31, 2008 when they received it attached to Banca MB's Motion to Dismiss. Plaintiffs relied on Banca MB's allowing its name to be used in the Stock Purchase Agreements.

Plaintiffs relied upon Banca MB's worldwide name and reputation to act as custodian, which Banca MB allowed Mercatus to use to induce Plaintiffs into the Sales Transactions. But for Banca MB's involvement in the Sales Transactions, Plaintiffs would not have executed the Stock Purchase Agreements. Plaintiffs investigated and researched Banca MB, and only upon discovering that Banca MB is a large and reputable global investment banking firm located in Milan, Italy, did Plaintiffs decide to enter into the Stock Purchase Agreements with Banca MB in the pivotal role of custodian. Plaintiffs trusted that Banca MB would protect their Stock in the Custodial Account as required by the Stock Purchase Agreements and not transfer the Stock without payment.

Moreover, Plaintiffs relied upon the numerous and repeated assurances of the Banca MB's agent and Attorney-in-Fact, Defendant Dwight Parscale[2], that payment was forthcoming. Plaintiffs were specifically told by Parscale on January 26, February 17, and throughout the months of March, April and May of 2006 that they would be paid the Purchase Price for the sale of the Axion Stock. Parscale repeatedly falsely assured Plaintiffs to continue to wait for the payments and not to attempt to exercise their option to recall their Stock as permitted by Section 3.14 of the Stock Purchase Agreements. Parscale additionally repeatedly mislead Plaintiffs to believe that the Axion Stock was still in the safekeeping Custodial Account at Brown Brothers Harriman in Banca MB's name. In reliance on Parscale's assurances, Plaintiffs elected not to exercise their option to recall their Stock to their detriment.

Despite Parscale's, as Banca MB's agent, repeated assurances, the Purchase Price for the Stock was never paid. At the time that Plaintiffs demanded the return of the

---

[2] Step Three of Schedule A to the Stock Purchase Agreements clearly indicates that Dwight Parscale is Banca MB's agent and Attorney-in-Fact: "Dwight Parscale, is the Attorney-In-Fact over the BBH accout of Banca MB for this account."

4

Axion Stock from the Custodial Account, Plaintiffs learned that the Axion Stock had been wrongfully transferred from the Custodial Account to various entities and then from those entities to others many months before. The first fraudulent transfer occurred on January 5, 2006 – three weeks before Parscale first lied to Plaintiffs.

Despite Banca MB's undertakings and obligations not to transfer the Axion Stock from the Custodial Account until Plaintiffs had been paid the Purchase Prices for the Stock, Banca MB transferred the Axion Stock. Banca MB breached its Custodial Agreement and breached its duties and obligations to Plaintiffs.

## II.     STANDARD FOR MOTIONS TO DISMISS

Motions to dismiss are granted only sparingly. A motion to dismiss should only be granted "if it appears that the plaintiffs can prove no set of facts in support of their claim that would entitle them to relief." *Ryder Energy Distrib., Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). A court must "draw all reasonable inferences in plaintiffs' favor" *Freedom Holdings Inc. v. Spitzer*, 257 F.2d 205, 216 (2d.Cir. 2004) and accept "as true all the factual allegations in the complaint." *Roth v. Jennings*, 489 F.2d 499, 501 (2d.Cir. 2007). See also *Iqbal v. Hasty*, 490 F.3d 143, 152 (2d. Cir. 2007).

## III.    PLAINTIFFS' COUNT II CLAIM ALLEGING BREACH OF CONTRACT FOR WHICH PLAINTIFFS WERE THIRD PARTY BENEFICIARIES IS SUFFICIENTLY PLED

Plaintiffs relied upon Banca MB's name and reputation and Banca MB's undertakings to safeguard Plaintiffs' Stock in a Custodial Account in Banca MB's name. Plaintiffs were the intended beneficiaries of the Banca MB Custodial Account. The sole

purpose of the Custodial Account was to hold the Axion Stock and other like-situated stock in safekeeping until the purchase price was paid to Plaintiffs.[3] In the event that the purchase price was not paid to Plaintiffs, Plaintiffs had the option to recall the Axion Stock. Thus, Banca MB had a duty to Plaintiffs to hold the Axion Stock in the Custodial Account and its failure to do so constituted a breach of its duty to Plaintiffs.

The individual Plaintiffs each executed two SICAV Agreements. Banca MB's name was repeatedly included in Schedule A to those SICAV Agreements – in fact, Banca MB was mentioned no less than seven times on each of the SICAV Agreements executed by Plaintiffs. Plaintiffs will prove that Banca MB allowed its name to be put into commerce, it allowed safekeeping duties and responsibilities to be imputed to it by way of the Stock Purchase Agreements, and it allowed Plaintiffs to sell their stock and put their stock in a Custodial Account in its name. Plaintiffs relied on Banca MB's reputation in entering into the Stock Purchase Agreements. Plaintiffs would not have entered into those Stock Purchase Agreements if those Agreements did not contain the safekeeping provision in which Banca MB, a reputable broker-dealer, was directly involved.

Banca MB is a United States broker-dealer and therefore has sufficient knowledge as to the operations of its customer Mercatus & Partners LTD (hereinafter "Mercatus"). Banca MB surely had sufficient knowledge that Mercatus was using its name repeatedly in the Stock Purchase Agreements. This is evident by the numerous prior litigation based on similar agreements in which Banca MB is named or referenced as the custodial account holder in the same type of scheme with the very same Defendants as those in this

---

[3] See footnote 4.

6

action.[4]  In fact, pursuant to Schedule A of the Stock Purchase Agreements, Banca MB undertook obligations to Plaintiffs – to hold the Axion Stock in safekeeping until the Purchase Price had been paid.  It is clearly stated in Schedule A of the Stock Purchase Agreements that "<u>the shares are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period</u>."  For Banca MB to now claim that it had no duty to Plaintiffs, or no knowledge of Plaintiffs' agreement with Mercatus, is disingenuous.

   Plaintiffs never received, reviewed, or were in any way privy, to the Custodial Agreement that Banca MB claims Plaintiffs have no rights to enforce.  Plaintiffs relied upon the repeated use of Banca MB's name on the Stock Purchase Agreements, which indicated that Banca MB would hold Plaintiffs' stock in safekeeping until Plaintiffs were paid.  Regardless of any "negating" clause, the purpose of the Custodial Account and agreement was to hold Plaintiffs' Stock in safekeeping.  Banca MB failed to do that.  Banca MB therefore breached the underlying purpose of the Custodial Agreement and breached its third-party duties to Plaintiffs.

   Banca MB allowed its name and the name and number of its custodial account at BBH to be highlighted in the Sales Agreements and in the instructions as to where the plaintiffs were to send their stock for safe keeping, .i.e., to the custodial account of Banca MB at BBH.  For Banca MB to now try to say that since Plaintiffs were not party to the custodial account agreement between it and its bank, that Plaintiffs have no right to complain when Banca MB violated every part of the custodial undertakings contained in

---

[4] For example, Banca MB is specifically referenced in the following litigation: *Bootie Beer Corporation v. Mercatus & Partners Limited*, 06-CV-5983 (S.D.N.Y.) and *Nite Capital, L.P. v. Mercatus & Partners Limited*, 603296/06 (Supreme Court of the State of New York, County of New York).

a document, the Sales Agreements, it knew was being circulated and used to induce plaintiffs to transfer their stock to that very custodial account is ludicrous.

Plaintiffs do not rely upon the Custodial Agreement between Banca MB and Brown Brothers Harriman & Company in their Amended Complaint. However, even so, Banca MB improperly relies upon the holding of *India.com* in claiming that Section 12.3 of the Custodial Agreement "negates" Plaintiffs from claiming any rights under the Custodial Agreement. *India.com* is factually distinguishable because in *India.com*, the plaintiff attempting to assert third-party rights was the broker to a stock purchase agreement. Here, Plaintiffs agree with Banca MB that a broker to a custodial agreement cannot assert third-party beneficiary rights if a negating clause has been incorporated into the contract. However, that is not the case at hand. Plaintiffs do not have some tangential, unrelated interest to the custodial relationship by and between Banca MB and Brown Brothers Harriman & Company. Rather, the entire purpose of the Custodial Agreement was to hold Banca MB's customers' investments such as stock – here, the Axion Stock belonging to Plaintiffs. To claim that Plaintiffs' interest in the Axion Stock can be negated by Banca MB and Brown Brothers Harriman & Company in an negating clause is contrary to public policy and contract law. Plaintiffs' rights cannot be contracted away by Banca MB and Brown Brothers Harriman & Company. A bank cannot agree with another bank to give away its customer's money without its customer's consent.

Plaintiffs have thus sufficiently established a viable cause of action against Banca MB for breach of a contract for which Plaintiffs were the intended third-party

8

beneficiaries in order to sustain a motion to dismiss. As such, Banca MB's motion to dismiss should be denied.

### IV. PLAINTIFFS' COUNT III ALLEGING FRAUD IN THE INDUCEMENT COUNT IS SUFFICIENTLY PLED

Plaintiffs have adequately pled fraud in the inducement against Banca MB in Count III of their Amended Complaint. The elements of fraud in the inducement are "'(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by defendant, (5) that the representation was made for the purpose of inducing the other party to rely on it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.'" *Joffenberg v. Joffman & Pollack*, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003) (Sweet, J.) (citation omitted).

As Banca MB points out in its Motion to Dismiss, a plaintiff alleging fraud needs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (Sweet, J.). Plaintiffs have satisfied that threshold.

Banca MB allowed Mercatus to repeatedly use its name and reputation to fraudulently induce companies and individuals to entering into the Sales Transactions. As stated above, Banca MB allowed its name and reputation to be circulated and disseminated on documentation intended to inducement companies and individuals into Sales Transactions with Banca MB's customer, Mercatus. Banca MB and Mercatus had previously engaged in similar Sales Transactions with many other individuals and companies, who, like Plaintiffs, were defrauded and were never paid for their stock.

9

Banca MB knew at the time of permitting Mercatus to circulate its name and reputation as a way of coaxing Plaintiffs into the Sales Transaction that it would not perform its undertakings set forth in the Stock Purchase Agreements.  Banca MB knowingly did not intend to hold the Axion Stock in safekeeping on behalf of Plaintiffs.  Plaintiffs have adequately alleged this in their Amended Complaint and intend to prove this at trial based upon the established pattern of Mercatus and Banca MB demonstrated by previous litigation.

Plaintiffs have satisfied the eight-prong test for fraudulent inducement set forth in *Joffenberg*.  Plaintiffs satisfy the first prong, that Banca MB made a representation to Plaintiffs.  Plaintiffs allege in Paragraph 31 of its Amended Complaint that:

> Banca MB is named in Private Stock Purchase Agreements SICAV One and Private Stock Purchase Agreements SICAV Two set forth as Exhibits A through H of this Complaint as the "only asset manager of Mercatus and the shares are deposited into a safekeeping account for Banca MB in BBH."  Exhibits A through H each state in Schedule A that:  *"The share are not allowed, under the agreement with BBH and Banca MB to in any way be hypothecated or leveraged in any fashion during this holding period.  The restricted, free trading or other validly issued shares under the appropriate exemption stay at BBH in the safekeeping account during this period, and at all times until the purchase price is complete."*

Banca MB allowed its name and reputation to be circulated by its customer Mercatus and represented that it would hold Plaintiffs' Stock in safekeeping in a Custodial Account in its name.  Same constitutes a representation made to Plaintiffs for purposes of a fraudulent inducement claim.

Plaintiffs have likewise established the second prong of the *Joffenberg* test, that Banca MB's representation was material.  Banca MB's representation contained in Schedule A of the SICAV Agreements is material because but for Banca MB's involvement and the safekeeping provision contained in the SICAV Agreements,

10

Plaintiffs would not have entered into the Sales Transactions. Plaintiffs have sufficiently pled, in Paragraphs 23(f), 24(f) and (h), 25(f) and (h), and 26(e) and (g), that Plaintiffs relied on the safekeeping provisions contained in the Stock Purchase Agreements in entering into the Agreement and that but for those provisions, Plaintiffs would not have entered into the Sales Transactions with Mercatus.

Plaintiffs have established the third-prong of the *Joffenberg* test, that Banca MB's representation that it would hold Plaintiffs' Stock in a safekeeping Custodial Account until Plaintiffs were paid was false. In Paragraphs 23(g), 24(i), 25(i), and 26(j), Plaintiffs sufficiently aver that Banca MB did not hold the Axion Stock in the Custodial Account at Brown Brothers Harriman & Company until Plaintiffs were paid the Purchase Price and that the Axion Stock was wrongfully transferred by Banca MB. Therefore, Banca MB's representation that it would hold the Axion Stock in safekeeping was false.

Plaintiffs have also established the fourth-prong of the *Joffenberg* test, that Banca MB knew the representation was false. Paragraphs 32 and 33 of Plaintiffs' Amended Complaint respectively aver the following:

> 32. Banca MB knew or should have known that it was being held out to others by its customer Mercatus as maintaining a safekeeping custody account for the purpose of receiving stock from customers of Mercatus.
>
> 33. Banca MB, as a United States broker-dealer, knew of the structure of the Mercatus Transaction and the program pursuant to which Plaintiffs were depositing Axion shares into Banca MB Custodial Account.

Together, Paragraphs 32 and 33 evince that Plaintiffs have sufficiently averred that Banca MB knowingly allowed the above false representations to be circulated by Mercatus.

11

Plaintiffs have further established the fifth-prong of the *Joffenberg* test, that the representation was made for the purpose of inducing the other party to rely on it. Paragraphs 34 and 35 of Plaintiffs' Amended Complaint respectively state the following:

> 34.    Parscale, Cevolo and Masi knew that Plaintiffs' were relying on representations from Defendants that Plaintiffs' Axion Stock could not be transferred from the Banca MB Custodial Account without payment of the purchase price being made to Plaintiffs.
>
> 35. Banca MB knew or should have known that third parties would rely on the reputation of Banca MB as a custodian in making their decision to place their stock in the Banca MB Custodial Account.

Together, Paragraphs 34 and 35 demonstrate that Plaintiffs have sufficiently averred that Banca MB knowingly intended for Plaintiffs to rely upon its reputation and false representation that it would hold Plaintiffs' stock in safekeeping.

Plaintiffs have also established the sixth-prong of the *Joffenberg* test, that Plaintiffs rightfully relied upon Banca MB's reputation and false representations. As stated above, Plaintiffs have sufficiently pled their reasonable reliance in Paragraphs 23(f), 24(f) and (h), 25(f) and (h), and 26(e) and (g).

Moreover, Plaintiffs were ignorant to the falsity of Banca MB's representations. Paragraph 36 of Plaintiffs' Amended Complaint reads that "Banca MB has never advised any of the Plaintiffs as to why all of their Axion Stock deposited in the Banca MB Custodial Account in connection with its Stock Purchase Agreements with Mercatus, came to be wrongfully transferred from the Banca MB Custodial Account prior to payment of the stock purchase price as required by the Stock Purchase Agreements."

Same demonstrates that Plaintiffs were ignorant as to why Banca MB represented to Plaintiffs that it would hold its Stock in safekeeping if it never intended to do so.

Lastly, Plaintiffs have established the eighth prong of the *Joffenberg* test, that Banca MB's conduct has cause Plaintiffs injury. Plainitffs' Amended Complaint is filled with averments that Plaintiffs' Stock was wrongfully transferred and that Plaintiffs were never paid for the Stock, including namely the Wherefore Clauses following each Count.

Plaintiffs have also adequately pled fraudulent inducement because Dwight Parscale, the representative of Banca MB, made false and misleading representations to Plaintiffs that he knew were false in order to prevent Plaintiffs from exercising their option to recall their Stock and to induce Plaintiffs to continue to wait for promised payment that they never received. Plaintiffs further adequately establish that Plaintiffs' reasonable reliance of Parscale's false and misleading representations, upon which he intended Plaintiffs to rely, caused Plaintiffs great injury.

Parscale was the Attorney-in-Fact of Banca MB's Custodial Account. Parscale was authorized to act on Banca MB's behalf regarding the safekeeping of the Axion Stock. Parscale was Banca MB's agent with regard to the Axion Stock and therefore, representations made by Parscale to Plaintiffs were made with Banca MB's authority and on Banca MB's behalf.

Parscale routinely made false and misleading misrepresentations to Plaintiffs and Plaintiffs' counsel that payment of the purchase price was forthcoming in an attempt to prevent Plaintiffs from exercising their option to recall the Axion Stock. Plaintiffs entered into the Stock Purchase Agreements on December 9, 2005. The Axion Stock was deposited in Banca MB's Custodial Account on December 13, 2005 and the respective

Purchase Prices were to be paid to Plaintiffs within thirty (30) days, or January 12, 2006. When payment was not received, on January 13, 2006, Defendant Cevolo sent a letter to Plaintiffs promising that payment would be made within seven (7) days. Thereafter, in an attempt to fraudulently delay Plaintiffs from exercising their option to recall the Axion Stock from the Custodial Account pursuant to the Stock Purchase Agreements, Parscale, as an agent of Banca MB, falsely represented to Plaintiffs that payment would be made between February 15, 2006 and February 20, 2006.  (See Exhibit K to Plaintiffs' Amended Complaint).  Thereafter, Parscale again made false and misleading representations to Plaintiffs on February 17, 2006 and assured that payment would be made by the end of February for the SICAV One Agreements and within the first two weeks of March 2006 for the SICAV Two Agreements.  (See Exhibit L to Plaintiffs' Amended Complaint).  Throughout the months of March, April and May, Parscale continued to make false and misleading misrepresentations promising imminent payment of the purchase price for the Axion Stock to Plaintiffs.  (See Exhibit P to Plaintiffs' Amended Complaint).

All of Parscale's false and misleading assurances were clearly made with the knowledge and intent to defraud Plaintiffs because much of the Axion Stock had been transferred from the safekeeping Custodial Account as early as January 5, 2006 and January 17, 2006 – before Parscale began making his numerous misrepresentations. Therefore, Parscale made his false statements to Plaintiffs knowing that they were false and misleading and nonetheless intended Plaintiffs to rely upon them.

Banca MB attempts to cloud the issue in its Motion to Dismiss by claiming that these false representations were made "<u>after</u> Plaintiffs turned over the Axion Stock to

Continental for deposit into the Custodial Account." (Banca MB's Motion to Dismiss, p. 14). However, what Banca MB fails to address is Plaintiffs' option to recall contained in Section 3.14 of the Stock Purchase Agreements. While Parscale and the other Defendants were making their false and misleading misrepresentations (and upon which Plaintiffs were relying) that the Axion Stock was still safely in the Custodial Account at Brown Brothers Harriman & Company and that payment was forthcoming, Plaintiffs still believed that they could exercise their option to recall the Axion Stock if the Purchase Price was not paid.

But for Parscale's intentionally false and knowingly misleading misrepresentations that payment was imminent, Plaintiffs would have exercised their option to recall the Axion Stock; or upon discovering that their Stock was missing, Plaintiffs would have attempted to retrieve the Stock immediately. Parscale knew that the Axion Stock had been wrongfully transferred from the Custodial Account as early as January 5, 2006 and chose to repeatedly assure Plaintiffs that they would be paid the purchase price for the sale of the Axion Stock. However, because of Parscale and the other Defendants' fraudulent misrepresentations, Plaintiffs have still not received payment for their Axion Stock, and they no longer have the option to recall the Axion Stock because it was fraudulently transferred from the safekeeping Banca MB Custodial Account.

Because Plaintiffs have sufficiently pled fraud in the inducement against Banca MB, Banca MB's Motion to Dismiss should be denied.

**V.   PLAINTIFFS' FRAUDULENT INDUCMENT CLAIM DOES NOT DUPLICATE THEIR BREACH OF CONTRACT CLAIM**

Banca MB's argument that Plaintiffs' fraudulent inducement claim against Banca MB is duplicative of their breach of contract claim against Mercatus is unfounded. Banca MB, through Parscale, committed fraud against Plaintiffs by inducing them to delay exercising their option to recall the Axion Stock whereas Plaintiffs' breach of contract claim against Mercatus is grounded in Mercatus's failures to pay Plaintiffs the Purchase Price for the Axion Stock. Parscale and Banca MB's fraudulent misrepresentations were "collateral and extranous" to the contract breached by Merctus and therefore the two causes of action are distinct and are not duplicative. *TVT Records v. Island Def Jam Music*, 412 F.3d 82, 91 (2d. Cir. 2005).

## VI.   CONCLUSION

Simply put, Banca MB was a part of the scheme to defraud Plaintiff and improperly transfer the Axion Stock. Banca MB is attempting to wiggle out of a scheme that it was clearly involved in from the very beginning. Banca MB was mentioned no less than seven times as the trustee of the Axion Stock – the holder of Plaintiffs' property in the Custodial Account at Brown Brothers Harriman & Company. Banca MB cannot now contend that it did not participant in the scheme to defraud Plaintiffs. Banca MB knew or should have known that Plaintiffs relied upon the inclusion of its name on Schedule A of the Stock Purchase Agreements and Banca MB knew or should have known that it had a duty to Plaintiffs to hold the Axion Stock in the Custodial Account at Brown Brothers Harriman & Company until Plaintiffs were paid the Purchase Price for their Axion Stock. Banca MB's failure to hold the Axion Stock in the Custodial Account, together with its repeated false statements and misrepresentations (made by Parscale on its behalf) demonstrate that Banca MB (1) breached its Custodial Agreement

with Brown Brothers Harriman & Company of which Plaintiffs were the intended beneficiaries and (2) committed fraud against Plaintiffs.

**WHEREFORE,** Plaintiffs respectfully request that Defendant Banca MB's Motion to Dismiss Plaintiffs' Complaint be Denied.

Respectfully Submitted,
Fellheimer & Eichen LLP


/s/Alan S. Fellheimer_____
AF-1401
Fellheimer & Eichen LLP
Alan S. Fellheimer
Jolie G. Kahn
44 Wall Street
12th Floor
New York, NY 10005
212.461.7142
Facsimile  212.461.2223

*Attorneys for Plaintiffs*

Dated: August 18, 2008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------X
AXION POWER INTERNATIONAL, INC., :
WILLIAM AND TRACY AHEARN, h/w, :
SALLY FONNER, and : **CIVIL ACTION**
JAMES SMITH, M.D. : **NUMBER**
         **Plaintiffs** :
                 -against- :
     : **COMPLAINT**
MERCATUS & PARTNERS, LTD., :
CARI MASI a/k/a CARY MASI : **07 CV 11493**
BANCA MB S.p.A., :
DWIGHT PARSCALE, :
STEPHANO CEVALO, : **JURY TRIAL**
     : **DEMANDED**
         **Defendants.** :
------------------------------------------------------------------------X

**CERTIFICATE OF SERVICE**

      I, Alan S. Fellheimer, Esquire, of the Firm Fellheimer & Eichen, LLP, counsel to all Plaintiffs, hereby certify that on August 18, 2008, I caused a copy of Plaintiffs' Opposition to Defendant Banca MB S.p.A.'s Motion to Dismiss Plaintiffs' Amended Complaint to be filed electronically and is available for viewing and downloading from the ECF system. Same was also electronically served on the counsel for the Defendants on August 18, 2008 in accordance with Local Rule Of Civil Procedure 5.2.

William P. Frank, Esquire
Donald Lewis, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
wfrank@skadden.com and Donald.Lewis@skadden.com
*Counsel for Defendant Banca MB S.p.A.*

James A. Prestiano, Esquire
THE LAW OFFICES OF JAMES A. PRESTIANO, P.C.
631 Commack Road, Suite 2A
Commack, New York, 11725

1

james@prestianolaw.com
*Counsel for Defendant Dwight Parscale*

Richard F. Horowitz, Esquire
HELLER, HOROWITZ & FEIT, P.C.
292 Madison Avenue
RFHorowitz@hhandf.com
New York, New York 10017
*Counsel for Defendants Mercatus & Partners, LTD and Stefano Cevolo*


Dated: August 18, 2008              /s/ Alan S. Fellheimer
                                    Alan S. Fellheimer (AF-1401)
                                    Counsel For Plaintiffs