# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

AXION POWER INTERNATIONAL, INC.,   :
WILLIAM AND TRACY AHEARN, h/w,   :
SALLY FONNER, and   :    **CIVIL ACTION**
JAMES SMITH, M.D.   :    **NUMBER**
          **Plaintiffs**   :
  :
  -against-   :
  :
MERCATUS & PARTNERS, LTD.,   :
CARI MASI a/k/a CARY MASI   :    07 CV 11493
BANCA MB S.p.A.,   :
DWIGHT PARSCALE,   :
STEPHANO CEVOLO,   :    **JURY TRIAL**
  :    **DEMANDED**
          **Defendants.**   :

-------------------------------------------------------------X

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STEPHANO CEVOLO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

**FELLHEIMER & EICHEN LLP**

Alan S. Fellheimer (AF-1401)
Judith E. Fellheimer (JF-1401)
44 Wall Street
12th Floor
New York, New York 10005
212.461.7142
Facsimile 212.461.2223

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

Table of Authorities ……………………………………………………………ii

I.  FACTUAL BACKGROUND …………………………………………… …...1

II. STANDARD FOR MOTIONS TO DISMISS…………….....……………..……..3

III. THIS COURT ENJOYS JURISDICTION OVER CEVOLO…………………4

   A. *General Personal Jurisdiction*…………………………………………………4

   B. *Specific Personal Jurisdiction*…………………………………………………7

      1. Mercatus was Cevolo's Agent For The Purpose of Personal Jurisdiction Over Cevolo…………………………………………………………………8

         a. Mercatus's Purposeful Activities in New York in Relation to the Stock Transactions……………………………………………….....9

         b. Mercatus's Activities Were for the Benefit of Cevolo………………10

         c. Cevolo's Knowledge of and Consent to Mercatus's Activities………11

         d. Cevolo's Control of Mercatus……………………………………….12

      2. Cevolo Consented to Personal Jurisdiction Through His Agent Mercatus…..12

      3. Even if Cevolo Did Not Consent to the Southern District's Exercise of Personal Jurisdiction Over Him, Personal Jurisdiction is Proper Under New York's "Long-Arm" Statue and Under Constitutional Principles…………...15

IV. PLAINTIFFS' COUNT III ALLEGING FRAUD IN THE INDUCEMENT IS SUFFICIENTLY PLED…………………………………………………………18

V.  PLAINTIFFS' FRAUDULENT INDUCEMENT CLAIM DOES NOT DUPLICATE THEIR BREACH OF CONTRACT CLAIM…………………….24

# Table of Authorities

## Cases

*ABKCO Indus., Inc. v. Lennon*, 52 A.D.2d 435 (1st Dept. 1976)...............…....7

*Alt. Mut. Ins. Co. v. M/V Humacao*, 169 F. Supp. 2d 211 (S.D.N.Y. 2001)……....13, 14

*Arrowsmith v. United Press Int'l*, 320 F.2d 219 (2d Cir. 1963)...........................15

*Ball v. Metallurgie Hoboken-Overpelt,* 902 F.2d 194 (2d Cir. 1990)......................3

*Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F.Supp. 2d 367
(S.D.N.Y. 2006)...................................................................9, 15-16, 17

*Broad Horizons, Inc. v. Central Crude Ltd.*, No. 94 Civ. 1593 (PKL), 1
994 WL 623075 (S.D.N.Y. Nov. 9, 1994)...................................…..9, 16

*Calder v. Jones*, 465 U.S. 783 (1984)....................................................17

*China Union Lines v. Am. Marine Underwriters,*
454 F.Supp. 198 (S.D.N.Y. 1978)...................................................10, 16

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006)...........................13

*EED Holdings v. Palmer Johnson Acquisition Corp.*,
228 F.R.D. 508 (S.D.N.Y. 2005)....................................................18

*Falconwood Financial Corp. v. Griffen*, 838 F.Supp. 836 (S.D.N.Y. 1993)...........13, 14

*Feather v. McLucas,* 209 N.E.2d 68 (N.Y. 1965).................................…....5

*Freedom Holdings Inc. v. Spitzer*, 257 F.2d 205 (2d Cir. 2004)...........................4

*Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F.Supp.2d 208 (S.D.N.Y. 2002)...........16

*Hutton v. Priddy's Auction Galleries, Inc.*, 275 F.Supp.2d 428 (S.D.N.Y. 2003)...........3

*In re Terrorist Attacks on September 11, 2001*, 392 F.Supp.2d 539 (S.D.N.Y. 2005)…......4

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982)...................................................................14

**Page No.**

*Int'l Healthcare Exch, Inc. v. Global Healthcare Exch., LLC,*
470 F.Supp.2d 345 (S.D.N.Y. 20007)……………………………………………...17

*International Shoe Co. v. Washington,* 326 U.S. 310 (1945)…………………....7, 17

*Iqbal v. Hasty,* 490 F.3d 143 (2d Cir. 2007)……………………………………....4

*Jazini v. Nissan Motor Co.,* 148 F.3d 181 (2d. Cir. 1998)………………………...3

*Joffenberg v. Joffman & Pollack,* 248 F.Supp.2d 303 (S.D.N.Y. 2003)……………..18

*Kinetic Instruments, Inc. v. Lares……*802 F.Supp. 976 (S.D.N.Y. 1992)………………9

*Klein v. Hongkong an Shanghai Hotels, Ltd.,*
No. 06 Civ. 377 DAB, 2007 WL 1098735 (S.D.N.Y. April 9, 2007)……………..….8

*Kreutter v. McFadden Oil Corp.,* 522 N.E.2d 40 (N.Y. 1988)…………………..…9, 17

*Lancaster v. Zufle,* 165 F.R.D. 38 (S.D.N.Y. 1996)……………………………...…14

*Laufer v. Ostrow,* 434 N.E.2d 692 (N.Y. 1982)…………………………………...…5, 6, 7

*Leasco Data Processing Equip. Corp. v. Mazwell,* 468 F.2d 1326 (2d Cir. 1972)….4, 5, 7

*Lumbard v. Shasha,*
No. 84 Civ. 0009 (JFK), 1984 WL 908 (S.D.N.Y. Sept. 21, 1984)………………….10, 16

*Marine Midland Bank, N.A. v. Miller,* 664 F.2d 899 (2d Cir. 1981)…………………...3

*Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.,*
264 F.3d 32 (2d Cir. 2001)……………………………………………………………17

*McKee Elec. Co. v. Rauland-Borg Corp.,* 282 N.Y.S.2d 34 (1967)………………..9, 16

*Metro Life Ins. Co. v. Robertson-Ceco Corp.,* 84 F.3d 560 (2d Cir. 1996)…………..7, 15

*National Equipment Rental, Ltd. v. Szukhent,*
375 U.S. 311, 84 S.Ct. 411, 11 L.Ed.2d. 354 (1964)……………………………………13

*Nat'l School Reporting Servs., Inc. v. Nat'l Schools of Ca., Ltd.,*
924 F.Supp. 21 (S.D.N.Y. 1996)……………………………………………..…13

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley,*
257 A.D.2d 228, 690 N.Y.S.2d 57 (1st Dept 1999)……………………………....13

iv

**Page No.**

*Nilsa B.B. v. Clyde Blackwell H.*,
84 A.D.2d 295, 45 N.Y.S.2d 579 (N.Y. App. Div. 1981)...........................................6, 7

*Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd*, 484 U.S. 97 (1987)..........13

*Packer v. TDI Systems, Inc.*, 959 F.Supp. 192 (S.D.N.Y. 1997).............................13

*Palmer v. Globalive Communications Corp.*,
No. 07 Civ. 038 (MGC), 2008 WL 2971469 (S.D.N.Y. Aug. 1, 2008)......................7

*Phillips v. Girdich*, 408 F.3d 124 (2d Cir. 2004)...............................................4

*Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18 (2d Cir. 1988).........................17

*Roth v. Jennings*, 489 F.2d 499 (2d Cir. 2007)....................................................4

*Ryder Energy Distrib., Corp. v. Merrill Lynch Commodities, Inc.*,
748 F.2d 774 (2d Cir. 1984).......................................................................4

*Shirley D. v. Carl D.*, 224 A.D.2d 60, 648 N.Y.S.2d 650 (N.Y. App. Div. 1996)..........6

*Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*,
510 F.2d. 870 (2d Cir. 1975)................................................................10, 16

*Topps Co., Inc. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88 (S.D.N.Y. 1997)...............3

*TVT Records v. Island Def Jam Music*, 412 F.3d 82 (2d Cir. 2005)........................25

*U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*,
241 F.3d 135 (2d Cir. 2001).......................................................................4

**Rules**

Federal Rule of Civil Procedure 8(a)...............................................................4

Federal Rule of Civil Procedure 12(b)(2)..........................................................3

N.Y. C.P.L.R. § 301................................................................................5, 6, 7

N.Y. C.P.L.R. § 302...................................................................................7, 8

**Page No.**

### Restatements and Treatises

27 C.J.S. *Dismissal and Nonsuit* §59……………………………………………..…………..3


### Other Authorities

Merriam-Webster Online Dictionary at
http://www.merriam- webster.com/dictionary/transact ....................................................8

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

| | | |
|---|---|---|
| AXION POWER INTERNATIONAL, INC., | : | |
| WILLIAM AND TRACY AHEARN, h/w, | : | |
| SALLY FONNER, and | : | CIVIL ACTION |
| JAMES SMITH, M.D. | : | NUMBER |
|                **Plaintiffs** | : | |
| | : | |
|    -against- | : | |
| | : | |
| MERCATUS & PARTNERS, LTD., | : | |
| CARI MASI a/k/a CARY MASI | : | 07 CV 11493 |
| BANCA MB S.p.A., | : | |
| DWIGHT PARSCALE, | : | |
| STEPHANO CEVOLO, | : | JURY TRIAL |
| | : | DEMANDED |
|          **Defendants.** | : | |

------------------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT STEPHANO CEVOLO'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Plaintiffs Axion Power International, Inc., William and Tracy Ahearn, h/w, Sally Fonner, and James Smith, M.D. (hereinafter collectively referred to as "Plaintiffs") hereby oppose Defendant Stephano Cevolo's (hereinafter referred to as "Cevolo") Motion to Dismiss Plaintiffs' Amended Complaint and assert as follows:

## I.    FACTUAL BACKGROUND

This case involves a series of transactions in which Mercatus & Partners, Ltd. (hereinafter referred to as "Mercatus"), agreed to purchase shares of Axion Power International, Inc. Stock (the "Axion Stock" or the "Stock") from Plaintiffs. The Individual Plaintiffs each entered into two SICAV Agreements (herinafter "SICAV Agreements" or "Sales Agreements"). The somewhat complex transactions had several steps all outlined in the series of Sales Agreements executed by Mercatus and each of the individual Plaintiffs (the "Sales Transactions").

1

The Sales Transactions are not unique to these Plaintiffs, but rather were used by Mercatus in numerous similar transactions involving other companies and their shareholders. Unbeknownst to Plaintiffs, Mercatus and Cevolo had previously induced companies and shareholders into similar sales transactions, resulting in litigation involving the very same defendants as the herein matter and in which Mercatus is a named defendant.[1] Cevolo is the Chief Executive Officer, Chief Financial Officer and Managing Director, and owns a significant percentage of Mercatus.

The Sales Transactions involved:

1. The execution of the SICAV Agreements by the Individual Defendants and Mercatus. Each of the Individual Defendants executed two SICAV Agreements.
2. The delivery by Plaintiffs of Axion Stock to the Custodial Account designated by Mercatus in the SICAV Agreements.
3. Mercatus and Cevolo's assurances that the Axion Stock would not be transferred from the Custodial Account unless and until Mercatus had paid Plaintiffs the purchase price for the Axion Stock.
4. Once the purchase price had been paid, the Stock would be transferred to SICAV Placeuro for inclusion in a stock mutual fund in which Mercatus was investing.
5. In the event that Plaintiffs were not paid the purchase price for the Axion Stock, the Stock Purchase Agreements provided the Plaintiffs an option to recall the Axion Stock from Mercatus's designated Custodial Account.

In entering into the Agreements and further in opting not the exercise their right to recall the Axion Stock, Plaintiffs relied on the repeated assurances of Cevolo that (1) Plaintiffs would be paid the purchase price for the Axion Stock prior to the Axion Stock being transferred from the Custodial Account and (2) that Plaintiffs could recall their Axion Stock from the Custodial Account if the purchase price was not paid by Mercatus.

In early 2006, each of the Individual Plaintiffs delivered their Axion Stock to Brown Brothers Harriman & Co., Inc. in New York, Mercatus's designated Custodial

---

[1] *Bootie Beer Corporation v. Mercatus & Partners Limited*, 06-CV-5983 (S.D.N.Y.); *Nite Capital, L.P. v. Mercatus & Partners Limited*, 603296/06 (Supreme Court of the State of New York, County of New York); *Isoray, Inc. v. Mercatus & Partners Limited*, 06-CV-5817 (S.D.N.Y.).

Account, as agreed.  The Stock was never paid for nor dealt with by Mercatus as agreed but, instead, Mercatus, acting as an agent for Cevolo, converted the Axion Stock to Mercatus's and Cevolo's own use.  Throughout this process, Mercatus and its officers and principals, including Cevolo, reassured the plaintiffs orally and in writing that, although there had been delays, payment would be forthcoming shortly.  The payment never came and Plaintiffs had no choice but to file the herein lawsuit, which Mercatus now seeks to dismiss.

## II.    STANDARD FOR MOTIONS TO DISMISS

A pre-trial motion to dismiss for lack of personal jurisdiction over a defendant pursuant to Fed. R. Civ. P. 12(b)(2) merely tests the sufficiency of the pleadings.  *Hutton v. Priddy's Auction Galleries, Inc.*, 275 F. Supp. 2d 428, 436 (S.D.N.Y. 2003) (citing *Jazini v. Nissan Motor Co.,* 148 F.3d 181, 184 (2d Cir. 1998), *and Ball v. Metallurgie Hoboken-Overpelt,* 902 F.2d 194, 197 (2d Cir. 1990)).  "In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) (citations omitted).  In considering such a motion, the court may review the pleadings, affidavits, and other material brought to its attention.  *Id.*; 27 C.J.S. *Dismissal and Nonsuit* § 59.  The materials examined "are to be construed in the light most favorable to plaintiff and all doubts are resolved in its favor."  *Topps Co., Inc. v. Gerrit J. Verburg Co.*, 961 F. Supp. 88, 90 (S.D.N.Y. 1997) (internal quotation marks and citations omitted).

Further, motions to dismiss are granted only sparingly.  A motion to dismiss should only be granted "if it appears that the plaintiffs can prove no set of facts in support

of their claim that would entitle them to relief." *Ryder Energy Distrib., Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984). A court must "draw all reasonable inferences in plaintiffs' favor" *Freedom Holdings Inc. v. Spitzer*, 257 F.2d 205, 216 (2d.Cir. 2004) and accept "as true all the factual allegations in the complaint." *Roth v. Jennings*, 489 F.2d 499, 501 (2d.Cir. 2007). See also *Iqbal v. Hasty*, 490 F.3d 143, 152 (2d. Cir. 2007).

### III.    THIS COURT ENJOYS JURISDICTION OVER CEVOLO

A complaint need only give notice to a defendant of the claims against him. *Phillips v. Girdich*, 408 F.3d 124, 127 (2d Cir. 2005) (citing Fed. R. Civ. P. 8(a)). A court's exercise of personal jurisdiction over a non-domiciliary defendant may be general or may be specific to the transaction that gave rise to the cause of action. *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 241 F.3d 135, 152 (2d Cir. 2001). Where there are unresolved issues of fact essential to a decision as to personal jurisdiction, a court shall not dismiss for want of jurisdiction without allowing plaintiff to conduct discovery. *Leasco Data Processing Equip. Corp. v. Maxwell*, 468 F.2d 1326, 1343-44 (2d Cir. 1972).

#### A. General Personal Jurisdiction

In their Amended Complaint, Plaintiffs state that "[o]n information and belief, Cevolo does business in New York." Am. Compl. ¶ 11.[2] Cevolo presents a lengthy defense to general jurisdiction and an analysis of competing New York law on "doing

---

[2] Plaintiffs' Amended Complaint was duly served upon Cevolo. Along with the balance of the Amended Complaint, such is sufficient notice to Cevolo that he has been sued by the Plaintiffs in relation to acts he performed, through Mercatus, and that a court of the United States sitting in New York County, the venue expressly chosen by Cevolo's firm Mercatus, intends to exercise personal jurisdiction based on his having done business in New York. *In re Terrorist Attacks on September 11, 2001*, 392 F.Supp.2d 539, 556 (S.D.N.Y. 2005).

business" in an attempt to demonstrate that Cevolo does not "do business" in New York.[3] Plaintiffs can establish that Cevolo, through his agent Mercatus, did do business in New York. Mercatus is the named defendant in at least four other lawsuits alleging the very same scheme – using the very same custodial bank all taking place and located in New York – and allegedly defrauding companies and individual shareholders in New York.[4] Cevolo's claim that this Court now lacks personal jurisdiction over him in light of these now five lawsuits arising from five separate transactions, which were all filed in New York state or federal courts because that is where they happened, is ludicrous. Cevolo and Mercatus repeatedly conducted a scheme involving New York banks and parties that resulted in numerous losses to many people. The business conducted by Cevolo and Mercatus in the five lawsuits alone is enough to qualify for general jurisdiction.

Were the above four lawsuits (five including the subject action) filed in New York against Mercatus (Cevolo's agent), involving a scheme in which companies' and shareholders' stock were usurped and converted for Mercatus's and Cevolo's own use through New York banking channels, not sufficient to establish general personal jurisdiction against Cevolo, then at the very least, discovery and, potentially, an evidentiary hearing would be required in order to determine the full extent of Cevolo's business in New York. *Leasco, supra.*

Cevolo responds that, regardless of the level of business he conducted in New York, he is not subject to general personal jurisdiction because Section 301 can only

---

[3] In New York, the exercise of general personal jurisdiction over a defendant is limited by N.Y. C.P.L.R. § 301 to less than the full limits allowed by the federal constitution. *Feather v. McLucas*, 209 N.E.2d 68 (N.Y. 1965). Such general personal jurisdiction depends upon a defendant's having "engaged in such a systematic course of 'doing business' [in New York] as to warrant a finding of its 'presence' in this jurisdiction." *Laufer v. Ostrow*, 434 N.E.2d 692, 694 (N.Y. 1982).
[4] See footnote 1.

provide general personal jurisdiction over corporate defendants, not over individuals. While acknowledging that the New York Court of Appeals has not spoken to this question and that lower New York courts have split on the issue, Cevolo urges that limiting the reach of Section 301 to corporate defendants is "the better view." In support of this contention, Cevelo cites solely *Nilsa B.B. v. Clyde Blackwell H.*, 84 A.D.2d 295, 45 N.Y.S.2d 579 (N.Y. App. Div. 1981), *superseded by statute as to another point of law as recognized in Shirley D. v. Carl D.*, 224 A.D.2d 60, 648 N.Y.S.2d 650 (N.Y. App. Div. 1996), and points out that the *Laufer* court did not find it necessary to decide the question because the plaintiff had failed to prove at trial defendant was doing business in New York in any event. *Laufer*, 434 N.E.2d at 696.

The facts and circumstances of *Nilsa* are so distinct from those of the present case as to render even the broadest possible reading of its holding inapposite. *Nilsa* was a paternity action. *Nilsa B.B. v. Clyde Blackwell H.*, 84 A.D.2d at 296, 45 N.Y.S.2d at 580. The plaintiff urged that, because defendant had conducted limited personal business in New York during monthly business visits on behalf of his Missouri employer, defendant was subject to general personal jurisdiction under Section 301. *Id.* at 300-01, 45 N.Y.S.2d at 583. Stating that is was expanding on the trial court's conclusion that no nexus existed between the contacts and the cause of action, the Appellate Division held that:

> [S]ection [301] does not provide for jurisdiction in a paternity proceeding over a nondomiciliary who is served outside the State, regardless of whether the cause of action asserted in the petition is regarded as related to his personal contacts with New York.

*Id.* at 301, 445 N.Y.S.2d at 583-84. While purporting to construe Section 301, the *Nilsa* court performed no analysis significant of whether defendant conducted sufficient business in New York to be subject to general personal jurisdiction, simply observing in a footnote that the alleged conduct was not recent. *Id.* at 301-04 n.7, 445 N.Y.S.2d at 583-85 n.7. Accordingly, the broadest possible reading of *Nilsa* is that there exists no level of "doing business" in New York, no matter how comprehensive or continuous, that is sufficient to justify the exercise of general personal over a defendant in a paternity action.[5] The claims against Cevolo involve his execution of a scheme to exercise dominion and control, in New York, over $1.5 million in Axion stock without paying for it, not his siring of a child. Clearly, *Nilsa* is a distinguishable case.[6]

In short, until there has been discovery regarding the extent of Cevelo's doing business in New York, with or without extensive physical presence in the forum, dismissal with prejudice is not appropriate. *See Leasco, supra.*

### B. Specific Personal Jurisdiction

Plaintiffs have pled facts sufficient to ground the Court's exercise of specific personal jurisdiction over Cevelo pursuant to N.Y. C.P.L.R § 302(a). In the context of

---

[5] Moreover, the *Nilsa* court based its reasoning regarding Section 301 on a state sovereign power-based personal jurisdiction theory that courts have eschewed since *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). *E.g., Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560 (2d Cir. 1996). Given that questionable analytic basis, and considering New York's complete rejection of the "fiduciary shield doctrine," applied in other jurisdictions to spare corporate officers personal liability for their conduct in a corporate capacity as more fully discussed below, it is perhaps best to consider the *Nilsa* decision to be limited to the facts of that case or at least to honor the *Nilsa* court's express limitation of its holding to "paternity proceeding[s]" and recognize that it is of no moment in the case at bar.

[6] In contrast, the competing holding of *ABKCO Indus., Inc. v. Lennon*, 52 A.D.2d 435, 440 (1st Dep't 1976), that Section 301 can provide general personal jurisdiction has enjoyed somewhat broader acceptance and reliance. *See, e.g., Palmer v. Globalive Communications Corp.*, No. 07 Civ. 038 (MGC), 2008 WL 2971469, *3 (S.D.N.Y. Aug. 1, 2008) (following *ABKCO* despite awareness of *Nilsa*). Indeed, when the *Laufer* court determined that it need not decide the issue because plaintiff had failed to prove that defendant actually did business in New York, that court did not simply say that it was assuming without decided such general personal jurisdiction was possible, but rather signified its approval of the *ABKCO* holding with extensive citation to primary and secondary sources. *Laufer*, 434 N.E.2d at 696.

notice pleading, Plaintiffs' Amended Complaint should not be deemed insufficient so as to warrant being put out of court for want of personal jurisdiction merely because Plaintiffs did not aver that, in addition to "doing business" in New York, Cevelo also "transacted business" in New York, the specific phrasing of Section 302.[7] *See Klein v. Hongkong and Shanghai Hotels, Ltd.*, No. No. 06 Civ. 377 DAB, 2007 WL 1098735 (S.D.N.Y. Apr. 9, 2007) (refusing to dismiss with prejudice where plaintiff may have "merely neglected" to plead defendant's domicile).

As to specific personal jurisdiction under Section 302, Cevelo simply makes the conclusory and erroneous statement that Plaintiffs have not alleged that Cevelo took any action in New York. On the contrary, Plaintiffs have alleged that Cevelo (using Mercatus as an agent), induced Plaintiffs to deliver their Axion Stock to New York and then (still using Mercatus as an agent) dispossessed Plaintiffs of their Stock through a series of unauthorized transfers in New York, without paying for that Stock, which payment was to be received at and paid out by the bank in New York, pursuant to a written agreement containing a New York choice of law clause and forum selection clause.

1. Mercatus was Cevolo's Agent For The Purposes of Personal Jurisdiction Over Cevolo

Mercatus was acting as an agent of Cevolo, thereby subjecting Cevolo to jurisdiction in the State of New York. New York does not recognize the so-called

---

[7] Initially, it must be noted that in the context of notifying Cevelo of the claims against him and the intention that the Southern District of New York exercise personal jurisdiction over him, the plain meaning of the terms "doing business" and "transacting business" are synonymous. *See* MERRIAM-WEBSTER ONLINE DICTIONARY, entry for "transact", *available at* http://www.merriam-webster.com/dictionary/transact ("to carry on the operation or management of : **DO** <*transact* business>"). Similarly, as a term of art, the "does business" required for general personal jurisdiction under Section 301 wholly includes the "transacts business" of Section 302, such that anyone determined to be doing business in New York is assuredly transacting business there as well. *See* 29 N.Y. Jur. 2d *Courts and Judges* § 610 ("the concept of 'doing business' includes transacting it, but a 'transaction' may not constitute 'doing business' . . . .").

"fiduciary shield doctrine" and will not allow a defendant to escape a court's exercise of personal jurisdiction solely because the defendant was acting in his capacity as a corporate officer. *Kreutter v. McFadden Oil Corp.*, 522 N.E.2d 40, 43 (N.Y. 1988). In New York, no piercing of the corporate veil is required in order to establish personal jurisdiction over a corporate officer who used the corporation as an agent. *Kinetic Instruments, Inc. v. Lares*, 802 F. Supp. 976, 984 (S.D.N.Y. 1992). Further, under New York law, a plaintiff need not establish a formal agency relationship between a corporation and an individual defendant officer to subject the officer to personal jurisdiction. *Beatie & Osborn LLP v. Patriot Scientific Corp.*, 431 F. Supp. 2d 367, 389 (S.D.N.Y. 2006) (citing *Kreutter*, 522 N.E.2d at 44).

> [F]or a corporation to be considered an agent of an officer for personal jurisdiction purposes, a plaintiff must allege: (1) that the corporation engaged in purposeful activities in New York in relation to the transaction; (2) that the corporation's activities were performed for the benefit of the individual defendant; (3) that the corporation's activities were performed with the knowledge and consent of the individual defendant; and (4) that the individual defendant exercised some control over the corporation.

*Id.* Each of the aforementioned elements are met as follows:

    a. Mercatus's Purposeful Activities in New York in Relation to the Stock Transactions

"Purposeful activities" have been held to include "undertaking 'some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Broad Horizons, Inc. v. Central Crude Ltd.*, No. No. 94 CIV. 1593 (PKL), 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 283 N.Y.S.2d 34, 37-38 (1967)).

In the instant matter, Mercatus drafted, offered to Plaintiffs, and entered into the SICAV Agreements. Each such Agreement includes a New York choice-of-law clause. SICAV Agreements, ¶ 3.8. Each calls for the Seller to deliver its stock to Mercatus's "custodial bank," at 140 Broadway, New York, NY. *Id.* at Schedule A, Step Two. Each of the Individual Plaintiffs delivered their stock in accordance with this instruction, and Mercatus then directed various transfers of the stock between accounts within that New York "custodial bank," and ultimately directed its New York "custodial bank" to transfer at least some of Plaintiffs' stock offshore. Courts have previously determined such channeling of transactions through New York financial firms to be purposeful activity in New York. *Lumbard v. Shasha*, No. No. 84 Civ. 0009 (JFK), 1984 WL 908, at *3-*4 (S.D.N.Y. Sept. 21, 1984) (citing *China Union Lines v. Am. Marine Underwriters*, 454 F. Supp. 198, 202-03 (S.D.N.Y. 1978), and *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873-74 (2d Cir. 1975)).

As to the requirement for activities to have a relationship with the transaction giving rise to the action, not only is the relationship between Mercatus' foregoing activities and Plaintiffs' loss of their stock clear and palpable, but in addition, each of the SICAV Agreements expressly acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York." SICAV Agreements, ¶ 3.8. Thus, Mercatus clearly engaged in purposeful activities in New York in relation to the transaction giving rise to this action.

b. Mercatus's Activities Were for the Benefit of Cevolo

According to records at the UK Companies House, the office regulator of British corporations, all times relevant to this action, Cevolo owned a one-half interest in

Mercatus, the other half being owned by Cari Masi. According to Mercatus' corporate C.V., Cevolo was a founder of the firm. Cevolo is identified in Mercatus' U.K. registration as one of two Directors of Mercatus. In the press, Cevolo is variously identified as CEO, Managing Director, and CFO of Mercatus. During unsuccessful negotiations in 2008 seeking return of Plaintiffs' Stock, Cevolo wrote a letter dated April 30, 2008 referring to the proposed arrangement as the "return" of the stock, confirming possession of it. (See April 30, 2008 Letter from Cevolo, attached hereto as Exhibit "A"). That letter makes clear that Cevolo and Masi are the real parties in interest, and not Mercatus. Mercatus is merely the front for Cevolo's actions. Accordingly, it is a safe conclusion that Cevolo benefitted as an individual from Mercatus' acquisition of .5 million dollars worth of Axion Stock without payment to the rightful owners, and same has been sufficiently pled by Plaintiffs.

c.    Cevolo's Knowledge of and Consent to Mercatus's Activities

Beyond the inferences reasonably drawn from Cevolo's role as half-owner of a two person firm, and his role as CEO, Managing Director, and CFO, there is substantial evidence of Cevolo's knowledge of Mercatus's activities in obtaining Plaintiffs' Stock without paying for it.

On January 13, 2006, Cevolo sent a letter to the plaintiffs assuring them that the contemplated sale of the portfolio of which their stock formed a part was imminent and that payment would follow shortly thereafter, when in fact plaintiff's stock had be transferred out of the "safekeeping" account almost immediately upon delivery. (See January 13, 2006 letter from Cevolo, attached to Plaintiffs' Amended Complaint as Exhibit "J").

Securities counsel for Plaintiffs, who was involved with the stock sale to Mercatus from its inception, has reported that when the transactions began to fail, he travelled to Italy and met with Cevolo, who told him one of the banks that was supposed to be doing the funding was taking too long in its due diligence and that they were going to replace them with another bank. Cevolo also stated to securities counsel that one of other reasons for the delay was that the financial statements in Axion's prospectus were about to become "stale."

On March 30, 2007, Mercatus announced on behalf of its "fund director" Cevolo that payments would begin the following week. No payments were ever made. When the plaintiffs made lengthy, explanatory demands for payment or return of their stock in June, 2006 and December, 2006, Mercatus's Rome office—at the same address Cevolo was served with original process in February 2008—was among the direct addressees in both instances.

In sum, there is more than ample evidence that Cevolo knew of and consented to the activities that Mercatus was channeling through its New York "custodian bank." Plaintiffs have sufficiently pled Cevolo's involvement in and derived benefit from the Sales Transactions.

d.   Cevolo's Control of Mercatus

The materials show that Cevolo, as CEO and half owner controlled Mercatus.

In conclusion, each of the four elements necessary under New York law in order to consider Mercatus to be Cevolo's agent for the purposes of the Southern District's exercise of personal jurisdiction over Cevolo are met.

2.   <u>Cevolo Consented to Personal Jurisdiction Through His Agent Mercatus</u>

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). As the Southern District has noted previously:

> It has long been settled that parties waive objections to personal jurisdiction if they agree to submit to the jurisdiction of a particular court. *See National Equipment Rental, Ltd. v. Szukhent*, 375 U.S. 311, 316, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964) ("parties to a contract may agree in advance to submit to the jurisdiction of a given court"); *Falconwood Financial Corp. v. Griffin*, 838 F.Supp. 836, 838-39 (S.D.N.Y.1993) ("Settled law permits parties to a contract to select in advance the forum for litigation of disputes that arise under the contract. These parties contracted to brings [sic] such actions here, in the Southern District of New York, and to that end, consented to personal jurisdiction here.") (citations omitted); *National Union Fire Ins. Co. of Pittsburgh, Pa. v. Worley*, 257 A.D.2d 228, 690 N.Y.S.2d 57, 59 (1st Dep't 1999) ("[B]y agreeing to the forum selection clause in the indemnity agreement, defendant specifically consented to personal jurisdiction over her in the courts of New York and thereby waived any basis to dispute New York's jurisdiction.")

*Atl. Mut. Ins. Co. v. M/V Humacao*, 169 F. Supp. 2d 211, 215 (S.D.N.Y. 2001). As Justice Blackmun noted in delivering the opinion a unanimous court in *Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, where a defendant consents to service of process, a court need not seek out a grant of authority for personal jurisdiction in a federal or state statute. 484 U.S. 97, 104, 105 n.9 (1987).

Furthermore, the Southern District has consistently held that when a party consents to the personal jurisdiction a particular court via a forum selection clause, <u>all</u> inquiry into personal jurisdiction is at an end:

> [W]hen parties choose a particular forum, their selection will be enforced without the need to engage in traditional personal jurisdiction analysis, including determining whether constitutional due process requirements have been met. *See Packer v. TDI Systems, Inc.,* 959 F.Supp. 192, 196 (S.D.N.Y.1997); *Nat'l School Reporting Servs., Inc. v. Nat'l Schools of Ca., Ltd.,* 924 F.Supp. 21, 23 (S.D.N.Y.1996) (forum selection clauses comport with due process because they establish minimum contacts by consent).

*Atl. Mut.*, 169 F.Supp.2d at 215; *see Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 703 (1982) ("Because the requirement of personal jurisdiction represents first of all an individual right, it can, like other such rights, be waived.")

Each of the Stock Purchase Agreements between Plaintiffs and Mercatus contain the following forum selection language:

> Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York.

SICAV Agreements, ¶ 3.8 (emphasis added). This is precisely the type of forum-selection clause that has been found to be dispositive as to consent to personal jurisdiction. See, e.g., *Falconwood Fin. Corp. v. Griffin*, 838 F.Supp. 836, 839 n.1 (S.D.N.Y. 1993) ("...the exclusive venue for suit..."). That the same paragraph of each SICAV Agreement also contains[8] both an acknowledgement of the relationship between the "contemplated transactions" and New York, and a New York choice of law further reinforces the parties' consent to the personal jurisdiction of the courts selected. See *Lancaster v. Zufle*, 165 F.R.D. 38, 41 (S.D.N.Y. 1996) ("New York choice-of-law clauses are also significant contacts to be considered in determining personal

---

[8] For reference, the full text of the relevant paragraph of each of the SIVAC Agreements reads as follows:

3.8    Governing Law; Venue; Service of Process. The parties hereto acknowledge that the transactions contemplated by this Agreement and the exhibits hereto bear a reasonable relation to the State of New York. The parties hereto agree that the internal laws of the State of New York shall govern this Agreement and the exhibits hereto, including, but not limited to, all issues related to usury. Any action to enforce the terms of this Agreement or any of its exhibits, or any other Transaction Document shall be brought exclusively in the state and/or federal courts situate in the County and State of New York. Service of process in any action for enforce the terms of this Agreement may be made by serving a copy of the summons and complaint, in addition to any other relevant documents, by commercial overnight courier to the Seller at its principal address set forth in this Agreement.    SICAV Agreements, ¶ 3.8.

jurisdiction"). Accordingly, through his agent Mercatus, Cevolo unequivocally consented to the exercise of personal jurisdiction over him by the Southern District.

3.   Even if Cevolo Did Not Consent to the Southern District's Exercise of Personal Jurisdiction Over Him, Personal Jurisdiction is Proper Under New York's "Long-Arm" Statute and Under Constitutional Principles

Having established that Mercatus was Cevolo's agent for the purposes of the Southern District's exercise of personal jurisdiction over Cevolo, even if Mercatus's consent to personal jurisdiction were to be found less than fully effective as to Cevolo, personal jurisdiction over Cevolo would be proper under New York's "long-arm" statute and would not offend constitutional principles.

In the absence of consent, "the amenability of [a non-resident defendant] to suit in federal court in a diversity action is determined in accordance with the law of the state where the court sits, with 'federal law' entering the picture only for the purpose of deciding whether a state's assertion of jurisdiction contravenes a constitutional guarantee." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996) (quoting *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 223 (2d Cir. 1963) (*en banc*)). Thus, if Mercatus's consent were to be deemed ineffective as to Cevolo, it is New York State's "long-arm" statute on which the Southern District would depend for authority to exercise personal jurisdiction over Cevolo.[9]

As the Southern District explained in *Beatie*:

[J]urisdiction is proper under section 302(a)(1) when: (1) the defendant has transacted business in New York; and (2) the cause of action arises out of the subject matter of the transacted business. A non-domiciliary transacts business

---

[9] New York's long-arm statute provides, in pertinent part, as follows: § 302. Personal jurisdiction by acts of non-domiciliaries: (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent: 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or . . . . N.Y. C.P.L.R. § 302(a)(1).

under section 302(a)(1) when he purposefully avails [himself] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws . . . . Courts look to the totality of the circumstances to determine whether the defendant has engaged in such purposeful activity, and require a "substantial nexus" between the business transacted and the cause of action sued upon. 431 F.Supp.2d at 387 (internal quotation marks, internal brackets, and citations omitted).

Notably, these requirements are not simply similar to those examined above as the first element essential to a determination of agency for personal jurisdiction purposes, but are identical to those requirements. *See id.* at 387, 389 (deriving the "purposeful activities in New York in relation to the transaction" element from the requirements for exercising personal jurisdiction over the corporation); *see also Houbigant, Inc. v. Dev. Specialists, Inc.*, 229 F.Supp.2d 208, 224 (S.D.N.Y.,2002) (same).[10] ignoring indicia of consent, personal jurisdiction under Section 302(1)(a) is properly grounded upon the presence of a New York choice-of-law clause in each SICAV Agreement, the express acknowledgement of a "reasonable relationship" between the contemplated transactions and New York, the delivery of the stock to a "custodial bank" in New York, and the channeling of all transactions in the scheme through the New York "custodial bank". *Broad Horizons, Inc. v. Central Crude Ltd.*, No. No. 94 CIV. 1593 (PKL), 1994 WL 623075, at *2 (S.D.N.Y. Nov. 9, 1994) (quoting *McKee Elec. Co. v. Rauland-Borg Corp.*, 283 N.Y.S.2d 34, 37-38 (1967)); *Lumbard v. Shasha*, No. No. 84 Civ. 0009 (JFK), 1984 WL 908, at *3-*4 (S.D.N.Y. Sept. 21, 1984) (citing *China Union Lines v. Am. Marine Underwriters*, 454 F. Supp. 198, 202-03 (S.D.N.Y. 1978), and *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortgage Investors*, 510 F.2d 870, 873-74 (2d Cir. 1975)).

---

[10] As a matter of logic, the elements of agency appear to include the "purposeful activities in New York in relation to the transaction" as a shorthand notation expressing the need to first establish personal jurisdiction over the agent corporation in contexts where consent was absent.

16

Perhaps more importantly, even ignoring Mercatus's consent to personal jurisdiction, the Southern District's exercise of personal jurisdiction over Cevolo grounded upon Cevolo's use of Mercatus as an agent, does not offend the constitutional principles announced in *International Shoe Co. v. State of Washington*, 326 U.S. 310 (1945). When the New York Court of Appeals initially determined in *Kreutter* that the fiduciary shield doctrine was not needed to protect defendants from overambitious assertions of personal jurisdiction, the Court explained that New York's long arm statute does not provide personal jurisdiction in every instance where such would be constitutionally permissible. 522 N.E.2d 4 at 46 (N.Y. 1988). The requirements for purposeful activities in New York that bear a relationship to the transaction giving rise to the claim insure that minimum contacts are present. *Id.* at 43 (quoting *International Shoe*, 326 U.S. at 319). Finally, as to "notions of 'fair play and substantial justice,'" the Court of Appeals noted that the U.S. Supreme Court has approved long-arm jurisdiction over defendants whose only contacts with the forum were in a corporate capacity. *Id.* at 46 (quoting *International Shoe*, 326 U.S. at 316 and citing *Calder v. Jones*, 465 U.S. 783, (1984). Moreover, since the *Kreutter* decision, federal courts sitting in New York and the Second Circuit Court of Appeals have consistently depended on its reasoning to exercise jurisdiction over non-domiciliary defendants whose contacts with New York have involved the use of an agent corporation. *See, e.g., Mario Valente Collezioni, Ltd. v. Confezioni Semeraro Paolo, S.R.L.*, 264 F.3d 32, 36 (2d Cir. 2001); *Retail Software Servs., Inc. v. Lashlee*, 854 F.2d 18, 22 (2d Cir. 1988); *Int'l Healthcare Exch., Inc. v. Global Healthcare Exch., LLC*, 470 F.Supp.2d 345, 359 (S.D.N.Y. 2007); *Beatie* 431 F. Supp. 2d at 389.

Since the Southern District's exercise of personal jurisdiction over Cevolo is authorized by New York's long-arm statute and does not offend constitutional limits on personal jurisdiction, such exercise would be proper regardless of whether Mercatus's clear consent to jurisdiction is imputed to Cevolo.

In conclusion, although determination as to whether this Court can exercise general personal jurisdiction over Cevolo would require discovery and, potentially, an evidentiary hearing, that the Court can exercise specific personal jurisdiction over Cevolo is abundantly clear from the present record. Cevelo's Motion to Dismiss for want of personal jurisdiction should therefore be denied.

## IV. PLAINTIFFS' COUNT III ALLEGING FRAUD IN THE INDUCEMENT IS SUFFICIENTLY PLED

Plaintiffs have adequately pled fraud in the inducement against Cevolo in Count III of their Amended Complaint.[11] Plaintiffs have satisfied that threshold and sufficiently pled fraudulent inducement against Cevolo.

Paragraphs 14, 15, and 16 of Plaintiffs' Amended Complaint respectfully allege that in the Fall of 2005 – prior to the execution of the SICAV Agreements in December 2005 – Mercatus "had a representative in the United States for the purpose of purchasing a combination of free trading shares and restricted shares under SEC Rule 144 from multiple small United States public companies..."; that Mercatus "falsely represented to Axion's attorney that the United States companies participating in the Mercatus

---

[11] The elements of fraud in the inducement are "'(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by defendant, (5) that the representation was made for the purpose of inducing the other party to rely on it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury.'" *Joffenberg v. Joffman & Pollack*, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003) (Sweet, J.) (citation omitted). A plaintiff alleging fraud needs to "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *EED Holdings v. Palmer Johnson Acquisition Corp.*, 228 F.R.D. 508, 512 (S.D.N.Y. 2005) (Sweet, J.).

Transaction would have no payment risk because their shares would be placed into a safekeeping, custodial account in the United States maintained by Banca MB at Brown Brothers Harriman & Co. [...] a custodial bank, and the shares so deposited would not leave the safekeeping custodial account until the purchase price had been paid in full; and that Mercatus falsely told Plaintiffs "that if the purchase price of the Axion shares was not timely paid, the shareholders who had deposited their Axion shares into the custodial safekeeping account could contact BBH&C directly and demand the return of their shares and that BBH&C would comply with such demands."

All of the above false misrepresentations made by Mercatus and its agents were made prior to Plaintiffs entering into the Sales Agreements.    These false misrepresentations were made by Mercatus for the sole intent and purpose of inducing Plaintiffs to enter into the Sales Agreements.    But for the assurances of Mercatus (as Cevolo's agent), Plaintiffs would not have entered the Sales Agreements and would not have been induced to relinquish 500,000 of their shares of Axion Stock without payment.

Plaintiffs allege in their Amended Complaint that Mercatus and Cevolo possessed the requisite fraudulent intent to deceive Plaintiffs and induce Plaintiffs into entering into the Sales Agreements.    Paragraph 59 of Plaintiffs' Amended Complaint alleges that "[t]he actions of Defendants Mercatus, Banca MB, Masi, Cevolo and Parscale as set forth herein were knowing false, fraudulent and made with the intention that Plaintiffs rely thereon in depositing their Axion shares in the Banca MB Custodial Account."

Mercatus and Cevolo falsely represented to Plaintiffs that that (1) Plaintiffs' Axion Stock would be held in Mercatus's designated safe-keeping Custodial Account; (2) Plaintiffs would be timely paid the purchase price for the Axion Stock; and (3) the Axion

Stock would not be transferred from the Mercatus designated safe-keeping Custodial Account unless and until Plaintiffs had been paid the purchase price for the Axion Stock. At the time that Mercatus and Cevolo made these false representations that they would not fulfill such promises. Mercatus and Cevolo knew the falsity of those representations because the herein Plaintiffs are not the first individuals to fall victim to Mercatus and Cevolo's scheme to defraud and convert shares for Mercatus and Cevolo's individual use.

Mercatus is the named defendant in other litigation involving companies and their shareholders similarly situated to Plaintiffs and in which Mercatus, as Cevolo's agent, clearly implemented the same scheme as that used on Plaintiffs in the herein matter to defraud others and usurp and convert stock for its own use.[12]  Mercatus, as Cevolo's agent, therefore knowingly, willingly and intentionally made the above false representations to Plaintiffs for the sole purpose of inducing them to enter into the SICAV Agreements, and upon which Plaintiffs relied to their detriment.  Plaintiffs were ignorant to the fact that Mercatus and Cevolo did not intend at the time of executing the SICAV Agreements to abide by the contractual obligations set forth in the Sales Agreements.  Months prior to entering into the Sales Agreements, Plaintiffs had already been induced by Mercatus with promises to keep their Axion Stock in safe-keeping and with promises of a right to recall their Stock if they were not timely paid the purchase price for their Stock.  For Mercatus and Cevolo to now claim that they did not misrepresent the present fact that they knowingly and intentionally made false statements to Plaintiffs for the sole purpose of inducing Plaintiffs to rely upon their promises and enter into the SICAV Agreements is insincere in light of their actions that transpired

---

[12] See footnote 1.

leading to the herein action and other litigation in which Mercatus is a named defendant.[13]

Plaintiffs have also adequately pled fraudulent inducement because Cevolo made false and misleading representations to Plaintiffs after Mercatus took possession of the Axion Stock that Cevolo knew were false in order to prevent Plaintiffs from exercising their option to recall their Stock and to induce Plaintiffs to continue to wait for promised payment that they never received. Plaintiffs further adequately establish that Plaintiffs' reasonable reliance of Cevolo's false and misleading representations, upon which he intended Plaintiffs to rely, caused Plaintiffs great injury.

Cevolo routinely made false and misleading misrepresentations to Plaintiffs and Plaintiffs' counsel that payment of the purchase price was forthcoming in an attempt to prevent Plaintiffs from exercising their option to recall the Axion Stock. Plaintiffs entered into the Stock Purchase Agreements on December 9, 2005. The Axion Stock was deposited in Mercatus's designated Custodial Account on December 13, 2005 and the respective Purchase Prices were to be paid to Plaintiffs within thirty (30) days, or January 12, 2006. Mercatus failed to make the scheduled payment on January 12, 2006. Thereafter, on January 13, 2006, in an attempt to fraudulently delay Plaintiffs from exercising their option to recall the Axion Stock from the Custodial Account pursuant to the Stock Purchase Agreements, Cevolo sent a letter to Plaintiffs promising that payment would be made within seven (7) days. (See Exhibit "J" to Plaintiffs' Amended Complaint). Throughout the months of March, April and May, Cevolo continued to make false and misleading misrepresentations promising imminent payment of the

---

[13] See footnote 1.

purchase price for the Axion Stock to Plaintiffs. (See Exhibit P to Plaintiffs' Amended Complaint).

All of Cevolo's false and misleading assurances were clearly made with the knowledge and intent to defraud Plaintiffs because much of the Axion Stock had been transferred from the safekeeping Custodial Account as early as January 5, 2006 – before Cevolo began making his numerous misrepresentations. Therefore, Cevolo made his false statements to Plaintiffs knowing that they were false and misleading and nonetheless intended Plaintiffs to rely upon them.

Cevolo contends that these false representations do not amount to inducement because they occurred after Plaintiffs entered into the SICAV Agreements. However, Cevolo fails to acknowledge Plaintiffs' option to recall their Stock as provided by Section 3.14 of the Stock Purchase Agreements. While Cevolo and the other Defendants were making their false and misleading misrepresentations (and upon which Plaintiffs were relying) that the Axion Stock was still safely in the Custodial Account at Brown Brothers Harriman & Company and that payment was forthcoming, Plaintiffs still believed that they could exercise their option to recall the Axion Stock if the Purchase Price was not paid.

But for Cevolo's intentionally false and knowingly misleading misrepresentations that payment was imminent, Plaintiffs would have exercised their option to recall the Axion Stock; or upon discovering that their Stock was missing, Plaintiffs would have attempted to retrieve the Stock immediately. Cevolo knew that the Axion Stock had been wrongfully transferred from the Custodial Account as early as January 5, 2006 and chose to repeatedly assure Plaintiffs that they would be paid the purchase price for the sale of

the Axion Stock.  However, because of Cevolo and the other Defendants' fraudulent misrepresentations, Plaintiffs have still not received payment for their Axion Stock, and they no longer have the option to recall the Axion Stock because it was fraudulently transferred from the safekeeping Banca MB Custodial Account.

Cevolo contends in his Motion to Dismiss that Plaintiffs have not suffered any greater harm because of the six-month delay in discovering that their Stock had been fraudulently transferred from the Custodial Account.  However, Cevolo's argument is meritless because had Plaintiffs been told that their Stock had been fraudulently transferred from the Custodial Account on January 13, 2006 – 31 days after they deposited their Stock in the Custodial Account at the behest of Mercatus – it is most likely that Plaintiffs could have retrieved the Stock from the first bank in which the Stock had been transferred.  In addition to the Individual Plaintiffs' 500,000 shares of Axion Stock deposited in the Custodial Account as part of the Sales Transactions with Mercatus, Axion Power International, Inc. deposited 1 million shares of Axion Stock into the same Custodial Account, which was fraudulently transferred from the Custodial Account by Mercatus, acting as Cevolo's agent.   Axion Power International, Inc. successfully retrieved the 1 million shares of Axion Stock from the bank holding the Stock after numerous communications explaining the Mercatus scheme and demonstrable proof that Axion Power International, Inc. had been defrauded by Mercatus.  Plaintiffs are not improper in alleging that if perhaps Mercatus and Cevolo had not made false misrepresentations regarding the Axion Stock on January 13, 2006 and over the following five months, that Plaintiffs could have similarly retrieved the 500,000 shares of Stock as it successfully retrieved the 1 million shares of Axion Power International, Inc.

Stock. Because Plaintiffs have sufficiently pled fraud in the inducement against Cevolo, Cevolo's Motion to Dismiss should be denied.

## V. PLAINTIFFS' FRAUDULENT INDUCMENT CLAIM DOES NOT DUPLICATE THEIR BREACH OF CONTRACT CLAIM

Cevolo's argument that Plaintiffs' fraudulent inducement claim against Cevolo is duplicative of their breach of contract claim against Mercatus is unfounded. Cevolo, for which Mercatus was an agent, committed fraud against Plaintiffs in the Fall of 2005 by inducing Plaintiffs with false promises to pay the purchase price of the Stock, to keep the Stock in a safe-keeping account, and to afford Plaintiffs the option to recall the Stock if they were not timely paid the purchase price – all promises that were made prior to Plaintiffs entering into the SICAV Agreements. Thus, those promises were extraneous to the SICAV Agreements – they were made with the intent to induce Plaintiffs to enter into the Agreements and but for those pre-existing promises, Plaintiffs would not have entered into the Sales Agreements. Cevolo further committed fraud against Plaintiffs by inducing them to delay exercising their option to recall the Stock.

Plaintiffs' breach of contract claim against Mercatus is grounded in Mercatus's failures to abide by the provisions set forth in the SICAV Agreements, namely to pay Plaintiffs the purchase price for the Stock. The damages suffered by Plaintiffs for Cevolo's fraudulent inducement and Mercatus's breach of contract are separate and distinct. Had Cevolo not fraudulently induced Plaintiffs to enter into the Sales Agreements, Plaintiffs would not have transferred their Stock into the Custodial Account. Likewise, had Cevolo not fraudulently induced Plaintiffs not to exercise their option to recall their Stock, Plaintiffs would have sought to enforce their right to recall the Stock.

If Plaintiffs were to succeed in their fraudulent inducement claim, Plaintiffs remedy would be the return of the Stock. However, if Plaintiffs were to succeed in their breach of contract claim against Mercatus, Plaintiffs' remedy would be payment of the purchase price by Mercatus for the Stock. Such an analysis exemplifies that Cevolo's fraudulent misrepresentations were "collateral and extranous" to the contract breached by Merctus and therefore the two causes of action are distinct and are not duplicative. *TVT Records v. Island Def Jam Music*, 412 F.3d 82, 91 (2d. Cir. 2005). As such, Plaintiffs' Count III for fraudulent inducement against Cevolo is sufficiently pled and Cevolo's Motion to Dismiss Count III should be denied.

**WHEREFORE,** Plaintiffs respectfully request that Defendant Stephano Cevolo's Motion to Dismiss Plaintiffs' Amended Complaint be Denied.


Respectfully Submitted,

Fellheimer & Eichen LLP


/s/Alan S. Fellheimer
Fellheimer & Eichen LLP
Alan S. Fellheimer
AF-1401
Judith E. Fellheimer
JF-1401
44 Wall Street, 12th Floor
New York, NY 10005
Telephone 212.461.7142
Facsimile  212.461.2223
*Attorneys for Plaintiffs*
Dated: August 26, 2008

# EXHIBIT "A"



Rome, April 30 2008

Cary Masi
155 Mauldin Drive
Suite B
Alpharetta
30004 GA

Mercatus Agent

**Subject: Axion Power Stocks**

Dear Mr. Masi,

We are writing with reference to the return of 500.000 thousand shares of Axion Power.

Our proposal is to return the shares with the following timing:

1. 100.000 shares on or before May 16th
2. 200.000 shares on or before June 15th
3. 200.000 shares on or before July 15th

We have had few issues that have been positively solved and we are now ready to provide the above return schedule.

Please let us know the procedure for the stock returns and the accounts where the shares should be delivered.

Best Regards

Stefano Cevolo Paulo

info@mercatuspartners.com

4Th Floor 3 Tenterden Street                      155 Mauldin Drive, Suite B
Hanover Square, London, W1S 1TD                   Alpharetta, Georgia 30004
PH +44-20-30997432                                PH 770 740 1387

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------X

| | | |
|---|---|---|
| AXION POWER INTERNATIONAL, INC., | : | |
| WILLIAM AND TRACY AHEARN, h/w, | : | |
| SALLY FONNER, and | : | **CIVIL ACTION** |
| JAMES SMITH, M.D. | : | **NUMBER** |
| Plaintiffs | : | |
| | : | |
| -against- | : | |
| | : | **COMPLAINT** |
| MERCATUS & PARTNERS, LTD., | : | |
| CARI MASI a/k/a CARY MASI | : | 07 CV 11493 |
| BANCA MB S.p.A., | : | |
| DWIGHT PARSCALE, | : | |
| STEPHANO CEVALO, | : | **JURY TRIAL** |
| | : | **DEMANDED** |
| Defendants. | : | |

---------------------------------------------------------------------X

**CERTIFICATE OF SERVICE**

I, Alan S. Fellheimer, Esquire, of the Firm Fellheimer & Eichen, LLP, counsel to all Plaintiffs, hereby certify that on August 26, 2008, I caused a copy of Plaintiffs' Opposition to Defendant Cevolo's Motion to Dismiss Plaintiffs' Amended Complaint to be filed electronically and is available for viewing and downloading from the ECF system. Same was also electronically served on the counsel for the Defendants on August 26, 2008 in accordance with Local Rule Of Civil Procedure 5.2.

William P. Frank, Esquire
Donald Lewis, Esquire
SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP
Four Times Square
New York, New York 10036
wfrank@skadden.com and Donald.Lewis@skadden.com
*Counsel for Defendant Banca MB S.p.A.*

James A. Prestiano, Esquire
THE LAW OFFICES OF JAMES A. PRESTIANO, P.C.
631 Commack Road, Suite 2A
Commack, New York, 11725

1

james@prestianolaw.com
*Counsel for Defendant Dwight Parscale*

Richard F. Horowitz, Esquire
HELLER, HOROWITZ & FEIT, P.C.
292 Madison Avenue
RFHorowitz@hhandf.com
New York, New York 10017
*Counsel for Defendants Mercatus & Partners, LTD  and  Stefano Cevolo*

Dated: <u>August 26, 2008</u>                    <u>/s/ Alan S. Fellheimer          </u>
                                                Alan S. Fellheimer (AF-1401)
                                                Counsel For Plaintiffs