UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------x

AXION POWER INTERNATIONAL, INC., :
WILLIAM AND TRACY AHEARN, h/w,
SALLY FONNER, and JAMES SMITH, M.D., :   Civil Action No. 07 CV 11493 (RWS)

           Plaintiffs,  :

    - against -  :

MERCATUS & PARTNERS, LTD., CARI :
MASI a/k/a CARY MASI, STEPHEN
CEVOLO, BANCA MB S.p.A., and DWIGHT :
PARSCALE,

           Defendants.  :

---------------------------------x

**REPLY MEMORANDUM OF LAW OF
DEFENDANT BANCA MB S.p.A. IN FURTHER SUPPORT
OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT**

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for Defendant Banca MB S.p.A.*

In an attempt to avoid the merits of Banca MB's motion to dismiss, Plaintiffs submit a repetitious opposition brief which is replete with conclusory assertions and devoid of supporting legal authority, and almost entirely ignores the legal arguments and applicable case law set forth in Banca MB's motion. Plaintiffs' claims against Banca MB are fatally flawed and must be dismissed.

## ARGUMENT

### I. Plaintiffs' Third-Party Beneficiary Claim Is Unfounded

Plaintiffs do not contest Banca MB's assertion that the Custodial Agreement between Banca MB and Brown Brothers & Harriman Co. ("BBH"), upon which they base their third-party beneficiary contract claim, contains a clause expressly negating third-party beneficiaries thereunder. Instead, in an attempt to salvage their deficient third-party claim, Plaintiffs set forth a myriad of nonsensical and legally unsupportable arguments, certain of which flatly contradict Plaintiffs' own allegations.

First, Plaintiffs incredibly argue that "the Amended Complaint [does] not rely on the Custodial Agreement between Banca MB and BBH, despite what Banca MB would like the Court to believe." (Opp. Br. at 3.)[1] This cannot be further from the truth, and is contrary to what they specifically allege. In Count II of their Amended Complaint – Breach of Contract to Which Plaintiffs Were Third Party Beneficiaries Against Defendant Banca MB – Plaintiffs specifically allege that "there exists an account agreement between BBH and Banca MB" (defined as the Banca MB Account Agreement) and that "Plaintiffs were third party beneficiaries of the Banca MB Account Agreement." (Amend. Compl. ¶¶ 52, 53 (emphasis added); see also Amend.

---

[1] "Opp. Br." refers to Plaintiffs' Memorandum of Law in Opposition to Defendant Banca MB S.p.A.'s Motion to Dismiss Plaintiffs' Complaint filed on August 18, 2008.

Compl. ¶¶ 55, 56, 57.) While Plaintiffs no doubt wish to avoid the Custodial Agreement's express disavowal of third-party beneficiaries (Mov. Br. at 9-10),[2] it almost defies comprehension how Plaintiffs can now argue that they somehow do not rely on the Custodial Agreement in their complaint.[3]

Second, notwithstanding their new claim that the Amended Complaint "do[es] not rely on the Custodial Agreement" between Banca MB and BBH, Plaintiffs argue that "regardless of any 'negating' clause," Banca MB "breached its third-party duties to Plaintiffs." (Opp. Br. at 7.) Plaintiffs further argue that such a "negating clause is contrary to public policy and contract law." (Opp. Br. at 8.) Tellingly, Plaintiffs fail to cite a single case supporting this purported "contract law," and also fail to meaningfully distinguish the New York law set forth by Banca MB precluding third-party beneficiary claims where a contract (such as the Custodial Agreement) expressly disavows such claims.[4] (Mov. Br. at 9.) Plaintiffs also fail to cite a single case supporting their argument of "public policy." Furthermore, any "public policy" argument weighs

---

[2] "Mov. Br." refers to the Memorandum of Law of Defendant Banca MB S.p.A. in Support of Its Motion to Dismiss the Amended Complaint filed on July 31, 2008.

[3] Plaintiffs' claims that they were purportedly not privy to the express terms of the Custodial Agreement prior to its excerpted inclusion in Banca MB's motion are completely irrelevant. (Opp. Br. at 3, 7.) The timing of when Plaintiffs became aware of these terms does nothing to change the fact that the agreement expressly disavows the third-party claim which Plaintiffs have asserted.

[4] Plaintiffs only attempt to distinguish one of the four cases that Banca MB cites to support the preclusion of third-party beneficiary claims when a clause negating such claims is included in the underlying agreement. (Mov. Br. at 9.) With respect to that single case – India.com – Plaintiffs argue that because the party against which the third-party claim was alleged was a broker, rather than a custodial bank, the case is somehow inapplicable. (Opp. Br. at 8.) Plaintiffs, however, fail to reference any reasoning from that case (or other supporting case law) which even remotely suggests that the defendant's role as a broker had anything to do with the court enforcing the plain language of the contract disavowing third-party beneficiary claims. It is also worthwhile to note that Plaintiffs suggest that the Axion Plaintiffs were somehow customers of Banca MB by stating: "[a] bank cannot agree with another bank to give away its customer's money without its customer's consent." (Opp. Br. at 8.) This is a blatant distortion. The Axion Plaintiffs had no relation to Banca MB; it was Mercatus, not Plaintiffs, who was Banca MB's customer.

strongly in Banca MB's favor, as negating clauses are routinely included in custodial agreements in order to preclude a bank which simply provides custodial services from being hailed into court by each and every entity that happens to do business with one of its customers.

Third, Plaintiffs then argue that Banca MB allegedly undertook certain obligations to Plaintiffs pursuant to a Schedule A to the Stock Purchase Agreements. (Opp. Br. at 7.) Plaintiffs completely ignore the fact that: (i) Schedule A is purportedly an addendum to the Stock Purchase Agreements between Plaintiffs and Mercatus; (ii) Banca MB is not a signatory of, nor party to, the Stock Purchase Agreements or Schedule A; and (iii) the Amended Complaint alleges purported third-party beneficiary status under the Custodial Agreement, not Schedule A. In addition, Plaintiffs again do not, because they cannot, cite a single case to support their position that Banca MB somehow owed Plaintiffs any duty pursuant to a schedule to an agreement to which Banca MB was not even a party.

Plaintiffs also do not distinguish the New York case law set forth in Banca MB's motion which holds that to be granted third-party beneficiary status, a party must demonstrate that the underlying agreement "intends" for the party to be an "immediate, rather than incidental, beneficiary." (Mov. Br. at 9, 10, n.10.) Here, Plaintiffs were not "intended" to be an "immediate" – or any other – beneficiary of the Custodial Agreement upon which they rely in their Amended Complaint.

In sum, notwithstanding Plaintiffs' baseless positions, their third-party beneficiary claim is precluded by the express language of the Custodial Agreement and should be dismissed.

## II.   Plaintiffs' Fraudulent Inducement Claim Is Legally Deficient

Plaintiffs' fraudulent inducement argument similarly fails to distinguish a single case cited in Banca MB's opening memorandum of law or to cite any authority supporting Plaintiffs' position. Instead, Plaintiffs simply include two opinions of this Court (Hoffenberg and EED Holdings, both cited in Banca MB's opening brief) setting forth the elements and pleading requirements of a fraudulent inducement claim, and misleadingly argue that the Amended Complaint meets these standards. (Mov. Br. at 11; Opp. Br. at 9.) Plaintiffs once again are incorrect, and their fraudulent inducement claim must also be dismissed.

Plaintiffs acknowledge that a required element of a fraudulent inducement claim is "that the defendant made a representation." (Opp. Br. at 9.) Critically, the Amended Complaint does not, because it cannot, allege that Banca MB made a single representation (false or otherwise) to Plaintiffs. In a futile effort to cure this deficiency, Plaintiffs make it up as they go along and falsely argue (for the first time) in their opposition that "Banca MB made a representation to Plaintiffs." (Opp. Br. at 10.) Plaintiffs then cite certain terms in the Stock Purchase Agreements between them and Mercatus and Schedule A, and allege that "Banca MB allowed its name and reputation to be circulated by its customer Mercatus." (Id.) They then summarily conclude (without offering any legal or logical support) that although the agreements were circulated by Mercatus and not Banca MB, this somehow "constitutes a representation made to Plaintiffs for purposes of a fraudulent inducement claim." (Id.) The fact of the matter is that Plaintiffs' own allegations illustrate that Banca MB made no representations to Plaintiffs (false or otherwise) and, at most, as alleged in the Amended Complaint, that Banca MB "knowingly acquiesced" to

Mercatus' representations. (Amend. Compl. ¶ 62.)[5] This absence of any representation by Banca MB warrants dismissal of Plaintiffs' fraud claim.

Furthermore, Plaintiffs fail to offer any plausible support for their conclusory and repeated assertions that Banca MB was aware that Mercatus was circulating its name, as set forth in the Amended Complaint. (Opp. Br. at 2, 3, 4, 6, 9, 10.) In addition to simply restating the assertion over and over again,[6] Plaintiffs offer two theories, neither of which makes any sense.

First, Plaintiffs continue to reference Schedule A to the Stock Purchase Agreements (Opp. Br. at 3, 6, 7, 10, 16), note the number of times Banca MB's name is mentioned in the schedule (Opp. Br. at 6, 16), and suggest that because of this, Banca MB must have known about the schedule. Of course, it takes an incredible leap of logic to conclude that an entity is aware of a document and its contents simply because that entity's name is mentioned in the document.

Second, consistent with the theme that Banca MB must have known, Plaintiffs assert that Banca MB's knowledge "is evident by the numerous prior litigation based on similar agreements in which Banca MB is named or referenced as the custodial account holder in the same type of scheme with the very same Defendants as those in this action." (Opp. Br. at 6-7.) In support of this preposterous argument, Plaintiffs then cite two of these purportedly "numerous" lawsuits – both filed against Mercatus – neither of which includes Banca MB as a defendant (or party), and both of which were filed well after the events at issue here.[7] It is fanciful to somehow conclude

---

[5] Plaintiffs fail to address the case law in Banca MB's opening brief holding that knowing acquiescence to the purportedly false representations of others is not sufficient to state a fraudulent inducement claim. (Mov. Br. at 12 n.11.)

[6] Plaintiffs appear to believe that repeatedly stating the same point somehow makes it so, and as a result, conclusorily argue that they have "sufficiently averred that Banca MB knowingly allowed the . . . false representations to be circulated by Mercatus." (Opp. Br. at 10.)

[7] One action was filed on August 7, 2006, the other on September 19, 2006. The Stock Purchase Agreements were executed in December 2005, almost one year earlier. Copies of the case captions
*(cont'd)*

that an Italian bank merely referenced in a complaint filed in the United States should (or would) be aware of such litigation. In addition, even assuming Banca MB was aware of these lawsuits, they were both filed well after the Stock Purchase Agreements were entered into, and accordingly do nothing to support the notion that Banca MB was aware that Mercatus was using its name in connection with the negotiation and execution of the Stock Purchase Agreements. Finally, the fact that Mercatus is a named defendant in those purportedly similar actions, and not Banca MB, again emphasizes that while Plaintiffs may have a grievance against Mercatus here, they have no basis for asserting a claim against Banca MB, which was neither a party to, nor privy to, the Stock Purchase Agreements.[8]

Plaintiffs additionally argue that their fraudulent inducement claim against Banca MB is sustainable based on certain purported "false and misleading representations" made by Defendant Parscale[9] that allegedly "prevent[ed] Plaintiffs from exercising their option to recall the Axion Stock," which caused Plaintiffs "great injury."[10] (Opp. Br. at 13.) The notion that Plaintiffs suffered "great injury" as a result of Parscale's alleged representations is belied by

---

*(cont'd from previous page)*
for both lawsuits are attached to the Declaration of Donald D. Lewis submitted herewith as Exhibits 1 and 2.

[8] Plaintiffs suggest that they will prove their fraud claim "at trial based upon the established pattern of Mercatus and Banca MB demonstrated by previous litigation." (Opp. Br. at 10.) As noted, the lawsuits on which Plaintiffs rely do not even name Banca MB as a defendant and this represents yet another logically puzzling assertion from Plaintiffs.

[9] Plaintiffs allege that "Parscale was Banca MB's agent with regard to the Axion Stock and therefore, representations made by Parscale to Plaintiffs were made with Banca MB's authority and on Banca MB's behalf." (Opp. Br. at 13.) Notably, none of the communications from Parscale to Plaintiffs attached to the Amended Complaint even remotely suggest that Parscale was acting on behalf of, much less with the authority of, Banca MB.

[10] Plaintiffs essentially concede that Parscale in no way induced them to enter into the Stock Purchase Agreements by acknowledging that Parscale's first alleged misrepresentation to Plaintiffs was made after the execution of the agreements. (Mov. Br. at 4 n.2) (after-the-fact statements cannot support a fraudulent inducement claim).

Plaintiffs' own subsequent acknowledgement that "much of the Axion Stock had been transferred from the safekeeping Custodial Account . . . <u>before</u> Parscale began making his numerous representations." (Opp. Br. at 14) (emphasis added). Stated differently, if "much of the Axion Stock" had already been transferred out of the Custodial Account before Parscale is alleged to have made any representations to Plaintiffs, any representations he made simply cannot be said to have anything to do with Plaintiffs' purported loss related to that stock.[11]

It is also worthwhile to note that Plaintiffs fail to offer any suggestion as to why Banca MB, a provider of custodial services to its client Mercatus, had any motive at all to participate in a purported fraud upon Plaintiffs. Here too, Plaintiffs do not attempt to distinguish the case law set forth in Banca MB's moving brief dismissing fraud claims which do not make economic sense, such as Plaintiffs' claim against Banca MB here.[12] (Mov. Br. at 13-14.)

### III. Plaintiffs' Fraud Claim Is Impermissibly Duplicative of Their Breach of Contract Claim

Continuing to avoid the merits of the motion, Plaintiffs also do not distinguish the authority cited by Banca MB which precludes fraud claims that duplicate contract claims, as Plaintiffs do here. (Mov. Br. at 16.) Instead, Plaintiffs conclusorily argue (without any explanation whatsoever) that the alleged misrepresentations were "collateral and extraneous" to the contract breached by Mercatus, and the causes of action are therefore purportedly distinct.

---

[11] Plaintiffs argue that simply because the Axion Stock had allegedly been transferred out of the Custodial Account when Parscale allegedly represented that payment was forthcoming, this somehow establishes that he had knowledge of the fraud. (Opp. Br. at 14.) Despite Plaintiffs' hindsight assertions, there is nothing in the Amended Complaint to reasonably infer that Parscale was aware that his statements concerning payment were false at the time they were made.

[12] In an apparent effort to circumvent this defect, Plaintiffs misleadingly state that Banca MB "converted and transferred the stock." (Opp. Br. at 3.) There are no allegations in the Amended Complaint, nor any suggestion at all, that Banca MB "converted" any of the Axion Stock. Instead, the allegation is that Banca MB transferred the stock consistent with its role as a custodial bank.

(Opp. Br. at 16.) This lack of any explanation is unsurprising, as both claims are based on precisely the same contractual provisions concerning payment for, and option to recall, the Axion Stock. That is, Plaintiffs' fraud claim improperly duplicates its claim that certain of the Stock Purchase Agreements' terms were breached by Mercatus. Accordingly, this is yet another independent reason to dismiss Plaintiffs' fraud claim.

## CONCLUSION

For the foregoing reasons, the Amended Complaint should be dismissed with prejudice.

Dated: New York, New York
August 28, 2008

SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP

By: /s/ William P. Frank
William P. Frank
(William.Frank@skadden.com)
Donald D. Lewis
(Donald.Lewis@skadden.com)
Four Times Square
New York, New York 10036
(212) 735-3000
*Attorneys for Defendant Banca MB S.p.A.*